# EXHIBIT E

NYSCEF - New York State Courts Electronic Filing *(Live System)*

<< Return to **Search Results**

## 656313/2023 - New York County Supreme Court

Short Caption: **EYZC INVESTMENT HOLDINGS, LLC v. EBURY RE LIMITED LIABILITY COMPANY et al**
Case Type: **Commercial - Contract**
Case Status: **RJI Pending**
eFiling Status: **Partial Participation Recorded**

**E-mail Participating Parties**

**Narrow By Options**

| Document Type: | Please select... | Filed By: | |
| Please select... | | | |
| Motion Info: | Please select... | Filed Date: | |
| [ ] 📅 | thru [ ] 📅 | | |
| Document Number: | [ ] | | |
| **Display Document List with Motion Folders** 📂 | | | |

**Sort By:** Doc #

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 1 | SUMMONS AND 3213 MOTION W/ RJI *Corrected* | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/19/2023* | **Processed** <br> Confirmation Notice |
| 2 | AFFIDAVIT OR AFFIRMATION IN SUPPORT <br> *EYZC Affirmation in Support of Motion* | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/12/2023* | **Processed** <br> Confirmation Notice |
| 3 | AFFIDAVIT <br> *Affidavit of EYZC Investment Holdings, LLC* | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/12/2023* | **Processed** <br> Confirmation Notice |
| 4 | EXHIBIT(S)  - A <br> *EYZC Texas Judgement* | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/12/2023* | **Processed** <br> Confirmation Notice |
| 5 | EXHIBIT(S)  - B <br> *Plaintiff's Original Petition* | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/12/2023* | **Processed** <br> Confirmation Notice |
| 6 | EXHIBIT(S)  - C <br> *Affidavit of Service for Ebury and Hanratty* | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/12/2023* | **Processed** <br> Confirmation Notice |
| 7 | EXHIBIT(S)  - D <br> *Servicemembers Relief Act Affidavit* | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/12/2023* | **Processed** <br> Confirmation Notice |
| 8 | RJI -RE: NOTICE OF MOTION | Brewer, W. <br> Filed: 12/12/2023 <br> *Received: 12/12/2023* | *** Pending *** <br> Confirmation Notice <br> Payment Receipt |
| 9 | NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT | Brewer, W. <br> Filed: 12/19/2023 <br> *Received: 12/19/2023* | *** Pending *** <br> Confirmation Notice |
| 10 | AFFIRMATION/AFFIDAVIT OF SERVICE <br> *Affidavit of Service for Ebury Re Limited Liability Co.* | Brewer, W. <br> Filed: 12/28/2023 <br> *Received: 12/28/2023* | **Processed** <br> Confirmation Notice |
| 11 | AFFIRMATION/AFFIDAVIT OF SERVICE <br> *Affidavit of Service for John Hanratty* | Brewer, W. <br> Filed: 01/25/2024 <br> *Received: 01/25/2024* | **Processed** <br> Confirmation Notice |
| 12 | AFFIRMATION/AFFIDAVIT OF SERVICE <br> *Affidavit of Service for John Hanratty* | Brewer, W. <br> Filed: 01/31/2024 <br> *Received: 01/31/2024* | **Processed** <br> Confirmation Notice |

FILED: NEW YORK COUNTY CLERK 02/14/2024 05:00 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 183
RECEIVED NYSCEF: 02/08/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 3 of 438

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-----------------------------------------------------------------------------X

EMIGRANT BUSINESS CREDIT CORPORATION,

                    Plaintiff,

JOHN ARTHUR HANRATTY, EBURY STREET
CAPITAL, LLC,EBURY FUND 1, LP, EBURY FUND 2,
LP, EBURY 1EMI LLC, EBURY 2EMI LLC, EB
1EMIALA LLC, EB 2EMIALA LLC,EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC,
EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ,
LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE
1EMI LLC,RE 2EMI LLC,EB 1EMIDC, LLC, ARQUE
TAX RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC,
EBURY FUND 1NJ, LLC, EBURY FUND 2NJ, LLC,
RED CLOVER 1, LLC, EBURY RE LLC, and XYZ
CORPS.

                    Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 158207/2022 |
| **MOTION DATE** | 01/26/2024 |
| **MOTION SEQ. NO.** | 008 |

**DECISION + ORDER ON
MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 008) 168, 169, 170, 171, 172, 173, 176, 177, 178, 179, 180, 181, 182

were read on this motion to/for         RENEW/REARGUE/RESETTLE/RECONSIDER    .

      Presently before the court in this action for breach of contract, fraudulent inducement, and fraudulent transfer is plaintiff's motion, by order to show cause, pursuant to CPLR 2221(e) seeking leave to renew its opposition to defendants' motion for a stay (MS007) (NYSCEF # 173). Defendants oppose plaintiff's motion (NYSCEF # 176). The court held oral arguments on February 8, 20204.

      As explained in more detail by the court during the hearing, plaintiff's "new facts" presented in support of its motion—i.e., the $4.2 million default judgment entered against defendants John Hanratty and Ebury RE LLC in the District Court for the 116th Judicial District in Dallas County, Texas—existed at the time plaintiff opposed defendants' motion to stay this action, and plaintiff failed to offer any reasonable justification for its failure to identify this Texas proceeding and judgment at the time it opposed that motion (*see Chris Grant Brohawk Films v*

**158207/2022  EMIGRANT BUSINESS CREDIT CORPORATION vs. HANRATTY, JOHN ARTHUR
ET AL
Motion No. 008**

Page 1 of 2

*Digital Seven LLC,* 210 AD3d 552, 522 [1st Dept 2022] [reversing trial court's granting of motion for leave to renew where "record demonstrates that the court filings plaintiff relies on, which are matters of public record, existed at the time it submitted opposition to defendants' vacatur motion" and plaintiff did not provide "reasonable justification" for failing to present such facts on the prior motion]; *NRZ Pass-Through Trust IV v Rouge,* 199 AD3d 466, 467 [1st Dept 2021] [affirming denial of motion to renew because the "supposed 'new facts' on which the renewal motion was primarily based was" a "mater of public record in the court file," and plaintiff "offered no reasonable justification for why it failed to find and timely present this document"]).

Accordingly, it is hereby

ORDERED that plaintiff's motion to renew is denied.

| 02/08/2024 | | | | MARGARET A. CHAN, J.S.C. | |
|---|---|---|---|---|---|
| **DATE** | | | | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

158207/2022  EMIGRANT BUSINESS CREDIT CORPORATION vs. HANRATTY, JOHN ARTHUR
ET AL
Motion No. 008                                                          Page 2 of 2

2 of 2

FILED: NEW YORK COUNTY CLERK 02/13/2024 05:39 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 184
24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 5 of 438
RECEIVED NYSCEF: 02/13/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

EMIGRANT BUSINESS CREDIT
CORPORATION,

Plaintiff,

v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1 EMIFL,
LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC,
EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
1EMINJ, LLC, EB 1EMINY, LLC, EB
2MINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND),
LLC, EBURY FUND 1FL, LLC, EBURY
FUND 2FL, LLC, EBURY FUND 2NJ, LLC,
RED CLOVER 1, LLC, EBURY RE LLC,
and XYZ CORPS. 1–10,

Defendants.

Index No. 158207/2022

Hon. Margaret Chan

**NOTICE OF ENTRY**

**PLEASE TAKE NOTICE** that attached hereto is a true and correct copy of the

Decision + Order on Motion #007 of the Hon. Margaret Chan, J.S.C., dated January 25,

2024, and duly entered in the above-captioned action in the office of the County Clerk,

New York County, on the 26th day of January, 2024.

Dated: February 13, 2024
New York, New York

Respectfully submitted,

**GUSRAE KAPLAN NUSBAUM PLLC**

/s/ Victor R. Wang
Victor R. Wang
Kari Parks
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
vwang@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Defendants*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-----------------------------------------------------------------------------------X

EMIGRANT BUSINESS CREDIT CORPORATION,

                        Plaintiff,

                    - v -

JOHN ARTHUR HANRATTY, EBURY STREET
CAPITAL, LLC, EBURY FUND 1, LP, EBURY FUND 2,
LP, EBURY 1EMI LLC, EBURY 2EMI LLC, EB
1EMIALA LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC,
EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ,
LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE
1EMI LLC, RE 2EMI LLC, EB 1EMIDC, LLC, ARQUE
TAX RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC,
EBURY FUND 1NJ, LLC, EBURY FUND 2NJ, LLC,
RED CLOVER 1, LLC, EBURY RE LLC, and XYZ
CORPS.

                        Defendants.

------------------------------------------:-----------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 158207/2022 |
| | 01/04/2024, |
| | 01/22/2024, |
| **MOTION DATE** | 01/22/2024 |
| **MOTION SEQ. NO.** | 005 006 007 |

**DECISION + ORDER ON
MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 005) 97, 98, 99, 100, 101, 102,
103, 104, 105, 106, 107, 108, 109, 110, 113, 153, 154
were read on this motion to/for _____CONTEMPT_____ .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 114, 115, 116, 117, 118,
119, 155, 160, 161, 162, 163, 164
were read on this motion to/for _____VACATE - DECISION/ORDER/JUDGMENT/AWARD_____ .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 149, 150, 151, 152, 156,
157, 158, 159
were read on this motion to/for _____STAY_____ .

     Presently before the court are three motions in this action by plaintiff
Emigrant Business Credit Corporation alleging claims for breach of contract,
fraudulent inducement, and fraudulent transfer. In Motion Sequence (MS) 005,
plaintiff moves, by order to show cause, for an order pursuant to Judiciary Law §§
753, 773, and 774 holding defendants in civil contempt and an order pursuant to
Judiciary Law §§ 750(3) and 751(1) holding defendant John Arthur Hanratty

(Hanratty) in criminal contempt (NYSCEF # 113). In MS 006, defendants move, by order to show cause, for an order pursuant to CPLR 5015 and/or 2221 vacating and/or modifying that portion of this court's January 9, 2024, order requiring defendants to deposit $306,946.30 into the parties' joint escrow account no later than January 11, 2024 (NYSCEF # 114). And in MS 007, defendants move pursuant to CPLR 2201 for a stay of this civil action pending final resolution of the criminal action against Hanratty, captioned *United States of America v John Arthur Hanratty*, 23-mj-7566 (SDNY 2023). All three motions are opposed.

Oral arguments on all three motions were held on January 24, 2024. This Decision and Order resolves all three motions and/or pending orders to show cause.

Turning to MS 005, to establish civil contempt based on an alleged violation of a court order, the movant must establish, by clear and convincing evidence, that a lawful order of the court expressing an unequivocal mandate was in effect, and that the order was disobeyed with reasonable certainty (*Department of Envtl. Protection of City of New York v Dept. of Envtl. Conserv. of State of N.Y.*, 70 NY2d 233, 240 [1987]). "Intent or willfulness is not required to hold a party in contempt for disobeying a court order or subpoena" (*Yalkowsky v Yalkowsky*, 93 AD2d 834, 835 [2d Dept 1983]). Instead, the movant must establish that the party to be held in contempt had knowledge of a clear and unequivocal order, failed to comply with its terms, and prejudiced the right of another party through its disobedience (*McCain v Dinkins*, 84 NY2d 216, 226 [1994]; *Garcia v Great Atl. & Pac. Tea Co.*, 231 AD2d 401, 401-402 [1st Dept 1996]). Once this showing is made, "the burden shifts to the alleged contemnor to refute the movant's showing, or to offer evidence of a defense, such as an inability to comply with the order" (*El-Dehdan v El-Dehdan*, 114 AD3d 4, 17-18 [2d Dept 2013], *aff'd* 26 NY3d 19 [2015]).

Here, for the reasons set forth during oral arguments and upon consideration of defendants' concessions set forth on the record, the court finds Hanratty in civil contempt and imposes a civil fine of $306,946.30 for failure to comply with the terms and restrictions set forth in the court's preliminary injunction order (NYSCEF # 47 at 8-9) and its preliminary conference order (NYSCEF # 53). Hanratty is directed to pay or cause to be paid $306,946.30 into the parties' joint escrow account by no later than February 7, 2024.

Given this determination, the court declines to sign defendants' proposed order to show cause submitted in connection with MS 006 because that issue has been mooted by the court's resolution of MS 007. Meanwhile, the remainder of MS 005 is denied, without prejudice, to extent it seeks to hold Hanratty in criminal contempt. Plaintiff, however, is granted leave to renew if plaintiff learns of additional breaches of the court's preliminary injunction order or preliminary conference order.

Regarding defendants' application for a stay in MS 007, it is well settled that a motion pursuant to CPLR 2201 seeking a stay of a civil action pending resolution of a related criminal action is directed to the sound discretion of the court (*see Britt v International Bus Servs., Inc.*, 255 AD2d 143, 144 [1st Dept 1998]). Factors for the court to consider include, among others, the risk of inconsistent adjudications, potential waste of judicial resources, and whether "defendant will invoke his or her constitutional right against self incrimination" (*see id.*, citing *Zonghetti v Jeromack*, 150 AD2d 561, 563 [2d Dept 1989] and *DeSiervi v Liverzani*, 136 AD 527, 528 [2d Dept 1988]).

Here, after considering the parties' written and oral arguments, the court concludes that a stay of this action pending resolution of the ongoing criminal proceedings against Hanratty is warranted. As defendants note, the criminal action against Hanratty and this civil action arise out of identical facts (*compare* NYSCEF # 1 *with* NYSCEF # 152). Accordingly, a stay will avoid the possibility inconsistent results, save scarce judicial resources, and result in a potential streamlining and simplifying of the issues to be resolved in this proceeding, either by summary judgment or trial (*see Mook v Homesafe Am., Inc.*, 144 AD3d 1116, 1117 [2d Dept 2016] ["a prior determination in the criminal proceeding could have collateral estoppel effect in this action, thereby simplifying the issues"]). Furthermore, although discovery in this action is complete, briefing on plaintiff's motion for summary judgment on its breach of contract claim remains ongoing—including a forthcoming opposition and cross-motion by defendants—and a trial on plaintiff's remaining claims is also on the horizon. Hanratty's concerns regarding his constitutional right against self-incrimination are therefore not entirely obviated by the current procedural posture of this civil action. For these reasons, defendants' motion to stay pursuant to CPLR 2201 is granted.

In conclusion, it is hereby

ORDERED that plaintiff's motion to hold defendant John Arthur Hanratty in civil contempt (MS 005) is granted; and it is further

ORDERED and ADJUDGED that defendant John Arthur Hanratty is guilty of civil contempt for his failure to comply with the court's November 30, 2022, preliminary injunction order and its December 12, 2022, preliminary conference order; and it is further

ORDERED that a fine of $306,946.30 is imposed on defendant John Arthur Hanratty, plus legal costs and expenses incurred by plaintiff in connection with its contempt motion; and it is further

ORDERED that defendant John Arthur Hanratty will be purged of the contempt by providing proof of payment of the $306,943.30 into the parties' joint escrow account by February 7, 2024; and it is further

158207/2022 EMIGRANT BUSINESS CREDIT CORPORATION vs. HANRATTY ET AL        Page 3 of 4
Motion No. 005 006 007

5 of 6

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 10 of 438

ORDERED that if defendant John Arthur Hanratty fails to comply with the immediately preceding paragraph, plaintiff may apply for further relief including a fine or other appropriate penalty or an adjudication of criminal contempt; and it is further

ORDERED that defendants' request for a stay pursuant to CPLR 2201 pending final resolution of the criminal action against defendant John Arthur Hanratty, captioned *United States of America v John Arthur Hanratty*, 23-mj-7566 (SDNY 2023) is granted, thereby resolving the proposed order to show cause submitted in connection with MS 007.

The court otherwise declines to sign the order to show cause in MS006 for the reasons set forth above.

01/25/2024
DATE

MARGARET A. CHAN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

158207/2022 EMIGRANT BUSINESS CREDIT CORPORATION vs. HANRATTY ET AL          Page 4 of 4
Motion No. 005 006 007

FILED: NEW YORK COUNTY CLERK 02/14/2024 05:08 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 185    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/14/2024

Court Records    Pg 11 of 438

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

EMIGRANT BUSINESS CREDIT
CORPORATION,

Plaintiff,

v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1 EMIFL,
LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC,
EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
1EMINJ, LLC, EB 1EMINY, LLC, EB
2MINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND),
LLC, EBURY FUND 1FL, LLC, EBURY
FUND 2FL, LLC, EBURY FUND 2NJ, LLC,
RED CLOVER 1, LLC, EBURY RE LLC,
and XYZ CORPS. 1–10,

Defendants.

Index No. 158207/2022

Hon. Margaret Chan

**NOTICE OF ENTRY**

 

 

**PLEASE TAKE NOTICE** that attached hereto is a true and correct copy of the

Decision + Order on Motion #008 of the Hon. Margaret Chan, J.S.C., dated February 8,

2024, and duly entered in the above-captioned action in the office of the County Clerk,

New York County, on the 14th of February, 2024.

Dated: February 14, 2024
      New York, New York

Respectfully submitted,

**GUSRAE KAPLAN NUSBAUM PLLC**


/s/ Victor R. Wang
Victor R. Wang
Kari Parks
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
vwang@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Defendants*

FILED: NEW YORK COUNTY CLERK 02/14/2024 05:08 PM          INDEX NO. 158207/2022
NYSCEF DOC. NO. 185          Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State          02/14/2024

24-04020-dsj     Court Records   Pg 13 of 438          RECEIVED NYSCEF: 02/14/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

------------------------------------------------------------------X

EMIGRANT BUSINESS CREDIT CORPORATION,

                    Plaintiff,

JOHN ARTHUR HANRATTY, EBURY STREET
CAPITAL, LLC,EBURY FUND 1, LP, EBURY FUND 2,
LP, EBURY 1EMI LLC, EBURY 2EMI LLC, EB
1EMIALA LLC, EB 2EMIALA LLC,EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC,
EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ,
LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE
1EMI LLC,RE 2EMI LLC,EB 1EMIDC, LLC, ARQUE
TAX RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC,
EBURY FUND 1NJ, LLC, EBURY FUND 2NJ, LLC,
RED CLOVER 1, LLC, EBURY RE LLC, and XYZ
CORPS.

                    Defendants.

------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 158207/2022 |
| **MOTION DATE** | 01/26/2024 |
| **MOTION SEQ. NO.** | 008 |

**DECISION + ORDER ON
MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 008) 168, 169, 170, 171,
172, 173, 176, 177, 178, 179, 180, 181, 182

were read on this motion to/for       RENEW/REARGUE/RESETTLE/RECONSIDER     .

      Presently before the court in this action for breach of contract, fraudulent
inducement, and fraudulent transfer is plaintiff's motion, by order to show cause,
pursuant to CPLR 2221(e) seeking leave to renew its opposition to defendants'
motion for a stay (MS007) (NYSCEF # 173). Defendants oppose plaintiff's motion
(NYSCEF # 176). The court held oral arguments on February 8, 20204.

      As explained in more detail by the court during the hearing, plaintiff's "new
facts" presented in support of its motion—i.e., the $4.2 million default judgment
entered against defendants John Hanratty and Ebury RE LLC in the District Court
for the 116th Judicial District in Dallas County, Texas—existed at the time plaintiff
opposed defendants' motion to stay this action, and plaintiff failed to offer any
reasonable justification for its failure to identify this Texas proceeding and
judgment at the time it opposed that motion (*see Chris Grant Brohawk Films v*

**158207/2022  EMIGRANT BUSINESS CREDIT CORPORATION vs. HANRATTY, JOHN ARTHUR
ET AL
Motion No. 008**          **Page 1 of 2**

1 of 2

*Digital Seven LLC*, 210 AD3d 552, 522 [1st Dept 2022] [reversing trial court's granting of motion for leave to renew where "record demonstrates that the court filings plaintiff relies on, which are matters of public record, existed at the time it submitted opposition to defendants' vacatur motion" and plaintiff did not provide "reasonable justification" for failing to present such facts on the prior motion]; *NRZ Pass-Through Trust IV v Rouge*, 199 AD3d 466, 467 [1st Dept 2021] [affirming denial of motion to renew because the "supposed 'new facts' on which the renewal motion was primarily based was" a "mater of public record in the court file," and plaintiff "offered no reasonable justification for why it failed to find and timely present this document"]).

Accordingly, it is hereby

ORDERED that plaintiff's motion to renew is denied.

02/08/2024
DATE                                         MARGARET A. CHAN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

158207/2022   EMIGRANT BUSINESS CREDIT CORPORATION vs. HANRATTY, JOHN ARTHUR
ET AL                                                                    Page 2 of 2
Motion No. 008

2 of 2

**WARNING:**

**YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT**

**NOTICE:**

**THE PURPOSE OF THE HEARING UPON THE FOLLOWING APPLICATION IS TO PUNISH THE ACCUSED FOR A CONTEMPT OF COURT, AND THAT SUCH PUNISHMENT MAY CONSIST OF FINE OR IMPRISONMENT, OR BOTH, ACCORDING TO LAW**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---------------------------------------------------- x

EMIGRANT BUSINESS CREDIT
CORPORATION,

                Plaintiff,

         v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB
2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND
2FL, LLC, EBURY FUND 1NJ, LLC,
EBURY FUND 2NJ, LLC, RED CLOVER 1,
LLC, EBURY RE LLC, and XYZ
CORPS. 1-10,

                Defendants.

---------------------------------------------------- x

Index No. 158207/2022

(Hon. Margaret Chan)

**MOTION SEQUENCE NO. ___**

**NOTICE OF EBCC'S MOTION TO ENFORCE THE COURT'S CONTEMPT ORDER (DKT. 165)**

PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law and all other pleadings and papers filed herein, Plaintiff Emigrant Business Credit Corporation will move this Court at the Motions Submissions Part, Room 130, at the Courthouse located at 60 Centre Street, New York, New York 10007, on February 29, 2024, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an order pursuant to Judiciary Law §§ 753, 773, and 774 adjudging Defendants in **CIVIL CONTEMPT** of Court and imposing upon them a civil fine of $50,000 per day until Defendants purge the contempt, and imprisoning Defendant John Arthur Hanratty until the fine is paid for a term not exceeding six months if the fine is not paid within three days of the Court's order on this motion, and for such additional and further relief as may be just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Court's order at the February 8, 2024 proceedings in this action, Defendants' opposition papers, if any, must be served by February 22, 2024.

Dated:   February 15, 2024
         New York, New York

Respectfully submitted,

*/s/ Alexander J. Willscher*

Alexander J. Willscher
Austin P. Mayron
Erin Savoie
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Plaintiff Emigrant Business Credit Corporation*

-2-

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 17 of 438

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

EMIGRANT BUSINESS CREDIT
CORPORATION,

               Plaintiff,

      v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB
2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND
2FL, LLC, EBURY FUND 1NJ, LLC,
EBURY FUND 2NJ, LLC, RED CLOVER 1,
LLC, EBURY RE LLC, and XYZ
CORPS. 1-10,

               Defendants.

---

Index No. 158207/2022

(Hon. Margaret Chan)

**MOTION SEQUENCE NO. ___**

**MEMORANDUM OF LAW IN
SUPPORT OF EBCC'S MOTION
TO ENFORCE THE COURT'S
CONTEMPT ORDER (DKT. 165)**

## PRELIMINARY STATEMENT

On January 25, 2024, the Court adjudged Defendant John Arthur Hanratty ("**Hanratty**") guilty of civil contempt for disobeying the Court's Preliminary Injunction Order and Preliminary Conference Order. (Dkt. 165 (the "Contempt Order") at 3.) The Court directed Hanratty "to pay or cause to be paid $306,946.30 into the parties' joint escrow account by no later than February 7, 2024." That sum represents the proceeds that Hanratty received from selling EBCC's collateral without authorization. (_Id._ at 2; _see id._ at 3 (requiring Hanratty to "provid[e] proof of payment . . . by February 7, 2024").) Given Hanratty's repeated history of violating the

FILED: NEW YORK COUNTY CLERK 02/15/2024 06:24 PM
NYSCEF DOC. NO. 187
INDEX NO. 158207/2022
RECEIVED NYSCEF: 02/15/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 18 of 438

Court's orders, EBCC specifically requested that the Court impose a deadline for Hanratty to pay the civil fine. The Court granted Hanratty two weeks, until February 7, to escrow the cash that Hanratty impermissibly paid to himself and that rightfully belongs to EBCC.

Hanratty now stands in contempt of this Court's orders for a second time. On February 7, Hanratty's counsel filed a letter with the Court asserting—without offering any evidentiary support—that Hanratty would escrow only $120,000 because it was a "struggle[]" for Hanratty "to find the funds necessary to satisfy the Order." (Dkt. 174 at 1.) To date, neither Hanratty nor his counsel have provided any evidence to establish his supposed financial hardship, lack of liquidity, or inability to pay. Nor have they provided any evidence as to what Hanratty did with the $306,946.30 in proceeds—which indisputably belongs to EBCC—of which Hanratty has transferred at least $180,000 to personal accounts since October 12, 2023. (Dkt. 98 ¶ 23.)

The prejudice that EBCC suffers as a result of Hanratty's contempt of the Court's order is evident. All told, Hanratty and the Ebury companies owe EBCC what is now approaching $25 million. Every day that passes is one more day in which Hanratty is able to deplete EBCC's resources, and one less day that EBCC can hope to recover what Hanratty has stolen from it.

EBCC respectfully requests that the Court adjudge Hanratty in contempt of the Contempt Order. As a punishment, the Court should impose a $50,000 per day civil fine as well as a term of imprisonment if Hanratty fails to pay the new fine within three days of the Court's order on this motion, given that he has now defied three Court orders. Such a penalty is the only one sufficient to induce Hanratty to finally respect and comply with the Court's orders.

## LEGAL STANDARDS

A finding of civil contempt is proper upon a showing that: (i) "a lawful order of the court, clearly expressing an unequivocal mandate, was in effect"; (ii) "the order has been

disobeyed"; (iii) "the party to be held in contempt . . . had knowledge of the court's order"; and

(iv) "prejudice." <u>El-Dehdan</u> v. <u>El-Dehdan</u>, 26 N.Y.3d 19, 29 (2015); *see* Judiciary Law § <u>753</u>.

"To satisfy the prejudice requirement, it is sufficient to allege and prove that the contemnor's

actions were 'calculated to . . . defeat, impair, impede or prejudice the rights or remedies of a

party.'" <u>Orange Cnty.-Poughkeepsie Ltd. P'ship</u> v. <u>Bonte</u>, 37 A.D.3d 684, 686 (2d Dep't 2007);

*see* <u>Bd. of Directors of Windsor Owners Corp.</u> v. <u>Platt</u>, 148 A.D.3d 645, 646 (1st Dep't 2017)

("Judiciary Law § 753 does not require a showing of . . . monetary harm as a precondition to a

finding of civil contempt."). Civil contempt is punished by "a fine, sufficient to indemnify the

aggrieved party" for any loss or injury caused by the disobedient party. Judiciary Law § <u>773</u>.

Until such a fine is paid, the Court may imprison the disobedient party for up to "three months if

the fine is less than five hundred dollars" and up to "six months if the fine is five hundred dollars

or more." Judiciary Law § <u>774(1)</u>.

## **ARGUMENT**

The Court should find Hanratty guilty of contempt and enter the requested relief:

*First*, the January 25, 2024 Contempt Order is a lawful order of the Court that

clearly expresses an unequivocal mandate.

*Second*, there is no dispute that Hanratty disobeyed the Contempt Order and acted

with knowledge of it. (<u>Dkt. 174</u> ("So far, Mr. Hanratty has paid $120,000 into the escrow

account").)

*Third*, EBCC has been prejudiced by Hanratty's failure to pay the civil fine, return

the proceeds from his unauthorized sales of EBCC's collateral, or turn over the more than $180,000

Hanratty has transferred to himself from the Ebury corporate bank accounts since October 12,

2023. (Dkt. 98 ¶ 23.)

-3-

*Fourth*, the requested relief is appropriate and necessary to ensure Hanratty's future compliance.  In <u>*Pacific Alliance Asia Opportunity Fund L.P.* v. *Wan*</u>, 199 A.D.3d 423, 423 (1st Dep't 2021), the First Department unanimously affirmed "a fine of $500,000 for every day . . . a $27 million yacht remain[ed] outside the court's jurisdiction, in violation of prior orders."  The First Department approved the large daily fine as "intended to strongly encourage defendant to purge himself of the contempt, which, despite being permitted two months to accomplish, he has shown no interest in doing." *Id*.  As in *Wan*, Hanratty has had nearly five weeks to comply since the Court first ordered him to deposit $306,946.30 into the Parties' joint escrow account, yet he has failed to fully comply with the Contempt Order or explain his failure to do so.  (<u>Dkt. 113</u> at 3).  Hanratty also has not provided any explanation of what he did with the more than $180,000 in proceeds he transferred to himself from the Ebury corporate bank accounts, which appear still to be under his control.

To the extent Hanratty continues to claim financial hardship or the inability to pay, such claims should be weighed against Hanratty's previous testimony in this proceeding that "the Ebury Entities hold assets of approximately $28.1 million" (in addition to his personal assets) and earned revenues of $13 million 2019, nearly $8 million in 2020, nearly $4 million in 2021, and more than $7 million across the first ten months of 2022.  (<u>Dkt. 24</u> at ¶¶ 41, 44.)  The Court should disregard Hanratty's claims that he has attempted to comply with the Court's Contempt Order unless Hanratty provides a sworn affidavit as to the value of his personal assets and liabilities, as well as the assets and liabilities of the Ebury Companies.  The affidavit should be supported by bank statements from Hanratty's and the Ebury Companies' financial institutions, reflecting the true account balances of each of Hanratty's and the Ebury Companies' depository and brokerage accounts.  The evidence also should prove the amount of assets owned by each entity (including

-4-

cash, marketable securities, and other liquid assets, as well as real estate). Finally, the affidavit should answer at least the following questions:

- What did John Hanratty do with the $306,946.30 in proceeds that he earned by selling EBCC's collateral since October 2023?

- Who is "Martin Hanratty" and why did John Hanratty transfer $25,000 to him on December 14, 2023?

- What is the status of the more than $180,000 that John Hanratty has transferred to himself from Ebury company accounts since October 12, 2023 (but refused to deposit into the escrow account in satisfaction of the Contempt Order)?

## CONCLUSION

EBCC respectfully requests the Court adjudge Hanratty in civil contempt for his failure to comply with the Contempt Order and impose upon him a fine of $50,000 per day until he purges the contempt. EBCC also respectfully requests that the Court impose a term of imprisonment if Hanratty fails to pay the fine within three days of the Court's order on this motion. Finally, EBCC respectfully requests that—to the extent Hanratty claims financial hardship or the inability to pay—the Court should reject such claims unless Hanratty submits a sworn affidavit and documentary evidence sufficient to substantiate the financial hardship or inability to pay.

Dated:  February 15, 2024
      New York, New York

Respectfully submitted,

*/s/ Alexander J. Willscher*

Alexander J. Willscher
Austin P. Mayron
Erin L. Savoie
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Plaintiff Emigrant Business
Credit Corporation*

-5-

# CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with the word-count limit of Commercial Division Rule 17, 22 NYCRR § 202.70(g), for documents prepared by use of a computer, because it contains 1,301 words.

Dated:   February 15, 2024
         New York, New York

Respectfully submitted,

*/s/ Alexander J. Willscher*
_____

Alexander J. Willscher
Austin P. Mayron
Erin Savoie
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Plaintiff Emigrant Business Credit Corporation*

-6-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

---

EMIGRANT BUSINESS CREDIT
CORPORATION,

     Plaintiff,

        v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND
1, LP, EBURY FUND 2, LP, EBURY
1EMI LLC, EBURY 2EMI LLC, EB
1EMIALA LLC, EB 2EMIALA LLC, EB
1EMIFL, LLC, EB 2EMIFL, LLC, EB
1EMIIN, LLC, EB 2EMIIN, LLC, EB
1EMIMD, LLC, EB 2EMIMD, LLC, EB
1EMINJ, LLC, EB 2EMINJ, LLC, EB
1EMINY, LLC, EB 2EMINY, LLC, EB
1EMISC, LLC, EB 2EMISC, LLC, RE
1EMI LLC,
RE 2EMI LLC, EB 1EMIDC, LLC,
ARQUE TAX RECEIVABLE FUND
(MARYLAND), LLC, EBURY FUND 1FL,
LLC, EBURY FUND 2FL, LLC, EBURY
FUND 1NJ, LLC, EBURY FUND 2NJ,
LLC, RED CLOVER 1, LLC, EBURY RE
LLC, and XYZ CORPS. 1–10,

     Defendants.

---

Index No. 158207/2022

The Honorable Margaret A. Chan

Mot. Seq. 10

**DEFENDANT JOHN
HANRATTY'S MEMORANDUM IN
OPPOSITION TO
MOTION TO ENFORCE
<u>CONTEMPT ORDER</u>**

Kari Parks
GUSRAE KAPLAN NUSBAUM PLLC
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
kparks@gusraekaplan.com

**Counsel for Defendant John Hanratty**

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM
NYSCEF DOC. NO. 188

INDEX NO. 158207/2022
RECEIVED NYSCEF: 02/22/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 24 of 438

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                    2

TABLE OF AUTHORITIES                                                 3

BACKGROUND                                                          6

  I.   The Court Ordered Mr. Hanratty to Pay a $306,946.30 Civil Contempt Fine  6

  II.  Mr. Hanratty Does Not Have $186,946.30 to Pay the Rest of His Contempt
  Fine                                                             10

LEGAL STANDARD                                                     14

ARGUMENT                                                           16

  I.   Because Mr. Hanratty Does Not Have $186,946.30, the Court Should Deny
  EBCC's New Contempt Motion                                       16

  II.  EBCC's Proposed Punishments are Nuts                        19

CONCLUSION                                                         22

CERTIFICATE OF COMPLIANCE                                          23

2

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 188    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/22/2024

Court Records    Pg 25 of 438

# TABLE OF AUTHORITIES

## Cases

Badgley v. Santacroce, 800 F.2d 33 (2d Cir. 1986)    15

Blackmer v. Comm'r of Internal Revenue, 70 F.2d 255 (2d Cir. 1934)    6, 7

Bryan v. United States, 425 U.S. 184 (1998)    14

Conforti v. Goradia, 234 A.D.2d 237 (1st Dep't 1996)    4

El-Dehdan v. El-Dehdan, 26 N.Y.3d 19 (2015)    13, 14, 16

Gompers v. Buck's Stove & Range Co., 211 U.S. 418 (1911)    18

Joachim v. Joachim, 28 A.D.2d 290 (2d Dep't 1977)    15

Kainth v. Kainth, 36 A.D.3d 915 (2d Dep't 2007)    16, 17

Lake v. Schuner, 106 A.D.2d 893 (4th Dep't 1984)    14

Matter of Chassman, 1 Misc. 2d 766 (Sup. Ct. 1955)    4

Matter of Storm, 28 A.D.2d 290 (1st Dep't 1967)    13, 14, 15

McCormick v. Axelrod, 59 N.Y.2d 574 (1983)    13

N.A. Development Co. v. Jones, 99 A.D.2d 238 (1st Dep't 1984)    4, 15

NRDC v. Train, 510 F.2d 692 (D.C. Cir. 1974)    17

Pac. Alliance Asia Opp. Fund L.P. v. Wan, 199 A.D.3d 423 (1st Dep't 2021)    19, 20

Pac. Alliance Asia Opp. Fund L.P. v. Wan, No. 652077/2017, 2018 WL 3201908

   (N.Y. Sup. Ct. June 28, 2018) (Ostrager, J.)    19, 20

Piambino v. Bestline Prods., Inc., 645 F. Supp. 2d 1210 (S.D. Fla. 1986)    15

SEC v. Musella, 818 F. Supp. 600 (S.D.N.Y. 1993)    15

3

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 188
24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 26 of 438
RECEIVED NYSCEF: 02/22/2024

<u>Sierra Rutile Ltd. v. Katz</u>, No. 90 Civ. 4913, 1997 WL 43119 (S.D.N.Y. July 31, 1997) ........................................................................................ 7

<u>Theroux v. Rescinow</u>, 200 A.D.3d 481 (1st Dep't 2021) .............. 13

<u>United States v. Rylander</u>, 460 U.S. 752 (1983) .............. 16, 21

<u>Usina Costa Pinto, S.A. v. Sanco Sav. Co. Ltd.</u>, 174 A.D.2d 487 (1st Dep't 1991) ...... 13

<u>Vail v. Quinan</u>, 406 F. Supp. 951, 960 (S.D.N.Y. 1976), <u>rev'd on other grounds sub nom.</u>, 430 U.S. 327 (1977) ......................................... 15

<u>Weaver v. Weaver</u>, 72 A.D.2d 221 (4th Dep't 1980) .............. 15

<u>Yeager v. Yeager</u>, 38 A.D.3d 534 (2d Dep't 2007) .............. 16

**Other Authorities**

Black's Law Dictionary 1834 (10th ed. 2014) .............. 14

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM
NYSCEF DOC. NO. 188

INDEX NO. 158207/2022
RECEIVED NYSCEF: 02/22/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 27 of 438

Defendant John Hanratty respectfully submits this memorandum in opposition to Plaintiff Emigrant Business Credit Corp.'s ("**EBCC**") contempt "**Motion**," which asks the Court to reincarnate debtors' prisons because a human being has deposited "only $120,000" of $306,946.30 into the escrow account that the Parties[1] established in connection with this litigation. See [Dkt. 187](#) at 5 (Feb. 15, 2024) ("**Mot. Br.**") (asking the Court to (1) "impose a fine of $50,000 per day until [Mr. Hanratty] purges the contempt" by paying $306,946.30 into the escrow account and (2) "impose a term of imprisonment if Hanratty fails to pay the fine within three days of the Court's order on this motion"); but see Conforti v. Goradia, 234 A.D.2d 237, 239 (1st Dep't 1996) (quoting N.A. Development Co. v. Jones, 99 A.D.2d 238, 242 (1st Dep't 1984)) ("The 'extraordinary' power to impose wholly punitive sanctions for civil contempt 'should be exercised only very cautiously and where the necessity is clear.'"); Matter of Chassman, 1 Misc. 2d 766, 768–69 (Sup. Ct. 1955) (rejecting contempt motion against respondent who could not afford to pay order at issue; "Since 1910, when Schmol v. Phillips was decided, there has been a decided trend of public policy against imprisonment for debt.").

---

[1] The **"Parties"** are Plaintiff EBCC, Defendant John Hanratty and "**Ebury Entities**" Ebury Street Capital ("**ESC**"), LLC, "**Ebury Fund 1**," LP, "**Ebury Fund 2**," LP, Ebury 1EMI LLC, Ebury 2 EMI LLC, "**EB 1EMIALA**" LLC, "**EB 2EMIALA**" LLC, Eb 1EMIFL, LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ, LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB 2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE 1EMI LLC, RE 2EMI LLC, EB 1EMIDC, LLC, Arque Tax Receivable Fund (Maryland), LLC, Ebury Fund 1 FL, LLC, Ebury Fund 2 FL, LLC, "**Ebury Fund 1NJ**," LLC, "**Ebury Fund 2NJ**," LLC, Red Clover 1, LLC, and "**Ebury RE**," LLC (with Mr. Hanratty, "**Defendants**").

## BACKGROUND

### I.    The Court Ordered Mr. Hanratty to Pay a $306,946.30 Civil Contempt Fine

In September 2022, Plaintiff Emigrant Business Credit Corporation ("**EBCC**" and with the Ebury Parties, the "**Parties**") initiated the above-captioned "**Action**," suing the Ebury Parties for breach of contract, fraudulent inducement, and fraudulent transfer. See generally Dkt. 1 (Sep. 25, 2022). Three weeks later, EBCC filed an order to show cause seeking temporary injunctive relief while this Action is pending. Dkt. 2 (Oct. 17, 2022). Over the Ebury Parties' opposition, this Court granted EBCC's injunctive relief motion. Dkt. 47 (Nov. 29, 2022) (the "**Preliminary Injunction Order**").

Among other terms, the Preliminary Injunction Order "temporarily restrain[s] and enjoin[s]" the Ebury Parties, (1) prohibiting them from transferring "any of their assets, aside from ordinary and necessary disbursements related to [the Ebury Parties'] tax lien or real estate business or living expenses;" (2) requiring them to escrow tax lien certificate or resulting real estate property proceeds, if those proceeds are not intended for "ordinary and necessary disbursements related to the [Ebury Parties'] tax lien or real estate businesses," and (3) requiring them to notify EBCC at least 24 hours before transferring any assets "exceeding $50,000." Id. at 8–9.

In the year after the Court issued the Preliminary Injunction Order, the Parties cooperated fully in litigating this Action, from motion practice to exchanging hundreds of thousands of pages of documents to weeks of depositions, including EBCC's two-day, in-person deposition of Defendant John Hanratty, who is the Ebury

Entities' managing member. Dkt. 151 ¶ 3 (Jan. 16, 2024). Between September 2022 and December 2023, the only motions filed by the Parties were EBCC's injunctive relief motion, dispositive motions, and stipulated briefing schedules; the Parties never once sought the Court's intervention or assistance to ensure that discovery moved forward. See generally Dkt.

Nevertheless, in January 2024, EBCC moved for a civil and criminal contempt order against all Defendants, arguing that they had repeatedly violated the Preliminary Injunction Order between October and December 2023, and that the motion required urgent attention because Mr. Hanratty was required to post $400,000 bond in the related "**Criminal Action**" on the same day that EBCC filed its proposed order to show cause. Dkt. 110 at 1, 3 (Jan. 4, 2024). Among other measures, EBCC asked the Court to impose a "civil fine of $306,946.30, reflecting the proceeds Defendants received from their sales of EBCC's collateral without notice on October 13, 2023 and December 11, 2023." Id. at 10; see also id. at 2 (arguing that without providing advance notice to EBCC, Defendants received $50,000 for one tax lien certificate on October 13, 2023 and $256,946.30 for a bulk sale of certificates on December 11, 2023).

Defendants contested many of EBCC's arguments, including its claims that the Ebury Entities' legal fees and Mr. Hanratty's criminal defense fees were not "ordinary and necessary disbursements" or "business and living expenses." See Dkt. 155 at 8 (Jan. 18, 2024) (citing Blackmer v. Comm'r of Internal Revenue, 70 F.2d 255, 256 (2d Cir. 1934); Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913, 1997 WL 43119, at

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 188    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/22/2024

Court Records    Pg 30 of 438

*1–2 (S.D.N.Y. July 31, 1997)); <u>see also</u> <u>Blackmer</u>, 70 F.2d at 256 ("Expenses incurred in the defense of a criminal charge growing out the business of the taxpayer are 'ordinary' expenses"); <u>Sierra</u>, 1997 WL 43119, at *1–2 ("[T]he Court may order [a] corporation to advance litigation expenses, notwithstanding the corporation's allegations that the director or officer engaged in wrongdoing against the corporation."); Dkt. 119 at 19, 58 (Jan. 11, 2024) (EF 1 and EF 2 partnership agreements provide that the entities "shall, in the sole discretion of the General Partner [Mr. Hanratty], advance to any Indemnified Party reasonable attorneys' fees and other costs and expenses incurred in connection with the defense of any action or proceeding that arises out of" "any acts, omissions or alleged acts or omissions arising out of or in connection with the Partnership, this Agreement or any investment made or held by the Partnership [ . . . if] such acts, omissions or alleged acts or omission [ . . . ] are not found by a court of competent jurisdiction **upon entry of a final non-appealable judgment** to have been made in bad faith or to constitute fraud, willful misconduct, or gross negligence.") (emphasis added).

In doing so, Defendants emphasized that EBCC had never complained about the six figures that Defendants had paid the undersigned law firm during this Action, let alone the many other legal fees that Defendants had paid during the same time period. Dkt. 153 at 11 (Jan. 16, 2024). EBCC never claimed that Defendants' legal fees might not be "ordinary" or "necessary" "living" or "business" expenses until the Ebury Entities advanced Mr. Hanratty $75,000 to pay undersigned counsel's retainer fee for the Criminal Action. <u>Id.</u>

However, Defendants did not dispute that they had failed to comply with the Preliminary Injunction Order's requirement to provide EBCC with 24 hours' advance notice of transfers exceeding $50,000. See Dkt. 165 at 2 (Jan. 25, 2024) ("**Contempt Order**"). In making these concessions, Defendants emphasized—as EBCC, itself, had acknowledged, Dkt. 110 at 5—that Defendants affirmatively had made EBCC aware of their lapses, because Defendants have given EBCC open access to their Quickbooks accounts since approximately January 2022, i.e. at least eight months before EBCC initiated this Action. See Dkt. 115 at 4–5 (Jan. 11, 2024); see also Dkt. 24, Affidavit of John Hanratty ¶¶ 51–53 (Oct. 26, 2022) ("To facilitate the [settlement] process, in January 2022, [Defendants] gave EBCC full access to all of their financial and operational records. [ . . . ] However, the software's audit trails show[] that EBCC did not bother to view the Ebury Entities' (1) Quickbooks account between June 2022 and October 24, 2022; (2) Appfolio between March 2022 and October 24, 2022; (3) Speedboat since August 16, 2022; and (4) ZOHO between June 2022 and October 24, 2022.").

After a hearing, this Court held Mr. Hanratty "in civil contempt and impose[d] a civil fine of $306,946.30 for failure to comply with the terms and restrictions set forth in the court's preliminary injunction order and its preliminary conference order," and directed Mr. "Hanratty to "pay or cause to be paid $306,946.30 into the parties' joint escrow account by no later than February 7, 2024." See Contempt Order at 1–2. The Court denied, without prejudice, EBCC's motion to hold Mr. Hanratty in criminal contempt, granting EBCC "leave to renew if [it] learns of additional breaches

of the court's preliminary injunction order or preliminary conference order." Id. at 2. Attempting to comply with the Contempt Order, Mr. Hanratty has paid $120,000 into the Escrow Account. See Dkt. 175 (Feb. 7, 2024).

## II. Mr. Hanratty Does Not Have $186,946.30 to Pay the Rest of His Contempt Fine

On February 15, 2024, EBCC filed another order to show cause, now asking the Court to "adjudge Hanratty in contempt of the Contempt Order" because he has paid "only $120,000" into the Escrow Account. Mot. Br. at 2. EBCC moves, "as a punishment," for the Court to "impose a $50,000 per day civil fine as well as a term of imprisonment if Hanratty fails to pay the new fine within three days of the Court's order on this [M]otion." Id. at 2, 5. EBCC also asks that the Court "reject" Mr. Hanratty's "claims [of] financial hardship or [] inability to pay" unless he "submits a sworn affidavit and documentary evidence sufficient to substantiate the financial hardship or inability to pay." Id. at 5.

Since at least January 4, 2024—when EBCC filed its initial contempt motion and asked the Court to order all Defendants to escrow $306,946.30—neither the Ebury Entities nor Mr. Hanratty have had $306,946.30 of cash to pay into the Escrow Account. Affidavit of John Hanratty ¶ 5 (Feb. 22, 2024) ("**Hanratty Aff.**"). Partially in order to comply with the Court's order to show cause and Contempt Order, Mr. Hanratty has attempted to collect various payments that are due to the Ebury Entities and to him personally, including through counsel and litigation. Id. ¶ 160. The $120,000 that Mr. Hanratty paid into the Escrow Account is a result of those efforts. Id. ¶ 7.

For the past 15 months, Ebury Entities have conducted business pursuant to the Court's Preliminary Injunction Order which, underlined inter alia, prevents all Defendants from buying new assets or spending any money "aside from ordinary and necessary disbursements related to [D]efendants' tax lien or real estate businesses or living expenses" and requires Defendants to pay all proceeds into the Escrow Account, except "ordinary and necessary business disbursements." Hanratty Aff. ¶ 11–12 (citing Dkt. 47 at 9 (Nov. 29, 2022)). Accordingly, the Ebury Entities have not held on to any cash beyond that which has been necessary to run our business, including the significant legal expenses incurred in defending against this Action (and now, the related federal criminal and Securities and Enforcement Commission ("**SEC**") actions that EBCC appears to have instigated with those authorities) and the payroll expenses necessary to keep the Ebury Entities' few remaining employees working for the Entities and to benefit the Entities' creditors, including EBCC. Hanratty Aff. ¶ 12.

Mr. Hanratty, himself, has nowhere near the assets necessary to satisfy the Contempt Order's $186,946.30 balance. See generally id. Mr. Hanratty does not own a residence. Id. ¶ 19. He has one bank account, which is a joint account with his wife. Id. ¶ 26. The family owns three cars: a 2016 Ford Explorer and 2017 Toyota 4Runner in Puerto Rico, both of which were bought used in Puerto Rico, and a 2011 Jeep Wrangler, which has remained in the continental United States. Id. ¶ 16.

In the 17 months since EBCC initiated this Action, the Ebury Entities, which are Mr. Hanratty's primary business and income source, have paid Mr. Hanratty

11

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 34 of 438

$514,450 across 64 separate payments. Id. ¶ 41. EBCC did not complain about a single one of those payments until January 2024, when it flagged the Ebury Entities' December 20 transfer of $75,000 to Mr. Hanratty's personal account. See generally Dkt.; but see Dkt. 109 at 2 (Jan. 4, 2024) (raising $75,000 transfer but not asking for Court to order Mr. Hanratty to pay that money into the Escrow Account); Mot. Br. at 5 (asking for the "status of the more than $180,000 that John Hanratty has transferred to himself from Ebury company accounts since October 12, 2023"). The Ebury Entities have not paid Mr. Hanratty anything since their December 18 and 20, 2023 advancements of Mr. Hanratty's Puerto Rico and New York criminal counsel retainer fees. Id. ¶¶ 38–40.

Mr. Hanratty is married and his family's sole breadwinner. Id. ¶ 14. His wife manages the household and is a full-time caregiver for their three minor children, including one who is being treated for attention-deficit / hyperactivity disorder ("**ADHD**"). Id. Mrs. Hanratty has estimated the five-person family's monthly expenses to total about $25,000, including approximately $7,600 for the children's education, development, and healthcare; $14,000 on rent, gas, and utilities; $1,500 on groceries; and $1,000 on life insurance. Id. ¶ 25.

Mr. Hanratty has only one bank account, which he owns jointly with his wife, and which the family uses for its daily living expenses, including those detailed above. Id. ¶ 26. That bank account's balance rarely has exceeded the low five figures, and its January 2024 statement reflects total deposits of $28,410.032 and total withdrawals

of $29,246.85. Id. ¶ 28. As of approximately noon on February 21, 2024, that account's balance was $342. Id. ¶ 29.

Historically, the Hanratty family lived in Rye, New York, where they owned their home and the children attended local public schools. Id. ¶ 17. When the family moved to Puerto Rico for Mr. Hanratty's work, they sold the New York home and never bought another residence. Id. ¶¶ 18–21. While the family initially rented a city apartment, they moved to a gated community due to Covid-caused security concerns, where the family pays $11,000 per month to rent an approximately 2,000-square-foot home. Id. ¶¶ 22–23. Because the local public schools teach primarily in Spanish and suffer from severe problems—including frequent instances of no teachers even showing up to teach classrooms—the Hanrattys enrolled their children in parochial schools. Id. ¶ 24.

Finally, in both its original and this contempt Motion, EBCC has argued that the Ebury Entities' December 2023 $25,000 transfer to Martin Hanratty is improper because EBCC "does not believe that [he] is employed by any of the Defendants" and therefore "not business related." Dkt. 109 at 6–7; Mot. Br. at 5 ("Who is 'Martin Hanratty' and why did John Hanratty [sic] transfer $25,000 to him on December 14, 2023?"). Given its continuous access to the Ebury Entities' Quickbooks accounts, EBCC must have been aware that Ebury Fund 2 has made two payments to Martin Hanratty since 2022: $15,000 on September 2, 2022 and $25,000 on December 14, 2023. Hanratty Aff. ¶ 30.

Martin, who is Defendant Hanratty's uncle, loaned the Ebury Entities approximately $75,000 when the pandemic froze the Entities' cash flow. Id. ¶ 31. Throughout 2020, 2021, and early 2022, Martin remained liquid and did not ask for repayment. Id. ¶ 32. Since then, Martin had a stroke and was hospitalized, has lost his sight and use of his hands, and, in November 2023, moved into an assisted living facility. Id. ¶¶ 30–34. The Ebury Entities paid Martin $25,000 in December 2023 in partial repayment of his loan, because Martin now needed the cash to pay the care facility. Id. ¶ 35.

## LEGAL STANDARD

"It is well established that contempt is a drastic remedy which should not be granted absent a clear right to the relief." Usina Costa Pinto, S.A. v. Sanco Sav. Co. Ltd., 174 A.D.2d 487, 488 (1st Dep't 1991). Accordingly, the Court's contempt power "is discretionary and is to be exercised in the light of the facts and circumstances in each particular case." Matter of Storm, 28 A.D.2d 290, 292 (1st Dep't 1967). EBCC bears the burden of proving civil contempt "with reasonable certainty" and criminal contempt "beyond a reasonable doubt." Usina, 174 A.D.2d at 488.

To succeed on this Motion, EBCC must that Mr. Hanratty's allegedly-wrongful acts actually prejudiced EBCC. El-Dehdan v. El-Dehdan, 26 N.Y.3d 19, 29 (2015) (citing McCormick v. Axelrod, 59 N.Y.2d 574, 583 (1983)). Violative conduct, without more, cannot show civil contempt. Theroux v. Rescinow, 200 A.D.3d 481, 481 (1st Dep't 2021) (citations omitted) (holding that "Supreme Court providently exercised

14

its discretion in denying plaintiff's [contempt] motion" where he "failed to demonstrate that his rights were prejudiced").

EBCC must prove, by clear and convincing evidence, that Mr. Hanratty's failure to pay the complete Fine was willful: that he "ha[d] a consciousness that reflects an awareness of the act that is other than 'unwitting conduct.'" El-Dehdan, 26 N.Y.3d at 35 (quoting Bryan v. United States, 425 U.S. 184, 191 (1998)); see also Black's Law Dictionary 1834 (10th ed. 2014) (defining "willful" as "[v]oluntary and intentional").

However, when a respondent cannot afford to comply with a court order, his non-compliance is **per se** neither "willful [n]or contemptuous." Lake v. Schuner, 106 A.D.2d 893, 894 (4th Dep't 1984) (Respondent offered uncontroverted evidence that his 20-year-old farming business "had completely deteriorated and had gone through bankruptcy," he "owe[d] approximately 25 creditors nearly $300,000; "[h]is farm and equipment are fully encumbered and he has virtually no assets;" "Before respondent can be found in contempt of the support order, his ability to pay must be established.").

Regardless of whether a party moves for civil or criminal contempt, "[t]here is no reasonable justification" for a Court to issue a contempt order against a respondent who is unable "to comply with the court mandate." Storm, 28 A.D.2d at 294. "Such a rule [ . . . ] imposes needless hardship upon an unfortunate person, and involves a useless expense and waste of the time of the court." Id. (citation and quotation marks omitted).

## ARGUMENT

The Court should reject EBCC's attempt to use a civil contempt motion to further "punish" Mr. Hanratty for paying "only $120,000" of the $306,943.30 Contempt Fine. Compare Mot. Br. at 2 (arguing, "As a punishment, the Court should impose a $50,000 per day civil fine as well as a term of imprisonment if Hanratty fails to pay the new fine within three days") with Jones, 99 A.D.2d at 242 (quoting Vail v. Quinan, 406 F. Supp. 951, 960 (S.D.N.Y. 1976), rev'd on other grounds sub nom., 430 U.S. 327 (1977)) ("[S]erious doubt has been cast upon the constitutionality of the provisions of Judiciary Law § 774 insofar they permit sanctions in civil contempt proceedings that 'are neither remedial nor coercive, but punitive.'").

## I. Because Mr. Hanratty Does Not Have $186,946.30, the Court Should Deny EBCC's New Contempt Motion

New York courts cannot issue contempt orders against respondents who have "no assets of value and no way of complying fully with the [contempt] order." Weaver v. Weaver, 72 A.D.2d 221, 223 (4th Dep't 1980) (citing Joachim v. Joachim, 28 A.D.2d 290 (2d Dep't 1977); Storm, 28 A.D.2d at 290) (reversing and vacating contempt order against ex-husband who had defaulted on alimony and child support payments, observing that a respondent who cannot afford to pay court-ordered fees "should not be held in contempt of court and sent to jail"). Therefore, financial inability to fully comply with a court order is a "complete defense" to contempt. SEC v. Musella, 818 F. Supp. 600, 602 (S.D.N.Y. 1993) (citing Badgley v. Santacroce, 800 F.2d 33, 37 (2d Cir. 1986); Piambino v. Bestline Prods., Inc., 645 F. Supp. 2d 1210, 1214 (S.D. Fla. 1986)).

Moreover, what matters is whether Mr. Hanratty presently can comply with the Contempt Order—not whether at some point before the order issued, Mr. Hanratty may have had $306,943.30 available to pay a civil fine. <u>United States v. Rylander</u>, 460 U.S. 752, 757 (1983) ("In a civil contempt proceeding [ . . . ] a defendant may assert a **present** inability to comply [ . . . ] While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible.") (emphasis in original).

Accordingly, the Court of Appeals has observed that an insolvent contemnor met his burden of proof by showing he had no additional source of funds after accounting for his reasonable needs, payments made in accordance with the order at issue, and the fact that his investment account had been frozen pursuant to court order. <u>El-Dehdan</u>, 26 N.Y.3d at 36 (citing <u>Yeager v. Yeager</u>, 38 A.D.3d 534, 534–35 (2d Dep't 2007)). The Court of Appeals also approved of a case in which the Second Department reversed a contempt order where an ex-husband had testified to his attempts to secure higher-paying employment and making "consistent support payments, albeit in amounts below that which was ordered." <u>Id.</u> (citing <u>Kainth v. Kainth</u>, 36 A.D.3d 915, 916 (2d Dep't 2007)).

As in <u>Weaver</u>, <u>Yeager</u>, <u>Kainth</u>, and <u>Lake</u>, Mr. Hanratty has offered sufficient evidence to show that he simply cannot afford to comply with the Contempt Order. He does not own a home. Hanratty Aff. ¶ 21. With his wife, he owns three used cars: a Ford Explorer, Toyota 4Runner, and Jeep Wrangler. <u>Id.</u> ¶ 16. He has only one bank account, which contained just $342 yesterday. <u>Id.</u> ¶¶ 26–28. The Ebury Entities are

his primary business and income source, and, in compliance with the Court's Preliminary Injunction Order, have not paid him anything but "ordinary" and "necessary" "business" and "living" expenses. See Preliminary Injunction Order at 8–9; Hanratty Aff. ¶ 51 (Ebury Entities have paid Mr. Hanratty $514,450 since EBCC initiated this Action). Those payments were, in fact, ordinary and necessary: EBCC never once complained about the 63 transfers of $439,450 that the Ebury Entities made to Mr. Hanratty between September 2022 and December 18, 2023. See generally Dkt. Those transfers also are roughly in line with Mrs. Hanratty's own conservative estimates of the household's monthly expenditures. Id. ¶ 25.

Moreover, Mr. Hanratty has "in good faith employed the utmost diligence" in attempting to satisfy the Contempt Order. See NRDC v. Train, 510 F.2d 692, 713 (D.C. Cir. 1974) ("The sound discretion of an equity court does not embrace enforcement through contempt of a party's duty to comply with an order that calls him 'to do an impossibility.'"). He has attempted and is continuing to collect money due to him and the other Defendants, including the $120,000 that he paid into the Escrow Account on February 7, 2024. Hanratty Aff. ¶¶ 6–8.

Given Mr. Hanratty's near-complete dearth of funds and the Criminal Action's severe strain, it is no small feat that he has managed to scrounge up $120,000 to partially satisfy the Fine. Accord Kainth, 36 A.D.3d at 916 (where respondent had made partial payments pursuant to court order and could not afford to make more, "the finding that his violation of the order of support was willful was not supported

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 188    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/22/2024

Court Records    Pg 41 of 438

by the record."). Because Mr. Hanratty's failure to satisfy the Contempt Order is not willful, the Court should deny EBCC's Motion.

## II.    EBCC's Proposed Punishments are Nuts

Even if the Court finds that Mr. Hanratty could have and should have escrowed the remaining $186,946.30 by now, the proper consequence is not **more** or **additional** contempt orders: it is the already-existing fact that Mr. Hanratty is still in contempt because he has not purged past contempt. See Contempt Order at 3 ("[I]t is hereby ordered that [ . . . ] Hanratty will be purged of the contempt by providing proof of payment of the $306,943.30 into the parties' joint escrow account by February 7, 2024" and EBCC "may apply for further relief" if Mr. Hanratty "fails to comply with [that] paragraph").

To the extent that the Court is inclined to issue additional sanctions, EBCC's requested relief—$50,000 per day that Mr. Hanratty has not finished paying the Fine, plus imprisonment after three days—is just absurd. Cf. Gompers v. Buck's Stove & Range Co., 211 U.S. 418, 442 (1911) (civil contempt is "intended to be remedial by coercing the defendant to do what he had refused to do").

As a threshold matter, the Court should not take EBCC's imprisonment demand seriously. EBCC does not bother to cite a single case in which a New York court incarcerated a civil contempt respondent, let alone for failing to pay a six-figure fine on two to four weeks' notice. See generally Mot. Br. The Court should reject EBCC's flippant threat against Mr. Hanratty's freedom.

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM   INDEX NO. 158207/2022

NYSCEF DOC. NO. 168   24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 02/22/2024

Court Records     Pg 42 of 438

EBCC's $50K-a-day demand is just as unserious. See Mot. Br. at 4 (citing Pac. Alliance Asia Opp. Fund L.P. v. Wan, 199 A.D.3d 423, 423 (1st Dep't 2021)). As EBCC explains, in Wan,

> [T]he First Department unanimously affirmed "a fine of $500,000 for every day [ . . . ] a $27 million yacht remain[ed] outside the court's jurisdiction, in violation of prior orders." The First Department approved the large daily fine as "intended to strongly encourage defendant to purge himself of the contempt, which, despite being permitted two months to accomplish, he has shown no interest in doing."

Mot. Br. at 4 (quoting Wan, 199 A.D.3d at 423).

Wan arose out of a four-plus year dispute in which an investment fund issued a $30 million loan one of the respondent's many business entities; the respondent executed a personal guarantee of that loan; and, upon various defaults and other events, that loan was rolled over and over and assumed by other entities owned by the respondent, who kept executing personal guarantees. See Pac. Alliance Asia Opp. Fund L.P. v. Wan, No. 652077/2017, 2018 WL 3201908, at *1 (N.Y. Sup. Ct. June 28, 2018) (Ostrager, J.). By the time the investment fund filed suit, the loan had ballooned to approximately $88 million.[2] Id.

Perhaps most important here, the Wan respondent was "purportedly worth upwards of $17 **billion**," "currently residing in a luxury apartment" that one of his entities owned"—and, of course, the order with which he had failed to comply was not

---

[2] While the court did not reach this issue, it is possible that the plaintiff named this number for its auspicious nature instead of aiming for its most precise possible damages estimate.

20

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 43 of 438

even to sell or otherwise dispose of his $27 million yacht, but just to move it into U.S. waters. Id.; Wan, 199 A.D.3d at 423.

This case is nothing like Wan. EBCC has never attempted to claim that Mr. Hanratty has assets approaching anywhere near $17 billion—its Motion's attempts to quantify Mr. Hanratty's assets begin and end with its argument that "the **Ebury Entities** h[e]ld assets of approximately $28.1 million" in September 2022. Mot. Br. at 4 (citing Dkt. 24 ¶¶ 41, 44). Mr. Hanratty was not given two months to move his $27 million yacht into American waters; he was given two to four weeks to find and pay $306,946.30 into the Escrow Account. And while the "$17 billion" Wan respondent "show[ed] no interest" in moving his yacht, Mr. Hanratty found and paid $120,000—nearly five times his family's monthly expenses—to pay into the Escrow Account by February 7, 2024.

At the end of the day, all Defendants—including Mr. Hanratty—have appeared in and attempted to fully litigate this case, appearing for all hearings, filing all papers, and incurring legal fees so reasonable that EBCC had never once complained about them until the December 20, 2023 $75,000 criminal retainer fee. Mr. Hanratty now faces federal charges instigated and facilitated by EBCC, which caused him to seek—and this Court to order—a stay. Yet he still is spending the considerable time and energy to respond to the few issues that EBCC can still raise, notwithstanding the stay, and notwithstanding the considerable strain and stress of the Criminal Action.

21

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 44 of 438

## CONCLUSION

"Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." <u>Rylander</u>, 460 U.S. at 757. Moreover, EBCC fails to provide any law or logic explaining how incarceration or a $50,000 daily fine could get blood from Mr. Hanratty's stone.

Because he has made good-faith efforts to comply with a Contempt Order that he cannot afford to pay, Mr. Hanratty respectfully requests that the Court deny EBCC's Motion to hold him in contempt for paying "only $120,000" of the Fine.


Dated: February 22, 2024
     New York, New York

               Respectfully submitted,

               **GUSRAE KAPLAN NUSBAUM PLLC**

               /s/ Kari Parks
               Kari Parks
               120 Wall Street, 25th Floor
               New York, New York 10005
               (212) 269-1400
               kparks@gusraekaplan.com

               **Counsel for Defendants**

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with Commercial Division Rule 17, 22 NYCRR § 202.70(g), because it contains 4,732 words, as calculated by Microsoft Word's Word Count function.


Dated: February 22, 2024
    New York, New York

                /s/ Kari Parks
                Kari Parks

FILED: NEW YORK COUNTY CLERK 02/22/2024 09:21 PM
NYSCEF DOC. NO. 189

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/22/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 46 of 438

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

---

EMIGRANT BUSINESS CREDIT
CORPORATION,

                Plaintiff,

      v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY
FUND 1, LP, EBURY FUND 2, LP,
EBURY 1EMI LLC, EBURY 2EMI
LLC, EB 1EMIALA LLC, EB 2EMIALA
LLC, EB 1 EMIFL, LLC, EB 2EMIFL,
LLC, EB 1EMIIN, LLC, EB 2EMIIN,
LLC, EB 1EMIMD, LLC, EB 2EMIMD,
LLC, EB 1EMINJ, LLC, EB 1EMINJ,
LLC, EB 1EMINY, LLC, EB 2MINY,
LLC, EB 1EMISC, LLC, EB 2EMISC,
LLC, RE 1EMI LLC, RE 2EMI LLC, EB
1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND),
LLC, EBURY FUND 1FL, LLC,
EBURY FUND 2FL, LLC, EBURY
FUND 2NJ, LLC, RED CLOVER 1,
LLC, EBURY RE LLC, and XYZ
CORPS. 1–10,

                Defendants.

Index No. 158207/2022

The Honorable Margaret A. Chan

Mot. Seq. 10

**DEFENDANT JOHN HANRATTY'S
AFFIDAVIT IN OPPOSITION TO
MOTION TO ENFORCE
CONTEMPT ORDER**

---

COMMONWEALTH OF PUERTO RICO    )
                                    ) ss.:

MUNICIPALITY OF SAN JUAN         )

*Aff. No. 927*

John Hanratty, being duly sworn, deposes and says under the penalties of

perjury:

1.     I am a defendant in the above-captioned case and the founder and managing partner of the "**Ebury Entities**," which are the entity defendants in the above-captioned action.

2.     I understand that on January 10, 2024, the Court entered an order to show cause proposed by Plaintiff Emigrant Business Credit Corp. ("**EBCC**"), which ordered all Defendants to pay $306,946.30 into the Escrow Account while EBCC's original contempt motion was pending. See Dkt. 113 (Jan. 10, 2024) (the "**OSC**").

3.     I understand that on January 25, 2024, the Court entered a decision and order finding me in civil contempt, imposing a "**Fine**" of $306,946.30, and ordering me to deposit that Fine into the Parties' joint "**Escrow Account**" by February 7, 2024 to purge my contempt. See Dkt. 165 (Jan. 25, 2024) (the "**Contempt Order**").

4.     Because I cannot afford to pay the Fine, I submit this affidavit in opposition to EBCC's "**Motion**" to enforce contempt order.

5.     Unfortunately, at all times during the pendency of the OSC and current contempt Motion, neither the Ebury Entities nor I—jointly or severally—have had the liquidity to pay $306,946.30 into the Escrow Account.

6.     Partially in order to comply with the OSC and the Contempt Order, I have attempted to collect various payments that are due to the Ebury Entities and to me, including through counsel and litigation.

7.     As a result of those efforts, I was able to recover $120,000 from a third party, which I paid into the Escrow Account on February 7, 2024.

2

8.    I have not been able to obtain additional cash that I could use to pay the remaining $186,946.30, let alone the $50,000 daily fine that EBCC requests in its current Motion.

9.    The Ebury Entities are my primary business and source of income.

10.    However, as Defendants have repeatedly discussed in their briefing in this Action, the Ebury Entities have had significant liquidity problems since the onset of the Covid-19 pandemic, which have been exacerbated by the financial cost and business distraction of defending against EBCC in this Action.

11.    Since October 2022, the Ebury Entities have conducted business under the Court's preliminary injunction which, among other terms, prohibits Defendants from purchasing new assets and spending any money "aside from ordinary and necessary disbursements related to [D]efendants' tax lien or real estate businesses or living expenses," and requires Defendants to pay all proceeds into the Escrow Account, except "ordinary and necessary business disbursements." Dkt. 47 at 9 (Nov. 29, 2022).

12.    Accordingly, the Ebury Entities have not held on to any cash beyond that which has been necessary to run our business, including the significant legal expenses incurred in defending against this Action (and now, the related federal criminal and Securities and Enforcement Commission ("**SEC**") actions that EBCC appears to have instigated with those authorities) and the payroll expenses necessary to keep the Ebury Entities' few remaining employees working for the Entities and to benefit the Entities' creditors, including EBCC.

13.    I, myself, have nowhere near the assets, let alone the liquidity, to satisfy the Fine.

14.    I am married and the sole breadwinner for my family: my wife, who is a full-time caregiver; my three minor children, including one who is being treated for attention-deficit / hyperactivity disorder; and myself.

15.    Both before and during this Action, my family has maintained a comfortable, but not lavish, lifestyle.

16.    My family owns three cars: a 2016 Ford Explorer and 2017 Toyota 4Runner, both of which we bought used and are our primary transportation in Puerto Rico; and 2011 Jeep Wrangler, which has remained in the continental United States.

17.    Historically, my family and I lived in Rye, New York, where we owned our home and my children attended local public schools.

18.    In approximately 2018, my family and I moved to San Juan, Puerto Rico to pursue a business opportunity that ended in summer 2019.[1]

19.    While moving to Puerto Rico decreased our cost of living in some ways, it increased the cost in others.

20.    When we moved to Puerto Rico, we sold our family home in New York.

---

[1] That potential business ended in summer 2019, after I learned that the person with whom I had been working, Thomas R. McOsker, had been stealing from the Ebury Entities. I first sued Mr. McOsker and his related entities in summer 2019; two ensuing litigations are still pending, though the federal case in Delaware has been stayed on consent, due to the ongoing federal criminal matter against me that also caused this Court to stay this Action.

4

21.    Since then, we have not bought another home.

22.    My family initially rented an apartment in San Juan.

23.    When the pandemic caused heightened security concerns, we moved to a gated community, where we pay $11,000 per month to rent our approximately 2000-square-foot home.

24.    Moving to Puerto Rico also caused us to put our children into parochial schools, because our local public schools teach primarily in Spanish and suffer from severe problems, including frequent teacher failures to come to school at all.

25.    My wife has estimated that our five-person family spends approximately $25,000 per month, including approximately $7,600 on the children's education, development, and healthcare; $14,000 on rent, gas, and utilities; $1,500 on groceries; and $1,000 on life insurance.

26.    I only have one bank account, which I share with my wife, and which our family uses for its daily living expenses, including rent, groceries, transportation, healthcare, and the children's education.

27.    That bank account's balance rarely, if ever, has exceeded the low five figures.

28.    For example, that account's January 12–February 9, 2024 statement reflects total deposits of $28,410.03 and total withdrawals of $29,246.85. See Exhibit A.

29.    As of approximately noon on February 21, 2024, that account's balance was $342.

5

30.     I have caused the Ebury Entities to make two payments to Martin

Hanratty: $15,000 on September 2, 2022 and $25,000 on December 14, 2023.

31.     Martin is my uncle and loaned the Ebury Entities approximately

$75,000 during Covid to give the Ebury Entities operational money when the

pandemic froze the Ebury Entities' cash flow.

32.     After loaning that money, Martin had remained liquid and had not

asked for repayment.

33.     But in 2022, Martin had a stroke and was hospitalized.

34.     Martin no longer has his eyesight or use of his hands and moved into

an assisted living facility in approximately November 2023.

35.     I caused the Ebury Entities to pay Martin $25,000 in December 2023

so he could pay the assisted living facility.

36.     I understand that EBCC has argued that the Ebury Entities' payment

to Martin has something to do with the federal criminal charges against me.

37.     However, I was unaware of those charges until December 18, 2023,

when federal agents came to my home and arrested me before daylight.

38.     Finally, I caused the Ebury Entities to pay me $15,000 on December

18, 2023 and $75,000 on December 20, 2023.

39.     Both of those transfers were in relation to the federal criminal action

that EBCC instigated: $15,000 to a Puerto Rico criminal lawyer whom my family

found and I retained the morning of my arrest, who represented me at my initial

arraignment and bond hearing, and $75,000 to Gusrae Kaplan Nusbaum PLLC,

which has represented Defendants in this Action; various Ebury parties, including

me, in the Delaware federal litigation against Mr. McOsker; and is representing me

in the related Criminal Action and SEC investigation.

40.    I believe those transfers to have been proper and authorized under

Delaware corporate law and the Ebury Fund 1, LP and Ebury Fund 2, LP

partnership agreements, which allow advancement of "reasonable attorneys' fees

and other costs and expenses incurred with the defense of any action or proceeding

arising out of" my work with the Ebury Entities.

41.    Since EBCC filed this Action, the Ebury Entities have made 64

payments to me, totaling $514,450.

42.    The Ebury Entities have not paid any money to me since December 20,

2023.


Sworn to before me this 22nd day of February, 2024.



Notary Public

John Hanratty

## CERTIFICATE OF COMPLIANCE

I certify that this affidavit complies with the word count limit of N.Y.C.R.R. 202.8-b for documents prepared via computer. Mr. Hanratty's affidavit contains 1,273 words.

Dated:   February 22, 2024
         New York, New York

/s/ Kari Parks _____
Kari Parks

8

**WARNING:**

**YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT**

**NOTICE:**

**THE PURPOSE OF THE HEARING UPON THE FOLLOWING APPLICATION IS TO PUNISH THE ACCUSED FOR A CONTEMPT OF COURT, AND THAT SUCH PUNISHMENT MAY CONSIST OF FINE OR IMPRISONMENT, OR BOTH, ACCORDING TO LAW**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

———————————————————————— x

EMIGRANT BUSINESS CREDIT
CORPORATION,

        Plaintiff,

      v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB
2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND
2FL, LLC, EBURY FUND 1NJ, LLC,
EBURY FUND 2NJ, LLC, RED CLOVER 1,
LLC, EBURY RE LLC, and XYZ
CORPS. 1-10,

        Defendants.

———————————————————————— x

Index No. 158207/2022

(Hon. Margaret Chan)

**MOTION SEQUENCE NO. ___**

**NOTICE OF EBCC'S MOTION TO MODIFY THE PRELIMINARY INJUNCTION (DKT. 47) AND FOR CIVIL CONTEMPT**

**PLEASE TAKE NOTICE** that, upon the annexed Memorandum of Law; the Affirmation of Alexander J. Willscher, dated February 29, 2024, and the exhibits annexed thereto; and all other pleadings and papers filed herein, Plaintiff Emigrant Business Credit Corporation ("**EBCC**") will move this Court at the Motions Submissions Part, Room 130, at the Courthouse located at 60 Centre Street, New York, New York 10007, on March 18, 2024, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an order pursuant to Judiciary Law §§ 753 and 773 adjudging Defendants in **CIVIL CONTEMPT** of Court for violating the Preliminary Injunction Order (Dkt. 47) and imposing upon them a civil fine of $159,381.57, plus attorneys' fees and expenses; ordering Defendants to submit evidence of the value of Hanratty's personal assets and liabilities, as well as the assets and liabilities of the Ebury Entities, as well as twenty-four months of bank statements from the bank account referenced in the Hanratty Affidavit (Dkt. 189); modifying the Preliminary Injunction Order to enjoin and restrain Defendants from transferring, mortgaging, selling, converting, concealing, dissipating, disbursing, spending, withdrawing, disposing of, assigning, or permitting the transfer of any of the Ebury Entities' assets or any proceeds thereof, to any person, corporation, or entity other than EBCC, without EBCC's consent; adjudging Defendants' counsel in **CIVIL CONTEMPT** of Court and imposing upon them a fine of $49,999, in satisfaction of the civil fine imposed in the Contempt Order (Dkt. 165) and/or the Court's order on this motion; and granting EBCC its costs and disbursements, including attorneys' fees, and such other and further relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR 2214(b), any answering papers or cross-motions are required to be served upon the undersigned at least seven days before the date set forth above for the submission of this motion.

Dated:   February 29, 2024
        New York, New York

Respectfully submitted,

*/s/ Alexander J. Willscher*

Alexander J. Willscher
Austin P. Mayron
Erin Savoie
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Plaintiff Emigrant Business
Credit Corporation*

-2-

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 191
24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
RECEIVED NYSCEF: 02/29/2024
Court Records    Pg 57 of 438

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---------------------------------------------------------- x

EMIGRANT BUSINESS CREDIT
CORPORATION,

                Plaintiff,

      v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB
2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND
2FL, LLC, EBURY FUND 1NJ, LLC,
EBURY FUND 2NJ, LLC, RED CLOVER 1,
LLC, EBURY RE LLC, and XYZ
CORPS. 1-10,

             Defendants.

---------------------------------------------------------- x

Index No. 158207/2022

(Hon. Margaret Chan)

**MOTION SEQUENCE NO. __**

**MEMORANDUM OF LAW IN
SUPPORT OF EBCC'S MOTION
TO MODIFY THE PRELIMINARY
INJUNCTION (DKT. 47) AND FOR
CIVIL CONTEMPT**

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 191
RECEIVED NYSCEF: 02/29/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 58 of 438

# TABLE OF CONTENTS

*Page*

**INTRODUCTION**...................................................................................................1

**BACKGROUND** ....................................................................................................5

**LEGAL STANDARDS** .........................................................................................8

**ARGUMENT** ......................................................................................................10

    A.    The Court Should Adjudge Hanratty in Civil Contempt Again. ...........................10

    B.    The Court Should Modify the Preliminary Injunction...........................................12

    C.    The Court Also Should Adjudge Defendants' Counsel in Civil Contempt. ..........14

**CONCLUSION** ...................................................................................................16

-i-

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 59 of 438

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

CASES

*Bd. of Directors of Windsor Owners Corp.* v. *Platt*,
    148 A.D.3d 645 (1st Dep't 2017) ................................................................9

*Bd. of Trs. of Town of Huntington* v. *W. Wilton Wood, Inc.*,
    97 A.D.2d 781 (2d Dep't 1983) ................................................................8

*Callazzo* v. *Assini*,
    2022 WL 17899024 (Sup. Ct. N.Y. Cnty. Dec. 20, 2022) ......................11

*Doe* v. *Axelrod*,
    73 N.Y.2d 748 (1988) ................................................................8

*El-Dehdan* v. *El-Dehdan*,
    26 N.Y.3d 19 (2015) ....................................................1, 9, 10, 12

*Felix* v. *Brand Serv. Grp. LLC*,
    101 A.D.3d 1724 (1st Dep't 2012) ................................................14

*Ficus Invs., Inc.* v. *Priv. Cap. Mgmt., L.L.C.*,
    66 A.D.3d 557 (1st Dep't 2009) ................................................11

*Gottlieb* v. *Gottlieb*,
    137 A.D.3d 614 (1st Dep't 2016) ................................................12

*Groth* v. *Ferrante*,
    221 A.D.3d 664 (2d Dep't 2023) ................................................14

*Honeywell Int'l, Inc.* v. *R. Freedman & Son, Inc.*,
    307 A.D.2d 518 (3d Dep't 2003) ................................................9

*Kalish* v. *Lindsay*,
    47 A.D.3d 889 (2d Dep't 2008) ........................................4, 10, 15

*Kassab* v. *Kasab*,
    137 A.D.3d 1141 (2d Dep't 2016) ..............................................11

*L & R Expl. Venture* v. *Grynberg*,
    31 Misc. 3d 1219(A) (Sup. Ct. N.Y. Cnty. 2011) ..........................9, 12

*Martin* v. *Donghia Assocs., Inc.*,
    73 A.D.2d 898 (1st Dep't 1980) ................................................9

-ii-

*McCormick* v. *Axelrod,*
   59 N.Y.2d 574 (1983) ...........................................................................9, 15

*N.Y.S. Lab. Rels. Bd.* v. *George B. Wheeler, Inc.,*
   177 Misc. 945 (Sup. Ct. Kings Cnty. 1941)............................................10

*Orange Cnty.-Poughkeepsie Ltd. P'ship* v. *Bonte,*
   37 A.D.3d 684 (2d Dep't 2007) ...............................................................9

*Philip Morris USA, Inc.* v. *Otamedia Ltd.,*
   331 F. Supp. 2d 228 (S.D.N.Y. 2004)......................................................9

*R & J Bottling Co.* v. *Rosenthal,*
   40 A.D.2d 911 (3d Dep't 1972) ...............................................................9

*Richardson* v. *Gray,*
   272 A.D.2d 142 (1st Dep't 2000) ...........................................................11

*Richardson* v. *Gray,*
   284 A.D.2d 198 (1st Dep't 2001) ...........................................................11

*Ruiz* v. *Meloney,*
   26 A.D.3d 485 (2d Dep't 2006) ...............................................................8

*Tucker* v. *Toia,*
   54 A.D.2d 322 (4th Dep't 1976)...............................................................8

*Vastwin Invs., Ltd.* v. *Aquarius Media Corp.,*
   295 A.D.2d 216 (1st Dep't 2002) ......................................................10, 15

*White Oak Com. Finance, LLC* v. *EIA Inc.,*
   2023 WL 4149527 (Sup. Ct. N.Y. Cnty. June 23, 2023)........................14

*In re Wimbledon Fin. Master Fund, Ltd.* v. *Bergstein,*
   173 A.D.3d 401 (1st Dep't 2019) ...........................................................15

**STATUTES**

Judiciary Law § 753 ....................................................................................9

Judiciary Law § 773 ................................................................................9, 11

## INTRODUCTION

On October 26, 2022, Defendant John Arthur Hanratty ("**Hanratty**") affirmed that "the Ebury Entities hold assets of approximately $28.1 million," and were on track to earn over $9 million in annual revenues in 2022, "leaving the Ebury Entities in their best cash position since the Pandemic began." (<u>Dkt. 24</u> ¶¶ 41-44.) He further represented that, although "the Pandemic froze the Ebury Entities," Ebury's fortunes had turned and, by October 2022, "the Ebury Entities have gotten back on track." (<u>Id.</u> ¶ 41.)

Now—18 months later, and called to account for his willful disregard of the Court's January 25, 2024 Contempt Order—Hanratty insists that the Ebury Entities "have had significant liquidity problems since the onset of the Covid-19 pandemic" nearly four years ago, and thus never really got "back on track." (<u>Dkt. 189</u> ¶ 10.) In his most recent affidavit, Hanratty pleads insolvency, on behalf of himself and his corporate co-defendants: "[A]t all times" since early January 2024, "neither the Ebury Entities nor I—jointly or severally—have had the liquidity to pay $306,946.30 into the Escrow Account," as required by the Court's Contempt Order. (<u>Id.</u> ¶ 5.) Indeed, Hanratty claims he has access to only $342 in cash, despite paying $11,000 each month in rent to live in a gated residential community (among other expenses). (<u>Id.</u> ¶¶ 23, 29.)

An "undocumented assertion of the inability to pay without any evidentiary support, will not suffice to provide the defense of a financial inability to pay." <u>El-Dehdan</u> v. <u>El-Dehdan</u>, 26 N.Y.3d 19, 36 (2015). To the contrary, "courts . . . require[] a more specific showing of the contemnor's economic status." <u>Id</u>. Hanratty's latest affidavit fails to establish his inability to pay. In particular, it fails to address "the value of his personal assets and liabilities, as well as the assets and liabilities of the Ebury Companies," which Plaintiff Emigrant Business Credit Corporation ("**EBCC**") specifically requested that he address in an affidavit. (<u>Dkt. 187</u> at 4.)

Instead, Hanratty has provided an incomplete and unsubstantiated depiction of his finances.  *First*, Hanratty represented in his affidavit that he had attached a month's worth of supporting bank records.  (Dkt. 189 ¶ 28.)  That exhibit, however, was not attached to the affidavit that Defendants filed, and Defendants' counsel has not responded to EBCC's request to rectify that error by providing a copy of the purported exhibit.  (Willscher Affirm. ¶ 16.)  *Second*, Hanratty's affidavit fails to address whether he owns or controls any other assets, including real estate, stocks and bonds.  The evidence suggests he may.  Indeed, on January 11, 2024, his counsel represented to the court his criminal case that Hanratty intended to post a $400,000 bond in order to secure his release on bail, by using "equities in properties."  (*See* Ex. F to Willscher Affirm.).  Hanratty's affidavit in this lawsuit, however, makes no mention of his ownership of the assets that he intends to use to satisfy that bond.  *Third*, Hanratty's affidavit does not dispel EBCC's legitimate concerns that Hanratty has taken steps since this litigation began to hide his personal assets (such as by transferring them to his family members).  For example, while Hanratty claims that he has paid $35,000 to his uncle, Martin Hanratty to repay a loan (Dkt. 189 ¶¶ 30-31), he provides no evidence to support the existence of such a loan.  *Fourth*, the affidavit does not explain what Hanratty did with the $180,750 in proceeds from his unauthorized sales of EBCC's collateral that he has transferred to himself from the Ebury Entities' corporate accounts since October 2023, other than to suggest that most of it went to fund his living expenses or legal fees.

While Hanratty and his corporate co-defendants have not met their burden to substantiate their insolvency claims, it would not be a surprise, if—contrary to Hanratty's representations to the Court on October 26, 2022—Defendants are facing financial difficulties. That is consistent with EBCC's allegations that Defendants ran a Ponzi-like scheme and used advances from EBCC to pay distributions to earlier disgruntled investors and to enrich Hanratty.

-2-

Indeed, at his deposition, Hanratty admitted that "during the same time period [he] paid investors approximately $20 million, [he] borrowed more than $10 million from Emigrant." (Dkt. 123 at 405:2-7.) Further, Hanratty admits to having transferred $514,450 to himself since this litigation began on September 25, 2022 (Dkt. 189 ¶ 41), apparently to pay his "household's monthly expenditures." (Dkt. 188 at 18 ("Those transfers also are roughly in line with Mrs. Hanratty's own conservative estimates of the household's monthly expenditures.").) Extrapolating back to 2019—and given Hanratty's admission that "[t]he Ebury Entities are [his] primary business and source of income" (Dkt. 189 ¶ 9)—that would suggest that Hanratty personally has received at least $1.5 million in ill-gotten gains from his fraudulent scheme since 2019.

The financial reporting that Defendants have provided—while insufficient to prove Defendants' insolvency or excuse Hanratty's willful noncompliance of the Contempt Order—clearly establishes that Defendants are continuing, even now, to liquidate EBCC's collateral and commit new violations of the Preliminary Injunction Order. To wit, on January 25, 2024, the Court adjudged Hanratty guilty of civil contempt for liquidating EBCC's collateral and dissipating the proceeds without providing advance notice to EBCC or depositing the proceeds into the joint escrow account, as required by the Preliminary Injunction Order. (See Dkt. 165 at 2-3.) Undeterred, Hanratty committed the exact same violations again less than a week later. On January 29, Hanratty sold another $439,110.01 worth of EBCC's collateral at a 75% discount (for only $109,777.50), without providing any notice to EBCC. (See Willscher Affirm. ¶¶ 4-8.) Then, on January 31, Hanratty sold EBCC's real estate collateral for $55,000 (netting $49,604.07 after closing costs), again without any notice to EBCC. (See id. ¶¶ 9-10.) Hanratty's brazen defiance of the Preliminary Injunction Order—mere days after being found guilty of contempt for the exact same misconduct—evidences a complete disregard for the Court and its authority.

Moreover, on January 31, Defendants made a $49,999 payment to their counsel, Gusrae Kaplan Nusbaum LLP. (*Id.* ¶¶ 11-13.) That amount is immediately suspect: had Defendants transferred just $1 more, they would have been required to provide advance notice to EBCC under the Preliminary Injunction Order, which would have prompted EBCC to inquire into the source of the funds and potentially to discover the unauthorized sales on January 29 and 31. (*See* Dkt. 47.) Defendants' counsel undoubtedly is aware that these transfers represent the proceeds of unauthorized sales of EBCC's collateral in violation of the Preliminary Injunction Order (as well as the Credit Agreements), and that Hanratty is using these payments to dissipate his assets and diminish EBCC's eventual recovery. Accordingly, on February 16, EBCC wrote to Defendants' counsel to request that they deposit the $49,999 into the Court-ordered escrow account. Defendants' counsel refused. (*See id.*) It is well-established that "[a]n attorney who assists his or her client in perpetrating a civil contempt is likewise guilty of contempt," *Kalish* v. *Lindsay*, 47 A.D.3d 889, 891 (2d Dep't 2008). Defendants' counsel has crossed the line into participation in Hanratty's improper dissipation of EBCC's collateral by accepting and refusing to return the $49,999 payment, which itself appears to have been designed specifically to evade the notice requirements of the Preliminary Injunction Order, to conceal the unauthorized sales on January 29 and January 31, and to skirt the directives of the Contempt Order.

EBCC is a secured creditor and Hanratty should not be permitted to continue dissipating EBCC's collateral to pay his living expenses and legal fees. If Defendants prove that they are truly insolvent and cannot satisfy the Contempt Order, then the appropriate remedy is not to excuse Hanratty's contempt of the Court's order. Rather, the proper remedy is for the Court to modify the Preliminary Injunction Order to preclude Defendants from any further liquidation of EBCC's collateral. EBCC thus respectfully requests that the Court:

a.  adjudge Defendants guilty of civil contempt for violating the Preliminary Injunction Order again and impose upon them a civil fine of $159,381.57 (representing the proceeds from Defendants' separate violations of the Preliminary Injunction order through the unauthorized sales of EBCC's collateral on January 29 and January 31, 2024), plus attorneys' fees and expenses;

b.  order Defendants to submit evidence of the value of Hanratty's personal assets and liabilities, as well as the assets and liabilities of the Ebury Entities, as well as twenty-four months of bank statements from the bank account referenced in the Hanratty Affidavit;

c.  modify the Preliminary Injunction Order to enjoin and restrain Defendants from transferring, mortgaging, selling, converting, concealing, dissipating, disbursing, spending, withdrawing, disposing of, assigning, or permitting the transfer of any of the Ebury Entities' assets or any proceeds thereof, to any person, corporation, or entity other than EBCC, without EBCC's consent;

d.  adjudge Defendants' counsel in contempt for assisting Hanratty in dissipating EBCC's collateral and order them to deposit $49,999 into the joint escrow account, in satisfaction of the civil fine imposed in the Contempt Order and/or the Court's order on this motion; and

e.  grant Plaintiff its costs and disbursements, including attorneys' fees, and such other and further relief as the Court deems just and proper.

## **BACKGROUND**

In October 2022, EBCC moved for a preliminary injunction to restrict Defendants' ability to transfer assets outside the ordinary course of business, or in violation of the Credit Agreements, and to require that Defendants provide advance notice at least twenty-four hours before transferring "assets in an amount exceeding $50,000." (Dkt. 2 at 3-4.) At the time, EBCC argued that it faced irreparable harm because Defendants were dissipating EBCC's collateral and were insolvent. (Dkt. 4 at 12-14.) Defendants strenuously disputed that they were insolvent, submitting testimony that "the Ebury Entities hold assets of approximately $28.1 million" and had average monthly revenues of $753,096. (Dkt. 24 ¶¶ 41-44.) Ultimately, the Court granted EBCC's motion, finding that EBCC had "presented a prima facie case supporting the likelihood

-5-

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
NYSCEF DOC. NO. 191

INDEX NO. 158207/2022
RECEIVED NYSCEF: 02/29/2024

24-04020-dsj     Doc 1-3     Filed 08/14/24     Entered 08/14/24 09:45:23     Doc #4 State
Court Records     Pg 66 of 438

of success on the merits" of its breach of contract claims, EBCC faced irreparable harm as "a secured creditor whose collateral risks further dissipation by insolvent defendants," and "the balance of equities favors [EBCC]." (Dkt. 47 at 5-7.) The Court entered the Preliminary Injunction Order which required, among other things, that Defendants provide EBCC with notice "at least twenty-four (24) hours [before] transferring, mortgaging, selling, converting, concealing, dissipating, disbursing, spending, withdrawing, disposing of, assigning, or permitting the transfer of any of their assets in an amount exceeding $50,000." (*Id.* at 8-9.)[*]

In late 2023, Defendants repeatedly violated the Preliminary Injunction Order, including by making a bulk sale of over $1.1 million worth of EBCC's tax lien collateral for only $256,946.30. (Dkt. 98 at ¶ 5.) In January 2024, EBCC moved the Court to adjudge Defendants in contempt for their repeated violations of the Court's orders and submitted evidence showing that Hanratty had used the proceeds of the unauthorized sales to transfer $180,750 to himself. (Dkt. 97.) At the January 24 contempt hearing, Defendants did not contest that the bulk sale was a violation of the Preliminary Injunction Order, even though "breaking apart [the bulk sale] for several transactions underlying it, some of those transactions "had book or sale values below the reporting threshold." (*See* Ex. G to Willscher Affirm. at 10:3-12.) On January 25, the Court adjudged Hanratty guilty of civil contempt and ordered him to pay a civil fine of $306,946.30 (representing the proceeds of the unauthorized bulk sale along with the proceeds of another unauthorized sale). (Dkt. 165 at 3.) Hanratty failed to pay the civil fine by the Court-imposed deadline of February 7. Instead, he deposited into escrow only $120,000.

---

[*] On December 28, 2022, Defendants filed a notice of appeal challenging the Preliminary Injunction Order. (*See* Dkt. 56.) Defendants chose not to perfect their appeal and have acquiesced to the Preliminary Injunction Order's restrictions.

-6-

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
NYSCEF DOC. NO. 191

INDEX NO. 158207/2022
RECEIVED NYSCEF: 02/29/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 67 of 438

Just three days after the Court found Hanratty in contempt for selling off EBCC's collateral without providing notice or escrowing the proceeds, he conducted *another* bulk sale of $439,110.01 worth of EBCC's collateral at a 75% discount, without providing notice or escrowing the proceeds. EBCC did not discover these new violations until late on February 15, when Defendants provided their monthly financial reporting for January pursuant to the Preliminary Conference Order. Defendants took numerous steps to conceal these violations until *after* EBCC filed its motion to enforce the Contempt Order earlier that day. (Dkt. 186.) *First*, around January 10, Defendants stopped reporting transactions to their QuickBooks software. (*See* Willscher Affirm. ¶¶ 14-15.). *Second*, on February 7, Defendant's counsel wrote to the Court that: "Mr. Hanratty has struggled to find the funds necessary to satisfy the [Contempt] Order," without disclosing that Hanratty was engaging in new, further violations of the Preliminary Injunction Order to pay the Court-ordered fine. (*See* Dkt. 174.) Worse, Defendant's counsel affirmatively represented that Hanratty was "collect[ing] amounts due to him from various third parties to satisfy the fine" (*id.*), when in reality, he was selling EBCC's collateral at bargain bin prices. (*See* Willscher Affirm. ¶¶ 4-8). Nor did the letter disclose that, on January 31, Hanratty sold real estate collateral for $55,000 (netting $49,604.07 after closing costs), again without any notice to EBCC. (*See id.* ¶¶ 9-10.) By concealing these transactions until after they took place, Hanratty prevented EBCC from evaluating the sales' fairness or taking any action to block them.

Before filing this motion, EBCC contacted Defendants' counsel to understand the above infringing transactions and why Defendants had not provided notice as required by the Preliminary Injunction Order. (Willscher Affirm. ¶¶ 8, 12, 16.) Defendants' counsel largely refused to answer clarifying questions, except for stating that "the $109,777.50 was one payment made to cover numerous smaller transactions"—the same argument related to bulk sales that

<div align="center">-7-</div>

Defendants conceded did not excuse their previous violations of the Preliminary Injunction Order. (*See* Ex. G to Willscher Affirm. at 10:3-12.)

On February 22, 2024, after several requests by EBCC for substantiation of Defendants' claimed inability to pay, Hanratty finally submitted an affidavit in which he claimed the complete inability to satisfy the fine imposed by the Contempt Order. Despite his previous testimony that "in 2022, the Ebury Entities' average monthly revenue has risen to $753,096— leaving the Ebury Entities in their best cash position since the Pandemic began," (Dkt. 24 ¶ 41), Hanratty now states that "[u]nfortunately, at all times during the pendency of the [EBCC's contempt motion] . . . neither the Ebury Entities nor I—jointly or severally—have had the liquidity to pay $306,946.30." (Dkt. 189 ¶ 5.) Hanratty nevertheless admitted that the "Ebury Entities are [his] primary business and source of income," which he has used to fund personal expenses of $25,000 per month. (*Id.* ¶¶ 9, 25).

## LEGAL STANDARDS

To obtain a preliminary injunction, a party must establish: (i) a likelihood of success on the merits; (ii) irreparable harm absent injunctive relief; and (iii) a balancing of equities in its favor. Doe v. Axelrod, 73 N.Y.2d 748, 750 (1988). The entry of injunctive relief is particularly appropriate where it is necessary "to hold the parties in status quo while the legal issues are determined in a deliberate and judicious manner," Tucker v. Toia, 54 A.D.2d 322, 326 (4th Dep't 1976), or to "prevent the dissipation of property that could render a judgment ineffectual," Ruiz v. Meloney, 26 A.D.3d 485, 486 (2d Dep't 2006).

"[I]t is a basic principle of equity that, in a proper proceeding, the court that issued an injunction may modify its provisions to conform to changed conditions." Bd. of Trs. of Town of Huntington v. W. Wilton Wood, Inc., 97 A.D.2d 781, 782 (2d Dep't 1983); see Philip Morris

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 191    24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 02/29/2024

Court Records    Pg 69 of 438

_USA, Inc._ v. _Otamedia Ltd._, 331 F. Supp. 2d 228, 244 (S.D.N.Y. 2004) ("[E]quity countenances

the modification of a injunctive decree if 'a better appreciation of the facts in light of experience

indicates that the decree is not properly adapted to accomplishing its purposes.'" (citation

omitted)).   New York courts routinely expand or modify preliminary injunctions to account for

changed conditions.  _See Honeywell Int'l, Inc._ v. _R. Freedman & Son, Inc._, 307 A.D.2d 518, 519

(3d Dep't 2003); _Martin_ v. _Donghia Assocs., Inc._, 73 A.D.2d 898, 898 (1st Dep't 1980); _R & J_

_Bottling Co._ v. _Rosenthal_, 40 A.D.2d 911, 912 (3d Dep't 1972).

       To establish a finding of civil contempt, the movant must show, by clear and

convincing evidence, that:  (i) "a lawful order of the court, clearly expressing an unequivocal

mandate, was in effect"; (ii) "the order has been disobeyed"; (iii) "the party to be held in contempt

. . . had knowledge of the court's order"; and (iv) "prejudice."  _El-Dehdan_, 26 N.Y.3d at 29; _see_

Judiciary Law § 753.  "To satisfy the prejudice requirement, it is sufficient to allege and prove that

the contemnor's actions were 'calculated to . . . defeat, impair, impede or prejudice the rights or

remedies of a party.'"  _Orange Cnty.-Poughkeepsie Ltd. P'ship_ v. _Bonte_, 37 A.D.3d 684, 686 (2d

Dep't 2007); _see Bd. of Directors of Windsor Owners Corp._ v. _Platt_, 148 A.D.3d 645, 646 (1st

Dep't 2017) ("Judiciary Law § 753 does not require a showing of . . . monetary harm as a

precondition to a finding of civil contempt.").  Civil contempt is punished by "a fine, sufficient to

indemnify the aggrieved party" for any loss or injury caused by the disobedient party.  Judiciary

Law § 773.

       It is well-established "that a party who assists another in a violation of [a] judicial

mandate can be equally as guilty of contempt as the primary contemnor."  _McCormick_ v. _Axelrod_,

59 N.Y.2d 574, 584 (1983); _see L & R Expl. Venture_ v. _Grynberg_, 31 Misc. 3d 1219(A), at *6

(Sup. Ct. N.Y. Cnty. 2011) ("A party who assists another in violation of judicial mandate can be

equally as guilty of contempt as the primary contemptor."). Thus, "[a]n attorney who assists his

or her client in perpetrating a civil contempt is likewise guilty of contempt." _Kalish_, 47 A.D.3d at

891. A non-party is guilty of contempt if they actively assist the primary contemnor with violating

a judicial mandate and act with knowledge of the mandate. _Vastwin Invs., Ltd._ v. _Aquarius Media

Corp._, 295 A.D.2d 216, 217 (1st Dep't 2002); _see N.Y.S. Lab. Rels. Bd._ v. _George B. Wheeler,

Inc._, 177 Misc. 945, 952 (Sup. Ct. Kings Cnty. 1941) ("[A] person who is not a party to the

proceeding may be punished if he acts in combination with the party and knowingly violates the

court's mandate.").

## ARGUMENT

### A.     The Court Should Adjudge Hanratty in Civil Contempt Again.

Each element of civil contempt is easily met for Hanratty's unauthorized sales of

EBCC's collateral on January 29 and January 31:

_First_, the Preliminary Injunction Order is a "lawful order of the court, clearly

expressing an unequivocal mandate," _El-Dehdan_, 26 N.Y.3d at 29, that Defendants must provide

twenty-four hours' advance notice to EBCC before transferring assets in an amount exceeding

$50,000.

_Second_, Defendants violated the Preliminary Injunction Order in January 2024, by

(i) engaging in a bulk sale of $439,110.01 worth of EBCC's collateral at a 75% discount (for only

$109,777.50) on January 29, without providing advance notice to EBCC; and (ii) selling a property

for $55,000 on January 31, without providing advance notice to EBCC.

_Third_, there can be no dispute that Defendants were aware of the Preliminary

Injunction Order, given that Defendants, (i) sought to appeal the order; (ii) filed opposition papers

when EBCC sought to hold them in contempt of the order, never complaining of unawareness; and

(iii) _were found in contempt_ of that order less than a week before making the unauthorized sales.

-10-

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 191    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/29/2024

Court Records    Pg 71 of 438

Defendants' transfer of $49,999 to their counsel, $1 less than the reporting threshold under the Preliminary Injunction Order, also strongly demonstrates Defendants' awareness of the order.

*Fourth*, EBCC has been prejudiced, including because Defendants' failure to comply with this Court's orders has deprived EBCC of the advanced ability to review the propriety and fairness of the at-issue transactions and has prejudiced EBCC's ability to recover the transferred assets. *See Ficus Invs., Inc.* v. *Priv. Cap. Mgmt., L.L.C.*, 66 A.D.3d 557, 558 (1st Dep't 2009) (finding prejudice where the defendant impermissibly "negotiat[ed] the conveyance of certain mortgages without providing notice to plaintiffs").

As such, EBCC respectfully requests that the Court again find Defendants in civil contempt of the Preliminary Injunction Order. *See Richardson* v. *Gray*, 272 A.D.2d 142, 142 (1st Dep't 2000) (affirming finding of civil contempt where defendant transferred funds other than "in the ordinary course of business"); *see also Kassab* v. *Kasab*, 137 A.D.3d 1141, 1142 (2d Dep't 2016) (affirming finding of civil contempt against party who used corporate funds "to pay his legal fees in this . . . action"). As a remedy for Defendants' civil contempt, EBCC respectfully requests the imposition of a civil fine of $159,381.57, reflecting the proceeds Defendants received from their unauthorized sales of EBCC's collateral without notice on January 29 and January 31. *See* Judiciary Law § 773. That is an appropriate amount under the circumstances. "Respondents' violation of the court's order, particularly in light of their prior contempt, cannot be countenanced. Their conduct prejudiced petitioners by depriving them of corporate assets that they should have had long ago." *Callazzo* v. *Assini*, 2022 WL 17899024, at *2 (Sup. Ct. N.Y. Cnty. Dec. 20, 2022); *see also Richardson* v. *Gray*, 284 A.D.2d 198, 200 (1st Dep't 2001) (considering "the outrageous nature of plaintiff's abuse of his fiduciary duties as a corporate officer, and his seeming indifference to, and blatant disregard for, numerous judicial directives").

-11-

Further, EBCC respectfully requests that the Court award EBCC its attorneys' fees in connection with enforcing the Preliminary Injunction Order. "Legal fees that constitute actual loss or injury as a result of a contempt are routinely awarded as part of the fine. These may include the legal fees incurred in bringing the contempt motion." *Gottlieb* v. *Gottlieb*, 137 A.D.3d 614, 618 (1st Dep't 2016) (citations omitted)); *see also L & R Expl. Venture* v. *Grynberg*, 31 Misc. 3d 1219(A), at *4 (Sup. Ct. N.Y. Cnty. 2011) ("Actual costs and expenses, including attorney's fees, are a legitimate category of recovery for a contempt citation.").

To the extent Hanratty again raises inability to pay as a defense, the Court should "require[] a more specific showing of the contemnor's economic status," backed up by documentation. *El-Dehdan*, 26 N.Y.3d 19, 36 (2015). Specifically, Hanratty must submit evidence of the value of his personal assets and liabilities and evidence of the value of the assets and liabilities of the Ebury Entities, as well as twenty-four months of bank statements from the bank account referenced in the Hanratty Affidavit.

## B. The Court Should Modify the Preliminary Injunction.

The Court should modify the Preliminary Injunction Order to enjoin and restrain Defendants from transferring, mortgaging, selling, converting, concealing, dissipating, disbursing, spending, withdrawing, disposing of, assigning, or permitting the transfer of any of the Ebury Entities' assets or any proceeds thereof, to any person, corporation, or entity other than EBCC, without EBCC's consent.

*First*, EBCC has established a likelihood of success on the merits as to its breach of contract claims. (*See* Dkt. 47 at 8.) Since the Court originally found that EBCC had "presented a prima facie case supporting the likelihood of success on the merits, which defendants have failed to rebut," EBCC's evidence has only grown stronger—Defendants have admitted that they are liable for breach of contract. As Defendants' counsel recently told the Court: "I do want to make

-12-

clear that there is an extensive record, and Mr. Hanratty and my clients, from the very inception of

the case, have always admitted liability." (Ex. G to Willscher Affirm. at 29:4-6). And Hanratty

unequivocally admitted at his deposition: "I am currently in default and owe money to Emigrant,

yes," and "I acknowledge that I owe them money and I want to pay them." (Dkt. 123 at 405:8-12,

674:9-10.)

   *Second*, EBCC established in its original motion that it faces irreparable harm and

Defendants' conduct since has made that clear. When first requesting injunctive relief, EBCC

argued that "EBCC holds security interests in specific assets that Defendants intend to sell,

encumber, or otherwise transfer." (Dkt. 4 at 18.) The Court agreed and found that EBCC "is a

secured creditor *whose collateral risks further dissipation by insolvent defendants*." (Dkt. 47 at

5-6) (emphasis added.) Hanratty since has admitted that all of the Ebury Companies' assets are

EBCC's collateral. (*See* Dkt. 123 at 233:5 ("**A.** It's all Emigrant's collateral"); *id*. at 239:25-240:9

("**Q.** All of the tax liens that the Ebury companies owned in March 2021 are Emigrant's collateral?

**A.** And REO and loans"); *see also id*. at 265:20-25.) Nevertheless, in the 18 months since this

Action began, Hanratty has paid $514,450 directly to himself using the proceeds of EBCC's

collateral, while at the same time, escrowing only $185,000 in proceeds for EBCC. Further,

Hanratty has all but admitted that he has been liquidating EBCC's collateral during the pendency

of this lawsuit to pay his own personal living expenses, including $11,000 monthly rent for a house

in a gated community in Puerto Rico, as well a private school tuition for his three kids. Hanratty's

personal living expenses are not a permissible use for the proceeds of EBCC's collateral under the

Credit Agreements. "[A] secured creditor *does* have a legally recognized interest in preventing

dissipation of encumbered property prior to obtaining judgment." *White Oak Com. Finance, LLC*

*v. EIA Inc.*, 2023 WL 4149527, at *7 (Sup. Ct. N.Y. Cnty. June 23, 2023) (Chan, J.).

-13-

*Third*, as the Court already found, the balance of equities is in EBCC's favor.
(Dkt. 47 at 7.) This, too, is only more true today given that Defendants continue to dissipate
EBCC's collateral, further indicating that EBCC is unlikely to collect on its security interests. *See*
*Felix* v. *Brand Serv. Grp. LLC*, 101 A.D.3d 1724, 1726 (1st Dep't 2012) (finding that the balance
of the equities favored entry of an injunction because "while defendants may be delayed in paying
off debt or using the escrow money for other purposes, plaintiffs may never be able to recover the
money, if disbursed, even if plaintiffs ultimately prevail in the underlying action").

Since the Preliminary Injunction Order was entered, Hanratty has generated
liquidity primarily by engaging in bulk sales of EBCC's collateral at fire-sale prices without notice
to EBCC, as required by this Court's Preliminary Injunction Order, including in December 2023
when Hanratty sold $1.1 million of tax lien collateral for only $256,946.30, and again in January
2024, when Hanratty sold $439,110.01 of EBCC's tax lien collateral for only $109,777.50.
Hanratty has admitted that "[t]he Ebury Entities are [his] primary business and source of income,"
which he uses to fund "approximately $25,000 per month" in living expenses. (Dkt. 189 ¶¶ 9, 25.)
Since this action began, Hanratty has transferred $514,450 to himself from the Ebury Companies.
(*Id.* ¶ 41.) Hanratty's conversion of Ebury corporate assets to his own personal use is an abuse of
the corporate form and the Court should put an end to Hanratty's improper self-dealing and
dissipation of corporate assets. *See* *Groth* v. *Ferrante*, 221 A.D.3d 664, 665 (2d Dep't 2023)
("Factors to consider in determining whether an individual has abused the corporate form include
failure to adhere to corporate formalities, inadequate capitalization, commingling of assets and
personal use of corporate funds.").

**C.    The Court Also Should Adjudge Defendants' Counsel in Civil Contempt.**

Defendants' counsel has been a chief beneficiary of Defendants' improper
dissipation of EBCC's collateral. Since October, Defendants have dissipated more than

$1.5 million worth of EBCC's collateral without advance notice to EBCC, in violation of the Preliminary Injunction Order. Of the almost $500,000 in proceeds from those sales (which took place at steep discounts over Defendants' own book values), Defendants have paid almost $175,000 to their counsel, while "strugg[ling]" to pay EBCC only $120,000 of the proceeds.

By accepting a $49,999 payment—which on its face appears to have been designed to evade the notice requirements of the Preliminary Injunction Order and to conceal Defendants' earlier unauthorized sales—Defendants' counsel has crossed the line into participation in Hanratty's improper dissipation of EBCC's collateral. In *In re Wimbledon Fin. Master Fund, Ltd. v. Bergstein*, 173 A.D.3d 401, 401-02 (1st Dep't 2019), the First Department found that counsel who received and reviewed copies of a restraining notice were "sufficiently aware" to know that it applied to a transfer of funds and could thus be held in civil contempt.

As previously explained, "[a]n attorney who assists his or her client in perpetrating a civil contempt is likewise guilty of contempt." *Kalish*, 47 A.D.3d at 891. Here, there can be no dispute that Defendants' counsel has "assist[ed]" Hanratty in dispersing EBCC's collateral in violation of the Preliminary Injunction Order. *See McCormick*, 59 N.Y.2d at 584. Defendants' counsel either (i) invoiced Defendants for $49,999, or (ii) accepted a payment of $49,999 which was paid with the proceeds of an unauthorized sale of EBCC's collateral. Either scenario is inexcusably obvious in its attempt to avoid the advance notice requirement under the Preliminary Injunction Order by $1. Counsel indisputably had knowledge of both the Preliminary Injunction Order and the Contempt Order when they accepted this payment. *See Vastwin Invs.*, 295 A.D.2d at 217; *In re Wimbledon Fin. Master Fund, Ltd.*, 173 A.D.3d at 401-02.

-15-

Given that Defendants' counsel has refused EBCC's request to voluntarily relinquish the proceeds of Defendants' violations of the Court's orders, the Court should adjudge Defendants' counsel in contempt as well and order the return of these funds.

## **CONCLUSION**

For the foregoing reasons, EBCC respectfully requests that the Court:

a.   Adjudge Defendants guilty of civil contempt for violating the Preliminary Injunction Order again and impose upon them a civil fine of $159,381.57, plus attorneys' fees and expenses;

b.   Order Defendants to submit evidence of the value of Hanratty's personal assets and liabilities, as well as the assets and liabilities of the Ebury Entities, as well as twenty-four months of bank statements from the bank account referenced in the Hanratty Affidavit (Dkt. 189);

c.   Modify the Preliminary Injunction Order to enjoin and restrain Defendants from transferring, mortgaging, selling, converting, concealing, dissipating, disbursing, spending, withdrawing, disposing of, assigning, or permitting the transfer of any of the Ebury Entities' assets or any proceeds thereof, to any person, corporation, or entity other than EBCC, without EBCC's consent;

d.   Adjudge Defendants' counsel in contempt for assisting Hanratty in dissipating EBCC's collateral and order them to deposit $49,999 into the joint escrow account, in satisfaction of the civil fine imposed in the Contempt Order and/or the Court's order on this motion; and

e.   Grant Plaintiff its costs and disbursements, including attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated:   February 29, 2024
New York, New York

Respectfully submitted,

*/s/ Alexander J. Willscher*

Alexander J. Willscher
Austin P. Mayron
Erin L. Savoie
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000

-16-

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO: 191
RECEIVED NYSCEF: 02/29/2024

24-0402b-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 77 of 438

Fax: (212) 558-3588

*Attorneys for Plaintiff Emigrant Business Credit Corporation*

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM

NYSCEF DOC. NO. 191

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 78 of 438

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

### CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with the word-count limit of Commercial Division Rule 17, 22 NYCRR § 202.70(g), for documents prepared by use of a computer because it contains 5,114 words.

Dated:    February 29, 2024              _/s/ Alexander J. Willscher_
          New York, New York            Alexander J. Willscher

-18-

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 79 of 438

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

————————————————————  x

EMIGRANT BUSINESS CREDIT                      :
CORPORATION,                                  :
                                              :
                    Plaintiff,                :    Index No. 158207/2022
                                              :
            v.                                :    (Hon. Margaret Chan)
                                              :
JOHN ARTHUR HANRATTY, EBURY                   :    **MOTION SEQUENCE NO. ___**
STREET CAPITAL, LLC, EBURY FUND 1,            :
LP, EBURY FUND 2, LP, EBURY 1EMI              :    **AFFIRMATION OF ALEXANDER J.**
LLC, EBURY 2EMI LLC, EB 1EMIALA               :    **WILLSCHER**
LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,          :
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB            :
2EMIIN, LLC, EB 1EMIMD, LLC, EB               :
2EMIMD, LLC, EB 1EMINJ, LLC, EB               :
2EMINJ, LLC, EB 1EMINY, LLC, EB               :
2EMINY, LLC, EB 1EMISC, LLC, EB               :
2EMISC, LLC, RE 1EMI LLC, RE 2EMI             :
LLC, EB 1EMIDC, LLC, ARQUE TAX                :
RECEIVABLE FUND (MARYLAND), LLC,              :
EBURY FUND 1FL, LLC, EBURY FUND               :
2FL, LLC, EBURY FUND 1NJ, LLC,                :
EBURY FUND 2NJ, LLC, RED CLOVER 1,            :
LLC, EBURY RE LLC, and XYZ                    :
CORPS. 1-10,                                  :
                                              :
                    Defendants.               :
                                              :
————————————————————  x

      **ALEXANDER J. WILLSCHER**, an attorney duly admitted to practice law in the Courts

of the State of New York, affirms the truth of the following statements, under the penalties of

perjury:

      1.     I am a partner at the law firm of Sullivan & Cromwell LLP, counsel for Plaintiff

Emigrant Business Credit Corporation ("**EBCC**") in the above-captioned matter.  I am familiar

with the matters set forth below.

      2.     I make this affirmation in support of EBCC's motion to modify the Preliminary

Injunction Order and for civil contempt.

3. As set forth in the annexed materials, after the Court adjudged Defendants in civil contempt of the Preliminary Injunction Order on January 25, Defendants again violated the Preliminary Injunction Order, including the restrictions on Defendants' ability to transfer EBCC's collateral, as well as the requirement that Defendants notify EBCC before transferring assets in excess of $50,000.

**Defendants sold $439,111.01 of EBCC's tax lien collateral without providing advance notice to EBCC.**

4. On January 29, 2024, just four days after Defendant John Arthur Hanratty ("**Hanratty**") was held in civil contempt for identical conduct in violation of the Preliminary Injunction Order, Hanratty sold $439,110.01 of EBCC's tax lien collateral for only $109,777.50 without providing any notice to EBCC or escrowing the proceeds as required by the Preliminary Injunction Order.

5. Attached hereto as Exhibit A is a true and correct copy of a spreadsheet produced by Defendants on February 15, 2024, bearing Bates number EBURY_00081383 and purportedly listing transactions from the Ebury Entities' bank accounts, including transactions from January 10, 2024 through February 7, 2024.

6. Attached hereto as Exhibit B is a true and correct copy of a spreadsheet produced by Defendants on February 15, 2024, bearing Bates numbers EBURY_00081432 to EBURY_00081435 and purportedly listing the tax liens that were sold as part of the January 29, 2024 bulk sale.

7. According to Exhibits A and B, Defendants made a bulk sale of tax liens worth $439,110.01 for only $109,777.50 on January 29, 2024. Defendants, in violation of the Court's Preliminary Injunction Order, did not provide EBCC advance notice of this transaction or escrow the sale proceeds, thus preventing EBCC from evaluating the sale's fairness or taking any action

to block it.

8. On February 16, 2024, EBCC wrote to Defendant's counsel explaining that "the January 29 sale . . . appears to be a clear and willful disregard of the Court's orders, but if we are mistaken, please let us know."  Defendants responded that "the $109,777.50 was one payment made to cover numerous smaller transactions."  A true and correct copy of that correspondence is attached as Exhibit C.

**Defendants sold a $55,000 property without providing advance notice to EBCC.**

9. EBCC also discovered that on January 31, 2024, just one week after Hanratty was adjudged in civil contempt, Hanratty sold EBCC's real estate collateral for $55,000 (netting $49,604.07 after closing costs), again without providing any notice to EBCC or escrowing the proceeds as required by the Preliminary Injunction Order.

10. Attached hereto as Exhibit D is a true and correct copy of a HUD-1 Settlement Statement produced by Defendants on February 15, 2024, bearing Bates numbers EBURY_00081401 to  EBURY_00081403 and purportedly describing the sale of EBCC's real estate collateral for a contract sales price of $55,000.

**Defendants transferred $49,999 of the sale proceeds to their counsel.**

11. According to Exhibit A, Defendants made a payment of $49,999 to Gusrae Kaplan Nusbaum PLLC on January 31, 2024.  Defendants, in violation of the Court's Preliminary Injunction Order and Contempt Order, used the proceeds from their unauthorized January 29 and January 31 sales of EBCC's collateral to fund this payment, rather than escrowing the proceeds as ordered.  Notably, had Defendants transferred just $1 more, they would have been required to provide advance notice to EBCC under the Preliminary Injunction Order, which would have prompted EBCC to inquire into the source of the funds and potentially to discover the unauthorized sales on January 29 and 31, 2024.

12.     On February 16, 2024, EBCC wrote to Defendant's counsel requesting that Defendants' counsel "immediately return these funds to the joint escrow account" or "provide justification for the payment and the basis for Mr. Hanratty preferentially paying your law firm instead of complying with the Court's Contempt Order." Defendant's counsel did not return the funds. A true and correct copy of that correspondence is attached as Exhibit C.

13.     Finally, according to Exhibit A, Defendants entered into a $53,000 merchant cash advance loan with an entity called EPIC Advance to procure the funds used to make the $120,000 deposit into the parties' joint escrow account.

**Defendants stopped reporting their transactions to QuickBooks.**

14.     Since January 10, 2024, Defendants have reported only one transaction to their QuickBooks software, which is the primary mechanism by which EBCC has been able to monitor Ebury Entities' transactions. Under Sections 6.2 and 6.30 the Credit Agreements, Defendants are required to provide EBCC with access to their financial records. (Dkt. 6 §§ 6.2, 6.30.)

15.     On February 16, 2024, EBCC wrote to Defendant's counsel requesting an explanation why Hanratty stopped reporting his transactions in QuickBooks. Defendants did not dispute that they had stopped reporting their transactions in QuickBooks or otherwise respond. A true and correct copy of that correspondence is attached as Exhibit C.

16.     On February 26, 2024, before submitting this motion, EBCC contacted Defendants' counsel requesting that they provide (i) the bank statements described as "Exhibit A" in the Affidavit of John Arthur Hanratty (Dkt. 189) that were not filed along with the affidavit itself; (ii) bank statements for the past twenty-four months for that account; (iii) confirmation that Hanratty and his wife do not have access to any bank accounts other than the "one bank account, which [he] share[s] with [his] wife;" (iv) confirmation that Hanratty does not have any brokerage or retirement accounts, stocks, bonds, or other securities; (v) confirmation of the date of the

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 192
RECEIVED NYSCEF: 02/29/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 83 of 438

$109,777.50 bulk sale that Defendants reported in their monthly financial reporting and an explanation; (vi) an explanation for why Hanratty stopped reporting his transactions in QuickBooks on January 10, 2024. As of the filing of this motion, Defendants have not responded. A true and correct copy of that correspondence is attached as Exhibit E.

\*   \*   \*

17. Attached hereto as Exhibit F is a true and correct copy of the Motion to Modify Conditions of Release Defendants filed on January 12, 2024 in *United States* v. *Hanratty*, S.D.N.Y. No. 1:23-mj-7566.

18. Attached hereto as Exhibit G is a true and correct copy of the transcript of the proceedings in this Action on January 24, 2024, related to Plaintiff's original contempt motion (<u>Dkt. 97</u>).

Dated: February 29, 2024
   New York, New York

*/s/ Alexander J. Willscher*
**ALEXANDER J. WILLSCHER**

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 84 of 438

## CERTIFICATE OF COMPLIANCE

I hereby certify that this affirmation complies with the word-count limit of Commercial

Division Rule 17, 22 NYCRR § 202.70(g), for documents prepared by use of a computer because

it contains 1,107 words.

Dated:    February 29, 2024              */s/ Alexander J. Willscher*
          New York, New York            Alexander J. Willscher

-6-

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM

NYSCEF DOC. NO. 193

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 85 of 438

# EXHIBIT A

| Acct Name | Date | Transaction Description | Amount | Transaction Detail | Transfers between |
|---|---|---|---|---|---|
| ERE - M&T | 1/10/2024 | OUTGOING FEDWIRE TRANSFER AUTO NON REP & | $ (20,000.00) | Wire payment ro Mary | |
| RED Clover | 1/10/2024 | WEB XFER TO CHK 00009863822251 | $ (20,000.00) | Wire transfer - M&T ERE | 1 |
| ERE - M&T | 1/10/2024 | WEB XFER FROM CHK 00009863821253 | $ 20,000.00 | Wire transfer - Red Clover | 1 |
| BPPR GF | 1/12/2024 | OUTGOING WIRE | $ (30,060.00) | Ebury EBCC Refinance - Emigrant | |
| F2 - CapOne | 1/12/2024 | Customer Deposit | $ 25,781.68 | 75 Thompson St Redemption (Cert 12-00145) F2NJ1 | |
| F2 - CapOne | 1/16/2024 | Wire Transfer Withdrawal | $ (25,781.68) | Wire transfer - ESC BPPR | 2 |
| BPPR ESC | 1/16/2024 | INCOMING WIRE | $ 25,781.68 | Wire Transfer - F2 CapOne | 2 |
| BPPR ESC | 1/17/2024 | TELEPAGO TRANSFERENCIA A CUENTA CHEQUES | $ (25,781.68) | Book Transfer - GF | 3 |
| BPPR GF | 1/17/2024 | TELEPAGO TRANSFERENCIA DE FONDOS | $ 25,781.68 | Book Transfer - ESC | 3 |
| F1 - CapOne | 1/25/2024 | Wire transfer deposit | $ 10,832.00 | Sales proceeds 332 River | |
| F1 - CapOne | 1/29/2024 | Wire transfer Withdrawal | $ (10,832.00) | Wire transfer - Red Clover | 4 |
| RED Clover | 1/29/2024 | INCOMING FEDWIRE FUNDS TRANSFER & | $ 10,832.00 | Wire Transfer - F1 CapOne | 4 |
| F1 - CapOne | 1/29/2024 | Wire transfer deposit | $ 109,777.50 | Admin Liens OPS LLC (SHEVAT 15 - Mier Hillal NJ Sale) | |
| F1 - CapOne | 1/31/2024 | Wire Transfer Withdrawal | $ (100,000.00) | Wire transfer - Red Clover | 5 |
| RED Clover | 1/31/2024 | OUTGOING FEDWIRE TRANSFER AUTO NON REP & | $ (49,999.00) | Wire Payment Gusrae Kaplan Nusbaum PLLC | |
| RED Clover | 1/31/2024 | WEB XFER TO CHK 00009863822251 | $ (12,700.00) | Wire transfer - M&T ERE | 6 |
| ERE - M&T | 1/31/2024 | OUTGOING FEDWIRE TRANSFER AUTO NON REP & | $ (11,068.75) | Wire to Coffey & Associates | |
| ERE - M&T | 1/31/2024 | WEB XFER FROM CHK 00009863821253 | $ 12,700.00 | Wire transfer - Red Clover | 6 |
| ERE - M&T | 1/31/2024 | INCOMING FEDWIRE FUNDS TRANSFER & | $ 49,604.07 | Proceeds 842 S 2nd St Closing | |
| RED Clover | 1/31/2024 | INCOMING FEDWIRE FUNDS TRANSFER & | $ 100,000.00 | Wire Transfer - F1 CapOne | 5 |
| ERE - M&T | 2/1/2024 | WEB XFER TO CHK 00009863821253 | $ (32,000.00) | Wire transfer - Red Clover | 7 |
| RED Clover | 2/1/2024 | OUTGOING FEDWIRE TRANSFER AUTO NON REP & | $ (20,000.00) | Wire Payment to Rumberger | |
| ERE - M&T | 2/1/2024 | OUTGOING FEDWIRE TRANSFER AUTO NON REP & | $ (16,000.00) | Wire transfer - ESC BPPR | 8 |
| BPPR ESC | 2/1/2024 | INCOMING WIRE | $ 16,000.00 | Wire Transfer - Ebury RE M&T | 8 |
| RED Clover | 2/1/2024 | WEB XFER FROM CHK 00009863822251 | $ 32,000.00 | Wire transfer - M&T ERE | 7 |
| ERE - M&T | 2/2/2024 | WEB XFER TO CHK 00009863821253 | $ (13,242.74) | Wire transfer - Red Clover | 9 |
| BPPR ESC | 2/2/2024 | EFT PMT EBURY STREET CREDITS XXXXXXXXXXX7623 | $ (10,000.00) | ACH payment to Alejandro Delvere | |
| RED Clover | 2/2/2024 | WEB XFER FROM CHK 00009863822251 | $ 13,242.74 | Wire transfer - M&T ERE | 9 |
| ERE - M&T | 2/2/2024 | INCOMING FEDWIRE FUNDS TRANSFER & | $ 15,562.22 | Proceeds 8001 Lansdale Closing | |
| ERE - M&T | 2/5/2024 | INCOMING FEDWIRE FUNDS TRANSFER & | $ 5,703.72 | Proceeds 6765 Quacker Neck | |
| ERE - CapOne | 2/6/2024 | ACH Deposit | $ 53,000.00 | EPIC Advance - new loan | |
| RED Clover | 2/7/2024 | OUTGOING FEDWIRE TRANSFER AUTO NON REP & | $ (120,000.00) | Wire payment PGB Concentration Acct - Ebury/Emigrant Escrow Acct | |
| ERE - CapOne | 2/7/2024 | Wire Transfer Withdrawal | $ (55,500.00) | Wire transfer - Red Clover | 10 |
| RED Clover | 2/7/2024 | WEB XFER FROM CHK 00009863822251 | $ 5,500.00 | Wire transfer - M&T ERE | |
| RED Clover | 2/7/2024 | INCOMING FEDWIRE FUNDS TRANSFER & | $ 9,770.50 | Wire Transfer - F1 CapOne | |
| RED Clover | 2/7/2024 | INCOMING FEDWIRE FUNDS TRANSFER & | $ 55,500.00 | Wire Transfer - CapOne ERE | 10 |

CONFIDENTIAL

EBURY_00081383

# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 194
RECEIVED NYSCEF: 02/29/2024
24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 88 of 438

| BLOCK | LOT | CERTIFICATE | ADDRESS | PROPERTY OWNER | RV | SELLING PRICE |
|---|---|---|---|---|---|---|
| 1285 | 110 | 14-02663 | 1044 PRINCESS | BRIAN GLASCO | 9,978.35 | 2,494.59 |
| 161 | 12 | 12-00149 | 318 CLINTON ST | GEORGE S BATTLE | 28,112.75 | 7,028.19 |
| 339 | 76 | 12-00300 | 525 MECHANIC | WILLIAM GONZALES | 9,474.17 | 2,368.54 |
| 1362 | 121 | 16-02924 | 1248 SHERIDAN | MCLAUGHLINN JEVON | 3,764.35 | 941.09 |
| 8 | 59 | 13-00002 | 321 BYRON ST | AWE OLADIMEJI | 5,444.62 | 1,361.16 |
| 269 | 50 | 16-00258 | 1142 S 3RD ST | MORALES VICTOR | 1,697.13 | 424.28 |
| 269 | 50 | 15-00261 | 1142 S 3RD ST | MORALES VICTOR | 1,627.40 | 406.85 |
| 1331 | 106 | 16-02753 | 1265 LANSDOW | MOORE JEFFREY | 1,739.34 | 434.84 |
| 487 | 85 | 15-00625 | 1831 S 6TH ST | GREEN CORRINE | 15,809.48 | 3,952.37 |
| 370 | 42 | 14-00437 | 905 DOUGLASS | JONES H | 4,019.17 | 1,004.79 |
| 1355 | 132 | 14-03016 | 1262 CHASE ST | WEAVER ANN | 4,019.17 | 1,004.79 |
| 612 | 96 | 13-00828 | 2211 S 10TH ST | BILES SR LEONARD | 13,113.75 | 3,278.44 |
| 1331 | 106 | 14-02874 | 1265 LANSDOW | MOORE JEFFREY | 8,726.41 | 2,181.60 |
| 1331 | 106 | 15-02721 | 1265 LANSDOW | MOORE JEFFREY | 8,369.87 | 2,092.47 |
| 215 | 3 | 12-00176 | 3821 JAMES MO | EASTER DAVIS | 16,168.37 | 4,042.09 |
| 4106 | 12 | 14-00343 | 720 E QUINCE S | PEREZ FERNANDO | 9,745.29 | 2,436.32 |
| 102 | 36 | 16-00080 | 98 YORK ST | HENRY L HEIGHT | 26,341.63 | 6,585.41 |
| 243 | 39 | 16-00229 | 15 COLUMBUS | GERALD HYMAN | 15,295.31 | 3,823.83 |
| 39 | 6 | 17-00051 | 81 Magnolia Ave | PATRICIA RAE MCALLISTER | 8,159.30 | 2,039.83 |
| 97 | 24 | 16-00071 | 115 CHURCH ST | ALONZO BISHOP | 13,302.04 | 3,325.51 |
| 97 | 52 | 16-00074 | 146 EAST AVE | CHERYL A DALZELL | 22,646.08 | 5,661.52 |
| 135 | 26 | 14-00279 | 4 SPRUCE ST | CLIFFORD LEWIS | 30,104.71 | 7,526.18 |
| 27 | 4156 | 13-00012 | 354 MISTLE RD | HEISE JAMIE | 10,769.30 | 2,692.33 |
| 3702 | 25 | 111662 | 208 REV S HOW | HQ HOLDINGS GROUP LLC | 12,279.35 | 3,069.84 |
| 3702 | 25 | 13-0151 | 208 REV S HOW | BZH REALTY INC | 12,986.82 | 3,246.71 |
| 304 | 23 | 14-00039 | 3 HERMAN ST | JAMES WENDELL | 7,723.06 | 1,930.77 |
| 58 | 1.03 | 11-00061 | FORD AVE | SB BUILDING ASSOCIATES | 725.05 | 181.26 |
| 58 | 1.02 | 11-00060 | 2 FORD AVE | SB MILLTOWN INDUSTRIAL REA | 656.22 | 164.06 |
| 70 | 1 | 11-00016 | 246 E WASHING | MONTE BLEW | 128,801.78 | 32,200.45 |
| 43.12 | 4 | 16-00009 | 7 BLUE SPRUCE | BARBARA A PEARSON | 7,509.74 | 1,877.44 |

| Portfolio | Municipality | County | Original Lien Holder | Assessed Owner | Sale Date |
|---|---|---|---|---|---|

CONFIDENTIAL

EBURY_00081432

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
NYSCEF DOC. NO. 194
INDEX NO. 158207/2022
RECEIVED NYSCEF: 02/29/2024
24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 89 of 438

| | | | | | |
|---|---|---|---|---|---|
| NJ4 | City of Camden | Camden | US BANK CUST FOR PRO CAPITAL | GLASCO BRIAN | June 23, 2014 |
| NJ4 | City of Camden | Camden | US BANK CUST FOR PRO CAPITAL | MORALES JUAN ET UX | June 18, 2012 |
| NJ4 | City of Camden | Camden | US BANK CUST FOR PRO CAPITAL | GONZALES WILLIAM | June 18, 2012 |
| NJ1 | City of Camden | Camden | US BANK CUST/PC5 STERLING NAT | MCLAUGHLIN JEVON | June 20, 2016 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | AWE OLADIMEJI | June 17, 2013 |
| NJ1 | City of Camden | Camden | US BANK CUST/PC5 STERLING NAT | MORALES VICTOR | June 20, 2016 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | MORALES VICTOR | June 22, 2015 |
| NJ1 | City of Camden | Camden | US BANK CUST/PC5 STERLING NAT | MOORE JEFFREY | June 20, 2016 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | GREEN CORRINE | June 22, 2015 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | JONES H | June 23, 2014 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | WEAVER ANN | June 23, 2014 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | BILES SR LEONARD | June 17, 2013 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | MOORE JEFFREY | June 23, 2014 |
| NJ1 | City of Camden | Camden | US BANK AS CUST FOR PRO CAP II | MOORE JEFFREY | June 22, 2015 |
| NJ4 | Township of Commercial | Cumberland | US BANK CUST FOR PRO CAPITAL | EASTER DAVIS | January 26, 2012 |
| NJ1 | City of Vineland | Cumberland | US BANK AS CUST FOR PC4, LLC | PEREZ FERNANDO | October 9, 2014 |
| NJ4 | City of Bridgeton | Cumberland | US BANK CUST PC6, LLC STERLING | HEIGHT, HENRY L | April 25, 2016 |
| NJ4 | City of Bridgeton | Cumberland | US BANK CUST PC6, LLC STERLING | HYMAN, GERALD | April 25, 2016 |
| NJ4 | City of Bridgeton | Cumberland | US BANK CUST PC7 FIRSTRUST BA | MCALLISTER, PATRICIA | December 18, 2017 |
| NJ4 | City of Bridgeton | Cumberland | US BANK CUST PC6, LLC STERLING | BISHOP, ALONZO & MA | April 25, 2016 |
| NJ4 | City of Bridgeton | Cumberland | US BANK CUST PC6, LLC STERLING | DALZELL, CHERYL A | April 25, 2016 |
| NJ4 | City of Bridgeton | Cumberland | US BANK CUST PC4 FIRSTRUST BA | LEWIS, CLIFFORD & GLA | June 23, 2014 |
| NJ1 | City of Millville | Cumberland | US BANK CUST FOR PRO CAP II, LL | HEISE JAMIE | March 19, 2013 |
| NJ4 | City of Trenton | Mercer | US BANK CUST FOR PRO CAPITAL | BZH REALTY INC | June 28, 2011 |
| NJ1 | City of Trenton | Mercer | CUST FOR PRO CAP II LLC | CCTS TAX LIENS I, LLC | January 16, 2013 |
| NJ4 | Borough of South River | Middlesex | US BANK CUST FOR PC5 STERLING | WENDELL, JAMES | October 23, 2014 |
| NJ3 | Borough of Milltown | Middlesex | FWDSL & ASSOCIATES LP | SB BUILDING ASSOCIAT | October 24, 2012 |
| NJ3 | Borough of Milltown | Middlesex | FWDSL & ASSOCIATES LP | SB MILLTOWN INDUSTR | October 24, 2012 |
| NJ3 | Washington Township | Warren | FWDSL & ASSOCIATES LP | BLEW, MONTE & ROY M | December 15, 2011 |
| NJ3 | Pennington Borough | Mercer | FWDSL & ASSOCIATES LP | PEARSON, BARBARA A | June 1, 2016 |

| Original Recording Date | Original Book | Original Page | Original Instrument | EB Lien Holder | ASSIGNMENT DATE | Assignment Recording Da |
|---|---|---|---|---|---|---|
| September 10, 2014 | 10067 | 1587 | 2014060569 | EB 1EMINJ LLC | July 30, 2019 | October 15, 2019 |

CONFIDENTIAL
EBURY_00081435

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
NYSCEF DOC. NO. 194

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 90 of 438

| August 24, 2012 | 9648 | 772 | 2012060819 EB 1EMINJ LLC | July 30, 2019 | October 15, 2019 |
| August 23, 2012 | 9648 | 195 | 2012060659 EB 1EMINJ LLC | July 30, 2019 | October 15, 2019 |
| September 6, 2016 | 10474 | 1249 | 2016068723 US BANK AS CST FOR RED CLOVER | February 22, 2019 | April 8, 2019 |
| July 29, 2013 | 9852 | 1224 | 2013058888 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| September 6, 2016 | 10474 | 1496 | 2016068822 US BANK AS CST FOR RED CLOVER | February 22, 2019 | April 8, 2019 |
| August 13, 2015 | 10249 | 1843 | 2015062579 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| September 6, 2016 | 10474 | 585 | 2016068407 US BANK AS CST FOR RED CLOVER | February 22, 2019 | April 8, 2019 |
| August 12, 2015 | 10248 | 1174 | 2015061842 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| September 8, 2014 | 10066 | 130 | 2014059291 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| September 8, 2014 | 10066 | 1136 | 2014059790 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| July 29, 2013 | 9852 | 923 | 2013058737 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| September 9, 2014 | 10066 | 1834 | 2014060028 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| August 13, 2015 | 10250 | 492 | 2015062874 US BANK AS CST FOR RED CLOVER | February 22, 2019 | May 10, 2019 |
| April 3, 2012 | 4091 | 1195 | 409287 EB 1EMINJ LLC | July 30, 2019 | September 10, 2019 |
| December 12, 2014 | 4123 | 8956 | 474693 US BANK AS CST FOR RED CLOVER | February 22, 2019 | March 25, 2019 |
| June 29, 2016 | 4142 | 7836 | 511156 EB 1EMINJ LLC | July 30, 2019 | September 18, 2019 |
| June 29, 2016 | 4142 | 8016 | 511216 EB 1EMINJ LLC | July 30, 2019 | September 18, 2019 |
| February 22, 2018 | 4163 | 6220 | 548830 EB 1EMINJ LLC | July 30, 2019 | September 10, 2019 |
| June 29, 2016 | 4142 | 7818 | 511150 EB 1EMINJ LLC | July 30, 2019 | September 18, 2019 |
| June 29, 2016 | 4142 | 7821 | 511151 EB 1EMINJ LLC | July 30, 2019 | September 18, 2019 |
| August 27, 2014 | 4120 | 4341 | 467655 EB 1EMINJ LLC | July 30, 2019 | September 10, 2019 |
| May 22, 2013 | 4104 | 8690 | 436630 US BANK AS CST FOR RED CLOVER | February 22, 2019 | April 1, 2019 |
| September 7, 2011 | 10757 | 991 | 201109070978 EB 1EMINJ LLC | July 30, 2019 | August 23, 2019 |
| March 25, 2013 | 10979 | 115 | 2013017335 US BANK AS CST FOR RED CLOVER | February 22, 2019 | April 1, 2019 |
| January 7, 2015 | 15865 | 451 | 201501070083 EB 1EMINJ LLC | July 30, 2019 | August 27, 2019 |
| January 25, 2013 | 15098 | 764 | 201301250428 US BANK AS CUST FOR EB 1EMINJ | June 20, 2019 | July 9, 2019 |
| January 25, 2013 | 15098 | 761 | 201301250427 US BANK AS CUST FOR EB 1EMINJ | June 20, 2019 | July 9, 2019 |
| January 17, 2012 | 5601 | 304 | 2013-381358 US BANK AS CUST FOR EB 1EMINJ | June 20, 2019 | July 10, 2019 |
| June 20, 2016 | 11205 | 234 | 2016028233 US BANK AS CUST FOR EB 1EMINJ | June 20, 2019 | July 10, 2019 |

| Assignment Book | ignment P | Assignment Instrument # |
| --- | --- | --- |
| 11237 | 1526 | 2019072015 |
| 11237 | 1523 | 2019072014 |

CONFIDENTIAL

EBURY_00081434

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM

NYSCEF DOC. NO. 194

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 91 of 438

| | | |
|---|---|---|
| 11237 | 1523 | 2019072014 |
| 11105 | 1750 | 2019024384 |
| 11126 | 467 | 2019032130 |
| 11105 | 1750 | 2019024384 |
| 11126 | 467 | 2019032130 |
| 11105 | 1750 | 2019024384 |
| 11126 | 467 | 2019032130 |
| 11126 | 467 | 2019032130 |
| 11126 | 467 | 2019032130 |
| 11126 | 467 | 2019032130 |
| 11126 | 467 | 2019032130 |
| 11126 | 467 | 2019032130 |
| 4184 | 6013 | 583728 |
| 4178 | 3420 | 573573 |
| 4184 | 8967 | 584210 |
| 4184 | 8967 | 584210 |
| 4184 | 6024 | 583731 |
| 4184 | 8967 | 584210 |
| 4184 | 8967 | 584210 |
| 4184 | 6020 | 583730 |
| 4178 | 6034 | 573989 |
| 1191 | 1791 | 2019036439 |
| 1189 | 1688 | 2019013239 |
| 17599 | 304 | 2019068888 |
| 17549 | 723 | 2019053144 |
| 17549 | 723 | 2019053144 |
| 942 | 136 | 2019-512734 |
| 1191 | 513 | 2019028811 |

CONFIDENTIAL

EBURY_00081435

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM

NYSCEF DOC. NO. 194

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 92 of 438

CONFIDENTIAL

EBURY_00081434

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
NYSCEF DOC. NO. 194

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 93 of 438

INDEX NO. 158207/2022
RECEIVED NYSCEF: 02/29/2024

te

CONFIDENTIAL

EBURY_00081435

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM

NYSCEF DOC. NO: 195

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 94 of 438

# EXHIBIT C

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 95 of 438

## Mayron, Austin P.

| | |
|---|---|
| **From:** | Kari Parks <kparks@gusraekaplan.com> |
| **Sent:** | Tuesday, February 20, 2024 7:48 AM |
| **To:** | Willscher, Alexander J.; Victor Wang |
| **Cc:** | Mayron, Austin P. |
| **Subject:** | [EXTERNAL] Re: EBCC v. Hanratty - Monthly Transactions |

Good Morning Alex,

I hope you had a rejuvenating holiday.  I understand that the $109,777.50 was one payment made to cover numerous smaller transactions, which was reflected in the production made to you all. Please let us know if you didn't receive that breakdown.

Particularly given the ongoing criminal case instigated by your client, it's not appropriate to address the other purported issues, other than to note that they assume much about my clients' intent. And while the proposed remedy seems unorthodox, it's always fun to learn new law. I look forward to reviewing your motion.

Best,
Kari

**Kari Parks, Partner** | **Gusrae Kaplan Nusbaum PLLC** | 120 Wall Street | New York, NY 10005 | T: (212) 269-1400 |www.gusraekaplan.com [gusraekaplan.com]

This transmission may contain information that is confidential, privileged, and/or exempt from disclosure under law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, including all electronic and hard copies.

This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication.  Gusrae Kaplan Nusbaum PLLC is not rendering tax advice, and nothing in this email should be construed as such.

Internet communications cannot be guaranteed to be secure or error-free inasmuch as information may arrive late, contain viruses, or be intercepted, corrupted, or lost.  Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any errors or omissions in the content of this message which arise as a result of internet transmission.  Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure that it is virus free.  Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any loss or damage arising in any way from its use.

---

**From:** Willscher, Alexander J. <willschera@sullcrom.com>
**Sent:** Friday, February 16, 2024 5:59 PM
**To:** Victor Wang <vwang@gusraekaplan.com>; Kari Parks <kparks@gusraekaplan.com>

**Cc:** Mayron, Austin P. <mayrona@sullcrom.com>
**Subject:** RE: EBCC v. Hanratty - Monthly Transactions

Dear Kari and Victor,

After reviewing Defendants' new financial reporting below, we believe that John Hanratty has violated the Court's orders in new ways.  Accordingly, EBCC is preparing an additional motion for contempt that we intend to file early next week.  Before doing so, we wanted to confer with you to confirm whether there is anything you would like to clarify or any additional context that you would like to provide.

According to the documents that Victor produced last night, on January 29, 2024, Hanratty sold $439,110.01 worth of EBCC's collateral for $109,777.50 (a 75% discount off of Hanratty's own mark).  Hanratty did not provide the Court or EBCC with advanced notice of that sale, as required by the Preliminary Injunction Order (Dkt. 47), and he made the sale just three days after the Court had found him guilty of contempt for engaging in identical misconduct at the end of 2023 (Dkt. 165).  The January 29 sale thus appears to be clear and willful disregard of the Court's orders, but if we are mistaken, please let us know.

It also appears that Hanratty delayed providing notice to EBCC of January 29 sale until after the Court's deadline of February 15 for EBCC to file its motion to enforce the Contempt Order.  That is despite ample opportunity for Defendants to have provided notice earlier (for example, in Defendants' February 7 status report to the Court (Dkt. 174), or at the February 8 hearing before the Court at which Mr. Hanratty's compliance with the Contempt Order was at issue).

Moreover, it appears that Hanratty used the proceeds from the unauthorized sale of EBCC's collateral to make a $49,999.00 payment to your firm on January 31, 2024.  He did this instead of using those funds to satisfy the January 25, 2024 Contempt Order.  That order required him to pay $306,946.30 into escrow by February 7, 2024, and with which he still has failed to comply.  Significantly, the amount of Hanratty's January 31 payment to your firm was $1 less than the $50,000 threshold required by the Court's order for providing advance notice to the Court and EBCC.

Nevertheless, you represented to the Court on February 8 that Mr. Hanratty "has struggled to find the funds necessary to satisfy the [Contempt] Order but has been attempting to collect amounts due to him from various third parties to satisfy the fine."  That representation appears to be inconsistent with the facts as we understand them, given Mr. Hanratty's failure to also disclose that he was liquidating EBCC's collateral at 75% discounts, without authorization, and using the proceeds to pay expenses other than his obligations under the Contempt Order.

Given that Mr. Hanratty made the January 31 payment in violation of (i) the Contempt Order; (ii) the Preliminary Injunction Order; (iii) the Credit Agreements; and (iv) EBCC's perfected security interests—as well as the fact that these funds are the proceeds of Mr. Hanratty's fraudulent scheme which may not be used to fund his criminal defense (Dkt 160)—please immediately return these funds to the joint escrow account.  Otherwise,  please provide justification for the payment and the basis for Mr. Hanratty preferentially paying your law firm instead of complying with the Court's Contempt Order.  Absent your firm's immediate return of these funds to the joint escrow account, we intend to seek the return of these funds as part of the contempt motion next week, and reserve all of EBCC's rights with respect to such proceeds.

Finally, after reviewing the new financial reporting, we discovered that Mr. Hanratty has stopped reporting his transactions in QuickBooks:  since January 10, 2024, the only thing we see is a single entry on January 31, 2024 for $188.  Please explain why Mr. Hanratty stopped reporting his transactions in QuickBooks, which allowed him to conceal the unauthorized sales and transfers described above.

Best regards,
Alex

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 195
24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 97 of 438
RECEIVED NYSCEF: 02/29/2024

Alexander J. Willscher | Partner
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004-2498
W: (212) 558-4104
M: (646) 853-5074

---

**From:** Victor Wang <vwang@gusraekaplan.com>
**Sent:** Thursday, February 15, 2024 11:50 PM
**To:** Mayron, Austin P. <mayrona@sullcrom.com>
**Cc:** Willscher, Alexander J. <willschera@sullcrom.com>; Kari Parks <kparks@gusraekaplan.com>
**Subject:** [EXTERNAL] EBCC v. Hanratty - Monthly Transactions

Good evening Austin,
In compliance with paragraph 1 of the Court's December 12, 2022 Preliminary Conference Order, please find
the below-linked production of documents stamped EBURY_00081383 - EBURY_00081435.
https://gusraekaplan.sharefile.com/i/icaec8a475d24df3a [gusraekaplan.sharefile.com]
Thank you.

Best,
Victor

**Victor Wang, Associate | Gusrae Kaplan Nusbaum PLLC** | 120 Wall Street | New York, NY 10005 | T: (212) 269-1400 | www.gusraekaplan.com [gusraekaplan.com]

This transmission may contain information that is confidential, privileged, and/or exempt from disclosure under law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, including all electronic and hard copies.

This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication.  Gusrae Kaplan Nusbaum PLLC is not rendering tax advice, and nothing in this email should be construed as such.

Internet communications cannot be guaranteed to be secure or error-free inasmuch as information may arrive late, contain viruses, or be intercepted, corrupted, or lost.  Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any errors or omissions in the content of this message which arise as a result of internet transmission.  Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure that it is virus free.  Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any loss or damage arising in any way from its use.

---

**This is an external message from:** vwang@gusraekaplan.com **

---

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM

NYSCEF DOC. NO. 196

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 98 of 438

# EXHIBIT D

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records    Pg 99 of 438

**A. Settlement Statement (HUD-1)**

OMB Approval No. 2502-0265

## B. Type of Loan

| 1. ☐ FHA   2. ☐ RHS   3. ☐ Conv. Unins. | 6. File Number: ET-10525 | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|
| 4. ☐ VA   5. ☐ Conv. Ins. | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: EZ Lee Solutions LLC 420 Acker St. Philadelphia, PA 19126 | E. Name & Address of Seller: EBury RE Limited Liability Company 842 2nd S Millville, NJ 08332-4231 | F. Name & Address of Lender: |
|---|---|---|
| G. Property Location: 842 2nd St Millville, NJ 08332-4231 Block: 533 Lot: 29.01 City of Millville, County of Cumberland | H. Settlement Agent: Emerald Title Agency Andrew M Kusnirik 365 White Horse Avenue Hamilton, NJ 08610 Tel: (609) 581-0001 | I. Settlement Date: January 31, 2024 Disbursement Date: January 31, 2024 |
| | Place of Settlement: Emerald Title Agency 365 White Horse Avenue, Hamilton, NJ - 08610 | Closer: Andrew  Kusnirik |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | 55,000.00 | 401. Contract sales price | 55,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,162.00 | 403. | |
| 104. | | 404. Seller Credit | 650.00 |
| 105. | | 405. | |
| **Adjustment for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes   1/31/2024   to   3/31/2024 | 429.20 | 406. City/town taxes   1/31/2024   to   3/31/2024 | 429.20 |
| 107. County taxes   to | | 407. County taxes   to | |
| 108. Assessments   to | | 408. Assessments   to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120. Gross Amount Due from Borrower** | **60,591.20** | **420. Gross Amount Due to Seller** | **56,079.20** |
| **200. Amounts Paid by or in Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | 2,500.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 6,475.13 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes   to | | 510. City/town taxes   to | |
| 211. County taxes   to | | 511. County taxes   to | |
| 212. Assessments   to | | 512. Assessments   to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | **2,500.00** | **520. Total Reduction Amount Due Seller** | **6,475.13** |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | 60,591.20 | 601. Gross amount due to seller (line 420) | 56,079.20 |
| 302. Less amounts paid by/for borrower (line 220) | 2,500.00 | 602. Less reductions in amount due seller (line 520) | 6,475.13 |
| **303. Cash     FROM BORROWER** | **58,091.20** | **603. Cash     TO SELLER** | **49,604.07** |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Borrower:   **EZ Lee Solutions LLC**                    Seller:   **EBury RE Limited Liability Company**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

**January 31, 2024**

Settlement Agent:   **Andrew  Kusnirik**                    Date:

POC(B) represents paid outside of closing by borrower, POC(S) represents paid outside of closing by the seller, POC(L) represents paid outside of closing by lender

CONFIDENTIAL                    EBURY_00081401

## L. Settlement Charges

| **700. Total Real Estate Broker Fees** | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| Division of commission (line 700) as follows: | | | |
| 701. $                            to | | | |
| 702. $                            to | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |

| **800. Items Payable in Connection with Loan** | | | |
|---|---|---|---|
| 801. Our origination charge | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. Your adjusted origination charges | (from GFE A) | | |
| 804. Appraisal fee to | (from GFE #3) | | |
| 805. Credit report to | (from GFE #3) | | |
| 806. Tax service to | (from GFE #3) | | |
| 807. Flood certification | (from GFE #3) | | |
| 808. | (from GFE #3) | | |
| 809. | (from GFE #3) | | |
| 810. | (from GFE #3) | | |
| 811. | (from GFE #3) | | |
| 812. | (from GFE #3) | | |
| 813. | (from GFE #3) | | |
| 814. | (from GFE #3) | | |
| 815. | (from GFE #3) | | |
| 816. | (from GFE #3) | | |

| **900. Items Required by Lender to Be Paid in Advance** | | | |
|---|---|---|---|
| 901. Daily interest charges from   1/31/2024   to   1/31/2024   @ $        /day | (from GFE #10) | | |
| 902. Mortgage insurance premium   for     months to | (from GFE #3) | | |
| 903. Homeowner's insurance   for     years to | (from GFE #11) | | |
| 904. | | | |
| 905. | | | |

| **1000. Reserves Deposited with Lender** | | | |
|---|---|---|---|
| 1001. Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. Homeowner's insurance      months @ $          per month | | | |
| 1003. Mortgage insurance      months @ $          per month | | | |
| 1004. Property taxes      months @ $          per month | | | |
| 1005.      months @ $          per month | | | |
| 1006.      months @ $          per month | | | |
| 1007. Aggregate Adjustment | | | |

| **1100. Title Charges** | | | |
|---|---|---|---|
| 1101. Title services and lender's title insurance      Emerald Title Agency | (from GFE #4) | 1,764.00 | |
| 1102. Settlement or closing fee                550.00 | | | |
| 1103. Owner's title insurance      Emerald Title Agency | (from GFE #5) | | |
| 1104. Lender's title insurance | | | |
| 1105. Lender's title policy limit (N/A) | | | |
| 1106. Owner's title policy limit $55,000.00 | | | |
| 1107. Agent's portion of the total title insurance premium  Emerald Title Agency          $245.65 | | | |
| 1108. Underwriter's portion of the total title insurance premium  Westcor Land Title Insurance Company          $43.35 | | | |
| 1109. Chancery Abstract                Greater Atlantic Legal | | 235.00 | |
| 1110. Buyer's Attorney Fee | | | |
| 1111. Seller Processing Fee          Emerald Title Agency | | | 225.00 |
| 1112. | | | |
| 1113. Overnight - TSC                Emerald Title Agency | | | 40.00 |
| 1114. Bank Check - TSC                Emerald Title Agency | | | 30.00 |
| 1115. Cert of Redemption - TSC          Clerk of Cumberland County | | | 73.00 |

| **1200. Government Recording and Transfer Charges** | | | |
|---|---|---|---|
| 1201. Government recording charges    Clerk of CUMBERLAND County | (from GFE #7) | 163.00 | |
| 1202. Deed $133.00          Mortgage $          Releases $ | | | |
| 1203. Transfer taxes          Clerk of CUMBERLAND County | (from GFE #8) | | |
| 1204. City/County tax/stamps      Deed $          Mortgage $ | | | |
| 1205. State tax/stamps      Deed $220.00          Mortgage $ | | | 220.00 |
| 1206. Notice of Settlement | | | |
| 1207. Plotting Deed                30.00 | | | |

| **1300. Additional Settlement Charges** | | | |
|---|---|---|---|
| 1301. Required services that you can shop for | (from GFE #6) | | |
| 1302. TSC #23-00387          Emerald Title Agency | | | 5,243.33 |
| 1303. 2024 Taxes & Solid Waste          Emerald Title Agency | | | 643.80 |
| 1304. | | | |
| 1305. | | | |
| 1306. Assignment Fee (NET = $2,350 - SELLER      Israel Investment Properties LLC | | 3,000.00 | |
| CREDIT) | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |

| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | 5,162.00 | 6,475.13 |
|---|---|---|---|

CONFIDENTIAL          EBURY_00081402

## Comparison of Good Faith Estimate (GFE) and HUD-1 Charges

| Charges That Cannot Increase | HUD-1 Line Number | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Our origination charge | # 801 | | |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | | |
| Your adjusted origination charges | # 803 | | |
| Transfer taxes | # 1203 | | |

| Charges That in Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | | 163.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Mortgage Insurance Premium | # 902 | | |
| | | | |
| Title services and lender's title insurance | # 1101 | | 1,764.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total | $0.00 | $1,927.00 |
| | Increase between GFE and HUD-1 Charges | $1,927.00 | or    % |

| Charges That Can Change | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | | |
| Daily interest charges | # 901    $/day | | |
| Homeowner's insurance | # 903 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### Loan Terms

| | |
|---|---|
| Your initial loan amount is | $ |
| Your loan term is | years |
| Your initial interest rate is | % |
| Your initial monthly amount owed for principal, interest, and and any mortgage insurance is | $ includes ☐ Principal ☐ Interest ☐ Mortgage Insurance |
| Can your interest rate rise? | ☐ No. ☐ Yes, it can rise to a maximum of %. The first change will be on and can change again every  after . Every change date, your interest rate can increase or decrease by %. Over the life of the loan, your interest rate is guaranteed to never be lower than % or higher than %. |
| Even if you make payments on time, can your loan balance rise? | ☐ No. ☐ Yes, it can rise to a maximum of $. |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☐ No. ☐ Yes, the first increase can be on  and the monthly amount owed can rise to $. The maximum it can ever rise to is $. |
| Does your loan have a prepayment penalty? | ☐ No. ☐ Yes, your maximum prepayment penalty is $. |
| Does your loan have a balloon payment? | ☐ No. ☐ Yes, you have a balloon payment of $ due in  years on . |
| Total monthly amount owed including escrow account payments | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself. ☐ You have an additional monthly escrow payment of $ that results in a total initial monthly amount owed of $. This includes principal, interest, any mortgage insurance and any items checked below: ☐ Property taxes    ☐ Homeowner's insurance ☐ Flood insurance ☐                       ☐ |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

CONFIDENTIAL                    EBURY_00081403

# EXHIBIT E

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 197
RECEIVED NYSCEF: 02/29/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 103 of 438

**Mayron, Austin P.**

| | |
|---|---|
| **From:** | Mayron, Austin P. |
| **Sent:** | Monday, February 26, 2024 4:03 PM |
| **To:** | Kari Parks (kparks@gusraekaplan.com); Victor Wang |
| **Cc:** | Willscher, Alexander J.; Savoie, Erin L. |
| **Subject:** | Re: Emigrant/Ebury |

Kari, Victor,

We are reviewing your filing from last Thursday and had a few follow-up requests, which hopefully you can address to avoid further motion practice:

- Please provide the bank statements described as Exhibit A to Mr. Hanratty's affidavit, which were not filed along with the affidavit itself;
    - In addition to those bank statements, please provide twenty-four months of bank statements from that account so that we can verify Mr. Hanratty's assertion that the "bank account's balance rarely, if ever, has exceeded the low five figures."
- Mr. Hanratty states he has "one bank account, which I share with my wife." Please confirm that Mr. Hanratty and his wife do not have access to any other bank accounts (other than the Ebury corporate accounts reflected in Defendants' monthly financial reporting);
    - In addition, please confirm that Mr. Hanratty does not have ownership of or access to any brokerage or retirement accounts, or own any stocks, bonds, or other securities. If Mr. Hanratty does own or have access to such accounts or own marketable securities, please provide statements showing the amounts of his holdings;
- Please confirm the date of the $109,777.50 bulk sale that Defendants reported in their monthly financial reporting for the month of January, and explain why Mr. Hanratty described the transaction as "collect[ing] various payments that are due to the Ebury Entities and to me."
- Finally, as we requested on February 16, please explain why Mr. Hanratty has stopped reporting his transactions in QuickBooks since January 10, 2024. If you believe Mr. Hanratty has continued to report transactions to QuickBooks, please let us know.

We are available tomorrow if you would like to discuss any of these requests.

Best,

**Austin P. Mayron**
**SULLIVAN & CROMWELL LLP**
125 Broad Street | New York, NY 10004-2498
+1 212 558 3733 (T) | +1 518 577 1643 (M)
mayrona@sullcrom.com | www.sullcrom.com

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM

NYSCEF DOC. NO. 198

INDEX NO. 158207/2022

RECEIVED NYSCEF: 02/29/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 104 of 438

# EXHIBIT F

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 198    24-04020, Case 1: Doc. 137, Doc. 0008/14/2024, Entered: Filed: 04/24/24 49:45:23, Page 1 Doc #4 State    RECEIVED NYSCEF: 02/29/2024

Court Records    Pg 105 of 438

# GUSRAE KAPLAN NUSBAUM PLLC

### ATTORNEYS AT LAW

| | | |
|---|---|---|
| RICHARD DEVITA | 120 WALL STREET – 25TH FLOOR | OF COUNSEL |
| TIMOTHY FEIL | NEW YORK, NEW YORK 10005 | ROBERT L. BLESSEY |
| SCOTT H. GOLDSTEIN | | |
| MARTIN H. KAPLAN | | SENIOR COUNSEL |
| LAWRENCE G. NUSBAUM | 425 BROADHOLLOW ROAD | ERIC M. LEANDER |
| KARI PARKS | SUITE 300 | |
| | MELVILLE, NEW YORK 11747 | |

TEL. (212) 269-1400
FAX  (212) 809-4147

www.gusraekaplan.com

January 11, 2024

**VIA ECF**

The Honorable Judges of Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

         RE: <u>USA v. Hanratty</u>, 23-mj-7566

Dear Honorable Judges of the Southern District of New York:

       I represent Defendant John Arthur Hanratty in the above-captioned action and write to respectfully request that the Court adjourn Mr. Hanratty's deadline for satisfying his remaining bond conditions by one week, from today, January 11, 2024, to next Thursday, January 18, 2024. <u>See</u> Dkt. 4 (Dec. 21, 2024). This is Mr. Hanratty's second request to modify his bond conditions. The Prosecution does not object to this request.

       Mr. Hanratty's bond conditions require him to post a four-hundred thousand United States dollar ($400,000.00 USD) collateral. We are currently in the process of finalizing the affidavits of confessions of judgment forfeiting the collateral against the equities in the properties.

       Thank you for considering our adjournment request.

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 198
RECEIVED NYSCEF: 02/29/2024

GUSRAE KAPLAN NUSBAUM PLLC

The Honorable Judges of the Southern District of New York
January 11, 2024
Page 2

Respectfully submitted,

/s/ Kari Parks
Kari Parks

CC: All counsel of record (via ECF)

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 199
RECEIVED NYSCEF: 02/29/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records    Pg 107 of 438

# EXHIBIT G

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK:  CIVIL TERM:  PART 49
 2    ------------------------------------------------X
      EMIGRANT BUSINESS CREDIT CORPORATION,
 3
                              Plaintiff,
 4
                      - against -                    INDEX #
 5                                                   158207-2020

 6    JOHN ARTHUR HANRATTY, EBURY STREET CAPITAL, LLC,
      EBURY FUND 1, LP, EBURY FUND 2, LP, EBURY IEMI
 7    LLC, EBURY 2EMI LLC, EB 1EMIALA LLC, EB 2EMIALA
      LLC, EB 1 EMIFL, LLC, EB 2EMIFL, LLC, EB 1EMIIN,
 8    LLC, EB 2EMIIN, LLC, EB 1 EMIMD, LLC, EB 2EMIMD,
      LLC, EB1EMINJ, LLC, EB 2EMINJ, LLC, EB 1EMINY,
 9    LLC, EB 2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC,
      LLC, RE 1EMI LLC, RE 2EMI LLC, EB 2 EMIDC, LLC,
10    ARQUE TAX RECEIVABLE FUND (MARYLAND), LLC, EBURY
      FUND 1FL, LLC, EBURY FUND 2FL, LLC, EBURY FUND
11    1NJ, LLC, EBURY FUND 2NJ, LLC, RED CLOVER 1, LLC,
      EBURY RE LLC, and XYZ CORPS 1-10,
12
                              Defendants.
13    ------------------------------------------------X
                              January 24, 2024
14                            60 Centre Street
                              New York, New York 10007
15

16    B E F O R E:  THE HONORABLE MARGARET CHAN,
                              Justice of the Supreme Court
17

18
      A P P E A R A N C E S:
19

20            SULLIVAN & CROMWELL LLP
              Attorneys for Plaintiff
21            125 Broad Street
              New York, New York 10004
22            BY: AUSTIN P. MAYRON, ESQ.
                  ALEXANDER J. WILLSCHER, ESQ.
23                ERIN L. SAVOIE, ESQ.

24
      (Continued...)
25


                  Lisa Casey - Senior Court Reporter
```

1

2  A P P E A R A N C E S:  (Continued.)

3

4                GUSRAE KAPLAN NUSBAUM LPPC
                 Attorneys for Defendants
5                120 Wall Street
                 New York, New York 10005
6                BY: KARI PARKS, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19                              LISA CASEY
                                Senior Court Reporter
20

21

22

23

24

25

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 199    2404020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/29/2024
                                      Court Records    Pg 110 of 438

Proceedings

1                    THE COURT:  This is Emigrant Business Credit

2          Corp. versus John Arthur Hanratty, et al.  I'll have your

3          appearances, now.

4                    MR. MAYRON:  Austin Mayron, Sullivan Cromwell, on

5          behalf of plaintiff, Emigrant Business Credit Corporation.

6          With me today are Alex Willscher and Erin Savoie, also with

7          Sullivan Cromwell.

8                    THE COURT:  Thank you.

9                    MS. PARKS:  Good afternoon, your Honor.  Kari

10         Parks, Gusrae Kaplan Nusbaum, PLLC, for defendants.  Thank

11         you.

12                   THE COURT:  Thank you.

13                   All right.  Mr. Mayron, why don't you start us

14         off, and so we have it on the record, what this motion for

15         contempt is about.

16                   MR. MAYRON:  Thank you, your Honor.

17                   May it please the Court, we are here today on

18         motion sequence number five, which is plaintiff Emigrant

19         Business Credit Corporation, or EBCC's, motion for

20         contempt.

21                   As a little bit of background, this Court entered

22         a preliminary injunction in November of 2022, and the

23         preliminary injunction order contained three requirements.

24         The first requirement was that the defendants had to

25         provide notice before transferring any assets in an amount

Proceedings

1          of $50,000 or more.  This provision was key to the

2          preliminary injunction, because it was meant to provide

3          EBCC the opportunity to contest or object to transfers, or

4          to investigate further if there were doubts about the

5          fairness of the transaction.

6                   There were two other provisions of the

7          preliminary injunction order.  The first is that defendants

8          were not allowed to transfer assets outside the ordinary

9          course of business, and the second that was if defendants

10         transferred or sold tax lien or real estate assets, they

11         had to deposit the proceeds of those transactions into an

12         escrow account, less ordinary and necessary business

13         expenses related to their tax lien or business expenses.

14                  So, since that order was entered in November 2022

15         defendants have escrowed only $65,000, and for reference on

16         the scope of defendant's business, in October 2022

17         Defendant John Arthur Hanratty submitted an affidavit to

18         the Court.  This is paragraph 41 of docket entry 24.  I can

19         provide your Honor with a copy, if you would like.

20                  THE COURT:  Thank you.

21                  (Whereupon, a document was handed to the Court.)

22                  MR. MAYRON:  So, paragraph 41, which is on page

23         seven, Mr. Hanratty testified in 2022, the Ebury entities'

24         average monthly revenue has risen to $753,096, leaving the

25         Ebury entities in the best cash position since the pandemic

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM     INDEX NO. 158207/2022

NYSCEF DOC. NO. 199     2404020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State     RECEIVED NYSCEF: 02/29/2024

Court Records   Pg 112 of 438

Proceedings

1    happened.  So, for reference, since around when that

2    affidavit was entered, defendants had escrowed only

3    $65,000.

4          As another point of comparison, since

5    October 12th, 2023, about a month and a half ago, according

6    to defendant's own books and records, defendants have

7    transferred $180,750 directly to John Hanratty.  We do not

8    have any other information about those transfers, other

9    than we see that they were made, and this amount dwarfs the

10   amount that had been escrowed, to date.

11         So, we are here today because, after Mr. Hanratty

12   was arrested, EBCC investigated defendant's books and

13   records to see if there were any improper transfers of

14   funds.  This was belt and suspenders, because defendants

15   were supposed to be providing this information on a monthly

16   basis pursuant to the Court's preliminary conference order,

17   but EBCC still checked nonetheless, and what we discovered

18   was, since October 2023, there were repeated violations of

19   this Court's orders.

20         First, in October, there was a transfer of a tax

21   lien for over $87,000 in book value.  They received

22   $50,000, and this transfer, EBCC was not provided advance

23   notice; the proceeds were not escrowed; and moreover, this

24   transaction was not disclosed on defendant's reporting the

25   following month as required by the preliminary conference

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 113 of 438

Proceedings

1    order.

2              Then, in December, we saw a transaction where

3    defendants made a bulk sale of $1.1 million worth of

4    Emigrant's tax lien collateral for only about $250,000,

5    representing a nearly 80 percent discount.  Based on our

6    review of defendant's books and records, it seems as though

7    this sale was done at a substantial discount, a distress

8    sale, less than what defendant's even paid or invested into

9    these tax liens.

10             We then followed what happened to that 256,000,

11   and there were numerous suspicions transfers.  The most

12   chiefly of all, we saw a transfer two days after defendant

13   John Arthur Hanratty was arrested.  He transferred $75,000

14   to himself.  He did not provide EBCC the required 24 hours

15   advance notice, and we have no idea what those funds were

16   being used for.

17             In defendant's response papers, they suggest that

18   these funds were being used for criminal defense expenses,

19   but we don't believe that's the case because we see, in

20   defendant's books and records.  When they pay their

21   counsel, Ms. Parks, we see entries for direct transfers

22   directly to Gusrae Kaplan Nusbaum, the defendant's law

23   firm.  This transfer, in addition to the other $180,000

24   that have been transferred since October, we don't see

25   transfers directly to law firms, we see transfers directly

Lisa Casey - Senior Court Reporter

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 199    2404020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/29/2024
Court Records    Pg 114 of 438

Proceedings

1          to Mr. Hanratty, himself.

2                    So, these incidents, the October incident where

3          Mr. Hanratty sold, transferred, a tax lien with book value

4          of 87,000 without advance notice to Emigrant, failed to

5          escrow the proceeds; the incident in his November reporting

6          where he then failed to disclose that October transaction;

7          the incident in December, where he made a bulk sale of

8          almost $1.1 million worth of tax liens without notifying

9          EBCC, and without escrowing the proceeds; and then when he

10         transferred $75,000 to himself, two days after he was

11         arrested, each of those is a violation of this Court's

12         orders.

13                   To find contempt, the Court need only find four

14         things.  The first is clear and unequivocal mandates, and

15         we believe those are satisfied by this Court's preliminary

16         injunction order and preliminary conference order.

17                   The second element is, the order has been

18         disobeyed.  The evidence we have submitted, and defendants

19         have failed to really contest, is that the orders were

20         disobeyed.

21                   The third is that the party to be held in

22         contempt have knowledge of the Court's orders.  We believe

23         this element is satisfied, and defendant's have failed to

24         controvert it.  In fact, Mr. Hanratty himself submitted an

25         affidavit in opposition to the PI motion that the Court

Lisa Casey - Senior Court Reporter

Proceedings

1      ultimately had granted in its preliminary injunction order.

2      And then prejudice, and we believe we have established

3      prejudice, and the chief prejudice here is the reason the

4      preliminary injunction order contains an advance notice

5      provision, is so that Emigrant can object; that we can

6      speak with the defendants and say, We object, we want to

7      know more about the transaction; and we can come to court

8      to solve it beforehand.

9           That's the whole purpose of the PI, is to resolve

10     these issues beforehand, and that process was not followed

11     here, and there's prejudice, and there's ample First

12     Department caselaw that establishes that that is prejudice.

13     I'll direct you to page seven of our motion for contempt,

14     which is docket 109.  This is the Board of Directors of

15     Windsor Owners Corp., which says Judiciary Law 753 does not

16     require a showing of monetary harm as a precondition to a

17     finding of civil contempt, and then also in our opposition

18     papers to defendant's order to show cause -- this is motion

19     sequence six -- we cite, at page 7 of docket 1660, we cite

20     the Ficus Investments case, where the Court -- this is the

21     First Department -- found prejudice where the defendant

22     impermissibly negotiated conveyance of certain mortgages,

23     without providing notice to plaintiffs.

24          So, we believe that all the requirements for

25     civil contempt are established here, and then criminal

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 116 of 438

Proceedings

 1    contempt, the only additional element that needs to be

 2    shown is willfulness, and the Court of Appeals has said

 3    that willfulness is a relatively low bar.  It's an

 4    awareness of the act that is other than unwitting conduct.

 5    We do not believe that what's happened here is unwitting

 6    conduct, including the circumstances where Mr. Hanratty

 7    transferred himself $75,000, two days after being arrested.

 8         I'm happy to speak more about this motion, or the

 9    other motion sequences, if your Honor has any questions.

10         THE COURT:  No.  I would like to hear from

11    Ms. Parks.

12         MS. PARKS:  Thank you, your Honor.

13         I'll be straight with you.  We do not contest

14    that my clients have violated the notice and recording

15    requirements of your Honor's injunction order.  I believe

16    Mr. Mayron identified four separate alleged violations, so

17    I believe that will cover -- the first violation, which was

18    the October 23 transaction, approximately $7,000, we don't

19    contest that that's a violation of your Honor's order.

20         We do not contest the second incident, which

21    was -- oh, the November, it's related to the October event,

22    but one of your Honor's injunction orders is that my

23    clients provide a monthly report about two weeks after each

24    month detailing certain transactions that exceed the

25    recording threshold amount, so we do not contest that my

Lisa Casey - Senior Court Reporter

Proceedings

1    client failed to report that October transfer in their

2    November report.

3         We do not contest the third item that Mr. Mayron

4    discussed, which is the, I believe, December 11th, 2023

5    bulk sale.  The only point we had to say to that is that it

6    looks like breaking apart for several transactions

7    underlying it, some of those transactions related to assets

8    that had a book or sale values above that recording

9    transaction threshold.  Some of the transactions have lower

10   ones, but other than that, certainly taken in the

11   aggregate, we do not contest that that was up there, as

12   well.

13        I think, on the merits, the only incident that we

14   don't believe violated clear and unequivocal mandate from

15   your Honor was the fourth, which is the $75,000 transfer on

16   December 20th, 2023.  That transfer was from one of the

17   corporate accounts, I don't remember which one, to

18   Mr. Hanratty that Mr. Mayron mentioned.  We don't believe

19   that that violated a clear an unequivocal mandate from your

20   Honor, because the injunction language prevented

21   transferring, et cetera, et cetera, and essentially we read

22   that injunction provision to require that if any of my

23   clients were to transfer, for example, money outside of

24   that group, outside of each other, essentially, we would

25   have to report it.  We didn't understand that to mean that

1       within, essentially intra-defendant transfers, would also

2       require that reporting.  We could have sought clarity on

3       that, I suppose, before this incident, but in our

4       submission here, we don't think that's a clear and

5       unequivocal mandate, especially given that, sort of, taking

6       us all in the time machine, back about 15 months, the one

7       of the original functions of plaintiff's request for the

8       injunctive relief order was this idea of fraudulent

9       conveyance; moving outside of the defendants, whom I

10      represent here.

11              So, in sum, we certainly don't contest that the

12      first three issues violated your Honor's order.  We don't

13      necessarily believe that $306,000 -- oh, and actually, let

14      me add one more.  I think --

15              THE COURT:  Agreement or disagreement?

16              MS. PARKS:  No, actually, one more that I think,

17      to -- frankly, I don't think it's throwing my client under

18      the bus, but I think it's clear.  In connection with the

19      order to show cause on this particular motion, your Honor

20      ordered my client to escrow approximately $306,000 which

21      they did not do, and so while we are all here I will say

22      that, too, would be a violation of your Honor's order.  It

23      wasn't set forth in the moving papers because it hasn't

24      happened yet, but in the interests of transparency, that

25      look like a violation.

                    Lisa Casey - Senior Court Reporter

Proceedings

```
 1              THE COURT:  Okay.  Do you wish to add that in?

 2              MR. MAYRON:  Just quickly, your Honor, in terms

 3         of whether the preliminary injunction order was a clear and

 4         unequivocal mandate that, for instance, the Ebury companies

 5         couldn't transfer Mr. Hanratty's $75,000, I think the

 6         language of your Honor's order is quite clear.  This is the

 7         condition on page 8 of docket 47, which says that

 8         defendants and other related persons must notify Emigrant

 9         at least 24 hours in advance of, and it lists -- it says,

10         Transferring, and a bunch of synonyms, Any assets in an

11         amount exceeding $50,000, and what I heard Ms. Parks say is

12         that it wasn't clear if this applied to intra-company

13         transactions, but I'm directing your Honor to the

14         preliminary conference order, which is docket 53, and as

15         part of the preliminary conference order, your Honor

16         ordered defendants to provide documentation for any

17         proceeds in excess of 5,000, and disbursements in excess of

18         10,000.

19              We have been receiving that monthly reporting

20         since December of 2022, and defendants have disclosed,

21         repeatedly, intra-company transactions, and so this, I

22         think, is strong evidence that defendants have understood

23         the order by its plain and unequivocal language.

24              I'll also note another thing about what Ms. Parks

25         just said, which is that it appears that Mr. Hanratty still
```

Lisa Casey - Senior Court Reporter

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 120 of 438

Proceedings

1    has the money, the proceeds of these sales, and all we ask

2    is that he give the money back in accord with the credit

3    agreements he executed back in 2017, and the terms of your

4    Honor's orders.

5                    MS. PARKS:  Briefly?

6                    THE COURT:  Go ahead.

7                    MS. PARKS:  I'm sorry.  I must have misspoken.

8    Maybe I was not clear.  I'm not saying the $75,000 -- let

9    me reboot.  The $75,000 transfer certainly violated the

10   pre-advance notification provisions, or at least arguably

11   so.  I can understand that.  My point was that, as far as

12   the underlying substance of the transaction, there's the

13   first two clauses of your Honor's injunctive order,

14   docket 47, refer to transfers, et cetera, outside of

15   ordinary and necessary business and living expenses, so

16   that was the portion I was referring to, that the $75,000

17   transfer does not clearly -- did not violate a clear and

18   unequivocal mandate by your Honor.

19                   THE COURT:  You wish to respond to that?

20                   MR. MAYRON:  Yes, your Honor.  I think what our

21   position is, first of all, it's not clear what the purpose

22   the $75,000 transfer is.  There's some attorney argument

23   that it's being used for criminal defense expenses, but

24   again, this is inconsistent with what we have seen in the

25   past.  Defendants' practice is to pay their lawyers

1    correctly from their corporate account.

2    In terms of whether criminal defense expenses are

3    ordinary and necessary business expenses related to

4    defendant's tax lien and real estate businesses, I think

5    our position is that they are not, and that's, we think,

6    clear from the text of the order.  To the extent there's

7    any ambiguity, that doesn't excuse defendants' failure to

8    notify plaintiff that they were going to make these

9    transfers, because that requirement is clear and

10    unequivocal.  But, if there is ambiguity, we would

11    respectfully ask that the Court make clear and clarify the

12    preliminary injunction order, that defendants can't use

13    what plaintiff believe are the proceeds of fraud to pay for

14    the expenses of defending the fraud.

15    THE COURT:  Well, I think that if you got

16    notification, you would have said something; correct?

17    MR. MAYRON:  Yes, your Honor.

18    THE COURT:  So, that's an admitted violation, and

19    that's why there was this notification requirement, so that

20    if there are any contests, such as there is now, then you

21    could have just come to the Court and say, Is this part of

22    the household-type expenses, or not?  I hate to think that

23    lawyers fees for criminal defense is a normal household

24    expense.

25    MS. PARKS:  Well, your Honor, two points.  One, I

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 199          24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 02/29/2024
                                        Court Records   Pg 122 of 438

Proceedings

1    will make the representation that I personally represent

2    Mr. Hanratty in a criminal matter.  He was arrested on

3    December 18th.  I was out of the country in a different

4    time zone, and then I sent a retainer agreement for

5    $75,000, sometime between December 18th and 19th.  So,

6    that's on that.

7             As far as -- I'm not trying to say, maybe there

8    may be not be caselaw that it's an ordinary living expense,

9    however no less authority than the IRS had said that legal

10   fees and criminal defense fees can be considered ordinary

11   and necessary business expenses, and that's why, your

12   Honor, in this situation, the two funds' partnership

13   agreement, sitting at the top, provide for advancement and

14   indemnification of all legal fees of the principal relating

15   to the business, including criminal defense fees, and it's

16   a fairly typical advancement provision in that the entity

17   that's required to advance those fees, unless and until

18   there's a final, non-appealable judgment in the criminal

19   matter, at which point, of course, typically, we see all

20   the -- the entity and the former executives then sue each

21   other over who should be paying what.

22            THE COURT:  Okay.  Granted that it may or may not

23   be considered regular household expense, nonetheless, there

24   should have been notification, and that issue could have

25   been explored more in depth.  So, had he notified

Lisa Casey - Senior Court Reporter

Proceedings

```
 1        plaintiffs of that, this wouldn't be an issue.

 2             I think you also asked for a stay?

 3             MS. PARKS:  Well, yes, your Honor.  We have moved

 4        for a stay pending the criminal action, because it's

 5        related, and I'm happy to talk about that at length, if you

 6        would like.

 7             THE COURT:  Yes.

 8             MS. PARKS:  Okay.  Let me switch papers.

 9             THE COURT:  I think we need to discuss that.

10             MS. PARKS:  Okay.  Sure.

11             Thank you, your Honor, for the opportunity to

12        discuss that, and I know Mr. Mayron put in opposing papers,

13        so your Honor has seen both sides of the issue at this

14        point, I'm sure.

15             You have great discretion in deciding whether or

16        not to grant a motion to stay.  That's clear.  It's also

17        clear that, in the vast majority of cases where there's a

18        related criminal and civil proceeding, the civil proceeding

19        typically gets stayed, not only for Fifth Amendment

20        reasons, but also for other reasons of, essentially,

21        judicial economy, and prejudice to the parties and the

22        Court and judicial system, and the possibility of avoiding

23        inconsistent results, and also just streamlining issues.

24             So, for example, in this case, EBCC originally

25        filed this lawsuit in September 2022 out of a failure to
```

Proceedings

1          repay a loan agreement.  So, you have your, sort of,

2          typical breach of contract claim.  We also have a

3          fraudulent inducement and fraudulent conveyance claim.  As

4          we set out, we essentially tried to A, B, compare the

5          EBCC's complaint and allegations against this new criminal

6          case that has been filed in the Southern District of New

7          York, via complaint, that is accusing Mr. Hanratty, the

8          principal of the entity defendants, of defrauding EBCC.

9                  Now, the allegations are identical, in substance.

10         The charging instrument in this case -- it's a little

11         unusual, but it's a complaint, so it takes the form of an

12         FBI Affidavit, and that FBI affidavit relies upon

13         information, interviews, and documents all provided by

14         EBCC, that EBCC collected in preparation for this

15         particular case, so there's really no question that in this

16         particular situation, the criminal and the civil case are

17         very, very intertwined.

18                 Now, one reason why this is a little bit unusual

19         of your typical motion to stay a parallel civil action case

20         is because discovery has been completed in this case, and

21         depositions have occurred, and that's highly unusual.

22         Usually, the sequencing is a little different from how we

23         usually appear, and I frankly looked for similar cases.  I

24         haven't found too many, but so while the Fifth Amendment

25         implications are maybe lower than they might be in a

2404020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 125 of 438

Proceedings

1    typical prediscovery case, because Mr. Hanratty sat for two

2    days of deposition, they are not entirely gone, because for

3    first of all, EBCC's three claims are still alive, and I

4    can get into that more, but as your Honor knows, any

5    submission to the Court made on Mr. Hanratty's behalf is

6    still his statement, for all purposes, and he is still

7    defending, in this civil case, those live fraudulent

8    inducement and fraudulent transfer claims.

9         But, besides the Fifth Amendment issue, it's a

10   little unusual here.  I think the overlapping facts of the

11   criminal and civil matter show that it would much more

12   efficient, and a much better use of public resources, to

13   let the criminal case play out, because of course, in the

14   federal criminal case, what the Southern District of New

15   York prosecutor's office is trying to prove is that

16   Mr. Hanratty defrauded Emigrant in the same way alleged by

17   Emigrant in this civil complaint, and the allegations and

18   the charges in that case are wire fraud and bank fraud, so

19   the elements are overlapping, and of course the

20   prosecutor's office has the obligations to prove those

21   charges beyond a reasonable doubt; right?

22        So, what we see here is, and the caselaw is also

23   clear, that a guilty plea has the same estoppel effect in a

24   related matter as a full-on jury trial adjudication would,

25   so what we are facing is a situation in which the

Proceedings

```
 1          prosecutor's office has now assumed, at least, or taken

 2          joint responsibility, it's not clear, for this prosecution

 3          of the fraud, alleged fraud against Emigrant, and if the

 4          prosecutors' office were to succeed on that, or if

 5          Mr. Hanratty were to plead guilty to that, we would now be

 6          estopped, and there would essentially be no more work for

 7          this Court.  It would be very routine and simple, because

 8          all of those material facts would have estoppel effects

 9          here, and of course your Honor would still do exactly what

10          she is supposed to be doing, but the level of work is going

11          to be much less involved.

12                    Here in this civil case, while plaintiffs have --

13          or plaintiff, excuse me, has filed its opening brief in

14          support of motions for summary judgment, right now there's

15          still three briefs left for summary judgment, because our

16          stipulated briefing schedule agreed to cross motions from

17          defendants combined with an opposition brief, then Emigrant

18          has a chance to respond, et cetera.

19                    So, we have three summary judgment briefs left,

20          which is a not-insignificant amount of work and expense,

21          frankly, and time.  I believe that current briefing

22          schedule is set forth, the last brief to be filed the first

23          week of March.  I don't remember the exact date.

24                    THE COURT:  One second.

25                    MS. PARKS:  Yes.
```

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 199
RECEIVED NYSCEF: 02/29/2024

2404020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 127 of 438
Proceedings

 1                    (Whereupon, there was a pause in the

 2          proceedings.)

 3                    THE COURT:  Okay.  Go ahead.

 4                    MS. PARKS:  So, of course, besides the parties

 5          having to work with three more briefs, your Honor and your

 6          staff are going to be reading them and reviewing them.

 7          These are summary judgment briefs.  It's not a prediscovery

 8          motion.  These are voluminous submissions, as we saw with

 9          the first brief.  The exhibits were about this big

10          (indicating), and of course, let's say, for example, even

11          if my clients do not file a cross motion for dismissal of

12          the two fraud claims, those two fraud claims still exist.

13          There will be no -- there's no summary judgment ruling at

14          all in those two claims, and that means we are still

15          looking at going to trial, and a trial date hasn't been

16          set.

17                    So, in this situation, the Fifth Amendment

18          concerns are real.  They are very different from the

19          typical case, but the judicial economy reasons matter a

20          lot, and the public rights and the public prejudice and

21          waste of judicial resources matters more, I believe, in

22          this case.

23                    Thank you.

24                    THE COURT:  Okay.

25                    MR. MAYRON:  Thank you, your Honor.

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM   INDEX NO. 158207/2022

NYSCEF DOC. NO. 199   2404020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 02/29/2024

Court Records   Pg 128 of 438

Proceedings

1          So, as EBCC has set out in its papers, the scheme

2     to defraud began in 2018, six years ago.  Defendants failed

3     to repay Emigrant at the original maturity date in March of

4     2021, three years ago.  Defendants defaulted at final

5     maturity in November 2, 2021, two and a half years ago.

6     This case has been pending over a year.

7          As the Barbarito case says, justice delayed is

8     justice denied.  Every day that passes increases the risk

9     that defendants will not be able to satisfy a judgment

10    against them.  Interest is continuing to accrue at a

11    default rate of an index rate plus 10 percent, and it is

12    unlikely defendants are going to be able to make these

13    payments, after judgment.

14         In addition, defendants, as we see from the

15    contempt motion, they're continuing to transfer assets and

16    violate this Court's orders, and so a stay would only

17    increase the risk of further violations of this Court's

18    order.

19         I think the best place to start is the text of

20    the CPLR, which authorizes this Court, in its sound

21    discretion, to grant a motion for a stay, and what CPLR

22    2201 says is that a stay of proceeding can be granted in a

23    proper case, and upon such terms as may be just, and we

24    don't believe that this is a proper case, or that there are

25    terms that would be just for granting such a stay.

Lisa Casey - Senior Court Reporter

Proceedings

```
 1              As the First Department said in Access Capital,

 2       invoking the privilege against self incrimination is

 3       generally an insufficient basis for precluding discovery in

 4       a civil matter.  That's discovery.  We are done with

 5       discovery.  Discovery has been done for six months.

 6       Mr. Hanratty sat through two days of depositions, nearly

 7       16 hours on the record, answered almost 2,000 questions.

 8              I don't know if your Honor has had an opportunity

 9       to look at our summary judgment papers on our breach of

10       contract claim, but we highlight some of the many

11       admissions that Mr. Hanratty made at his deposition, and so

12       for instance, in our stay papers, docket 156 at page 11, we

13       quote from Mr. Hanratty's deposition where he says, I am

14       currently in default, and owe money to Emigrant.  Yes.  He

15       also says, I acknowledge that I owe them money, and I want

16       to pay them.

17              Mr. Hanratty made other admissions, such as

18       submitting false certifications to Emigrant, that certain

19       valuations being submitted to Emigrant were incorrect, and

20       I even presented him with notarized statements that he had

21       obtained that were false, and I showed him New Jersey Penal

22       Law Section 210.35, which covers Making Apparently Sworn

23       False Statements in the Second Degree, and he admitted to

24       the conduct that he had done, making apparently false sworn

25       statements.
```

Lisa Casey - Senior Court Reporter

Proceedings

1              So, that's all to say that in this case,

2       discovery is complete.  There is no need for further

3       testimony from Mr. Hanratty, and this case can proceed to

4       summary judgment.  EBCC moved for summary judgment on its

5       breach of contract claims alone, because fraud has issues

6       of intent which are not suitable for resolution at summary

7       judgment, and all of plaintiff's breach of contract claims

8       can be resolved based on the undisputed factual records,

9       defendant's admissions, Ms. Hanratty's admissions at his

10      deposition.

11             Also, all of the cases -- and we go through each

12      and every case that defendants cite in their stay papers on

13      page six of our opposition.  This is docket 156.  In every

14      case that defendants cite granting a stay, it was prior to

15      a deposition of a party where the indication of a Fifth

16      Amendment right was adversely impacted, the party's rights.

17             We have other reasons that we detail.  I think we

18      have six different reasons why a stay would be unjust under

19      these circumstances, in our opposition papers.  I'm happy

20      to go through any of them that your Honor wants.

21             THE COURT:  Well, I don't think it's a surprise,

22      that defendant Mr. Hanratty is in contempt for violation of

23      at least four -- I'm counting the $75,000 one, as well --

24      four incidents of violating the Court order, and you sought

25      how much to be held?

Lisa Casey - Senior Court Reporter

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 199    2404020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 02/29/2024

Court Records    Pg 131 of 438

Proceedings

```
 1              MR. MAYRON:  We sought a punishment for civil

 2       contempt of $306,000.  Let me get the exact number.

 3              $306,946.30, which represents the proceeds of the

 4       lien sales that were undertaken in October and

 5       December 2023, without advance notice.

 6              THE COURT:  Okay.  I will grant you that.

 7              MR. MAYRON:  Thank you, your Honor.

 8              THE COURT:  As for the stay, I'm going to look at

 9       the docket again and I'll give you a response, probably by

10       tomorrow.

11              MS. PARKS:  Thank you, your Honor.

12              THE COURT:  Was there something else?

13              MR. MAYRON:  Your Honor, thank you.  To the

14       extent defendants are directed to make a payment of

15       $306,000, we respectfully ask that your Honor put a

16       deadline on for defendants to make such a payment.  It

17       doesn't need a few days, but just an outside deadline, to

18       make the requirement real.

19              THE COURT:  Do you have any requests as to the

20       deadline that I should consider?

21              MR. MAYRON:  I think two weeks from today.

22              THE COURT:  Okay.  I hope that is a viable

23       deadline.  February 7th.

24              MS. PARKS:  The 7th?

25              THE COURT:  Two weeks.  Thank you.
```

Lisa Casey - Senior Court Reporter

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 132 of 438

Proceedings

```
 1                 MS. PARKS:  Your Honor, a clarification question.

 2       A moment ago your Honor said that you would hold

 3       Mr. Hanratty in contempt, and Mr. Mayron's application, I

 4       believe, sought all defendants -- is that right?

 5                 MR. MAYRON:  Yes, your Honor.

 6                 MS. PARKS:  -- to be held in contempt, so I'm

 7       just trying to see which, or all.

 8                 THE COURT:  It's basically Mr. Hanratty.

 9                 MS. PARKS:  Okay.  Thank you, your Honor.

10                 THE COURT:  Let me just ask you something else

11       about the stay.  Different burdens of proof; right?  And

12       given that deposition happened and discovery has been done,

13       I'm trying to just make sure that, on the criminal matter,

14       how this would impede or affect.  I'm not talking about

15       judicial resources or anything like that, but can you give

16       me a good answer to that?

17                 MS. PARKS:  I can.  Well, I'll try, I can't

18       promise that I can give you a good answer, your Honor.  And

19       you say impede or affect, impede or affect --

20                 THE COURT:  Well, the criminal to the civil,

21       definitely; but civil to the criminal, not so much.

22                 MS. PARKS:  Not so much.  Exactly.  You know,

23       I've got an Assistant U.S. Attorney, so I wouldn't purport

24       to speak on their behalf.  I do regularly have matters that

25       have parallel civil and criminal issues, and I'll say from
```

Proceedings

1        my experience, typically there's concerns from the

2        prosecutor's office about, you know, witness interference,

3        you know, the civil trial, kind of getting ahead of the

4        federal prosecutions, mandate issues with calling

5        witnesses, and that sort of thing.  This is all very

6        high-level.  Again, I'm literally -- there are my enemy in

7        that proceeding, so I don't know if I can speak for them,

8        but those are typically some of the concerns that are

9        posed.

10               THE COURT:  Thank you.

11               MR. MAYRON:  Your Honor, if I may be heard?

12               THE COURT:  Yes.

13               MR. MAYRON:  The U.S. Attorneys office for the

14       Southern District could have moved for a stay, if they

15       believed that one was warranted here.  I'll note that, to

16       the extent -- this is something we say in our papers --

17       that defendants, they can't promise a speedy resolution to

18       Mr. Hanratty's criminal proceeding.  It could take a year.

19       It could take 18 months.  During the pendency of such a

20       stay, he could continue to dissipate assets.  Also,

21       Emigrant is going to have to continue spending money to

22       recover here.

23               Also, I think if your Honor takes a look at the

24       summary judgment papers, this case, at least the summary

25       judgment motions, can be resolved on the basis of the

```
 1          undisputed factual record, which is --

 2                  THE COURT:  Wait a minute.  Now the record is not

 3          so big?

 4                  MR. MAYRON:  No, it's not so big.  Defendants

 5          pointed to the number of exhibits, and we would just point

 6          to those exhibits because they establish facts that can't

 7          really be controverted, and Mr. Hanratty, in his deposition

 8          admitted -- for instance, we put certain documents in front

 9          of him and asked him if the numbers were correct and he

10          said, No.  We gave your Honor those documents, so that you

11          could review them.

12                  THE COURT:  I'm not dealing with the summary

13          judgment motion right now.

14                  MR. MAYRON:  No.  Of course.  But a stay in these

15          proceedings I don't believe will simplify things much,

16          because there's not much left to simplify.  Fact discovery,

17          again, is done, and then Ms. Parks suggested that

18          Mr. Hanratty may plead guilty to the charges against him,

19          and while a guilty plea certainly would simplify the

20          proceedings against him and, I don't see any reason to stop

21          briefing on the parties' summary judgment motions, in the

22          event that that doesn't happen, because those summary

23          judgment motions can be resolved on the factual record,

24          which is closed, and we should keep going.  Otherwise,

25          justice delayed is justice denied.
```

FILED: NEW YORK COUNTY CLERK 02/29/2024 02:43 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 199    2404020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 02/29/2024

Court Records    Pg 135 of 438

Proceedings

 1                    THE COURT:  Thank you.

 2                    You wish to respond to that?

 3                    MS. PARKS:  Yes.  I would start with saying

 4          briefly, but then I would be held to it, so pretend I

 5          didn't say that, briefly.

 6                    Three points, though.  Mr. Mayron just

 7          articulated his concern that if the court were to stay the

 8          civil action, Mr. Hanratty and the other defendants would

 9          just dissipate assets.  That ignores the sort of

10          overarching context here, which is he is under federal

11          charges.  Every move of his is being watched by federal

12          prosecutors.  So, respectfully, if any party in the world

13          has a little more power to keep Mr. Hanratty, or

14          respondents, from allegedly wrongfully dispersing money

15          than EBCC, does it's probably the U.S. Attorneys Office for

16          the Southern District of New York.

17                    Second, Mr. Mayron expressed his concern that,

18          were the Court to stay, his client would have to keep

19          spending money to litigate this case but, in fact, the stay

20          would help EBCC stop spending money to litigate this case,

21          at least for a little while.  Our very esteemed co-counsel

22          is not cheap, and there's at least three summary judgment

23          motion briefs left, in addition to oral argument, and of

24          course trials on the fraud issues that, again, hasn't been

25          set yet, and I don't know what your Honor's trial schedule

Proceedings

1    looks like, or when that trial might occur, but maybe it

2    wouldn't really be sooner than a criminal resolution, given

3    the speedy trial requirement.

4          Finally, I do want to make clear that there is an

5    extensive record, and Mr. Hanratty and my clients, from the

6    very inception of the case, have always admitted liability

7    on breach of contract from day one; right?  So, when we

8    want to talk about simplifying this case and making it

9    easier, or justice delayed is justice denied, the easiest

10   way would have been, on day one, to proceed on breach of

11   contract and go right to damages on the alter ego claim,

12   but we didn't because EEBC brought those two fraud claims,

13   and that's we have been fighting about.

14         Even now, on the summary judgment motion, when my

15   client has admitted liability on breach of contract from

16   day one, there are issues that are briefed in the moving

17   summary judgment papers of alter ego liability, and also

18   the right number for damages, and those issues aren't as

19   cut and dry, so there is a little bit left to do, even if

20   you just looked at the contract claim.

21         That's all I have.  Thank you, your Honor.

22         THE COURT:  Okay.

23         MR. MAYRON:  Your Honor, if I may be heard.

24         Ms. Parks, I think, just put it very succinctly,

25   which is that defendants admit liability to breach of

Lisa Casey - Senior Court Reporter

```
 1        contract, and all that's left to resolve at summary

 2        judgment is this alter ego and damages.  Again, I don't see

 3        how those are issues that are going to be implicating

 4        defendant's Fifth Amendment rights.  Only Mr. Hanratty has

 5        Fifth Amendment rights.  The corporate entities do not.

 6        These are issues that are -- again, the record is closed.

 7        It's fully developed.  The facts, we think, are undisputed.

 8        There are very clear admissions from Mr. Hanratty, he

 9        couldn't change, even if he wanted to put in another

10        declaration.

11                And then, on the point, more broadly, desperate

12        people do desperate things.  We don't know what's going to

13        happen with Mr. Hanratty's criminal proceeding.  The most

14        recent activity was a 30-day continuance in the case, and

15        so is there's no suggestion that an end is in sight.  This

16        case has been going on.  You know, Mr. Hanratty, again, he

17        defaulted at final maturity in November 2021, and again,

18        every day that goes by, interest is accruing on the

19        judgment that he is not going to be able to fulfill.

20                For those reasons, we believe the stay isn't

21        warranted, and at the very least, summary judgment briefing

22        should go ahead to see if we can resolve, at least the

23        breach of contract claims, which it sounds like Ms. Parks

24        agrees can be resolved, at this stage.

25                THE COURT:  Okay.  Thank you.
```

Proceedings

1              As I said, I'm going to just review the docket

2       and give you an answer tomorrow, so you are off for the

3       rest of the day.

4                   MS. PARKS:  Thank you, your Honor.

5                   THE COURT:  Thank you very much.

6                   MR. MAYRON:  Thank you, your Honor.

7                   MR. WILLSCHER:  Thank you, your Honor.

8                         *           *           *

9

10    Certified to be a true and accurate transcription of the original
      stenographic minutes in this case.

11

12       *Lisa Casey*                    2/26/2024
         Lisa Casey                      Date

13       Senior Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

                    Lisa Casey - Senior Court Reporter

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

|  |  |
|---|---|
| EMIGRANT BUSINESS CREDIT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> JOHN ARTHUR HANRATTY, EBURY STREET CAPITAL, LLC, EBURY FUND 1, LP, EBURY FUND 2, LP, EBURY 1EMI LLC, EBURY 2EMI LLC, EB 1EMIALA LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ, LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB 2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE 1EMI LLC, <br> RE 2EMI LLC, EB 1EMIDC, LLC, ARQUE TAX RECEIVABLE FUND (MARYLAND), LLC, EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC, EBURY FUND 1NJ, LLC, EBURY FUND 2NJ, LLC, RED CLOVER 1, LLC, EBURY RE LLC, and XYZ CORPS. 1–10, <br><br> Defendants. | Index No. 158207/2022 <br><br> The Honorable Margaret A. Chan <br><br> Mot. Seq. 12 <br><br> **DEFENDANTS' NOTICE OF CROSS-MOTION TO MODIFY THE PRELIMINARY INJUNCTION** |

**PLEASE TAKE NOTICE** that upon the annexed Memorandum of Law, Affirmation of Kari Parks, the exhibits annexed thereto, and all other pleadings and papers filed herein, Defendants will move this Court at the Motions Submissions Part, Room 130, at the Courthouse located at 60 Centre Street, New York, New York on March 27, 2024, at 9:30a.m., or as soon thereafter as counsel may be heard,

for an order modifying the Preliminary Injunction to enjoin and restrain Plaintiff Emigrant Business Credit Corporation ("**EBCC**") from filing further motions without prior Court approval, which it may obtain by submitting two-page-maximum letters stating (a) EBBC's requested relief and (b) the law and facts justifying its desired motion; and granting Defendants their costs and disbursements, including attorneys' fees, and such other and further relief as the Court deems just and proper.

    **PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214(b), any answering papers or cross-motions must be served on undersigned counsel at least seven days before the motion submission date.

Date: March 11, 2024
      New York, New York

                    Respectfully submitted,

                    /s/ Kari Parks
                    Kari Parks
                    GUSRAE KAPLAN NUSBAUM PLLC
                    120 Wall Street, 25th Floor
                    New York, New York 10005
                    (212) 269-1400
                    kparks@gusraekaplan.com

                    *Counsel for Defendants*

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 141 of 438

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

EMIGRANT BUSINESS CREDIT
CORPORATION,

      Plaintiff,

        v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND
1, LP, EBURY FUND 2, LP, EBURY
1EMI LLC, EBURY 2EMI LLC, EB
1EMIALA LLC, EB 2EMIALA LLC, EB
1EMIFL, LLC, EB 2EMIFL, LLC, EB
1EMIIN, LLC, EB 2EMIIN, LLC, EB
1EMIMD, LLC, EB 2EMIMD, LLC, EB
1EMINJ, LLC, EB 2EMINJ, LLC, EB
1EMINY, LLC, EB 2EMINY, LLC, EB
1EMISC, LLC, EB 2EMISC, LLC, RE
1EMI LLC,
RE 2EMI LLC, EB 1EMIDC, LLC,
ARQUE TAX RECEIVABLE FUND
(MARYLAND), LLC, EBURY FUND 1FL,
LLC, EBURY FUND 2FL, LLC, EBURY
FUND 1NJ, LLC, EBURY FUND 2NJ,
LLC, RED CLOVER 1, LLC, EBURY RE
LLC, and XYZ CORPS. 1–10,

      Defendants.

Index No. 158207/2022

The Honorable Margaret A. Chan

Mot. Seqs. 11 and 12

**DEFENDANTS' AND
DEFENDANTS' COUNSEL'S
MEMORANDUM IN OPPOSITION
TO EBCC'S MOTION TO MODIFY
THE PRELIMINARY
INJUNCTION (DKT. 47) AND FOR
CIVIL CONTEMPT AND IN
SUPPORT OF CROSS-MOTION
TO MODIFY THE PRELIMINARY
<u>INJUNCTION</u>**

Kari Parks
GUSRAE KAPLAN NUSBAUM PLLC
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
kparks@gusraekaplan.com

*Counsel for Defendants and Pro Se*

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                                 i

TABLE OF AUTHORITIES                                                             ii

BACKGROUND                                                                        1

   I.  By Forcing Defendants to Spend Over $500,000 in Legal Fees Despite
Defendants' Consistent Admissions of Contractual Liability, EBCC's Scorched-
Earth Tactics Have "Diminished Its [Own] Collateral"                              1

     A.  Defendants Promptly, Repeatedly, and Consistently Have Tried to Settle
this Civil Case                                                                   1

     B.  Throughout this Civil Case, EBCC has had Contemporaneous Awareness of
Ebury Entities' Payments to Mr. Hanratty and Undersigned Counsel                  6

   II.   In the Month Since the Court Stayed this Civil Case, EBCC has Filed Three
Motions that Make Largely Ludicrous Demands                                       7

LEGAL STANDARD                                                                   11

ARGUMENT                                                                         13

   I.  EBCC's Failure to Prove Prejudice or Solvency Dooms Its Newest Contempt
Motion                                                                          13

   II.   EBCC Offers No Law or Logic to Support Its Post-Note of Issue Discovery
Demand                                                                          14

   III.   EBCC Provides No Basis to Strip Opposing, Undersigned Counsel of Her
Earned Compensation                                                             14

   IV.   While EBCC's Requested Injunction Modifications Seek to Destroy the
Status Quo and Starve Defendants of the Ability to Defend this Civil Case or the
Parallel Criminal and Civil Actions, Defendants' Proposed Modification Would
Prevent EBCC From Further Wasting Scarce public and Defendant Resources          18

CONCLUSION                                                                      21

CERTIFICATE OF COMPLIANCE                                                        22

i

# TABLE OF AUTHORITIES

**Cases**

Bd. of Trustees v. W. Wilton Wood, Inc., 97 A.D.2d 781 (2d Dep't 1983)    12

Blackmer v. Comm'r of Internal Revenue, 70 F.2d 255 (2d Cir. 1934)    16

El-Dehdan v. El-Dehdan, 26 N.Y.3d 19 (2015)    11, 16

Engel v. CBS, Inc., 93 N.Y.2d 195 (1999)    21

Gabayzadeh v. Taylor, 639 F. Supp. 2d 298 (E.D.N.Y. 2009)    19

Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017)    21

Gottwald v. Sebert, 40 N.Y.3d 240 (2023) (Rivera, J., dissenting in part on other
grounds)    22

Kalish v. Lindsay, 47 A.D.3d 889 (2d Dep't 2008)    19

L&R Expl. Venture v. Gynberg, 31 Misc. 3d 1219(A), 927 N.Y.S.2d 816 (Sup. Ct.),
aff'd, 90 A.D.3d 538 (2011)    18

Lake v. Schuner, 106 A.D.2d 893 (4th Dep't 1984)    12, 14

Maroulis v. 64th Street Third Ave. Assoc., 77 N.Y.2d 831 (1991)    21

Martin v. Donghia Assocs., Inc., 73 A.D.2d 898 (1st Dep't 1980)    13, 20

Matter of Storm, 28 A.D.2d 290 (1st Dep't 1967)    11, 15

McCormick v. Axelrod, 59 N.Y.2d 574, amended, 60 N.Y.2d 652 (1983)    18

NYSLRB v. George B. Wheeler, Inc., 177 Misc. 945 (Sup. Ct. 1941), aff'd as
modified, 265 A.D. 970 (App. Div. 1942), aff'd, 941 N.Y. 562 (1943)    18

Perez v. PetSmart, Inc., No. CV 10-5339 LDW DTB, 2011 WL 2046910 (E.D.N.Y.
Sep. 12, 2011)    19

Philip Morris USA, Inc. v. Otamedia Ltd., 331 F .Supp. 2d 228 (S.D.N.Y. 2004)    12,
13

R&J Bottling Co. v. Rosenthal, 40 A.D.2d 911 (3d Dep't 1972)    13

Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913, 1997 WL 43119 (S.D.N.Y. July 31,
1997)    16

Theroux v. Rescinow, 200 A.D.3d 481 (1st Dep't 2021)    12

Tucker v. Toia, 54 A.D.2d 322 (4th Dep't 1976)    12

United States v. Rylander, 460 U.S. 752 (1983)    14

Usina Costa Pinto, S.A. v. Sanco Sav. Co. Ltd., 174 A.D.2d 487 (1st Dep't 1991)    11

Vastwin Invs., Ltd. v. Aquarius Media Corp., 295 A.D.2d 216 (1st Dep't 2002)    18

**Other Authorities**

Brief for Appellant, Kalish v. Rock City Sound, Inc., Nos. 2006-08708, 2006-08766,
2007 WL 4924117 (Mar. 5, 2007)    17

**Rules**

22 NYCRR § 130-1.1    19

22 NYCRR § 202.8-d    10, 20

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 144 of 438

Defendants[1] respectfully submit this memorandum in support of their "**Cross-Motion**" to modify the preliminary injunction and in opposition to Plaintiff Emigrant Business Credit Corp.'s ("**EBCC**") "**Motion**" to modify the preliminary injunction and for civil contempt—the third motion that EBCC has filed in the six weeks since the Court stayed this "**Civil Case**" because it "arise[s] out of identical facts" as those in a federal "**Criminal Case**" instigated by EBCC against Defendant John Hanratty. See Dkt. 167 at 3 (Jan. 25, 2024) ("**Stay Order**"); Dkt. 168 (Jan. 26, 2024) (EBCC motion for reconsideration of stay order); Dkt. 183 (Feb. 14, 2024) (decision and order denying motion for reconsideration); Dkt. 186 (Feb. 15, 2024) (EBCC "motion to enforce the court's contempt order"); Dkt. 190 (Feb. 29, 2024) (EBCC's instant Motion).

## BACKGROUND

I.  **By Forcing Defendants to Spend Over $500,000 in Legal Fees Despite Defendants' Consistent Admissions of Contractual Liability, EBCC's Scorched-Earth Tactics Have "Diminished Its [Own] Collateral"**

A. **Defendants Promptly, Repeatedly, and Consistently Have Tried to Settle this Civil Case**

In 2017, EBCC and the Ebury Entities executed a series of contracts that gave rise to two credit lines, which originally were to mature in March 2021 (the "**Loan**"). Dkt. 1 ¶ 36 (Sep. 25, 2022) ("**Compl.**"). While the Ebury Entities historically had been "stellar" clients—paying EBCC over $10 million in 2017 and 2018—the pandemic froze the Entities' liquidity. Dkt. 79 ¶¶ 38–43 (Aug. 25, 2023) ("**Am. Countercl.**").

---

[1] "**Defendants**" are all named defendants who have appeared in this action.

Accordingly, in approximately May and August 2021, EBCC agreed to extend the Loan's maturity date if the Ebury Entities agreed to higher interest rates. Id. ¶¶ 44–48. As late as August 2021, the Ebury Entities' primary EBCC contacts told their colleagues that between 2017 and 2019, "Ebury exhibited stellar operating performance that was equivalent to 40% of annual amortization." Id. ¶ 50. But in November 2021, EBCC decided to call the Loan instead of again extending their maturity dates. Id. ¶ 53.

Defendants never once disputed that the Entities must repay the Loan. In fact, after a nine-month "workout" process in which Defendants and the Entities' bankruptcy counsel had near-daily calls with EBCC, gave EBCC full access to the Entities' live books—including Quickbooks accounting software—and connected EBCC with numerous third parties that were interested in purchasing the debt. Id. ¶¶ 55–64; accord Dkt. 24, Affidavit of John Hanratty ¶¶ 46–56 (Oct. 26, 2022) ("**Oct. 2022 Hanratty Aff.**").

When EBCC refused to allow any third party to refinance the Loan, Defendants sent EBCC a June 17, 2022 repayment plan that contemplated that (1) EBCC would accept $18 million as full repayment of the Loan; (2) the Entities would pay EBCC no less than $350,000 per month; (3) EBCC would allow the Entities to maintain $400,000 in operating capital at all times; (4) the Entities would pay EBCC 100% of all monthly cash over $750,000; and (5) EBCC would continue to have full, live access to the Ebury Parties' financial records. Id. ¶ 65. Two months later, EBCC countered, sending a document that it characterized as a "term sheet setting forth

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:41 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 201          24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024

Court Records   Pg 146 of 438

the terms of an amendment through which the existing obligations owed to EBC[C]

can be repaid" and asking Defendants' bankruptcy counsel to call "as soon as possible

to discuss." Id. ¶ 68.

After a month of negotiations and revisions, on September 14, 2022, EBCC's

counsel sent a non-binding "**Settlement Term Sheet**." Id. ¶ 70. The next day, EBCC

told Defendants that EBCC "need[ed] this executed by the end of business today" so

that the Parties could close the Settlement by Friday, September 23, 2022. Id. ¶¶ 71–

74. Defendants immediately executed and returned the Settlement Term Sheet. Id. ¶

74. In doing so, Defendants admitted, inter alia:

- "[V]arious Events of Default (the "**Existing Events of Default**") under the Loan Documents have occurred and are ongoing;"
- Defendants had "fail[ed] to pay all outstanding principal, interest and other obligations owed under the Loan Documents when due on November 10, 2021;"
- "[A]s of August 9, 2022, the aggregate amount of unpaid principal, accrued interest and late fees owed under the Loan Documents is $21,525,251.71 and shall increase by an additional $6,398.35 each day until the execution of the Amendment (collectively, with unpaid fees and costs, the "**Existing Obligation**");"
- "[T]he Existing Obligation constitutes the legal, valid, binding and enforceable obligation of the Borrower and the Existing Guarantors to the Lender that is not subject to any credit, offset, defense, cause of action, setoff, counterclaim or adjustment of any kind;"
- The Existing Obligation "is secured by the liens and security interests created and granted in or pursuant to the Loan Documents, which liens and security interests are legal, valid, binding and enforceable security interests in the Collateral, in each case fully perfected and prior and superior in right to any other person."

Dkt. 74 at 2–3 (Aug. 9, 2023).

Defendants also agreed to pay EBCC $18,247,480.55 on terms similar to those

outlined in Defendants' initial June 2022 proposal, including making minimum

monthly payments of $350,000 while being allowed to spend up to $450,000 monthly on operating expenses and capital expenditures. Id. Mr. Hanratty executed the Settlement Term Sheet on behalf of all of the Entity Defendants. Id. at 8–9. Despite pushing Defendants to sign the admissions "today," EBCC never responded. Am. Countercl. ¶¶ 75–76.

Instead—without warning or notice—EBCC filed its "**Civil Complaint**" and initiated this "**Civil Case**," suing Defendants for breach of contract, fraudulent inducement, and fraudulent transfer, and alleging that all 29 of the Ebury Entities are alter egos of Mr. Hanratty and each other. See generally Compl. The Civil Complaint claims that Defendants' failure to repay the Loan entitles EBCC to contract damages of $21.8 million and counting. Id. ¶ 104. While the Civil Complaint does not specify damages sought on its two fraud claims, both of those claims arise out of the Ebury Parties' failure to pay off the Loan. Id. ¶¶ 110–24.

As they had before, in this Civil Case, Defendants have promptly, freely, and repeatedly admitted that they must repay the Loan. See, e.g., Oct. 2022 Hanratty Aff. ¶¶ 46–59 (detailing Defendants' pre-litigation attempts to settle the Loan); Dkt. 42 (Nov. 16, 2022) (CPLR 3211 motion to dismiss fraud claims, but not contract claim); Dkt. 68 ¶¶ 103–04 (July 20, 2023) (answer admitting breach-of-contract liability). However, Defendants have fiercely contested EBCC's fraud allegations; accordingly, the Parties exchanged over 130,000 pages of documents and deposed 11 witnesses, including a two-day, in-person deposition of Mr. Hanratty at Sullivan & Cromwell's Manhattan office. See, e.g., Dkt. 27 (Oct. 26, 2022) (opposition to preliminary

injunction motion); Dkt. 42 (Nov. 16, 2022) (memorandum in support of motion to dismiss fraudulent inducement and transfer claims); Dkt. 54 (Dec. 15, 2022) (reply memorandum in support of motion to dismiss fraudulent inducement and transfer claims); Dkt. 177 ¶¶ 3–4 (Feb. 7, 2024).

Defendants still kept trying to settle this Civil Case, including by participating in the First Department's mediation program from January through July 2023; privately pursuing settlement during and after that program; identifying and offering to EBCC a third party who was willing to buy out the Loan (the "**Take-Out Lender**"), including on-the-record offers and information personally provided by Mr. Hanratty during his June 2023 deposition. Id. ¶¶ 5–8. On November 22, 2023, EBCC agreed to accept $13.5 million to settle this Civil Case, "subject to [EBCC's] requested proof of funds and the execution of appropriate documentation." Id.

Although Defendants' bankruptcy counsel facilitated EBCC's due diligence inquiries, including with (a) an attestation of funds provided by a lawyer in good standing with the District of Columbia bar, (b) an affidavit provided by the Take-Out Lender, and (c) direct contact between EBCC and the Take-Out Lender's investment adviser, EBCC continued to express its purported concern that Defendants' attempt to pay EBCC $13.5 million was nothing but a "fraud." See Affirmation of Kari Parks Exhibit A (Dec. 29, 2023 email); id. Exhibit B (Jan. 25–26, 2024 emails; id. Exhibit C at 24:24–27:20 (Feb. 8, 2024 Hearing Transcript).

Attempting to assuage that concern, Defendants repeatedly offered that the Take-Out Lender would escrow the $13.5 million if EBCC and Defendants signed a

non-binding settlement term sheet. <u>See generally</u> <u>id.</u> Instead of accepting that offer, EBCC asked more questions about how the Take-Out Lender earned his cash and asked Defendants' bankruptcy lawyer to personally "vouch" for due diligence created and sent by the Take-Out Lender's advisors. Exhibit B at 3. Non-party Howard Milstein owns EBCC and is the only person with authority to settle this Civil Case on EBCC's behalf. Parks Aff. Exhibit D (July 26, 2023 Scott Weiss Deposition Transcript at 122:13–123:16).

### B. Throughout this Civil Case, EBCC has had Contemporaneous Awareness of Ebury Entities' Payments to Mr. Hanratty and Undersigned Counsel

Defendants voluntarily gave EBCC access to the Entities' Quickbooks accounts in January 2022 and have never terminated that access. <u>See</u> Oct. 2022 Hanratty Aff. ¶¶ 46–56; <u>Dkt. 116</u> ¶ 8 (Jan. 11, 2024). However, EBCC rarely has taken advantage of its ability to view Defendants' live accounting records: for example, in 2023, it only logged in to Entities' Quickbooks accounts on February 3, March 22, June 1, August 16, August 17, October 19, December 7, and December 8, 2023. <u>Dkt. 118</u> (Jan. 11, 2024).

Regardless, EBCC could have run Quickbooks reports that show the Entities, which are Mr. Hanratty's primary business and income source, have paid $514,450 across 64 separate transactions since EBCC initiated this Civil Case. <u>Dkt. 189</u> ¶ 41 (Feb. 22, 2024). EBCC also could have seen that the Entities have paid undersigned counsel's law firm hundreds of thousands of dollars during that exact same time

period, including over $500,000 in connection with this Civil Case, alone. Parks Aff.
¶¶ 3–4.

EBCC did not complain about a single one of the payments to Mr. Hanratty
until January 2024, when it flagged the Ebury Entities' December 20 transfer of
$75,000 to Mr. Hanratty's personal account. See generally Dkt.; but see Dkt. 109 at
2 (Jan. 4, 2024) (raising $75,000 transfer but not asking for Court to order Mr.
Hanratty to pay that money into the Escrow Account); Dkt. 187 at 5 (Feb. 15, 2024)
(asking for the "status of the more than $180,000 that John Hanratty has transferred
to himself from Ebury company accounts since October 12, 2023").

Until demanding that undersigned counsel pay EBCC $49,999, EBCC did not
complain about one cent of the hundreds of thousands of dollars that the Entities
have paid to her law firm since EBCC started this Civil Case. See generally Dkt.

## II.    In the Month Since the Court Stayed this Civil Case, EBCC has Filed Three Motions that Make Largely Ludicrous Demands

Unbeknownst to Defendants as they were defending and attempting to settle
this Civil Case, EBCC was not interested in just civil liability: it wanted to send Mr.
Hanratty to federal prison. On December 18, 2024, federal authorities unsealed their
Criminal Complaint and arrested Mr. Hanratty at home in Puerto Rico. Dkt. 151 ¶¶
6–7 (Jan. 19, 2024). Two days later, EBCC requested the Ebury Parties' consent to
push back all summary judgment deadlines, including by moving EBCC's first
deadline from December 22, 2023 to January 12, 2024. Dkt. 158 (Jan. 23, 2024).
Despite previously claiming that its fraud claims were so strong that they warranted
preliminary injunctive relief, EBCC only moved for summary judgment on its

contract claim, now arguing it lacked sufficient evidence to prove fraud at summary judgment. Compare Dkt. 4 (Oct. 17, 2022) with Dkt. 121 (Jan. 12, 2024) (summary judgment brief); Parks Aff. Ex. E, Hearing Transcript at 23:2–7 (Jan. 24, 2024).

On Defendants' motion—and over EBCC's opposition that "justice delayed is justice denied" and "[e]ach additional month that passes increases the amount Defendants will owe, as well as the likelihood that Defendants will not be able to satisfy the judgment "—this Court found that this Civil Action and the Criminal Action "arise out of identical facts" and stayed this case; in the same decision and order, the Court held Mr. Hanratty in civil contempt for Defendants' recent failure to comply with the **Preliminary Injunction's**[2] 24-hour notice period. See id. at 21:7–8; Stay Order at 2–4 (Jan. 25, 2024). In issuing the Stay, this Court reasoned:

> Factors for the court to consider include, among others, the risk of inconsistent adjudications, potential waste of judicial resources, and whether "defendant will invoke his or her constitutional right against self incrimination." [Citations omitted.]
>
> Here, after considering the parties' written and oral arguments, the court concludes that a stay of this action pending resolution of the ongoing criminal proceedings against Hanratty is warranted. As defendants note, the criminal action against Hanratty and this civil action arise out of identical facts. Accordingly, a stay will avoid the possibility [of] inconsistent results, save scarce judicial resources, and result in a potential streamlining and simplifying of the issues to be

---

[2] Among other provisions, the "**Preliminary Injunction**" (1) prohibits Defendants from transferring "any of their assets, aside from ordinary and necessary disbursements related to [the Ebury Parties'] tax lien or real estate business or living expenses;" (2) requires Defendants to escrow tax lien certificate or resulting real estate property proceeds, if those proceeds are not intended for "ordinary and necessary disbursements related to [Defendants'] tax lien or real estate businesses," and (3) requires them to notify EBCC at least 24 hours before transferring any assets "exceeding $50,000." Dkt. 47 at 8–9 (Nov. 29, 2022).

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 152 of 438

resolved in this proceeding, either by summary judgment or trial (see Mook v. Homesafe Am., Inc., 144 A.D.3d 1116, 1117 (2d Dep't 2006) ("a prior determination in the criminal proceeding could have collateral estoppel effect in this action, thereby simplifying the issues")). Furthermore, although discovery in this action is complete, briefing on plaintiff's motion for summary judgment on its breach of contract claim remains ongoing—including a forthcoming opposition and cross-motion by defendants—and a trial on plaintiff's remaining claims is also on the horizon. Hanratty's concerns regarding his constitutional right against self-incrimination are therefore not entirely obviated by the current procedural posture of this civil action. For these reasons, defendants' motion to stay pursuant to CPLR 2201 is granted.

Id. at 3.

Between September 2022 and December 2023, the only motions filed by the Parties were EBCC's injunctive relief motion, dispositive motions, and stipulated briefing schedules; the Parties never once sought the Court's intervention or assistance to ensure that discovery moved forward. See generally Dkt.

But just seventeen minutes after the Clerk's office entered the Stay Order, EBCC moved, by order to show cause, for leave to renew the stay motion, claiming that just hours after the Court imposed the Stay, EBCC "discovered" that a September 2023 default judgment that justified renewal. Dkt. 169 at 2 (Jan. 26, 2024). At the ensuing conference that was supposed to be on EBCC's renewal motion, EBCC spent most of its time arguing that the Court should punish Mr. Hanratty for failing to fully comply with the Contempt Order. See generally Parks Aff. Exhibit C (Feb. 8, 2024 Renewal Hearing Transcript). The Court denied EBCC's renewal motion and allowed EBCC to brief its new contempt arguments. Id. at 34:24–35:21.

One week later, EBCC filed its second post-stay motion, again via order to show cause, asking the Court to "impose a fine of $50,000 per day" until Mr. Hanratty

purged his contempt order—and "imprison[]" Mr. Hanratty if he failed to comply within three days—because Mr. Hanratty had paid "only $120,000" of the $306,946.30 contempt order. Dkt. 187 at 5 (Feb. 15, 2024). Pursuant to the Commercial Division's order to show cause rules, Mr. Hanratty filed an opposition and EBCC filed no reply; the Court has not yet ruled on that motion. See Dkt. 188 (Feb. 22, 2024) (Mr. Hanratty's opposition brief).

Exactly one week after undersigned counsel filed Mr. Hanratty's contempt opposition papers, EBCC brought on this third Motion, which seeks to modify the preliminary injunction and hold both Mr. Hanratty and undersigned counsel in civil contempt. See Dkt. 190 (Feb. 29, 2024). Despite purportedly seeking new relief, the Motion largely focuses on responding to Mr. Hanratty's February 22 contempt opposition brief and affidavit. See Dkt. 191 at 1–3, 8, 14, 16 (Feb. 29, 2024) ("**Mot.**") (citing Dkt. 188, Dkt. 189 and arguing that Mr. Hanratty's contempt opposition papers do not prove his insolvency); but see 22 NYCRR § 202.8-d ("Absent advance permission of the court, reply papers shall not be submitted on orders to show cause.").

Besides attempting to relitigate its last motion, EBCC also asks the Court to (a) hold all Defendants in contempt for two failures to comply with the Preliminary Injunction's notice period (the "**January Bulk Sales**"), (b) order post-note-of-issue discovery into Defendants' assets and liabilities, (c) modify the Preliminary Injunction to prohibit Defendants from spending any money at all "without EBCC's consent;" and (d) hold undersigned counsel in contempt for accepting a $49,999

payment from Defendants. Mot. at 5. In doing so, EBCC—represented by the law firm that billed debtor FTX $7.5 million for its first 19 days of bankruptcy work in late 2022—does not even attempt to argue that undersigned counsel has failed to provide professional services at reasonable fees to Defendants. <u>See generally</u> Mot.; <u>see also</u> Jack Shickler, <u>FTX Lawyers Sullivan & Cromwell Bill $7.5M for First 19 Days' Bankruptcy Work</u>, Yahoo! Finance (Feb. 8, 2023).

## LEGAL STANDARD

"It is well established that contempt is a drastic remedy which should not be granted absent a clear right to the relief." <u>Usina Costa Pinto, S.A. v. Sanco Sav. Co. Ltd.</u>, 174 A.D.2d 487, 488 (1st Dep't 1991). Accordingly, the Court's contempt power "is discretionary and is to be exercised in the light of the facts and circumstances in each particular case." <u>Matter of Storm</u>, 28 A.D.2d 290, 292 (1st Dep't 1967).

To prove civil contempt, EBCC must show, by clear and convincing evidence, (1) "a lawful order of the court, clearly expressing an unequivocal mandate, was in effect;" (2) "with reasonable certainty," it appears that the "order has been disobeyed;" (3) the contemnor "must have had knowledge of the court's order;" and (4) the allegedly-violative act caused the movant actual prejudice. <u>El-Dehdan v. El-Dehdan</u>, 26 N.Y.3d 19, 29 (2015) (citations omitted). Violative conduct, without more, cannot show civil contempt. <u>Theroux v. Rescinow</u>, 200 A.D.3d 481, 481 (1st Dep't 2021) (citations omitted) (holding that "Supreme Court providently exercised its discretion in denying plaintiff's [contempt] motion" where he "failed to demonstrate that his rights were prejudiced"). And when a respondent cannot afford to comply with a court

order, his non-compliance *per se* is neither "willful [n]or contemptuous." <u>Lake v. Schuner</u>, 106 A.D.2d 893, 894 (4th Dep't 1984) ("Before respondent can be found in contempt of the support order, his ability to pay must be established.").

Meanwhile, to succeed on their respective motions to modify the injunction, the respective movants must show that their proposals would "hold the parties in *status quo* while the legal issues are determined in a deliberate and judicious manner." <u>Tucker v. Toia</u>, 54 A.D.2d 322, 326 (4th Dep't 1976). Because "it is a basic principle of equity that [ . . . ] the court that issued an injunction may modify its provisions to conform to changed conditions," the movant must show that with "a better appreciation of the facts in light of experience" has shown that the original injunction "is not properly adapted to accomplishing its purposes." <u>Bd. of Trustees v. W. Wilton Wood, Inc.</u>, 97 A.D.2d 781, 782–83 (2d Dep't 1983) (citations omitted); <u>Philip Morris USA, Inc. v. Otamedia Ltd.</u>, 331 F .Supp. 2d 228, 244 (S.D.N.Y. 2004).

In modifying the injunction, the Court should be careful not to "sweep within an injunction a needlessly broad range of lawful conduct so as effectively to enjoin lawful conduct." <u>Philip Morris</u>, 331 F. Supp. 2d at 246 (citation omitted). The point of a preliminary injunction is not to give the movant the ultimate relief sought in the litigation; it is to "maintain[] the status quo." <u>Martin v. Donghia Assocs., Inc.</u>, 73 A.D.2d 898, 898 (1st Dep't 1980). While the Court has considerable discretion to structure the injunction, it generally is improper to award an injunction to a party who has unclean hands in creating the problem that its proposed injunction

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:41 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 201    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 156 of 438

supposedly is intended to solve. <u>R&J Bottling Co. v. Rosenthal</u>, 40 A.D.2d 911, 911–12 (3d Dep't 1972).

<p align="center"><strong>ARGUMENT</strong></p>

**I.    EBCC's Failure to Prove Prejudice or Solvency Dooms Its Newest Contempt Motion**

Defendants do not dispute that the two January Bulk Sales violated the Preliminary Injunction. However, the Bulk Sales did not prejudice EBCC: historically, EBCC has neither objected to nor demanded advance notice of bulk sales, including a $90,000 bulk sale (at a 45% discount) in August 2023. <u>See</u> Parks Aff. ¶ 5.

Moreover, as previously briefed, Mr. Hanratty cannot afford to pay the balance of the previous contempt fine ordered by the Court, let alone the $159,381.57 that EBCC's newest Motion demands. <u>See generally</u> Dkt. 188 (Feb. 22, 2024); <u>see also</u> <u>Lake</u>, 106 A.D.2d at 894 ("Before respondent can be found in contempt of the support order, his ability to pay must be established.").

Regardless, the Court should reject EBCC's demand for unspecified "evidence of the value of [Mr.] Hanratty's personal assets and liabilities, as well as the assets and liabilities of the Ebury Entities, as well as [24] months of bank statements." <u>See</u> Mot. at 16. Defendants' historical solvency is completely irrelevant to whether they are currently able to pay any contempt fine. <u>Accord</u> <u>United States v. Rylander</u>, 460 U.S. 752, 757 (1983) ("In a civil contempt proceeding [ . . . ] a defendant may assert a **present** inability to comply [ . . . ] While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible.") (emphasis in original).

<p align="center">13</p>

## II.    EBCC Offers No Law or Logic to Support Its Post-Note of Issue Discovery Demand

EBCC's new, post-Note of Issue discovery demand is particularly odd because EBCC is pursuing fraudulent transfer claims that would have justified exactly the type of evidence that EBCC seeks now—nine months after depositions ended and two months after EBCC filed the Note of Issue and moved for summary judgment. And in failing to provide any legal authority at all for this demand, EBCC itself admits its impropriety.

Particularly because "[t]here is no reasonable justification" for a Court to issue a contempt order against a respondent who is unable "to comply with the court mandate," the Court should exercise its discretion to decline to hold Defendants in contempt for the January Bulk Sales or consider alternative sanctions with which Defendants can actually comply. See Storm, 28 A.D.2d at 294 (citation and quotation marks omitted) (to hold someone who cannot afford to pay a fine in contempt "imposes needless hardship upon an unfortunate person, and involves a useless expense and waste of the time of the court.").

## III.    EBCC Provides No Basis to Strip Opposing, Undersigned Counsel of Her Earned Compensation

Besides yet again attempting to draw blood from a stone, EBCC claims that undersigned counsel "has crossed the line" and actively participated in unlawful activity—all because this law firm accepted a $49,999 payment from Defendants. Mot. at 4, 15. EBCC's personal attack on opposing counsel is what crosses the line.

14

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 158 of 438

As a threshold matter—and as EBCC itself admits—the $49,999 transfer does not violate the Preliminary Injunction at all, let alone a "clearly expressed" "unequivocal mandate." Compare, e.g., Mot. at 15 (characterizing the payment as "designed to evade the notice requirements") with Preliminary Injunction at 8–9 (requiring Defendants to notify at least 24 hours before transferring assets "exceeding $50,000"); see also El-Dehdan, 26 N.Y.3d at 29 (contempt's threshold showing is violation of a "lawful order [ . . . ] clearly expressing an equivocal mandate"). EBCC's push to hold undersigned counsel—despite explicitly recognizing that the payment does not, in fact, violate any court order—is pathetic.

Moreover, for the first 15 months of this Civil Case—which EBCC initiated and has overlitigated, see supra at 1–6—EBCC never once complained about Defendants paying undersigned counsel's legal fees, which are both "ordinary and necessary disbursements" and "business and living expenses," as expressly allowed by the Preliminary Injunction. See Blackmer v. Comm'r of Internal Revenue, 70 F.2d 255, 256 (2d Cir. 1934) ("Expenses incurred in the defense of a criminal charge growing out of the business of the taxpayer are 'ordinary' expenses"); Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913, 1997 WL 43119, at *1–2 (S.D.N.Y. July 31, 1997)) ("[T]he Court may order [a] corporation to advance litigation expenses, notwithstanding the corporation's allegations that the director or officer engaged in wrongdoing against the corporation."); Dkt. 119 at 19, 58 (Jan. 11, 2024) (EF 1 and EF 2 partnership agreements provide that the entities "shall, in the sole discretion of the General Partner [Mr. Hanratty], advance to any Indemnified Party reasonable attorneys' fees

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:41 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 201
RECEIVED NYSCEF: 03/11/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 159 of 438

and other costs and expenses incurred in connection with the defense of any action or
proceeding that arises out of" "any acts, omissions or alleged acts or omissions arising
out of or in connection with the Partnership, this Agreement or any investment made
or held by the Partnership [ . . . if] such acts, omissions or alleged acts or omission [ .
. . ] are not found by a court of competent jurisdiction **upon entry of a final non-
appealable judgment** to have been made in bad faith or to constitute fraud, willful
misconduct, or gross negligence.") (emphasis added).

EBCC did not complain about undersigned counsel's fees despite having full
access to Defendants' Quickbooks, which show that Defendants have paid
undersigned counsel hundreds of thousands of dollars in connection with four
separate engagements since September 2022, when EBCC initiated this Case—
including over $500,000 on just this Civil Case.

As in its last two motions, EBCC fails to provide a single case that supports its
absurd demands. See generally Dkt. 176 (Feb. 7, 2024); Dkt. 188 (Feb. 22, 2024). The
McCormick contemnors were nursing home and state Department of Health
employees who forcibly transferred elderly nursing home residents into new facilities,
against their will, in violation of a court order requiring the nursing home to let the
residents stay where they were: the nursing employees physically moved the
residents, while the Department personnel affirmatively completely all the
bureaucratic steps necessary to move the residents. McCormick v. Axelrod, 59 N.Y.2d
574, 577, amended, 60 N.Y.2d 652 (1983). In Grynberg, Vastwin, and George B.
Wheeler, the courts found that the alleged abettors were alter egos or corporate

representatives of the contemnors. <u>L&R Expl. Venture v. Grynberg</u>, 31 Misc. 3d

1219(A), 927 N.Y.S.2d 816 (Sup. Ct.), <u>aff'd</u>, 90 A.D.3d 538 (2011); <u>Vastwin Invs. Ltd.</u>

<u>v. Aquarius Media Corp.</u>, 295 A.D.2d 216, 217 (1st Dep't 2002); <u>NYSLRB v. George</u>

<u>B. Wheeler, Inc.</u>, 177 Misc. 945, 951–53 (Sup. Ct. 1941), <u>aff'd as modified</u>, 265 A.D.

970 (App. Div. 1942), <u>aff'd</u>, 941 N.Y. 562 (1943).

<u>Kalish</u> at least involves a lawyer, but is just as irrelevant: there, the attorney–

contemnors represented a party in multiple litigations; maintained custody over an

escrow account, from which, pursuant to a court order in Litigation A, the party was

not allowed to disburse funds; lied to the court in Litigation B in order to obtain a

court order finalizing its client's liability; and broke escrow to pay the Litigation B

order. Brief for Appellant at 28–33, <u>Kalish v. Rock City Sound, Inc.</u>, Nos. 2006-08708,

2006-08766, 2007 WL 4924117 (Mar. 5, 2007). But even then, the Second Department

did not actually hold the lawyers in contempt: instead, it remanded for better fact-

finding. <u>Kalish v. Lindsay</u>, 47 A.D.3d 889, 891 (2d Dep't 2008).

In fact, <u>Kalish's</u> only relevant holding eviscerates EBCC's Motion: the Second

Department rejected appellant's demand that the alleged attorney–contemnor return

its legal fees, observing that "a party who is neither a present nor a former client of

an attorney has no standing to complain about the attorney's representation." <u>Id.</u>

(citations omitted).

EBCC's demand that the Court hold undersigned counsel in contempt and

force her firm to return earned compensation is nothing but a thinly-veiled attempt

to bully an adversary lawyer and interfere with her relationship with her clients. <u>Cf.</u>

<div align="center">17</div>

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:41 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 201          24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State          RECEIVED NYSCEF: 03/11/2024

Court Records          Pg 161 of 438

_Perez v. PetSmart, Inc._, No. CV 10-5339 LDW DTB, 2011 WL 2046910, at *2

(E.D.N.Y. Sep. 12, 2011) (quoting <u>Gabayzadeh v. Taylor</u>, 639 F. Supp. 2d 298, 300

(E.D.N.Y. 2009)) ("[I]t is well-established that motions to disqualify opposing counsel

are viewed with disfavor in this Circuit because they are often interposed for tactical

reasons and result in unnecessary delay.").

### IV. While EBCC's Requested Injunction Modifications Seek to Destroy the Status Quo and Starve Defendants of the Ability to Defend this Civil Case or the Parallel Criminal and Civil Actions, Defendants' Proposed Modification Would Prevent EBCC From Further Wasting Scarce public and Defendant Resources

Finally, while Defendants agree that the Court should modify the Preliminary

Injunction, it should do so to prevent EBCC from filing further frivolous papers—not

to "force [the Parties] to remain in business together." <u>See</u> <u>Martin</u>, 73 A.D.2d at 898

(affirming a status quo injunction prohibiting defendants from engaging in interior

design work for anyone but corporate plaintiff).

EBCC's proposed injunction—which asks the Court to prohibit Defendants

from spending **any** money "without EBCC's consent"—does not preserve the status

quo; it completely destroys what little oxygen Defendants have left to conduct their

business.

Even ignoring EBCC's years-long refusal to settle this Case—to take the

money and run—EBCC's recent arguments and papers show that it is not interested

in the status quo, or even in preserving its own collateral. From opposing the stay

motion despite the fact that this Civil Case arises out of "identical facts" as the

Criminal Case that EBCC instigated, to filing a silly renewal motion within minutes

of the Clerk entering the stay order, to claiming that Mr. Hanratty is just like a

18

contemnor who claimed to be worth $17 million, to demanding basic fraudulent transfer discovery months after it filed the Note of Issue, to demanding—as in its last two motions, without providing one single analogous case—that undersigned counsel return compensation earned by defending against EBCC's constant threats, EBCC is continually revealing that it considers this Court nothing but its own personal revenge machine.

Cf., e.g., 22 NYCRR § 130-1.1 ("conduct is frivolous if[] it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another"); Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 103–04, 110–11 (2017) (holding that federal courts have inherent authority to order a party to pay adversary's legal fees as sanction for bad-faith conduct; "[I]f a court finds that a lawsuit, absent litigation misconduct, would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its position—then the court may grant all [attorney's] fees incurred from that moment on."); Engel v. CBS, Inc., 93 N.Y.2d 195, 207 (1999) (lawsuits brought for an improper purpose "not only waste precious judicial resources, but are also anathema to the justice system itself"); Maroulis v. 64th Street Third Ave. Assoc., 77 N.Y.2d 831, 833 (1991) ("frivolous and meritless motion practice" amounts to "abuse of the judicial process [that] supports the imposition of sanctions").

While the Parties had litigated this case so cooperatively that they did not even raise a single discovery issue with the Court, EBCC is so incensed by the Stay that it filed three separate motions—two by orders to show cause, which are supposed to be

used "only when there is genuine urgency"—in the five weeks since the Court issued the Stay. <u>See</u> 22 NYCRR § 202.8-d.

Therefore, to prevent EBCC from further wasting scarce judicial resources and dissipating its own collateral—Defendants' assets and ability to continue as going concerns—Defendants respectfully request that the Court modify the Preliminary Injunction to prohibit EBCC from filing further motions without prior Court approval, which it may obtain by submitting two-page-maximum letters stating (a) EBCC's requested relief and (b) the law and facts justifying its demand. <u>Accord Gottwald v. Sebert</u>, 40 N.Y.3d 240, 269 (2023) (Rivera, J., dissenting in part on other grounds) (citations and alterations omitted) ("Sanctions are a common and expected consequence for misuses of judicial process which financially injure the opposing party and divert unnecessarily the time and attention of the Judges of this State").

## CONCLUSION

EBCC's third motion in five weeks is—like its last two motions—largely baseless. It is little more than EBCC's third attempt to evade the Stay. Accordingly, Defendants respectfully request that the Court (a) deny EBCC's Motion in its entirety and (b) grant Defendants' Cross-Motion, prohibiting EBCC from filing further motions without this Court's pre-approval.

Dated: March 11, 2024
      New York, New York

                          Respectfully submitted,

                          **GUSRAE KAPLAN NUSBAUM PLLC**

                          /s/ Kari Parks
                          Kari Parks
                          120 Wall Street, 25th Floor
                          New York, New York 10005
                          (212) 269-1400
                          kparks@gusraekaplan.com

                          *Counsel for Defendants and Pro Se*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with Commercial Division Rule 17, 22 NYCRR § 202.70(g), because it contains 5,509 words, as calculated by Microsoft Word's Word Count function.

Dated: March 11, 2024
        New York, New York

/s/ Kari Parks
Kari Parks

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

|  |  |
|---|---|
| EMIGRANT BUSINESS CREDIT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> JOHN ARTHUR HANRATTY, EBURY STREET CAPITAL, LLC, EBURY FUND 1, LP, EBURY FUND 2, LP, EBURY 1EMI LLC, EBURY 2EMI LLC, EB 1EMIALA LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ, LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB 2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE 1EMI LLC, <br> RE 2EMI LLC, EB 1EMIDC, LLC, ARQUE TAX RECEIVABLE FUND (MARYLAND), LLC, EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC, EBURY FUND 1NJ, LLC, EBURY FUND 2NJ, LLC, RED CLOVER 1, LLC, EBURY RE LLC, and XYZ CORPS. 1–10, <br><br> Defendants. | Index No. 158207/2022 <br><br> The Honorable Margaret A. Chan <br><br> Mot. Seqs. 11 and 12 <br><br> **AFFIRMATION OF KARI PARKS IN IN OPPOSITION TO EBCC'S MOTION TO MODIFY THE PRELIMINARY INJUNCTION (DKT. 47) AND FOR CIVIL CONTEMPT AND IN SUPPORT OF CROSS-MOTION TO MODIFY THE PRELIMINARY <u>INJUNCTION</u>** |

Under the penalties of perjury, I, Kari Parks, affirm as follows:

1.       I am a partner of the law firm Gusrae Kaplan Nusbaum PLLC, counsel

for named "**Defendants**" in the above-captioned matter.

1

2.      I submit this affirmation in opposition to Plaintiff Emigrant Business Credit Corporation's ("**EBCC**" and with the Ebury Parties, the "**Parties**") Motion #11 and in support of Defendants' cross-Motion #12.

3.      Since EBCC filed this action in September 2022, Defendants have paid my law firm hundreds of thousands of dollars for legal services rendered in four separate matters: a previously-filed Delaware case in which Ebury parties are plaintiffs; this Civil Case; and the federal Criminal Case and Securities and Exchange Commission investigations that appear to have been instigated by EBCC, which arise out of identical facts as this Civil Case.

4.      Defendants have paid my law firm over $500,000 in connection with this litigation, alone.

5.      In multiple monthly reports made to EBCC pursuant to the Preliminary Injunction, Defendants disclosed that they had failed to obtain 24 hours' advance notice of transactions exceeding $50,000, including a $90,000 bulk sale (at a 45% discount) that occurred in August 2023.

6.      Annexed as Exhibit A is a true and correct copy of an December 29, 2023 email from Entity Defendants' bankruptcy counsel to this Civil Case's opposing counsel.

7.      Annexed as Exhibit B is a true and correct copy of emails exchanged among counsel on January 25 and 26, 2024.

8.      Annexed as Exhibit C is a true and correct copy of the transcript from the February 8, 2024 hearing held in this Civil Case.

2

9.      Annexed as Exhibit D is an excerpt from a true and correct copy of a transcript of the deposition of Scott Weiss, which occurred on July 26, 2023.

10.      Annexed as Exhibit E is a true and correct copy of the transcript from the January 24, 2024 hearing held in this Civil Case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 11, 2024
        New York, New York

Respectfully submitted,

/s/ Kari Parks
Kari Parks

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM

NYSCEF DOC. NO. 203

INDEX NO. 158207/2022

RECEIVED NYSCEF: 03/11/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 169 of 438

# EXHIBIT A

| | |
|---|---|
| **From:** | Williams, Scott |
| **To:** | willschera@sullcrom.com; Mayron, Austin P. |
| **Cc:** | Kari Parks; Williams, Scott |
| **Subject:** | Ebury/Emigrant |
| **Date:** | Friday, December 29, 2023 10:29:01 |
| **Attachments:** | LOA - Arshad Khan - 12-11-23.pdf.pdf |
| | Binder-Transaction EBREFI.pdf |
| | AffidavitHanratty1_Notarized.pdf |

Gentlemen – I have been working with Mr. Hanratty and the proposed take-out lender. The group led by Mr. Tropp is still interested in these assets. To that end and to follow-up on our prior discussions you will find attached a couple of items. First, you will find a letter from the lawyer for the joint venture who would back the new loan. Also, you will find documents further evidencing the proof of funds that you have requested. Finally, you will see a new affidavit from Mr. Tropp acknowledging his awareness of the circumstances involving Mr. Hanratty personally and indicating his willingness to still proceed with the proposed transaction and settlement.

Please let me know your client's response and whether it wishes to proceed with the settlement. I think everyone shares the view that this matter has extended for a long period of time and the time is ripe for a conclusion one way or another.

I look forward to hearing your response and wish you the best in the New Year.

Regards,

Scott

**R. Scott Williams**
Attorney at Law
swilliams@rumberger.com | View my online bio



| | | |
|---|---|---|
| 2001 Park Place North | DIRECT | 205.572.4926 |
| Suite 1300 | MAIN | 205.327.5550 |
| Birmingham, AL 35203 | | |

The information in this e-mail message is legally privileged and confidential information. If you have received this e-mail in error, please delete from any device/media where the message is stored.

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM
NYSCEF DOC. NO. 264

INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/11/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records    Pg 171 of 438

# EXHIBIT B

| | |
|---|---|
| **From:** | Kari Parks |
| **To:** | Mayron, Austin P.; Williams, Scott; Willscher, Alexander J. |
| **Cc:** | Martin Kaplan |
| **Subject:** | RE: Next steps |
| **Date:** | Friday, January 26, 2024 10:43:50 |
| **Attachments:** | ~WRD0220.jpg |

Hi Austin,

I have no idea what "formal retractions" of unfiled, iterative, draft documents means, but don't appreciate you trying to insinuate threats to my integrity, law license, and profession.

Last night's email was not the first time you have misrepresented my words. I have extended you every courtesy and benefit of the doubt because I trust that any such misrepresentations are inadvertent memory lapses, not cynical lies. I will continue to give you the benefit of the doubt because that is the kind, civil, and productive thing to do, and because I know it can be difficult to keep accurate notes and memories in the heat of oral argument. That said, floating shadowy attacks on adverse lawyers' integrity instead focusing on our clients' respective actions is not going to get any of us anywhere. I like you as a person, respect you as a professional, and have no doubt that you can do great work for your client without resorting to silly sideshows.

Moreover, in case it hasn't proven crystal-clear by now—and in case you forgot the first time you forced me to say this, in October 2022--bullying tactics will not achieve your clients' goals. I do not care that your firm has 50 times as many lawyers as mine. I do not care that your client's budget and resources are infinitely larger than mine's. I do not care that S&C has the USAO and SEC on speed-dial (though I'd suggest that it's silly to think we don't as well). All I care about is doing my best for my client with the resources that I have, while honoring my duties to the court and to you.

We are all professionals and I continue to trust that all of us will keep doing our best to fulfill our commitments to the bar, the courts, the public, our clients, and each other.

Have a great weekend.

Best,
Kari

**Kari Parks, Partner | Gusrae Kaplan Nusbaum PLLC** | 120 Wall Street | New York, NY 10005 | T: (212) 269-1400 | www.gusraekaplan.com

This transmission may contain information that is confidential, privileged, and/or exempt from disclosure under law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, including all electronic and hard copies.

This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication. Gusrae Kaplan Nusbaum PLLC is not rendering tax advice, and nothing in this email should be construed as such.

Internet communications cannot be guaranteed to be secure or error-free inasmuch as information may arrive late, contain viruses, or be intercepted, corrupted, or lost. Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any errors or omissions in the content of this message which arise as a result of internet transmission. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure that it is virus free. Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any loss or damage arising in any way from its use.

**From:** Mayron, Austin P. <mayrona@sullcrom.com>
**Sent:** Friday, January 26, 2024 9:39
**To:** Kari Parks <kparks@gusraekaplan.com>; Williams, Scott <swilliams@rumberger.com>; Willscher, Alexander J. <willschera@sullcrom.com>
**Cc:** Martin Kaplan <mkaplan@gusraekaplan.com>

**Subject:** RE: Next steps

Kari,

As we detailed in our January 16, 2024 letter, your client has been submitting documents to us that bear strong indicia of fraud. You have been assisting in settlement negotiations and have been copied on every email, yet have done nothing to address our concerns or distance yourself from these highly questionable documents. We expect that you will perform adequate due diligence regarding your client's submissions and take appropriate steps—including, at a minimum, formally retracting these documents—if you discover there is a reasonable risk your services are being used in furtherance of a fraud.

Best,

**Austin P. Mayron**
+1 212 558 3733 (T) | +1 518 577 1643 (M)

---

**From:** Kari Parks <kparks@gusraekaplan.com>
**Sent:** Thursday, January 25, 2024 11:28 PM
**To:** Mayron, Austin P. <mayrona@sullcrom.com>; Williams, Scott <swilliams@rumberger.com>; Willscher, Alexander J. <willschera@sullcrom.com>
**Cc:** Martin Kaplan <mkaplan@gusraekaplan.com>
**Subject:** [EXTERNAL] Re: Next steps

As you all know, I've been taking a backseat on these negotiations, but I do have to chime in here. At yesterday's hearing, I absolutely did not suggest that John intends to plead guilty to criminal conduct. The only discussion of a potential criminal plea was my explanation of the black-letter law that a guilty plea has the same estoppel effect as a jury verdict and ensuing final judgment (the same point I raised in my papers).

While I'm speaking up, I do have to say that this chicken-and-egg seems pretty absurd to me—if the money isn't real and doesn't land in EBCC's account, free and clear, of course there is no binding settlement—and I hope our clients choose the economically rational solution and settle this matter. Regardless, at bare minimum, I do hope that we can stick to facts and candor as we move forward; misrepresentations and mischaracterizations will not resolve this dispute.

**Kari Parks, Partner | Gusrae Kaplan Nusbaum PLLC** | 120 Wall Street | New York, NY 10005 | T: (212) 269-1400 | www.gusraekaplan.com [gusraekaplan.com]

This transmission may contain information that is confidential, privileged, and/or exempt from disclosure under law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, including all electronic and hard copies.

This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication.  Gusrae Kaplan Nusbaum PLLC is not rendering tax advice, and nothing in this email should be construed as such.

Internet communications cannot be guaranteed to be secure or error-free inasmuch as information may arrive late, contain viruses, or be intercepted, corrupted, or lost.  Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any errors or omissions in the content of this message which arise as a result of internet transmission.  Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure that it is virus free.  Gusrae Kaplan Nusbaum PLLC does not accept responsibility for any loss or damage arising in any way from its use.

---

**From:** Mayron, Austin P. <mayrona@sullcrom.com>
**Sent:** Thursday, January 25, 2024 10:57:00 PM
**To:** Williams, Scott <swilliams@rumberger.com>; Willscher, Alexander J. <willschera@sullcrom.com>
**Cc:** Kari Parks <kparks@gusraekaplan.com>; Martin Kaplan <mkaplan@gusraekaplan.com>
**Subject:** RE: Next steps

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM            INDEX NO. 158207/2022

NYSCEF DOC. NO. 264     24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 174 of 438

COMMUNICATION SUBJECT TO CPLR 4547

Scott,

We've been trying to move settlement negotiations along. You and your client agreed in September to provide satisfactory proof of funds as a precondition to further negotiations, and, as you know, we haven't yet received adequate proof of funds. Please respond to each of the following questions at your earliest convenience so that we can move this process along.

1.  Messrs. Tropp and Khan have stated they will not agree to a settlement unless EBCC satisfies "the terms and conditions required by ACI and Tiger Financial, in their sole discretion." What are those conditions?
2.  We understand that one condition is that "the southern district criminal charge is resolved to the full and complete satisfaction of Tiger Financial." We called Mr. Bartone on January 2, 2024 to understand this condition but never received a response. As you know, Ms. Parks suggested at the contempt hearing on Wednesday that your client intends to plead guilty to the criminal charges against him. Are Messrs. Tropp and Khan aware of that information?
3.  The documents you submitted to EBCC are riddled with inconsistencies and inaccuracies, as we detailed in our January 16, 2024 letter. In particular, it appears that the principal of JD Euroway has claimed to be the prince of an unrecognized nation called the Queendom of Sheba. Do you still vouch for the authenticity of those documents?

Finally, it is not true that JD Euroway has verified the funds. Instead, we received a typo-laden email last Thursday night at 2:09 AM that further called into question the legitimacy of your proof of funds documents. We have responded to JD Euroway with basic questions related to several obvious discrepancies, but have not yet heard back.

Again, we ask that you respond to our reasonable questions and provide proof of the availability of funds so that we can proceed with settlement negotiations.

Best,

**Austin P. Mayron**
+1 212 558 3733 (T) | +1 518 577 1643 (M)

---

**From:** Williams, Scott <swilliams@rumberger.com>
**Sent:** Thursday, January 25, 2024 6:25 PM
**To:** Mayron, Austin P. <mayrona@sullcrom.com>; Willscher, Alexander J. <willschera@sullcrom.com>
**Cc:** Williams, Scott <swilliams@rumberger.com>; Kari Parks <kparks@gusraekaplan.com>; Martin Kaplan <mkaplan@gusraekaplan.com>
**Subject:** [EXTERNAL] Next steps

Gentlemen –
        On behalf of your client you have refused to work toward a draft settlement document until you receive proof of funds. You now have that information. In order to fund an escrow in an account that provides your client some level of comfort, we need to now reach an agreement on a non-binding document. Earlier this week I send you a draft. Please provide your thoughts and comments. As you know, the take-out lender needs to see some progress or this settlement may not be available to your client.

Looking forward to your response.

Scott

**R. Scott Williams**
Attorney at Law
swilliams@rumberger.com  |  View my online bio [signatures.us1.exclaimer.net]



2001 Park Place North    DIRECT    205.572.4926
Suite 1300           MAIN      205.327.5550
Birmingham, AL 35203

The information in this e-mail message is legally privileged and confidential information. If you have received this e-mail in error, please delete from any device/media where the message is stored.

**This is an external message from:** swilliams@rumberger.com **

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 177 of 438

1

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK  : CIVIL TERM  : PART 49
 2    ----------------------------------------x
      EMIGRANT BUSINESS CREDIT CORPORATION,
 3

 4                        Plaintiff(s).          Index

 5        -against-                          158207/2022

 6

 7    JOHN ARTHUR HANRATTY, EBURY STREET CAPITAL, LLC, EBURY FUND 1,
      LP, EBURY FUND 2, LP, EBURY 1EMI LLC, EBURY 2EMI LLC,
 8    EB 1EMIALA, LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
      EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC,
 9    EB 1EMIMD, LLC, EB 2 EMIMD, LLC, EB 1EMINJ, LLC,
      EB 2EMINJ, LLC, EB 1EMINY, LLC, EB 2EMINY, LLC,
10    EB 1EMISC, LLC, EB 2EMISC, LLC, RE 1EMI LLC, RE 2DMI LLC,
      EB 1EMIDC, LLC, ARQUE TAX RECEIVABLE FUND (MARYLAND) LLC,
11    EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC, EBURY FUND 1NJ, LLC,
      EBURY FUND 2NJ, LLC, RED CLOVER 1, LLC, EBURY RE LLC, and XYZ
12    CORPS. 1-10,

13                        Defendant(s).
      ----------------------------------------x
14                        60 Centre Street
                          New York, New York 10007
15                        February 8, 2024

      B E F O R E:

16          HONORABLE MARGARET CHAN, Supreme Court Justice

17    APPEARANCES OF COUNSEL:

18          For the Plaintiff
            SULLIVAN & CROMWELL LLP
19          BY:  AUSTIN MAYRON, ESQUIRE
                 ERIN SAVOIE, ESQUIRE
20          125 Broad Street
            New York, New York 10004
21
            For the Defendants
22          GUSRAE KAPLAN NUSSBAUM PLLC
            BY:  KARI PARKS, ESQUIRE
23          120 Wall Street, 25th Floor
            New York, New York 10005
24

25                  Janelle C. London, RMR, CRR
                    Senior Court Reporter
```

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO. 205    24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 178 of 438

2

Proceedings

1    THE COURT:  We're here on Emigrant Business Credit

2    Corp against John Arthur Hanratty, Index Number is 158207 of

3    2022.  We're here on Motion Sequence No. 008, which is

4    plaintiff's motion to renew.

5        Appearances for the record, please?

6    MR. MAYRON:  Austin Mayron of Sullivan & Cromwell

7    on behalf of plaintiff Emigrant Business Credit Corporation.

8    With me today is Erin Savoie, also Sullivan & Cromwell, and

9    Declan Buckwell, the deputy counsel of Emigrant Bank.

11:34:17   10    THE COURT:  Thank you.

11    MS. PARKS:  Kari Parks, Gusrae Kaplan Nussbaum,

12    representing the named defendants in this action.

13    THE COURT:  Thank you.

14        You were here not that long ago and you're here

15    again.  Is Ms. Savoie going to speak?

16    MR. MAYRON:  Not today, Your Honor.

17    THE COURT:  No?  Why not?  All right.  Mr. Mayron,

18    then, go ahead.

19    MR. MAYRON:  Thank you very much, Your Honor.  Good

11:34:52   20    morning and may it please the Court.  Before I dive into the

21    renewal motion, I'd like to update the Court on some recent

22    developments related to defendant's failure to comply with

23    Your Honor 's contempt order.  As EBCC detailed in its

24    motion for contempt, defendant sold over 300,000 of EBCC's

25    collateral late last year without notice to EBCC in

JCL

Proceedings

1    violation of the Credit Agreements and that Court's

2    preliminary injunction order.

3         On January 10th, as preliminary relief, the Court

4    ordered defendants to deposit the proceeds of those sales

5    into the parties' joint escrow account pending a hearing and

6    further order of the Court.  This was not a mere suggestion

7    or a request.  It was a court order.  Defendants disregarded

8    the order and failed to escrow a single penny.

9         Instead, defendants filed a motion to vacate,

11:35:42    10    modify the order apparently counting on the Court to give

11    them the benefit of the doubt for the refusal to comply with

12    a mandatory court order.

13         On January 26th, two weeks ago, the Court found

14    defendant John Hanratty in civil contempt, denied

15    defendants' motion to vacate and ordered Hanratty to pay a

16    $306,000 fine.  The Court generously gave Mr. Hanratty two

17    weeks to pay the fine without objection to counsel, but on

18    February 7th, the deadline for defendants to make the

19    required payment, Mr. Hanratty escrowed only $120,000, less

11:36:20    20    than half of what he was supposed to pay.

21         Mr. Hanratty provided no advanced notice to EBCC or

22    the Court that he would fail to comply with the Court's

23    order.  Instead, Mr. Hanratty treated the Court's contempt

24    order as a mere suggestion, apparently relying on the Court

25    to give him the benefit of the doubt yet again.

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO.: 205
24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 180 of 438

4

Proceedings

1          Defendants appear to believe in the maxim, that is

2     it is better to ask forgiveness than permission, but that is

3     not how it works with court orders, especially contempt

4     orders.  Defendants should have given EBCC and the Court

5     advanced notice that they would fail to comply with the

6     contempt order.  Instead, defendants once again simply did

7     as they pleased as they've done throughout this litigation

8     and their relationship with EBCC.

9          Defendants are no longer entitled to the benefit of

11:37:06   10     the doubt and the Court should modify its contempt order to

11     impose a $50,000 fine per day until defendants come into

12     compliance with its order.

13          Defendants have offered absolutely no excuse for

14     their continued disregard for this Court's orders.

15     Defendants have submitted zero evidence of financial

16     hardship or inability to pay, no bank statements, no

17     affidavits, no sworn testimony.

18          In their motion to vacate or modify the Court's

19     temporary restraining order, all defendants said was as a

11:37:39   20     practical matter and assuming the truth of EBCC's claims

21     that the Ebury entities are highly illiquid.  It is no small

22     feat for the Ebury parties to conjure up $306,000 in cash on

23     36 hours' notice.  Defendants offered no evidence to

24     establish a lack of financial means to pay the contempt

25     fine, which requires only that they deposit into escrow the

JCL

5

Proceedings

1    proceeds from their sale of EBCC's collateral.  All

2    defendants pointed to was EBCC's claims that defendants are

3    insolvent which defendants themselves dispute.  So those

4    claims cannot justify defendant's failure to comply with the

5    Court's order.

6            Defendants now also have had a month to pull the

7    money together to make the required escrow payment, but they

8    have failed to do so.  Similarly, in their letter to the

9    Court last night, all defendants said was Mr. Hanratty has

11:38:30  10   struggled to find the funds necessary to satisfy the order,

11   but has been attempting to collect amounts to him from

12   various third parties to satisfy the fine.  Attorney

13   argument, though, is not evidence and unsworn statements

14   about defendants' struggles made in letters to the Court do

15   not excuse defendants disregard of court orders.

16           Defendants have submitted no evidence of financial

17   hardship leaving several important questions unanswered:

18   What happened to the $306,000 in sale proceeds?  Who is

19   Martin Hanratty and why did defendants transfer to him

11:39:02  20   $25,000 on December 14th?  What happened to the more than

21   $180,000 that Mr. Hanratty transferred to himself from

22   company accounts since October 12th?  How many bank accounts

23   do defendants have and what are the balances in each

24   account?  How much does Mr. Hanratty personally own in cash

25   and marketable securities or in other liquid assets?

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM
INDEX NO. 158207/2022

NYSCEF DOC. NO.: 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 182 of 438

6

Proceedings

1    Mr. Hanratty should be here today to answer those questions

2    under oath.  Instead, all he has submitted to the Court is

3    unsworn, unverified attorney argument that comply with the

4    Court's contempt order in his, quote, "a struggle."

5         Mr. Hanratty is no longer entitled to the benefit

6    of the doubt.  He has repeatedly demonstrated disregard for

7    this Court and its orders as well as his legal obligations

8    to EBCC.  EBCC respectfully requests that the Court impose a

9    $50,000-per-day fine until defendants comply with its order.

11:39:56    10    Moreover, Mr. Hanratty has repeatedly proven that if given

11    an inch he will take a mile.  Now is the time for the Court

12    to impose meaningful deadlines backed by appropriate

13    penalties.  To the extent defendants claim financial

14    hardship they should be required to substantiate those

15    claims with evidence.  Mr. Hanratty should appear and

16    testify under oath as to all of his assets and liabilities,

17    including his personal assets, as well as all of the assets

18    and liabilities of the Ebury companies and that testimony

19    should be supported by actual bank records from each of his

11:40:31    20    financial institutions.

21         I'm happy to move to the renewal aspect of the

22    motion unless Your Honor would prefer to hear from

23    defendants' counsel.

24         THE COURT:  Would you like to answer this now or

25    later?  I think you should answer this now.

Proceedings

1          MS. PARKS:  Whichever Your Honor prefers.

2          THE COURT:  I think you should answer it now.

3          MS. PARKS:  Thank you, Your Honor.  That was a lot

4     of words that weren't about the motion that we were supposed

5     to be talking about today, so I'll admit I don't have a

6     point-by-point rebuttal.

7          Your Honor's order issued about two weeks ago,

8     maybe two weeks and a day, I believe was for Mr. Hanratty to

9     personally deposit -- it was -- I think it was closer to

11:41:19   10     $307,000 into the city escrow account.  As we advised the

11    Court last night and opposing counsel, he has not done so

12    yet.  He's put in $120,000 so far.  I think if we look at

13    the exact language of your Court's order, it doesn't exactly

14    track what my friend here was representing.

15         I think one thing to point out is that the order

16    was directed to Mr. Hanratty personally, so he's attempting

17    to find personal funds to pay.  He has made $120,000 so far

18    and I, frankly, you know, I'm not intending to waive

19    attorney/client privilege here, but anticipating this could

11:41:54   20    potentially be an issue, I asked him do we want to go in to

21    make a proof of your financial status with the Court to ask

22    for some kind of relief and he believes that he will be able

23    to fulfill the remainder of the Court's obligation that is

24    imposed upon him.  So he asked for resource's sake to not do

25    so because he does intend to find that money.  So that's all

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 184 of 438

8

Proceedings

1    I really have to say on that.  I think the idea for someone,

2    proof aside, one idea of making the proof and the required

3    hearings and the bank accounts and the affidavits and all

4    that sort of thing typically would be in a context of us

5    making a motion for some kind of relief as opposed to

6    attempting to comply with the motion or rather an order

7    that's already been granted and hasn't been fulfilled yet.

8    So understanding that, maybe there is no hard evidence here

9    today that would satisfy Emigrant.  It would suggest for

11:42:53    10    somebody claiming that he personally doesn't have $307,000

11    in his pocket to make the entire payment so far, an idea of

12    finding an additional $50,000 every single day, you know,

13    for somebody who can't pay that, that just doesn't make

14    sense as an incentive structure and, frankly, it's punitive.

15         If the Court would like hard evidence of

16    Mr. Hanratty's financial status, we're happy to provide

17    that.  I can make the representation to you that this is

18    just -- his family, you know, they drive a Ford Explorer and

19    a 4Runner.  This is not your typical --

11:43:28    20         THE COURT:  What happened to the Porshces and

21    the --

22         MS. PARKS:  I know, right.  This is part of the

23    frustration.  He's never been a Porsche kind of guy.  They

24    don't even own their house, so this is the type of person

25    we're dealing with, not a an upper east side scion or

JCL

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 185 of 438

9

Proceedings

 1    something.

 2            THE COURT:  Doesn't he own two Porsches?

 3            MS. PARKS:  Not that I know of.  Maybe at some

 4    point.

 5            THE COURT:  No?  You may sit down.

 6            Mr. Mayron, why are you bringing this up now?

 7            MR. MAYRON:  Thank you, Your Honor.  The reason why

 8    I'm bringing this up now is because Your Honor's order --

 9    and I apologize.  I don't have a copy in front of me, but

11:44:25   10    Your Honor's order, if memory serves, was explicit that the

11    deadline for defendants escrow, the funds, pursuant to the

12    contempt order was yesterday.  And last night, late last

13    night, defendant submitted a letter saying they were unable

14    to do that purportedly because of claimed struggles in

15    depositing the money.

16            Taking a few things that Ms. Park said, first of

17    all, she said that the order does not track what we're

18    requesting; that it doesn't require Mr. Hanratty to deposit

19    the funds by yesterday.  I think if you refer to the order

11:45:03   20    itself it's very clear that was the deadline for him to

21    comply and purge the contempt.

22            Second, Ms. Parks said that Mr. Hanratty's

23    personally claimed he doesn't have the money in his pocket,

24    but I don't see that in the submissions to the Court.

25    Again, we don't have an affidavit from Mr. Hanratty.  All we

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO: 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 186 of 438

10

Proceedings

1    have is a letter from Ms. Parks last night saying that

2    Mr. Hanratty is struggling to come up with the funds, and,

3    at this point, we have no evidence to know whether that's

4    true or not.  We do not know how much he has in assets.  He

5    has not submitted a sworn statement and he resisted doing so

6    in discovery of the value of his assets.  And so it's I

7    think too little too late.  If Mr. Hanratty wanted to come

8    in and plead financial inability or hardship, he should have

9    prior to the deadline for purging the contempt.  He should

11:45:53    10    have provided the Court with evidence of financial hardship,

11    but he did not do that.  All he did was provide unsworn,

12    unverified attorney argument and he has not provided any

13    evidence to substantiate the financial hardship that would

14    be necessary for the relief from this Court's contempt

15    order.

16        THE COURT:  Okay.  Thank you.  Let's move on to

17    your motion to renew.

18        MR. MAYRON:  Sure.  Thank you, Your Honor.

19        So turning to the renewal motion, EBCC respectfully

11:46:27    20    requests leave to renew its opposition to defendant's stay

21    motion.

22        Under the CPLR a stay may be entered only upon such

23    terms as may be just and justice is the touch point of the

24    inquiry.  In their stay motion, defendants, as we noted in

25    our papers, they claim that a stay would not prejudice EBCC,

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM        INDEX NO. 158207/2022

NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 187 of 438

11

Proceedings

1    but now we know that a stay will prejudice EBCC because it

2    will allow a judgment creditor to levy on Mr. Hanratty's

3    assets and deplete EBCC's potential recovery.

4        EBCC discovered the new evidence, the default

5    judgment, only on January 25th.  Notably, defendants concede

6    that they were aware of the judgment but failed to disclose

7    it to EBCC or the Court.  Mr. Hanratty was under an

8    obligation to disclose the judgment to EBCC.

9        Under the validity guarantees Mr. Hanratty

11:47:17  10    covenanted that he would keep EBCC adequately informed of

11    any facts, events or circumstances that might in any way

12    affect the risks of the validity guarantor, Mr. Hanratty,

13    under this agreement.  Defendants do not dispute that

14    Mr. Hanratty executed the validity guarantees.  Instead,

15    defendants repeatedly suggest the validity guarantees are no

16    longer in effect.  That simply is not true.  Defendants do

17    not cite any provision of the validity guarantee themselves,

18    but section four of the validity guarantees clearly states

19    this agreement and obligations of the validity guarantor

11:47:53  20    hereunder shall remain in full force and effect until such

21    time as this agreement may be cancelled or otherwise

22    terminated by a lender under a written cancellation

23    instrument.

24        The validity guarantees have not been cancelled.

25    Defendants argue that the validity guarantees are no longer

JCL

Proceedings

1    in effect, but their only rationale in support appears to be

2    that the validity guarantees are not in effect because

3    Mr. Hanratty has already breached them.  That is yet another

4    concession that Mr. Hanratty's in breach of his contracts

5    with EBCC and the Court should immediately enter summary

6    judgment on EBCC's breach of contract claims.

7          The truth is, however, that the validity guarantees

8    are still in effect as long as both loans remain unpaid and

9    it is shocking that defendants yet again claim not to be

11:48:36    10    bound by the contracts they willingly executed.

11          Defendants also suggest that a $4.2 million final

12    default judgment against Mr. Hanratty somehow does not

13    create a risk to EBCC; that Mr. Hanratty will not be able to

14    fulfill his obligations under the validity guarantee.  That

15    also is not true.  If the judgment creditor levies on

16    Mr. Hanratty's assets before EBCC can do so it will deplete

17    EBCC potential recovery.  It is also inconsistent with

18    defendant's claims that they're insolvent and cannot comply

19    with the contempt order if the defendants truly are

11:49:12    20    insolvent, allowing this judgment to be entered to levy on

21    Mr. Hanratty's assets will reduce EBCC's potential recovery.

22          I'll also note that Mr. Hanratty was under an

23    obligation to disclose the judgment to the Court because he

24    affirmatively argued that a stay would not prejudice EBCC

25    and disclosure was necessary to render that statement not

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM

NYSCEF DOC. NO. 205

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 189 of 438

INDEX NO. 158207/2022

RECEIVED NYSCEF: 03/11/2024

13

Proceedings

1    misleading.  The judgment constitutes new facts because EBCC

2    was not aware of the judgment when it filed its stay

3    opposition.

4         In their opposition to the renewal defendants imply

5    that EBCC was aware of the judgment earlier.  I can tell you

6    that is not true.  EBCC put in a sworn affirmation from my

7    colleague that EBCC discovered the judgment only on January

8    25th, the night before it filed its motion to renew.

9         And I'm happy to address the circumstances if Your

11:49:57    10    Honor has questions.

11         THE COURT:  Yes, I do have a question about that.

12    You do know about the Texas case; correct?

13         MR. MAYRON:  We did not know until January 5th.

14         THE COURT:  You did not know there was a Texas

15    litigation going on?

16         MR. MAYRON:  We did not.  We had no idea.

17         THE COURT:  And then as defendant stated a simple

18    Google search would have revealed it.

19         MR. MAYRON:  Well, I'd like to address the premise

11:50:32    20    of defendants' positions here which is that they say we

21    should have performed a Google search.  According to

22    defendants we could have discovered the judgment by

23    searching for Ebury Hanratty.  They attach as evidence an

24    exhibit that they created recently that shows that when you

25    run that search term on Google, it's the 19th search result.

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO.: 205
24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 190 of 438

14

Proceedings

 1    But defendants offer no reason why EBCC should have in the

 2    course of ordinary diligence done a Google search for Ebury

 3    Hanratty in connection with its stay opposition.

 4         THE COURT:  Then why did you come up with that just

 5    after I issued the order?

 6         MR. MAYRON:  What happened, Your Honor, is EBCC has

 7    other counsel that has worked on the Ebury matter and I

 8    informed the other counsel of the contempt order and the

 9    other counsel trying to find the document ran a search for

11:51:17  10    Mr. Hanratty's name and discovered the collection action in

11    New York court and immediately informed us.  We then

12    immediately within 24 hours notified the Court of that

13    discovery in a short one-page motion.

14         I'd also like to address a few more points on the

15    Google search argument.  There is several reasons why it

16    would not have been reasonable why we should not have been

17    expected in the course of ordinary diligence to run this

18    search.  Fact discovery had been closed for months.

19    Defendants were obligated to inform EBCC of any risks to its

11:51:47  20    ability to collect under the --

21         THE COURT:  So you were in reliance of Mr. Hanratty

22    to inform you of what you -- how your case is progressing?

23         MR. MAYRON:  No.  I apologize.  That's not what I'm

24    saying, Your Honor.  What I'm saying is that defendants

25    argue that in ordinary diligence we should have found this

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO.: 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 191 of 438

15

Proceedings

1    Texas judgment sooner and our position is that's not the

2    case.  Fact discovery had been closed for several months.

3    We had no awareness of this Texas litigation.  The Ebury

4    companies do not have anything that we know of corporate

5    entities incorporated in Texas for us to look for.

6         And also, I'll note the position is that we should

7    have Googled Ebury Hanratty and scrolled down three screens

8    to the 19th search result, multiple screens to find this

9    case, which also leads to the conclusion we would not have

11:52:39    10    found it in ordinary diligence.

11         And also, defendants offer no reason why the search

12    string should have been Ebury Hanratty.  Last night I

13    searched for John Hanratty and the Texas action didn't show

14    up until the 96th result and I also searched for Ebury and

15    the Texas action did not show up in the first 100 results.

16         And defendants argue that we failed to offer

17    reasonable justification for not offering the default

18    judgment in our original opposition because the default

19    judgment was a matter of public record and that we think is

11:53:07    20    incorrect for two reasons:

21         First, defendants themselves in their opposition

22    they cite in the *NRZ Pass-Through* decision which states that

23    matters of a public record are generally not deemed new

24    evidence, but it does not create a categorical rule that

25    prevents them from being considered new evidence.

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO: 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 192 of 438

16

Proceedings

1          In *in re: Alpha Bytes Computer Corp*, this is a 1998

2     decision of the Supreme Court for New York County, the

3     respondent made the same argument that a judgment was a

4     matter of public record and that petitioners therefore could

5     have discovered its existence.  The Supreme Court rejected

6     this argument finding that it would be unduly burdensome to

7     hold petitioners responsible for verifying that respondents

8     had no outstanding judgments where, as here, no party has

9     asserted that petitioners had a reason to expect that such a

11:54:07   10     judgment existed.  We had no reason to suspect that such a

11     judgment existed, so there would have been no reason for us

12     to go and look for it.

13          The second argument is the Court has the discretion

14     to relax the requirements for renewal and grant such a

15     motion in the interest of justice.  Defendants concede this

16     point in their opposition.  And I'll just note there is a

17     consistent theme to defendants' positions which in all of

18     their papers they said it's EBCC's job to monitor everything

19     defendants do.  We have to monitor their bank records

11:54:40   20     despite the fact that there is a requirement in the

21     preliminary injunction that they report to us.  They say we

22     have to, I guess, be running continual Google searches and

23     scrolling down multiple pages to look for default judgments

24     that we didn't know existed.

25          I think the more reasonable thing is to hold

Proceedings

1    defendants to their obligation to, one, disclose relevant

2    litigation under the validity guarantees.

3              THE COURT:  If that were the case you wouldn't be

4    here if you were -- if you could hold them to their

5    obligations; correct?

6              MR. MAYRON:  That's true, Your Honor.  What I'll

7    say is the obligation defendants seek to impose on EBCC to

8    have been diligent would require an extraordinary amount of

9    resources.  Defendants don't say how often we were supposed

11:55:28   10   to be running searches, how frequently, how many search

11   results we were supposed to be reviewing.  I think the

12   standard under the renewal statute is whether granting the

13   motion is in the interest of justice.  We legitimately were

14   not aware of the default judgment and I think we did

15   exercise ordinary reasonable diligence --

16             THE COURT:  Didn't you just depose Mr. Hanratty?

17             MR. MAYRON:  We spoke to him, I believe, in June.

18             THE COURT:  Okay.  And maybe there wasn't a

19   judgment then?  I'm not sure.

11:56:05   20             MR. MAYRON:  I don't know --

21             THE COURT:  Would that have come out of other

22   pending litigation or other judgments?  Wouldn't that have

23   come out in discovery?

24             MR. MAYRON:  We had Mr. Hanratty under oath for two

25   days.  We asked him close to 2,000 questions.  There were a

JCL

Proceedings

1    lot of issues that we went through.  I do not know if the

2    Texas action had been initiated by then, but we weren't

3    aware of the Texas action, so we had no reason to ask about

4    it during the deposition.

5         THE COURT:  Thank you.

6         Yes, if you're ready, you may respond.

7         MS. PARKS:  Yes, Your Honor.  Thank you for the

8    opportunity based on your questions of Mr. Mayron.  It's

9    quite clear you got our papers and I don't want to belabor

11:56:52   10    the points further.  I will respond to a couple of specific

11    ideas.  First thing is that Mr. Mayron at the beginning of

12    his presentation really focused on this idea of the validity

13    guarantees of the contract, right.  Maybe that's relevant

14    here, maybe it's not, but the fact of the matter is that the

15    CPLR section under which Emigrant's moving doesn't talk

16    about does a party have an obligation.  In one of the

17    contracts it's disputed to provide certain information.  The

18    standard is reasonable justification for not providing that,

19    quote/unquote, new fact before.  And there is no reasonable

11:57:28   20    justification here.

21         Let's see, which point should we take first?  One,

22    Mr. Mayron raised a case *in re: Alpha Bytes*, I think he said

23    from 1998, a Supreme Court case, and he referenced -- I

24    haven't read the case, but he represented in that

25    particular, I believe, state Supreme Court, it's a trial

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 195 of 438

19

Proceedings

1    level case in 1998, that court found that the party at issue

2    didn't have -- it wasn't reasonable to expect them to have

3    found that public filing.

4            I do have to note that was in 1998.  The Internet

5    has changed a lot from 1998.  Public dockets weren't widely

6    available in 1998.  In the course of this -- preparing this

7    particular paper, I got to look at the Texas docket

8    availability.  It's actually quite easy.  You don't even

9    need a log in.  So respectfully, I don't know anything more

11:58:23  10    about that case if you've heard of it.  I don't know

11    anything about it, but the timing alone and that our

12    adversaries and client in a single other case since 1998 to

13    support that case suggest that it would be more reasonable

14    for your court or for Your Honor to rely on the numerous

15    cases we do cite in our opposition brief here saying that as

16    a general rule a court filing and matter of public record is

17    not going to be new evidence.  And we do not just cite one

18    case for that.  We cite at least four, but, again, Your

19    Honor has full access to that, so I don't need to read

11:58:55  20    through them unless you'd like me to.

21            THE COURT:  No.

22            MS. PARKS:  Another issue, I do think it's telling

23    that a moment ago Mr. Mayron said he doesn't even know if

24    the Texas case existed at the time that he took

25    Mr. Hanratty's deposition for two days in June.  The Texas

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM        INDEX NO. 158207/2022

NYSCEF DOC. NO. 205        24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 196 of 438

20

Proceedings

1    case did exist because we annexed the docket sheet that I

2    found yesterday.  It says the first entry here is May 2023.

3    And I don't say that, you know, I don't know that it matters

4    that the Texas case existed so much, but again, to ghost the

5    lack of diligence, we filed exhibits last night.  They're

6    not complicated.  It's a couple of docket sheets, a motion.

7    We can all read them.  It's just not that hard.

8         To claim it should take an extraordinary amount of

9    resources to find this Texas case just makes no sense.  The

11:59:49    10    timing of this motion alone suggests that it really was not

11    difficult and Mr. Mayron explained that EBCC has other

12    counsel.  I don't know who they are, but again, we've

13    already seen numerous counsel here every time.  They've got

14    more counsel behind the scenes who are able to find the

15    Texas case and within hours after your Court issued the

16    order granting the stay.  The timing alone again suggests

17    that this information would have been available to a

18    reasonable diligent attorney, especially one of the

19    resources that are present here.

12:00:31    20         I think EBCC in its papers emphasize the idea and

21    Mr. Mayron this morning has emphasized the idea that EBCC

22    had no reason to suspect that such a judgment existed.  And

23    I'm going to say that here we're in the adversary process.

24    Obviously my client strongly contests these fraud

25    allegations and the fraud claims, so please do not mistake

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM
NYSCEF DOC. NO: 205
INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/11/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 197 of 438

21

Proceedings

1    me.  I'm not saying my client are fraudsters.  However, in a

2    litigation in which one side has claimed for over a year

3    that the other side are irredeemable fradusters and trickers

4    who will stop at nothing to conceal material information and

5    hide things, it simply makes no sense for this next breath

6    the same person to say but we just trusted that they would

7    abide by a six, seven-year-old obligation to provide

8    information allegation.  It simply was not reasonably

9    diligent.  The timing of this motion makes very clear that

12:01:26    10    EBCC expected to win on the motion to stay.  It lost.  It

11    went oh, no, what do we do and then they spent not very much

12    time, just hours, before finding what they want to

13    characterize as brand new information.  But it's a Texas

14    litigation filing.  It's a public docket.

15            You know, to shift gears slightly, I think it's

16    also important to mention here that that Texas default

17    judgment that's responsible for all the scrimmage that's on

18    today, that there has been several dozen docket filings

19    after that September 2023 judgment and so what we've seen,

12:02:01    20    which is common in our courts as well, you could have a

21    final judgment on liability, but damages haven't been

22    determined and even on default there is going to be a

23    hearing.  So before EBCC filed this motion the plaintiff in

24    that Texas case as you can see in the docket sheet, which

25    was annexed to our memo as Exhibit C, filed a motion to

Proceedings

1    compel discovery for damages essentially and the Court has

2    recently ordered that discovery.

3            So as far as the merits or lack thereof, the idea

4    that there is a fixed judgment, a final judgment, that's

5    ready to go right now today, it's simply not true.  And,

6    again, a reasonably diligent attorney could find that

7    information very easy and so it's a little disingenuous we

8    believe for EBCC to repeatedly accuse my clients of

9    concealing information when EBCC itself in filing this

12:02:56   10   motion didn't mention the fact that there's been dozens of

11   filings in that Texas case after this default judgment.

12           Moving to the other factor, Mr. Mayron didn't

13   discuss it much and I won't either unless Your Honor has

14   specific questions, but Your Honor in granting our motion to

15   stay really it focused on the judicial economy,

16   inefficiency.  For example, a couple weeks ago we discussed

17   that if the government successfully prosecuted Mr. Hanratty

18   for the fraud claims that would essentially estop most of

19   the issues of it being litigated in this case as well and

12:03:31   20   this much really will streamline the civil action.  So

21   nothing about the Texas cases has changed that reasoning.

22   Nothing about the Texas case changes the reasoning of

23   wanting to protect Mr. Hanratty's Fifth Amendment rights as

24   we have four more summary judgment briefs to go and perhaps

25   a trial at the end.  Nothing about the Texas case changes

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 199 of 438

23

Proceedings

1    the fact that those considerations of public resources,

2    judicial resources, defendants' constitutional rights trump

3    any prejudice that we might see from delaying this civil

4    case.  And as we note in our papers, frankly, this could

5    have been a simple case if all we cared about was resolving

6    the breach of contract issue and going to damages we could

7    have done that over a year ago.

8              THE COURT:  Speaking of which were there -- was

9    there a genuine attempt at settlement?

12:04:27    10              MS. PARKS:  On our side there was and continues to

11    be genuine attempts at settlement, Your Honor.  And I will

12    say --

13              THE COURT:  And that brings me to the point of --

14    in your papers you say they could have accepted

15    Mr. Hanratty's admissions.  Why wasn't that accepted,

16    Mr. Mayron?

17              MR. MAYRON:  Thank you, Your Honor.  So the

18    question you're asking about is why when Mr. Hanratty

19    admitted at his deposition -- and I can pull up the language

12:05:08    20    from our -- I believe it's our contempt hearing when he says

21    in our summary judgment briefing, he says "I am liable" or

22    something along those lines to EBCC.

23              What he said in his deposition is "I," I as in John

24    Hanratty, am liable to EBCC.  What defendants put in their

25    opposition to our motion to renew is that he admitted that

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO: 205
RECEIVED NYSCEF: 03/11/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 200 of 438

24

Proceedings

1      the Ebury entities are liable because the issue is EBCC

2      needs to be able to recover from Mr. Hanratty's assets, his

3      personal assets.

4           Mr. Hanratty did not sign the Credit Agreements.

5      EBCC does not have a perfected security interest in

6      Mr. Hanratty's assets and so we have sued to recover assets

7      that Mr. Hanratty has transferred out of the Ebury companies

8      to himself personally.

9           Our summary judgment papers are based on two

10     arguments.  The first is the validity guarantees, which we

11     have to show that he provided information that was not

12     correct to EBCC which overlaps with our fraud claims.  And

13     the second theory is alter ego.  And alter ego, it does not

14     require a showing of fraud, but it requires a showing of

15     wrongdoing.

16          THE COURT:  Mr. Mayron, I know where you're getting

17     at with the motions, but if there was a shorter way to get

18     your money back, perhaps through a nonparty, a third party

19     to get your money back, why wouldn't you do that?

20          MR. MAYRON:  So, Your Honor, without going fully

21     into privileged material, could I approach the bench and

22     give Your Honor a document?

23          THE COURT:  Yes.

24          MR. MAYRON:  So, Your Honor, EBCC has worked with

25     the defendants to try to reach a good faith settlement.  In

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO. 205          Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024
24-04020-dsj
Court Records    Pg 201 of 438

25

Proceedings

 1    their opposition and just now in open court, defendants

 2    referenced their settlement negotiations and argue that

 3    settlement offers they have made have been real offers.

 4    This is a letter that we sent to defendant's counsel on

 5    January 16th detailing serious inaccuracies and

 6    inconsistencies, an indicia of fraud and the proof of funds

 7    documents that he have submitted to EBCC.

 8         The most glaring example is they purported to

 9    provide us bank statements showing that a takeout lender has

10    access to over $2 million in funds.  The bank statements are

11    from an entity called JD Euroway Bancorp, which purports to

12    be a Canadian bank.  The Canadian Office of the

13    Superintendent of Financial Institutions has no record of

14    any JD Euroway.  The documents themselves, the purported

15    bank statements, they look like they were made by a high

16    schooler on a computer.  The president of JD Euroway,

17    Mr. Fritz Zepher, he has, according to public records,

18    apparently held himself out to be the prince and crown prime

19    minister of a non-existent nation in Africa called "The

20    Queendom of Sheba."  We found these inaccuracies and in

21    these letters we detailed all of the inaccuracies that we

22    found that suggested that the proof of funds documents

23    defendants were submitting to us were fraudulent and when we

24    asked defendant's counsel if they still vouched for these

25    documents and their genuineness and had any explanation for

JCL

Proceedings

 1    these blatant indicia of further fraud, defendants are now

 2    using these documents to gain a litigation advantage by

 3    claiming to the Court that there is a valid settlement

 4    offer.  Defendants are implicitly affirming that these

 5    documents are genuine.

 6         Ms. Parks is an officer of the Court.  I assume

 7    she's done her due diligence on these documents and the

 8    concerns --

 9         THE COURT:  I don't think anybody should assume

10    any --

11         MS. PARKS:  Well, perhaps --

12         THE COURT:  -- taking of due diligence.

13         MR. MAYRON:  Perhaps the Court would like to hear

14    directly from Ms. Parks why these documents appear

15    fraudulent on their face actually are authentic.

16         THE COURT:  Ms. Parks?

17         MS. PARKS:  Sure.  I didn't know I get to ask him

18    questions.  That's fine.  Frankly, I've never made any

19    representation about what these documents are.  They,

20    frankly, look a little ridiculous.  I don't really disagree

21    with Mr. Mayron.

22         THE COURT:  Well, a country called "Queendom of

23    Sheba?"

24         MS. PARKS:  I would submit that Mr. Mayron has

25    artfully selected particular phrases upon Google searching,

JCL

Proceedings

1    for example, these people who are purportedly offering the

2    funds and found some colorful things about them.

3            I will say that on that offer these, frankly, look

4    a little ridiculous, but again, you could always make the

5    argument that if somebody is really trying to defraud you

6    are they going to claim to be the president of Queendom of

7    Sheba?  That's a little bit getting to Nigerian prince

8    e-mail territory.  They were instead making a joke or doing

9    something else.  I don't know that the establishments he

12:10:27    10    keeps talking for settlement opposition -- offers today, but

11    in response to Sullivan & Cromwell's concerns, which we can

12    absolutely understand, we've repeatedly offered to have that

13    person escrow the 13 and a half million dollars into a U.S.

14    account so that it's ready, willing and able to come so long

15    as EBCC agreed in principal to work on drafting a nonbinding

16    term sheet of the settlement.  That was the third party's

17    only request that he did not want to actually escrow the 13

18    and a half until at least there was a non -- that the

19    adversary had agreed to work on a nonbinding settlement term

12:11:06    20    sheet.  So that's that.

21            I do want to take back a step further because

22    Mr. Mayron is representing that the first time that

23    Mr. Hanratty or the Ebury parties admitted a liability on

24    the breach of contract is in the June 2023 depositions and

25    that's simply not true.  Even ignoring the nine months of

JCL

Proceedings

1       post default workout process negotiations what we saw about

2       two weeks before Emigrant initiated this litigation was term

3       sheet -- a settlement term sheet that Emigrant had drafted.

4       In that term sheet the Ebury parties acknowledge that,

5       quote, "failure to pay all outstanding principal interest

6       and other obligations owed under the Credit Agreements when

7       due on November 10, 2021," end quote, and that was before

8       this litigation began.  So to respond to that and say, well,

9       the point of all this year and a half and tremendous

12:12:00   10   expense, both financial and emotionally and energy wise on

11      the litigants was just to go after Mr. Hanratty personally,

12      again, that doesn't quite make sense because there were a

13      million different ways to do that in a simple breach of

14      contract action.  So that's that.

15           Obviously Emigrant as far as I have no power to

16      force anybody to come to the table to force anybody to agree

17      to any settlement.  That is always going to be up to them,

18      but I will say that in the context of this motion to stay,

19      you can compare the diligence that they've done on people

12:12:38   20   related to people related to people who have offered to put

21      up 13 and a half million dollars to settle this case

22      compared with the total failure of diligence to find a Texas

23      public court filing.  It just doesn't make sense.

24           So, you know, assuming that if we want to stay

25      focused on the motion to stay or on the motion to renew they

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 205 of 438

29

Proceedings

1    simply have not raised a good motion to renew.  And, again,

2    the points of us raising the settlement issues was

3    consistent with 4547 which does not necessarily say that

4    Emigrant can or should not take a settlement, but intend to

5    say that the parties have been actively negotiating trying

6    to work out something for a very, very, very long time so

7    that the notion to put all the delay on just this criminal

8    case now really simply doesn't make any sense.

9            THE COURT:  Do you have an update on the criminal

12:13:24    10    case?

11            MS. PARKS:  Let's see.  Do I have -- could you

12    rephrase your question?  Maybe is the answer.

13            THE COURT:  Well, is there going -- what is going

14    on now?  I didn't do a Google search.

15            MS. PARKS:  Okay.  I -- the reason why I'm pausing

16    is I'm not sure what I am allowed to say, so I'm thinking.

17            THE COURT:  Is it proceeding?

18            MS. PARKS:  It is proceeding wherein we have a

19    continued negotiations essentially with the Assistant U.S.

12:13:50    20    Attorney's Office, the SEC, The Securities and Exchange

21    Commission, as they like to do now, jumped in the ring as

22    well, so that's now ongoing.

23            Yesterday, my entity clients, Ebury Street Capital,

24    Ebury Fund 1 and Ebury Fund 2, received a second grand jury

25    subpoena in connection with their criminal case.  Those same

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO: 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 206 of 438

30

Proceedings

1    entities also received their first subpoena from the SEC

2    yesterday, so all is proceeding and everything is still

3    going.

4            THE COURT:  Thank you.  Last word, all right?

5            MR. MAYRON:  What?

6            THE COURT:  Last word.

7            MR. MAYRON:  I have a few things that I would like

8    to get through.  I'll try to be as quick as possible.

9            I, frankly, am very surprised about what I just

10   heard from opposing counsel, which is that opposing counsel

11   just said that defendants have been submitting documents as

12   proof of funds for a settlement to a bank that, frankly,

13   look ridiculous -- that are a little ridiculous.  And not

14   only are they submitting those documents to a bank as proof

15   of funds for a settlement, they are coming into this Court

16   and telling Your Honor there are valid settlement offers on

17   the table when EBCC has been doing its best to verify the

18   actual validity of these settlement offers and they are

19   based on apparently fraudulent documents and apparently

20   defendants concede they didn't do any due diligence on these

21   documents and they concede that they, frankly, look

22   ridiculous and that, to me, is surprising.

23           Defendants' misrepresentations don't stop there.

24   Could I approach Your Honor with another document?

25           THE COURT:  No because I think I'll save that for

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 207 of 438

31

Proceedings

1    another motion.

2         MR. MAYRON:  Okay.  So the reason why I think it's

3    relevant is because defendants now have a record of stating

4    things that are not true to this Court and what is not true

5    is that the amount of the damages in the Texas action has

6    not been fixed.  If Your Honor looks at the default

7    judgment, it has been fixed.  It's a final default judgment

8    for $4.2 million.

9         THE COURT:  But aren't there post-judgment motions?

12:15:55    10    And I believe that there is a motion in -- for summary

11    judgment in lieu of complaint here in New York and they were

12    only served as late as January 29th.

13         MR. MAYRON:  So, Your Honor, this deals with

14    post-judgment discovery after your final judgment.  You, as

15    the judgment creditor, are entitled to engage in discovery

16    to identify, locate and levy on assets.  And so in the Texas

17    action after the judgment creditor got the $4.2 million

18    judgment, the judgment creditor served discovery on

19    Mr. Hanratty.  Mr. Hanratty defaulted.  He failed to respond

12:16:40    20    to the document requests, interrogatories or appear for a

21    deposition.  The plaintiff moved to compel and that order

22    that defendants are referring to on January 31st is an order

23    compelling Mr. Hanratty to respond because he failed to

24    respond to the post-judgment discovery.  However, the reason

25    I raise that --

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO.: 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 208 of 438

32

Proceedings

1          THE COURT:  Is that -- are you talking -- are you

2    talking about a separate motion, a motion to compel or are

3    you talking about the motion for summary judgment in lieu of

4    complaint?

5          MR. MAYRON:  I'm referring to the Texas action.  My

6    understanding of the New York action is that in order to

7    levy on assets in the state you have to bring an action in

8    that state to have your judgment recognized.  In the Texas

9    action they've already served post-judgment discovery which

12:17:19    10    is what I was going to provide Your Honor.  And this is

11    post-judgment discovery, just like in New York where a

12    judgment creditor tries to identify and locate the assets of

13    the debtor in order to try to levy on them.

14          And so the plaintiff in the Texas action is moving

15    forward.  There is a fixed judgment and the defendants are

16    incorrect when they say otherwise.  And the case is moving

17    forward because the judgment creditor is trying to identify

18    and levy on assets that could be EBCC's potential recovery.

19          As I said, as well as you noted, there is an action

12:17:50    20    going on in New York court as well to enforce and levy on

21    defendants' assets within this state and defendants

22    obliquely suggested that case might be stayed for the same

23    reasons this case was stayed, but I don't see any reason why

24    that would happen or what the Fifth Amendment issue would be

25    to prevent that judgment creditor from levying on and

Proceedings

1    executing on defendants' assets.  And defendants repeatedly

2    suggest that this could have been over because defendants

3    admitted liability, but the whole issue we have is that

4    defendants transferred their assets.  They were supposed to

5    use the funds advanced by Emigrant to purchase tax liens.

6    Instead, they transferred the funds to other people,

7    including investors, including companies like Ebury RE,

8    which are not in contractual privity with Emigrant and to

9    Mr. Hanratty.

12:18:37    10    And Ms. Parks says there was a million ways for us

11    to get personal liability from Mr. Hanratty with just a

12    breach of contract action.  That's what we've done.  We have

13    brought an action on the validity guarantees and we've

14    brought an action for alter ego, but none of that changes

15    the fact that defendants did engage in fraudulent

16    misrepresentations and fraudulent transfers.  However, we

17    noted for judicial economy that involves a fact-bound

18    question of intent which isn't suitable for summary

19    judgment.  So we did not move for summary judgment on those

12:19:05    20    counts.

21    THE COURT:  You want more?

22    MR. MAYRON:  I'm just checking my notes, if that's

23    okay.  Actually, I'll take a seat.

24    THE COURT:  Okay.  You've brought a lot here on a

25    simple motion to renew and basically your motion to renew is

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO.: 265    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 210 of 438

34

Proceedings

1    based on your recent discovery after my order was issued on

2    the Texas matter, and the Texas matter is public record.  So

3    just keep paying this motion to renew based on the recently

4    -- or your recently discovered Texas motion.  The First

5    Department has held that matters of public record in a court

6    filed do not typically constitute new facts for the purposes

7    of renewal motion and that case is *NRZ Pass-Through Trust IV*

8    *versus Rouge*, citation is 199 AD3d 466.  It's a 2021 case.

9    The First Department has similarly held that "when a fact is

12:20:47    10    a matter of public record that existed at a time a party

11    submits its opposition," and I'm paraphrasing, "that

12    reasonable justification is needed for failing to raise

13    those facts."

14        You're telling me your justification was that you

15    didn't have the obligation to check those, rather, the

16    obligation falls on Mr. Hanratty to provide you with

17    information that affects the case.  And considering your

18    charges against Mr. Hanratty is one of fraud and

19    misrepresentation , I believe that race is an issue for me

12:21:39    20    as to whether that is a justifiable reliance on defendants'

21    due diligence to report his wrongdoings to you.  I do not

22    find that as reasonable justification for you not to have

23    discovered this.  So based on this and only because I know

24    we went far afield for what this motion is supposed to be,

25    the motion to renew is denied, but thank you for all the

JCL

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 205    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 211 of 438

35

Proceedings

1    other information.  I guess there will be another motion

2    coming with all those other attachments.

3              MR. MAYRON:  Would Your Honor like a separate

4    motion on defendants' failure to purge the contempt?

5              THE COURT:  Yes, please, because I would like to

6    have the record complete with that and to give defendants a

7    chance to put something in the record or on NYSCEF.  I do

8    not need to hear you on that motion since I've heard it

9    here, so it will just be on submission.  You can do this

12:23:14    10    within two weeks.

11              Okay, so today is the 8th.  So do you need to

12    supplement anything?  You have to put in the whole thing, so

13    can you do this by the 15th?

14              MR. MAYRON:  Yes, Your Honor.

15              THE COURT:  All right.  And the ops by the 22nd?

16              MS. PARKS:  Yes, Your Honor.

17              THE COURT:  And it's on submission.  Return date,

18    let's -- give me until the 29th.

19              All right.  Thank you very much.

12:24:04    20              MR. MAYRON:  Thank you, Your Honor.

21              MS. PARKS:  Thank you, Your Honor.

22                        *C E R T I F I C A T E*

23         *Whereupon, the foregoing proceedings is certified*
     *to be a true and accurate recording of the stenographic*
24    *minutes taken within.*

25                        *Janelle C. London, RMR, CRR*
                          *Senior Court Reporter*

JCL

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 206          2:24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024
                                            Court Records    Pg 213 of 438

CONFIDENTIAL

                                                                    **Page 1**

1    SUPREME COURT OF THE STATE OF NEW YORK
2    COUNTY OF NEW YORK COMMERCIAL DIVISION
3    ------------------------------------x
4    EMIGRANT BUSINESS CREDIT
     CORPORATION,
5
                Plaintiff,
6
         v.          Index No. 158207/2022
7
     JOHN ARTHUR HANRATTY, EBURY
8    STREET CAPITAL, LLC, EBURY FUND
     1, LP, EBURY FUND 2, LP, EBURY 1EMI
9    LLC, EBURY 2EMI LLC, EB 1EMIALA
     LLC, EB 2EMIALA LLC, EB 1 EMIFL,
10   LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC,
     EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB
11   2EMIMD, LLC, EB 1EMINJ, LLC, EB
     1EMINJ, LLC, EB 1EMINY, LLC, EB
12   2MINY, LLC, EB 1EMISC, LLC, EB
     2EMISC, LLC, RE 1EMI LLC, RE 2EMI
13   LLC, EB 1EMIDC, LLC, ARQUE TAX
     RECEIVABLE FUND (MARYLAND),
14   LLC, EBURY FUND 1FL, LLC, EBURY
     FUND 2FL, LLC, EBURY FUND 2NJ,
15   LLC, RED CLOVER 1, LLC, EBURY RE
     LLC, and XYZ CORPS. 1-10,
16           Defendants.
     ------------------------------------x
17
                "CONFIDENTIAL"
18
19        CORPORATE DEPOSITION OF
20             SCOTT WEISS
21      VIA ZOOM VIDEOCONFERENCE
22           July 26, 2023
23            9:00 a.m.
24
25   Case No. 6007447

CONFIDENTIAL

Page 122

SCOTT WEISS

1
2 Company's counterclaim, because I also
3 represent Ebury in that lawsuit, are
4 there any other non-privileged factors
5 that went into EBC's analysis between --
6 of the workout process between September
7 14th and 25th, 2022?
8        MR. MAYRON:  Again, objection
9    to form.  You can go ahead.
10    A.   I would say the other factors
11 that I'm aware of, the other factors
12 would be privileged.
13    Q.   Okay. Moving away from the
14 documents, sitting here today, July 26,
15 2023, who at EBC has the authority to
16 determine how this lawsuit ends? Meaning,
17 whether to accept a settlement, proceed
18 forward, et cetera?
19        Again, I'm not asking for
20 privileged communications.  I'm just
21 asking facts on the ground.  Who are the
22 decisionmakers at Emigrant or EBC with
23 regard to this lawsuit?
24        MR. MAYRON:  Object to form,
25    but you can go ahead.

Page 123

SCOTT WEISS

1
2    A.   Again, I would have -- I don't
3 know. I think I would say that I think we
4 are -- the bank is owned by one
5 individual who has -- my understanding is
6 that he has majority -- somewhere between
7 50 and 100 percent of the voting
8 authority of the bank. So ultimately it
9 would be his decision, it would be him.
10    Q.   That person is Howard
11 Milstein?
12    A.   Correct.
13    Q.   Does anybody besides
14 Mr. Milstein have authority to decide
15 whether or not to settle this case?
16    A.   I don't know.
17        MR. MAYRON:  Objection to
18    form.
19    Q.   Okay. Again, not looking for
20 the substance of any communications, but
21 who are the individuals who would help
22 Mr. Milstein decide whether or not to
23 settle this litigation?
24        MR. MAYRON:  Objection to
25    form. You can go ahead.

Page 124

SCOTT WEISS

1
2    A.   It would be internal and
3 external counsel, as well as Chris Staudt
4 and Barry Friedberg.
5    Q.   So Chris Staudt, Barry
6 Friedberg, Mr. Butvick?
7    A.   Correct. And Jeanine -- I
8 don't even know why I can't think of her
9 name.
10    Q.   I didn't want to ask you --
11    A.   I wasn't prepped for this
12 question.
13    Q.   I also forgot Jeanine's last
14 name. I was hoping you could figure it
15 out. Internal counsel.  Anyone other than
16 Mr. Butvick, and I'm sorry I forgot --
17        MR. MAYRON:  McHugh.
18        THE WITNESS:  McHugh.
19        MS. PARKS:  That's right.
20    Thank you. Sorry.
21    Q.   So any other internal counsel
22 besides Mr. Butvick and Ms. McHugh?
23    A.   I don't know.
24    Q.   But none that you're aware of?
25    A.   None that I'm aware of.

Page 125

SCOTT WEISS

1
2    Q.   Okay. And then external
3 counsel, that means Sullivan & Cromwell?
4    A.   Correct.
5    Q.   Is Dilworth Paxson also
6 advising Mr. -- or EBC on that decision?
7    A.   I -- I don't know.
8    Q.   Okay. How about Cohen Resnick?
9    A.   I don't know.
10    Q.   Any other external counsel?
11    A.   No, not that I'm -- I mean,
12 not that I'm aware of.
13        MS. PARKS:  Sure. Okay. That's
14    all I got. Thank you, Mr. Weiss,
15    for coming back.
16        THE WITNESS:  Great.
17        MS. PARKS:  Austin, do you
18    have any?
19        MR. MAYRON:  I just have a few
20    quick questions.
21 CROSS-EXAMINATION BY MR. MAYRON:
22    Q.   The first, and I think we
23 covered this at the top about also
24 personal capacity and the corporate
25 representative capacity, but apart from

32 (Pages 122 - 125)

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 206
RECEIVED NYSCEF: 03/11/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 215 of 438

New York Code

Civil Practice Law and Rules

Article 31 Disclosure, Section 3116

(a) Signing. The deposition shall be submitted to
the witness for examination and shall be read to or
by him or her, and any changes in form or substance
which the witness desires to make shall be entered
at the end of the deposition with a statement of
the reasons given by the witness for making them.
The deposition shall then be signed by the witness
before any officer authorized to administer an
oath. If the witness fails to sign and return the
deposition within sixty days, it may be used as
fully as though signed. No changes to the
transcript may be made by the witness more than
sixty days after submission to the witness for
examination.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE STATE RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 206    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 216 of 438

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.


Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 206    24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024
Court Records    Pg 217 of 438

in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT E

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CIVIL TERM:  PART 49
 2   ------------------------------------------------X
     EMIGRANT BUSINESS CREDIT CORPORATION,
 3
                              Plaintiff,
 4
                     - against -                    INDEX #
 5                                                  158207-2020
 6   JOHN ARTHUR HANRATTY, EBURY STREET CAPITAL, LLC,
     EBURY FUND 1, LP, EBURY FUND 2, LP, EBURY IEMI
 7   LLC, EBURY 2EMI LLC, EB 1EMIALA LLC, EB 2EMIALA
     LLC, EB 1 EMIFL, LLC, EB 2EMIFL, LLC, EB 1EMIIN,
 8   LLC, EB 2EMIIN, LLC, EB 1 EMIMD, LLC, EB 2EMIMD,
     LLC, EB1EMINJ, LLC, EB 2EMINJ, LLC, EB 1EMINY,
 9   LLC, EB 2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC,
     LLC, RE 1EMI LLC, RE 2EMI LLC, EB 2 EMIDC, LLC,
10   ARQUE TAX RECEIVABLE FUND (MARYLAND), LLC, EBURY
     FUND 1FL, LLC, EBURY FUND 2FL, LLC, EBURY FUND
11   1NJ, LLC, EBURY FUND 2NJ, LLC, RED CLOVER 1, LLC,
     EBURY RE LLC, and XYZ CORPS 1-10,
12
                              Defendants.
13   ------------------------------------------------X
                         January 24, 2024
14                       60 Centre Street
                         New York, New York 10007
15
16   B E F O R E:  THE HONORABLE MARGARET CHAN,
                             Justice of the Supreme Court
17
18
     A P P E A R A N C E S:
19
20           SULLIVAN & CROMWELL LLP
             Attorneys for Plaintiff
21           125 Broad Street
             New York, New York 10004
22           BY: AUSTIN P. MAYRON, ESQ.
                 ALEXANDER J. WILLSCHER, ESQ.
23               ERIN L. SAVOIE, ESQ.
24
     (Continued...)
25
                    Lisa Casey - Senior Court Reporter
```

1

2   A P P E A R A N C E S:   (Continued.)

3

4              GUSRAE KAPLAN NUSBAUM LPPC
               Attorneys for Defendants
5              120 Wall Street
               New York, New York 10005
6              BY: KARI PARKS, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19                              LISA CASEY
                                Senior Court Reporter
20

21

22

23

24

25

Proceedings

1              THE COURT:  This is Emigrant Business Credit

2      Corp. versus John Arthur Hanratty, et al.  I'll have your

3      appearances, now.

4              MR. MAYRON:  Austin Mayron, Sullivan Cromwell, on

5      behalf of plaintiff, Emigrant Business Credit Corporation.

6      With me today are Alex Willscher and Erin Savoie, also with

7      Sullivan Cromwell.

8              THE COURT:  Thank you.

9              MS. PARKS:  Good afternoon, your Honor.  Kari

10     Parks, Gusrae Kaplan Nusbaum, PLLC, for defendants.  Thank

11     you.

12             THE COURT:  Thank you.

13             All right.  Mr. Mayron, why don't you start us

14     off, and so we have it on the record, what this motion for

15     contempt is about.

16             MR. MAYRON:  Thank you, your Honor.

17             May it please the Court, we are here today on

18     motion sequence number five, which is plaintiff Emigrant

19     Business Credit Corporation, or EBCC's, motion for

20     contempt.

21             As a little bit of background, this Court entered

22     a preliminary injunction in November of 2022, and the

23     preliminary injunction order contained three requirements.

24     The first requirement was that the defendants had to

25     provide notice before transferring any assets in an amount

Proceedings

1    of $50,000 or more.  This provision was key to the

2    preliminary injunction, because it was meant to provide

3    EBCC the opportunity to contest or object to transfers, or

4    to investigate further if there were doubts about the

5    fairness of the transaction.

6            There were two other provisions of the

7    preliminary injunction order.  The first is that defendants

8    were not allowed to transfer assets outside the ordinary

9    course of business, and the second that was if defendants

10   transferred or sold tax lien or real estate assets, they

11   had to deposit the proceeds of those transactions into an

12   escrow account, less ordinary and necessary business

13   expenses related to their tax lien or business expenses.

14           So, since that order was entered in November 2022

15   defendants have escrowed only $65,000, and for reference on

16   the scope of defendant's business, in October 2022

17   Defendant John Arthur Hanratty submitted an affidavit to

18   the Court.  This is paragraph 41 of docket entry 24.  I can

19   provide your Honor with a copy, if you would like.

20           THE COURT:  Thank you.

21           (Whereupon, a document was handed to the Court.)

22           MR. MAYRON:  So, paragraph 41, which is on page

23   seven, Mr. Hanratty testified in 2022, the Ebury entities'

24   average monthly revenue has risen to $753,096, leaving the

25   Ebury entities in the best cash position since the pandemic

Lisa Casey - Senior Court Reporter

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 207     24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024
Court Records   Pg 223 of 438

Proceedings

 1        happened.  So, for reference, since around when that

 2        affidavit was entered, defendants had escrowed only

 3        $65,000.

 4               As another point of comparison, since

 5        October 12th, 2023, about a month and a half ago, according

 6        to defendant's own books and records, defendants have

 7        transferred $180,750 directly to John Hanratty.  We do not

 8        have any other information about those transfers, other

 9        than we see that they were made, and this amount dwarfs the

10        amount that had been escrowed, to date.

11               So, we are here today because, after Mr. Hanratty

12        was arrested, EBCC investigated defendant's books and

13        records to see if there were any improper transfers of

14        funds.  This was belt and suspenders, because defendants

15        were supposed to be providing this information on a monthly

16        basis pursuant to the Court's preliminary conference order,

17        but EBCC still checked nonetheless, and what we discovered

18        was, since October 2023, there were repeated violations of

19        this Court's orders.

20               First, in October, there was a transfer of a tax

21        lien for over $87,000 in book value.  They received

22        $50,000, and this transfer, EBCC was not provided advance

23        notice; the proceeds were not escrowed; and moreover, this

24        transaction was not disclosed on defendant's reporting the

25        following month as required by the preliminary conference

Lisa Casey - Senior Court Reporter

1      order.

2              Then, in December, we saw a transaction where

3      defendants made a bulk sale of $1.1 million worth of

4      Emigrant's tax lien collateral for only about $250,000,

5      representing a nearly 80 percent discount.  Based on our

6      review of defendant's books and records, it seems as though

7      this sale was done at a substantial discount, a distress

8      sale, less than what defendant's even paid or invested into

9      these tax liens.

10             We then followed what happened to that 256,000,

11     and there were numerous suspicions transfers.  The most

12     chiefly of all, we saw a transfer two days after defendant

13     John Arthur Hanratty was arrested.  He transferred $75,000

14     to himself.  He did not provide EBCC the required 24 hours

15     advance notice, and we have no idea what those funds were

16     being used for.

17             In defendant's response papers, they suggest that

18     these funds were being used for criminal defense expenses,

19     but we don't believe that's the case because we see, in

20     defendant's books and records.  When they pay their

21     counsel, Ms. Parks, we see entries for direct transfers

22     directly to Gusrae Kaplan Nusbaum, the defendant's law

23     firm.  This transfer, in addition to the other $180,000

24     that have been transferred since October, we don't see

25     transfers directly to law firms, we see transfers directly

Proceedings

1         to Mr. Hanratty, himself.

2                  So, these incidents, the October incident where

3         Mr. Hanratty sold, transferred, a tax lien with book value

4         of 87,000 without advance notice to Emigrant, failed to

5         escrow the proceeds; the incident in his November reporting

6         where he then failed to disclose that October transaction;

7         the incident in December, where he made a bulk sale of

8         almost $1.1 million worth of tax liens without notifying

9         EBCC, and without escrowing the proceeds; and then when he

10        transferred $75,000 to himself, two days after he was

11        arrested, each of those is a violation of this Court's

12        orders.

13                 To find contempt, the Court need only find four

14        things.  The first is clear and unequivocal mandates, and

15        we believe those are satisfied by this Court's preliminary

16        injunction order and preliminary conference order.

17                 The second element is, the order has been

18        disobeyed.  The evidence we have submitted, and defendants

19        have failed to really contest, is that the orders were

20        disobeyed.

21                 The third is that the party to be held in

22        contempt have knowledge of the Court's orders.  We believe

23        this element is satisfied, and defendant's have failed to

24        controvert it.  In fact, Mr. Hanratty himself submitted an

25        affidavit in opposition to the PI motion that the Court

1    ultimately had granted in its preliminary injunction order.

2    And then prejudice, and we believe we have established

3    prejudice, and the chief prejudice here is the reason the

4    preliminary injunction order contains an advance notice

5    provision, is so that Emigrant can object; that we can

6    speak with the defendants and say, We object, we want to

7    know more about the transaction; and we can come to court

8    to solve it beforehand.

9         That's the whole purpose of the PI, is to resolve

10   these issues beforehand, and that process was not followed

11   here, and there's prejudice, and there's ample First

12   Department caselaw that establishes that that is prejudice.

13   I'll direct you to page seven of our motion for contempt,

14   which is docket 109.  This is the Board of Directors of

15   Windsor Owners Corp., which says Judiciary Law 753 does not

16   require a showing of monetary harm as a precondition to a

17   finding of civil contempt, and then also in our opposition

18   papers to defendant's order to show cause -- this is motion

19   sequence six -- we cite, at page 7 of docket 1660, we cite

20   the Ficus Investments case, where the Court -- this is the

21   First Department -- found prejudice where the defendant

22   impermissibly negotiated conveyance of certain mortgages,

23   without providing notice to plaintiffs.

24        So, we believe that all the requirements for

25   civil contempt are established here, and then criminal

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM        INDEX NO. 158207/2022

NYSCEF DOC. NO. 207    2404020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024

Court Records   Pg 227 of 438

Proceedings

 1        contempt, the only additional element that needs to be

 2        shown is willfulness, and the Court of Appeals has said

 3        that willfulness is a relatively low bar.  It's an

 4        awareness of the act that is other than unwitting conduct.

 5        We do not believe that what's happened here is unwitting

 6        conduct, including the circumstances where Mr. Hanratty

 7        transferred himself $75,000, two days after being arrested.

 8              I'm happy to speak more about this motion, or the

 9        other motion sequences, if your Honor has any questions.

10              THE COURT:  No.  I would like to hear from

11        Ms. Parks.

12              MS. PARKS:  Thank you, your Honor.

13              I'll be straight with you.  We do not contest

14        that my clients have violated the notice and recording

15        requirements of your Honor's injunction order.  I believe

16        Mr. Mayron identified four separate alleged violations, so

17        I believe that will cover -- the first violation, which was

18        the October 23 transaction, approximately $7,000, we don't

19        contest that that's a violation of your Honor's order.

20              We do not contest the second incident, which

21        was -- oh, the November, it's related to the October event,

22        but one of your Honor's injunction orders is that my

23        clients provide a monthly report about two weeks after each

24        month detailing certain transactions that exceed the

25        recording threshold amount, so we do not contest that my

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 207 2404020-dsj Doc 1-3 Filed 08/14/24 Entered 08/14/24 09:45:23 Doc #4 State RECEIVED NYSCEF: 03/11/2024

Court Records Pg 228 of 438

Proceedings

1          client failed to report that October transfer in their

2          November report.

3                    We do not contest the third item that Mr. Mayron

4          discussed, which is the, I believe, December 11th, 2023

5          bulk sale.  The only point we had to say to that is that it

6          looks like breaking apart for several transactions

7          underlying it, some of those transactions related to assets

8          that had a book or sale values above that recording

9          transaction threshold.  Some of the transactions have lower

10         ones, but other than that, certainly taken in the

11         aggregate, we do not contest that that was up there, as

12         well.

13                   I think, on the merits, the only incident that we

14         don't believe violated clear and unequivocal mandate from

15         your Honor was the fourth, which is the $75,000 transfer on

16         December 20th, 2023.  That transfer was from one of the

17         corporate accounts, I don't remember which one, to

18         Mr. Hanratty that Mr. Mayron mentioned.  We don't believe

19         that that violated a clear an unequivocal mandate from your

20         Honor, because the injunction language prevented

21         transferring, et cetera, et cetera, and essentially we read

22         that injunction provision to require that if any of my

23         clients were to transfer, for example, money outside of

24         that group, outside of each other, essentially, we would

25         have to report it.  We didn't understand that to mean that

Lisa Casey - Senior Court Reporter

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM    INDEX NO. 158207/2022

NYSCEF DOC. NO. 207    2404020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 229 of 438

Proceedings

```
1         within, essentially intra-defendant transfers, would also

2         require that reporting.  We could have sought clarity on

3         that, I suppose, before this incident, but in our

4         submission here, we don't think that's a clear and

5         unequivocal mandate, especially given that, sort of, taking

6         us all in the time machine, back about 15 months, the one

7         of the original functions of plaintiff's request for the

8         injunctive relief order was this idea of fraudulent

9         conveyance; moving outside of the defendants, whom I

10        represent here.

11             So, in sum, we certainly don't contest that the

12        first three issues violated your Honor's order.  We don't

13        necessarily believe that $306,000 -- oh, and actually, let

14        me add one more.  I think --

15             THE COURT:  Agreement or disagreement?

16             MS. PARKS:  No, actually, one more that I think,

17        to -- frankly, I don't think it's throwing my client under

18        the bus, but I think it's clear.  In connection with the

19        order to show cause on this particular motion, your Honor

20        ordered my client to escrow approximately $306,000 which

21        they did not do, and so while we are all here I will say

22        that, too, would be a violation of your Honor's order.  It

23        wasn't set forth in the moving papers because it hasn't

24        happened yet, but in the interests of transparency, that

25        look like a violation.
```

Proceedings

```
 1              THE COURT:  Okay.  Do you wish to add that in?
 2              MR. MAYRON:  Just quickly, your Honor, in terms
 3         of whether the preliminary injunction order was a clear and
 4         unequivocal mandate that, for instance, the Ebury companies
 5         couldn't transfer Mr. Hanratty's $75,000, I think the
 6         language of your Honor's order is quite clear.  This is the
 7         condition on page 8 of docket 47, which says that
 8         defendants and other related persons must notify Emigrant
 9         at least 24 hours in advance of, and it lists -- it says,
10         Transferring, and a bunch of synonyms, Any assets in an
11         amount exceeding $50,000, and what I heard Ms. Parks say is
12         that it wasn't clear if this applied to intra-company
13         transactions, but I'm directing your Honor to the
14         preliminary conference order, which is docket 53, and as
15         part of the preliminary conference order, your Honor
16         ordered defendants to provide documentation for any
17         proceeds in excess of 5,000, and disbursements in excess of
18         10,000.
19              We have been receiving that monthly reporting
20         since December of 2022, and defendants have disclosed,
21         repeatedly, intra-company transactions, and so this, I
22         think, is strong evidence that defendants have understood
23         the order by its plain and unequivocal language.
24              I'll also note another thing about what Ms. Parks
25         just said, which is that it appears that Mr. Hanratty still
```

Proceedings

 1    has the money, the proceeds of these sales, and all we ask

 2    is that he give the money back in accord with the credit

 3    agreements he executed back in 2017, and the terms of your

 4    Honor's orders.

 5              MS. PARKS:  Briefly?

 6              THE COURT:  Go ahead.

 7              MS. PARKS:  I'm sorry.  I must have misspoken.

 8    Maybe I was not clear.  I'm not saying the $75,000 -- let

 9    me reboot.  The $75,000 transfer certainly violated the

10    pre-advance notification provisions, or at least arguably

11    so.  I can understand that.  My point was that, as far as

12    the underlying substance of the transaction, there's the

13    first two clauses of your Honor's injunctive order,

14    docket 47, refer to transfers, et cetera, outside of

15    ordinary and necessary business and living expenses, so

16    that was the portion I was referring to, that the $75,000

17    transfer does not clearly -- did not violate a clear and

18    unequivocal mandate by your Honor.

19              THE COURT:  You wish to respond to that?

20              MR. MAYRON:  Yes, your Honor.  I think what our

21    position is, first of all, it's not clear what the purpose

22    the $75,000 transfer is.  There's some attorney argument

23    that it's being used for criminal defense expenses, but

24    again, this is inconsistent with what we have seen in the

25    past.  Defendants' practice is to pay their lawyers

Proceedings

1          correctly from their corporate account.

2                   In terms of whether criminal defense expenses are

3          ordinary and necessary business expenses related to

4          defendant's tax lien and real estate businesses, I think

5          our position is that they are not, and that's, we think,

6          clear from the text of the order.  To the extent there's

7          any ambiguity, that doesn't excuse defendants' failure to

8          notify plaintiff that they were going to make these

9          transfers, because that requirement is clear and

10         unequivocal.  But, if there is ambiguity, we would

11         respectfully ask that the Court make clear and clarify the

12         preliminary injunction order, that defendants can't use

13         what plaintiff believe are the proceeds of fraud to pay for

14         the expenses of defending the fraud.

15                  THE COURT:  Well, I think that if you got

16         notification, you would have said something; correct?

17                  MR. MAYRON:  Yes, your Honor.

18                  THE COURT:  So, that's an admitted violation, and

19         that's why there was this notification requirement, so that

20         if there are any contests, such as there is now, then you

21         could have just come to the Court and say, Is this part of

22         the household-type expenses, or not?  I hate to think that

23         lawyers fees for criminal defense is a normal household

24         expense.

25                  MS. PARKS:  Well, your Honor, two points.  One, I

Proceedings

1     will make the representation that I personally represent

2     Mr. Hanratty in a criminal matter.  He was arrested on

3     December 18th.  I was out of the country in a different

4     time zone, and then I sent a retainer agreement for

5     $75,000, sometime between December 18th and 19th.  So,

6     that's on that.

7               As far as -- I'm not trying to say, maybe there

8     may be not be caselaw that it's an ordinary living expense,

9     however no less authority than the IRS had said that legal

10    fees and criminal defense fees can be considered ordinary

11    and necessary business expenses, and that's why, your

12    Honor, in this situation, the two funds' partnership

13    agreement, sitting at the top, provide for advancement and

14    indemnification of all legal fees of the principal relating

15    to the business, including criminal defense fees, and it's

16    a fairly typical advancement provision in that the entity

17    that's required to advance those fees, unless and until

18    there's a final, non-appealable judgment in the criminal

19    matter, at which point, of course, typically, we see all

20    the -- the entity and the former executives then sue each

21    other over who should be paying what.

22              THE COURT:  Okay.  Granted that it may or may not

23    be considered regular household expense, nonetheless, there

24    should have been notification, and that issue could have

25    been explored more in depth.  So, had he notified

Proceedings

 1            plaintiffs of that, this wouldn't be an issue.

 2                    I think you also asked for a stay?

 3                    MS. PARKS:  Well, yes, your Honor.  We have moved

 4            for a stay pending the criminal action, because it's

 5            related, and I'm happy to talk about that at length, if you

 6            would like.

 7                    THE COURT:  Yes.

 8                    MS. PARKS:  Okay.  Let me switch papers.

 9                    THE COURT:  I think we need to discuss that.

10                    MS. PARKS:  Okay.  Sure.

11                    Thank you, your Honor, for the opportunity to

12            discuss that, and I know Mr. Mayron put in opposing papers,

13            so your Honor has seen both sides of the issue at this

14            point, I'm sure.

15                    You have great discretion in deciding whether or

16            not to grant a motion to stay.  That's clear.  It's also

17            clear that, in the vast majority of cases where there's a

18            related criminal and civil proceeding, the civil proceeding

19            typically gets stayed, not only for Fifth Amendment

20            reasons, but also for other reasons of, essentially,

21            judicial economy, and prejudice to the parties and the

22            Court and judicial system, and the possibility of avoiding

23            inconsistent results, and also just streamlining issues.

24                    So, for example, in this case, EBCC originally

25            filed this lawsuit in September 2022 out of a failure to

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 235 of 438

Proceedings

1    repay a loan agreement.  So, you have your, sort of,

2    typical breach of contract claim.  We also have a

3    fraudulent inducement and fraudulent conveyance claim.  As

4    we set out, we essentially tried to A, B, compare the

5    EBCC's complaint and allegations against this new criminal

6    case that has been filed in the Southern District of New

7    York, via complaint, that is accusing Mr. Hanratty, the

8    principal of the entity defendants, of defrauding EBCC.

9          Now, the allegations are identical, in substance.

10   The charging instrument in this case -- it's a little

11   unusual, but it's a complaint, so it takes the form of an

12   FBI Affidavit, and that FBI affidavit relies upon

13   information, interviews, and documents all provided by

14   EBCC, that EBCC collected in preparation for this

15   particular case, so there's really no question that in this

16   particular situation, the criminal and the civil case are

17   very, very intertwined.

18         Now, one reason why this is a little bit unusual

19   of your typical motion to stay a parallel civil action case

20   is because discovery has been completed in this case, and

21   depositions have occurred, and that's highly unusual.

22   Usually, the sequencing is a little different from how we

23   usually appear, and I frankly looked for similar cases.  I

24   haven't found too many, but so while the Fifth Amendment

25   implications are maybe lower than they might be in a

Lisa Casey - Senior Court Reporter

Proceedings

1    typical prediscovery case, because Mr. Hanratty sat for two

2    days of deposition, they are not entirely gone, because for

3    first of all, EBCC's three claims are still alive, and I

4    can get into that more, but as your Honor knows, any

5    submission to the Court made on Mr. Hanratty's behalf is

6    still his statement, for all purposes, and he is still

7    defending, in this civil case, those live fraudulent

8    inducement and fraudulent transfer claims.

9            But, besides the Fifth Amendment issue, it's a

10   little unusual here.  I think the overlapping facts of the

11   criminal and civil matter show that it would much more

12   efficient, and a much better use of public resources, to

13   let the criminal case play out, because of course, in the

14   federal criminal case, what the Southern District of New

15   York prosecutor's office is trying to prove is that

16   Mr. Hanratty defrauded Emigrant in the same way alleged by

17   Emigrant in this civil complaint, and the allegations and

18   the charges in that case are wire fraud and bank fraud, so

19   the elements are overlapping, and of course the

20   prosecutor's office has the obligations to prove those

21   charges beyond a reasonable doubt; right?

22           So, what we see here is, and the caselaw is also

23   clear, that a guilty plea has the same estoppel effect in a

24   related matter as a full-on jury trial adjudication would,

25   so what we are facing is a situation in which the

Proceedings

1          prosecutor's office has now assumed, at least, or taken

2          joint responsibility, it's not clear, for this prosecution

3          of the fraud, alleged fraud against Emigrant, and if the

4          prosecutors' office were to succeed on that, or if

5          Mr. Hanratty were to plead guilty to that, we would now be

6          estopped, and there would essentially be no more work for

7          this Court.  It would be very routine and simple, because

8          all of those material facts would have estoppel effects

9          here, and of course your Honor would still do exactly what

10         she is supposed to be doing, but the level of work is going

11         to be much less involved.

12              Here in this civil case, while plaintiffs have --

13         or plaintiff, excuse me, has filed its opening brief in

14         support of motions for summary judgment, right now there's

15         still three briefs left for summary judgment, because our

16         stipulated briefing schedule agreed to cross motions from

17         defendants combined with an opposition brief, then Emigrant

18         has a chance to respond, et cetera.

19              So, we have three summary judgment briefs left,

20         which is a not-insignificant amount of work and expense,

21         frankly, and time.  I believe that current briefing

22         schedule is set forth, the last brief to be filed the first

23         week of March.  I don't remember the exact date.

24              THE COURT:  One second.

25              MS. PARKS:  Yes.

Lisa Casey - Senior Court Reporter

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 207          2404020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/11/2024
                                                Court Records    Pg 238 of 438

Proceedings

 1                    (Whereupon, there was a pause in the

 2          proceedings.)

 3                    THE COURT:  Okay.  Go ahead.

 4                    MS. PARKS:  So, of course, besides the parties

 5          having to work with three more briefs, your Honor and your

 6          staff are going to be reading them and reviewing them.

 7          These are summary judgment briefs.  It's not a prediscovery

 8          motion.  These are voluminous submissions, as we saw with

 9          the first brief.  The exhibits were about this big

10          (indicating), and of course, let's say, for example, even

11          if my clients do not file a cross motion for dismissal of

12          the two fraud claims, those two fraud claims still exist.

13          There will be no -- there's no summary judgment ruling at

14          all in those two claims, and that means we are still

15          looking at going to trial, and a trial date hasn't been

16          set.

17                    So, in this situation, the Fifth Amendment

18          concerns are real.  They are very different from the

19          typical case, but the judicial economy reasons matter a

20          lot, and the public rights and the public prejudice and

21          waste of judicial resources matters more, I believe, in

22          this case.

23                    Thank you.

24                    THE COURT:  Okay.

25                    MR. MAYRON:  Thank you, your Honor.

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 239 of 438

Proceedings

```
 1                   So, as EBCC has set out in its papers, the scheme

 2          to defraud began in 2018, six years ago.  Defendants failed

 3          to repay Emigrant at the original maturity date in March of

 4          2021, three years ago.  Defendants defaulted at final

 5          maturity in November 2, 2021, two and a half years ago.

 6          This case has been pending over a year.

 7                   As the Barbarito case says, justice delayed is

 8          justice denied.  Every day that passes increases the risk

 9          that defendants will not be able to satisfy a judgment

10          against them.  Interest is continuing to accrue at a

11          default rate of an index rate plus 10 percent, and it is

12          unlikely defendants are going to be able to make these

13          payments, after judgment.

14                   In addition, defendants, as we see from the

15          contempt motion, they're continuing to transfer assets and

16          violate this Court's orders, and so a stay would only

17          increase the risk of further violations of this Court's

18          order.

19                   I think the best place to start is the text of

20          the CPLR, which authorizes this Court, in its sound

21          discretion, to grant a motion for a stay, and what CPLR

22          2201 says is that a stay of proceeding can be granted in a

23          proper case, and upon such terms as may be just, and we

24          don't believe that this is a proper case, or that there are

25          terms that would be just for granting such a stay.
```

Lisa Casey - Senior Court Reporter

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 240 of 438

Proceedings

```
 1                 As the First Department said in Access Capital,

 2          invoking the privilege against self incrimination is

 3          generally an insufficient basis for precluding discovery in

 4          a civil matter.  That's discovery.  We are done with

 5          discovery.  Discovery has been done for six months.

 6          Mr. Hanratty sat through two days of depositions, nearly

 7          16 hours on the record, answered almost 2,000 questions.

 8                 I don't know if your Honor has had an opportunity

 9          to look at our summary judgment papers on our breach of

10          contract claim, but we highlight some of the many

11          admissions that Mr. Hanratty made at his deposition, and so

12          for instance, in our stay papers, docket 156 at page 11, we

13          quote from Mr. Hanratty's deposition where he says, I am

14          currently in default, and owe money to Emigrant.  Yes.  He

15          also says, I acknowledge that I owe them money, and I want

16          to pay them.

17                 Mr. Hanratty made other admissions, such as

18          submitting false certifications to Emigrant, that certain

19          valuations being submitted to Emigrant were incorrect, and

20          I even presented him with notarized statements that he had

21          obtained that were false, and I showed him New Jersey Penal

22          Law Section 210.35, which covers Making Apparently Sworn

23          False Statements in the Second Degree, and he admitted to

24          the conduct that he had done, making apparently false sworn

25          statements.
```

Lisa Casey - Senior Court Reporter

Proceedings

```
 1              So, that's all to say that in this case,

 2     discovery is complete.  There is no need for further

 3     testimony from Mr. Hanratty, and this case can proceed to

 4     summary judgment.  EBCC moved for summary judgment on its

 5     breach of contract claims alone, because fraud has issues

 6     of intent which are not suitable for resolution at summary

 7     judgment, and all of plaintiff's breach of contract claims

 8     can be resolved based on the undisputed factual records,

 9     defendant's admissions, Ms. Hanratty's admissions at his

10     deposition.

11              Also, all of the cases -- and we go through each

12     and every case that defendants cite in their stay papers on

13     page six of our opposition.  This is docket 156.  In every

14     case that defendants cite granting a stay, it was prior to

15     a deposition of a party where the indication of a Fifth

16     Amendment right was adversely impacted, the party's rights.

17              We have other reasons that we detail.  I think we

18     have six different reasons why a stay would be unjust under

19     these circumstances, in our opposition papers.  I'm happy

20     to go through any of them that your Honor wants.

21              THE COURT:  Well, I don't think it's a surprise,

22     that defendant Mr. Hanratty is in contempt for violation of

23     at least four -- I'm counting the $75,000 one, as well --

24     four incidents of violating the Court order, and you sought

25     how much to be held?
```

Lisa Casey - Senior Court Reporter

Proceedings

```
 1                MR. MAYRON:  We sought a punishment for civil

 2        contempt of $306,000.  Let me get the exact number.

 3                $306,946.30, which represents the proceeds of the

 4        lien sales that were undertaken in October and

 5        December 2023, without advance notice.

 6                THE COURT:  Okay.  I will grant you that.

 7                MR. MAYRON:  Thank you, your Honor.

 8                THE COURT:  As for the stay, I'm going to look at

 9        the docket again and I'll give you a response, probably by

10        tomorrow.

11                MS. PARKS:  Thank you, your Honor.

12                THE COURT:  Was there something else?

13                MR. MAYRON:  Your Honor, thank you.  To the

14        extent defendants are directed to make a payment of

15        $306,000, we respectfully ask that your Honor put a

16        deadline on for defendants to make such a payment.  It

17        doesn't need a few days, but just an outside deadline, to

18        make the requirement real.

19                THE COURT:  Do you have any requests as to the

20        deadline that I should consider?

21                MR. MAYRON:  I think two weeks from today.

22                THE COURT:  Okay.  I hope that is a viable

23        deadline.  February 7th.

24                MS. PARKS:  The 7th?

25                THE COURT:  Two weeks.  Thank you.
```

Lisa Casey - Senior Court Reporter

FILED: NEW YORK COUNTY CLERK 03/11/2024 11:57 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 207   2:04:020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/11/2024

Court Records    Pg 243 of 438

Proceedings

1              MS. PARKS:  Your Honor, a clarification question.

2       A moment ago your Honor said that you would hold

3       Mr. Hanratty in contempt, and Mr. Mayron's application, I

4       believe, sought all defendants -- is that right?

5              MR. MAYRON:  Yes, your Honor.

6              MS. PARKS:  -- to be held in contempt, so I'm

7       just trying to see which, or all.

8              THE COURT:  It's basically Mr. Hanratty.

9              MS. PARKS:  Okay.  Thank you, your Honor.

10             THE COURT:  Let me just ask you something else

11      about the stay.  Different burdens of proof; right?  And

12      given that deposition happened and discovery has been done,

13      I'm trying to just make sure that, on the criminal matter,

14      how this would impede or affect.  I'm not talking about

15      judicial resources or anything like that, but can you give

16      me a good answer to that?

17             MS. PARKS:  I can.  Well, I'll try, I can't

18      promise that I can give you a good answer, your Honor.  And

19      you say impede or affect, impede or affect --

20             THE COURT:  Well, the criminal to the civil,

21      definitely; but civil to the criminal, not so much.

22             MS. PARKS:  Not so much.  Exactly.  You know,

23      I've got an Assistant U.S. Attorney, so I wouldn't purport

24      to speak on their behalf.  I do regularly have matters that

25      have parallel civil and criminal issues, and I'll say from

                    Lisa Casey - Senior Court Reporter

Proceedings

```
 1        my experience, typically there's concerns from the

 2        prosecutor's office about, you know, witness interference,

 3        you know, the civil trial, kind of getting ahead of the

 4        federal prosecutions, mandate issues with calling

 5        witnesses, and that sort of thing.  This is all very

 6        high-level.  Again, I'm literally -- there are my enemy in

 7        that proceeding, so I don't know if I can speak for them,

 8        but those are typically some of the concerns that are

 9        posed.

10                   THE COURT:  Thank you.

11                   MR. MAYRON:  Your Honor, if I may be heard?

12                   THE COURT:  Yes.

13                   MR. MAYRON:  The U.S. Attorneys office for the

14        Southern District could have moved for a stay, if they

15        believed that one was warranted here.  I'll note that, to

16        the extent -- this is something we say in our papers --

17        that defendants, they can't promise a speedy resolution to

18        Mr. Hanratty's criminal proceeding.  It could take a year.

19        It could take 18 months.  During the pendency of such a

20        stay, he could continue to dissipate assets.  Also,

21        Emigrant is going to have to continue spending money to

22        recover here.

23                   Also, I think if your Honor takes a look at the

24        summary judgment papers, this case, at least the summary

25        judgment motions, can be resolved on the basis of the
```

Proceedings

```
 1            undisputed factual record, which is --

 2                 THE COURT:  Wait a minute.  Now the record is not

 3            so big?

 4                 MR. MAYRON:  No, it's not so big.  Defendants

 5            pointed to the number of exhibits, and we would just point

 6            to those exhibits because they establish facts that can't

 7            really be controverted, and Mr. Hanratty, in his deposition

 8            admitted -- for instance, we put certain documents in front

 9            of him and asked him if the numbers were correct and he

10            said, No.  We gave your Honor those documents, so that you

11            could review them.

12                 THE COURT:  I'm not dealing with the summary

13            judgment motion right now.

14                 MR. MAYRON:  No.  Of course.  But a stay in these

15            proceedings I don't believe will simplify things much,

16            because there's not much left to simplify.  Fact discovery,

17            again, is done, and then Ms. Parks suggested that

18            Mr. Hanratty may plead guilty to the charges against him,

19            and while a guilty plea certainly would simplify the

20            proceedings against him and, I don't see any reason to stop

21            briefing on the parties' summary judgment motions, in the

22            event that that doesn't happen, because those summary

23            judgment motions can be resolved on the factual record,

24            which is closed, and we should keep going.  Otherwise,

25            justice delayed is justice denied.
```

```
 1                THE COURT:  Thank you.

 2                You wish to respond to that?

 3                MS. PARKS:  Yes.  I would start with saying

 4      briefly, but then I would be held to it, so pretend I

 5      didn't say that, briefly.

 6                Three points, though.  Mr. Mayron just

 7      articulated his concern that if the court were to stay the

 8      civil action, Mr. Hanratty and the other defendants would

 9      just dissipate assets.  That ignores the sort of

10      overarching context here, which is he is under federal

11      charges.  Every move of his is being watched by federal

12      prosecutors.  So, respectfully, if any party in the world

13      has a little more power to keep Mr. Hanratty, or

14      respondents, from allegedly wrongfully dispersing money

15      than EBCC, does it's probably the U.S. Attorneys Office for

16      the Southern District of New York.

17                Second, Mr. Mayron expressed his concern that,

18      were the Court to stay, his client would have to keep

19      spending money to litigate this case but, in fact, the stay

20      would help EBCC stop spending money to litigate this case,

21      at least for a little while.  Our very esteemed co-counsel

22      is not cheap, and there's at least three summary judgment

23      motion briefs left, in addition to oral argument, and of

24      course trials on the fraud issues that, again, hasn't been

25      set yet, and I don't know what your Honor's trial schedule
```

Proceedings

```
1        looks like, or when that trial might occur, but maybe it

2        wouldn't really be sooner than a criminal resolution, given

3        the speedy trial requirement.

4              Finally, I do want to make clear that there is an

5        extensive record, and Mr. Hanratty and my clients, from the

6        very inception of the case, have always admitted liability

7        on breach of contract from day one; right?  So, when we

8        want to talk about simplifying this case and making it

9        easier, or justice delayed is justice denied, the easiest

10       way would have been, on day one, to proceed on breach of

11       contract and go right to damages on the alter ego claim,

12       but we didn't because EEBC brought those two fraud claims,

13       and that's we have been fighting about.

14             Even now, on the summary judgment motion, when my

15       client has admitted liability on breach of contract from

16       day one, there are issues that are briefed in the moving

17       summary judgment papers of alter ego liability, and also

18       the right number for damages, and those issues aren't as

19       cut and dry, so there is a little bit left to do, even if

20       you just looked at the contract claim.

21             That's all I have.  Thank you, your Honor.

22             THE COURT:  Okay.

23             MR. MAYRON:  Your Honor, if I may be heard.

24             Ms. Parks, I think, just put it very succinctly,

25       which is that defendants admit liability to breach of
```

Proceedings

```
 1        contract, and all that's left to resolve at summary

 2        judgment is this alter ego and damages.  Again, I don't see

 3        how those are issues that are going to be implicating

 4        defendant's Fifth Amendment rights.  Only Mr. Hanratty has

 5        Fifth Amendment rights.  The corporate entities do not.

 6        These are issues that are -- again, the record is closed.

 7        It's fully developed.  The facts, we think, are undisputed.

 8        There are very clear admissions from Mr. Hanratty, he

 9        couldn't change, even if he wanted to put in another

10        declaration.

11             And then, on the point, more broadly, desperate

12        people do desperate things.  We don't know what's going to

13        happen with Mr. Hanratty's criminal proceeding.  The most

14        recent activity was a 30-day continuance in the case, and

15        so is there's no suggestion that an end is in sight.  This

16        case has been going on.  You know, Mr. Hanratty, again, he

17        defaulted at final maturity in November 2021, and again,

18        every day that goes by, interest is accruing on the

19        judgment that he is not going to be able to fulfill.

20             For those reasons, we believe the stay isn't

21        warranted, and at the very least, summary judgment briefing

22        should go ahead to see if we can resolve, at least the

23        breach of contract claims, which it sounds like Ms. Parks

24        agrees can be resolved, at this stage.

25             THE COURT:  Okay.  Thank you.
```

Lisa Casey - Senior Court Reporter

Proceedings

1              As I said, I'm going to just review the docket

2         and give you an answer tomorrow, so you are off for the

3         rest of the day.

4                   MS. PARKS:  Thank you, your Honor.

5                   THE COURT:  Thank you very much.

6                   MR. MAYRON:  Thank you, your Honor.

7                   MR. WILLSCHER:  Thank you, your Honor.

8                        *          *          *

9

10    Certified to be a true and accurate transcription of the original
      stenographic minutes in this case.

11

12         *Lisa Casey*                    2/26/2024
           Lisa Casey                      Date

13         Senior Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 208
RECEIVED NYSCEF: 03/15/2024
24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 250 of 438

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

——————————————————— x

EMIGRANT BUSINESS CREDIT
CORPORATION,

       Plaintiff,

   v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB
2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND
2FL, LLC, EBURY FUND 1NJ, LLC,
EBURY FUND 2NJ, LLC, RED CLOVER 1,
LLC, EBURY RE LLC, and XYZ
CORPS. 1-10,

      Defendants.

——————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Index No. 158207/2022

(Hon. Margaret Chan)

**MOTION SEQUENCE NO. 011**

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF EBCC'S MOTION
TO MODIFY THE PRELIMINARY
INJUNCTION (DKT. 47) AND FOR
CIVIL CONTEMPT**

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
NYSCEF DOC. NO. 208

INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/15/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 251 of 438

## TABLE OF CONTENTS

*Page*

**INTRODUCTION**....................................................................................................1

**ARGUMENT** ........................................................................................................2

    A.    Hanratty Continues To Defy The Preliminary Injunction .......................................2

    B.    Hanratty Failed To Prove His Inability To Pay The Contempt Fine .......................3

    C.    Defendants' Counsel Assisted Hanratty With Dissipating EBCC's Collateral........6

    D.    The Court Should Modify The Preliminary Injunction To Protect EBCC ............10

    E.    EBCC Is The Victim Here, Not Hanratty .............................................................11

**CONCLUSION** .....................................................................................................13

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

## CASES

*Alfonso A.* v. *Jeanne O.*,
   54 Misc. 3d 1216(A) (Sup. Ct. N.Y. Cnty. 2017) .......................................................5

*El-Dehdan* v. *El-Dehdan*,
   26 N.Y.3d 19 (2015) ...............................................................................1, 4, 5, 6

*Ficus Invs., Inc.* v. *Priv. Cap. Mgmt., L.L.C.*,
   66 A.D.3d 557 (1st Dep't 2009) ...........................................................................2, 3

*In re Fitzgerald*,
   144 A.D.3d 906 (2d Dep't 2016) ...........................................................................5

*GE Oil & Gas, Inc.* v. *Turbine Generation Servs., L.L.C.*,
   2021 WL 713951 (Sup. Ct. N.Y. Cnty. Feb. 22, 2021) ...........................................3

*GE Oil & Gas, Inc.* v. *Turbine Generation Servs., L.L.C.*,
   2022 WL 294132 (Sup. Ct. N.Y. Cnty. Jan. 28, 2022) ...........................................6

*Kalish* v. *Lindsay*,
   47 A.D.3d 889 (2d Dep't 2008) ...........................................................................9

*L & R Expl. Venture* v. *Grynberg*,
   31 Misc. 3d 1219(A) (Sup. Ct. N.Y. Cnty. 2011) ...............................................8, 9

*McCormick* v. *Axelrod*,
   59 N.Y.2d 574 (1983) ...........................................................................................8

*N.Y.S. Lab. Rels. Bd.* v. *George B. Wheeler, Inc.*,
   177 Misc. 945 (Sup. Ct. Kings Cnty. 1941) .......................................................8, 9

*V.K.* v. *I.S.*,
   79 Misc. 3d 1212(A) (Sup. Ct. Kings Cnty. 2023) ...............................................5

*Vastwin Invs., Ltd.* v. *Aquarius Media Corp.*,
   295 A.D.2d 216 (1st Dep't 2002) .......................................................................8, 9

*In re Wimbledon Fin. Master Fund, Ltd.* v. *Bergstein*,
   173 A.D.3d 401 (1st Dep't 2019) .........................................................................9

-ii-

## INTRODUCTION

In his most recent filings, Defendant John Arthur Hanratty ("**Hanratty**") admits to committing repeated, willful violations of the Preliminarily Injunction but argues that he should face no consequences. (*See* Dkt. 201 at 13.) In the absence of any compelling arguments or defenses in Defendants' opposition papers, the Court should grant EBCC the relief it seeks.

*First*, Hanratty has failed to establish his inability to pay the contempt fines—despite having had more than two months of opportunity to do so—because he has not provided any evidentiary support for his claimed financial hardship. The Court of Appeals has held that "an undocumented assertion of the inability to pay without any evidentiary support . . . will not suffice to provide the defense of a financial inability to pay." *El-Dehdan* v. *El-Dehdan*, 26 N.Y.3d 19, 35 (2015). Hanratty has not provided a statement of net worth, any comprehensive details about his assets and liabilities, or any documentation to support his claims that he is insolvent, despite several opportunities to do so.

*Second*, since this litigation began, all Defendants have done is liquidate EBCC's collateral, benefitting Hanratty personally in the amount of $500,000 – $1 million, and resulting in Defendants' claimed insolvency. EBCC is a secured creditor. The proceeds of EBCC's collateral are not for Hanratty and his counsel to divvy up among themselves. EBCC has contractual rights and security interests in the proceeds of its collateral and there is no dispute that all of the Ebury Companies' assets are EBCC's collateral. (*See* Dkt. 123 at 233:5 ("**A.** It's all Emigrant's collateral"); *id*. at 239:25-240:9 ("**Q.** All of the tax liens that the Ebury companies owned in March 2021 are Emigrant's collateral? **A.** And REO and loans"); *see also id*. at 265:20-25.) If Defendants cannot make EBCC whole for their violations of the Preliminary Injunction, the Court should modify the Preliminary Injunction to prevent Defendants from continuing to dissipate what undisputedly is EBCC's collateral.

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 254 of 438

# ARGUMENT

### A.    Hanratty Continues To Defy The Preliminary Injunction.

In their most recent filing, Defendants do not dispute that, days after Hanratty was adjudged in contempt of the Preliminary Injunction (*see* <u>Dkt. 165</u>), he violated the Preliminary Injunction two more times by selling EBCC's collateral at steep discounts without providing advance notice to EBCC (*see* <u>Dkt. 191</u> at 7; <u>Dkt. 201</u> at 13).  Thus, there is no dispute that Hanratty knowingly has continued to violate the Preliminary Injunction.

Hanratty's only response is to incorrectly assert that "the Bulk Sales did not prejudice EBCC." (*Id.*)  To the contrary, Hanratty's failure to provide advance notice of the sales (which took place at significant discounts over his own book values) deprived EBCC of the ability to review the propriety and fairness of the transactions.  *See* <u>*Ficus Invs., Inc.* v. *Priv. Cap. Mgmt., L.L.C.*</u>, 66 A.D.3d 557, 558 (1st Dep't 2009).  Hanratty's actions also prejudiced EBCC's ability to recover the transferred assets and he now claims to be unable to return the sale proceeds. (<u>Dkt. 201</u> at 13.)  Hanratty cannot have it both ways.  (*See* <u>*id.*</u>)  If he cannot or will not return the sale proceeds, then EBCC clearly has been prejudiced by his actions.

To excuse his misconduct, Hanratty argues that, "historically, EBCC has neither objected to nor demanded advance notice of bulk sales, including a $90,000 bulk sale (at a 45% discount) in August 2023."[1] (<u>Dkt. 201</u> at 13.)  But that also is not true.  In its preliminary injunction motion, EBCC specifically requested that Defendants provide advance notice for any transfers of assets "in an amount exceeding $50,000." (*See* <u>Dkt. 4</u> at 16.)  Moreover, weeks before Hanratty's most recent violations of the Preliminary Injunction, EBCC filed a contempt motion against

---

[1]    While EBCC had serious concerns about the August 2023 transaction, it appeared at the time to be a one-off mistake, so EBCC did not pursue the issue further with the Court.  (<u>Dkt. 110</u> at 5.)

-2-

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 208    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/15/2024

Court Records    Pg 255 of 438

Hanratty for his failure to provide advance notice of a bulk sale. (*See* Dkt. 110 at 6.) At the January 24 hearing on that motion, Defendants *admitted* that they had violated the Preliminary Injunction by failing to provide advance notice of the sale. (Dkt. 207 at 10:3-12, 11:11-12.) Thus, by the time Hanratty violated the Preliminary Injunction again on January 29 and January 31, Defendants undoubtedly were aware of the requirement that they provide advance notice of "the transfer of any assets in an amount exceeding $50,000" (Dkt. 47 at 9)—whether through a bulk sale or otherwise.

Hanratty deprived EBCC of the ability to review the propriety and fairness of the January 29 and January 31 transactions and is unable or unwilling to return the sale proceeds. That is sufficient to establish prejudice. *See Ficus Invs., Inc.*, 66 A.D.3d at 558. Defendants have conceded the remaining elements of civil contempt (*compare* Dkt. 191 at 10-11, *with* Dkt. 201 at 13), and the Court should adjudge Hanratty in civil contempt for a second time, *see GE Oil & Gas, Inc.* v. *Turbine Generation Servs., L.L.C.*, 2021 WL 713951, at *1 (Sup. Ct. N.Y. Cnty. Feb. 22, 2021) ("There is no question of fact, however, that Moreno is in civil contempt based on the $65,800 he paid his attorneys and the $324,944.72 he paid for personal expenses. These payments violated the restraining notices and could have been used to partially satisfy the judgment.")

**B.    Hanratty Failed To Prove His Inability To Pay The Contempt Fine.**

Hanratty pleads that the Court excuse his repeated, willful violations of the Preliminary Injunction because he "cannot afford to pay the balance of the previous contempt fine ordered by the Court." (Dkt. 201 at 13.) In other words, he asks the Court to excuse his misconduct simply because he was able to spend the proceeds from his unauthorized sales of EBCC's collateral before EBCC had the opportunity to seek relief.

According to Hanratty, "EBCC's failure to prove . . . [his] solvency dooms its newest contempt motion." (Dkt. 201 at 13.) But that turns the governing law on its head. EBCC

-3-

does not have the burden to prove Hanratty's solvency.  Instead, Hanratty, as the contemnor, has

the burden to "proffer evidence of his inability to pay." *El-Dehdan*, 26 N.Y.3d at 35-36.  That is

because "he is the party who is charged with violating the court's order, and also the party with

access to the relevant financial information regarding his inability to pay." *Id.*

        Hanratty has had repeated opportunities to provide evidence of financial hardship,

but he has failed to do so each time.  He submitted no evidence of financial hardship with:  (i) his

January 11 motion to vacate or modify the Court's January 9 order to show cause (Dkt. 115);

(ii) his January 16 opposition to EBCC's contempt motion (Dkt. 153); or (iii) at the January 24

hearing on EBCC's contempt motion (Dkt. 207).  The only evidence of financial hardship that

Hanratty has submitted since January 24 is a conclusory, self-serving affidavit in which he states,

among other things, that he "ha[s] nowhere near the assets, let alone the liquidity to satisfy the

Fine."  (Dkt. 189 ¶ 13.)  In the affidavit, Hanratty claims that he "only ha[s] one bank account"

with a balance of $342  (*id.* ¶¶ 26-29), but he did not provide any statements from that account.

While Hanratty purported to attach an account statement as an exhibit (*id.* ¶ 28), he has not

docketed the exhibit.  The affidavit also does not address whether Hanratty controls or has access

to other bank accounts, for example, in the name of a family member.  Nor does it address whether

he owns other assets, such as real estate, stocks, bonds, or other securities, which the evidence

suggests he may.  (*See* Dkt. 191 at 2.)

        EBCC raised all of these issues in email correspondence with Defendants' counsel,

and then in its contempt motion after Defendants failed to respond.  (*See* Dkt. 191 at 2; Dkt. 197.)

As EBCC explained in its motion to enforce the contempt order, Hanratty should have submitted

"a sworn affidavit as to the value of his personal assets and liabilities, as well as the assets and

liabilities of the Ebury Companies," along with "bank statements from Hanratty's and the Ebury

Companies' financial institutions, reflecting the true account balances of each of Hanratty's and

the Ebury Companies' depository and brokerage accounts." (<u>Dkt. 187</u> at 4-5; *see id*. ("The

evidence also should prove the amount of assets owned by each entity."); *see also* <u>Dkt. 191</u> at 2

(requesting the same information).) Hanratty has opted not to provide any of this information in

his opposition. (*See* <u>Dkt. 201</u> at 13.) He has refused even to submit the purported Exhibit A to his

affidavit, despite notice and an opportunity to do so. (<u>Dkt. 191</u> at 2.)

   While the inability to pay can be a defense to civil contempt, it is well-established

that "an undocumented assertion of the inability to pay without any evidentiary support . . . will

not suffice to provide the defense of a financial inability to pay." *<u>El-Dehdan</u>*, 26 N.Y.3d at 35.

Hanratty must establish his inability to pay "clearly, plainly and unmistakably," *<u>Alfonso A.</u>* v.

*<u>Jeanne O.</u>*, 54 Misc. 3d 1216(A), at *5 (Sup. Ct. N.Y. Cnty. 2017), and his self-serving affidavit

failed to do so. Hanratty's affidavit is "deliberately unforthcoming, lacking every kind of official

document (*e.g.*, bank statements, property valuations, brokerage statements for stocks/shares,

etc.)." *<u>V.K.</u>* v. *<u>I.S.</u>*, 79 Misc. 3d 1212(A), at *5 (Sup. Ct. Kings Cnty. 2023). Such "vague and

conclusory allegations, supported only by incomplete documentation, fail[] to raise a factual

dispute as to the existence of the defense of an inability to pay." *<u>In re Fitzgerald</u>*, 144 A.D.3d 906,

907 (2d Dep't 2016).

   Moreover, Hanratty's claimed inability to pay is inconsistent with his previous

testimony in this proceeding that "the Ebury Entities hold assets of approximately $28.1 million"

(in addition to his personal assets) and earned revenues of $13 million 2019, nearly $8 million in

2020, nearly $4 million in 2021, and more than $7 million across the first ten months of 2022.

(<u>Dkt. 24</u> at ¶¶ 41, 44.) It also is inconsistent with the fact that "when he wants to find funds to do

certain things," such as pay his living expenses or legal fees, "incredibly he has the ability to do

so. But when it comes to [EBCC], no money is getting paid." *GE Oil & Gas, Inc.* v. *Turbine Generation Servs., L.L.C.*, 2022 WL 294132, at *2 (Sup. Ct. N.Y. Cnty. Jan. 28, 2022).

Hanratty protests that requiring him to substantiate his claimed inability to pay is "particularly odd" and "improp[er]," and a "post-note of issue discovery demand." (Dkt. 201 at 14.) It is not—EBCC is not seeking additional discovery. Rather, Hanratty is seeking to establish the defense of financial hardship, which, under New York law, requires "evidentiary support." *El-Dehdan*, 26 N.Y.3d at 35. Before accepting Hanratty's claimed inability to pay, the Court should "require[] a more specific showing of [his] economic status," *id.* at 36, including evidence of the value of his personal assets and liabilities, evidence of the value of the assets and liabilities of the Ebury Entities, and twenty-four months of bank statements from the bank account referenced in the Hanratty Affidavit.[2]

### C.    Defendants' Counsel Assisted Hanratty With Dissipating EBCC's Collateral.

Hanratty concedes that he sold nearly $500,000 worth of EBCC's collateral without providing advance notice to EBCC or escrowing the proceeds. (*Compare* Dkt. 191 at 3, *with* Dkt. 201 at 13.) And neither Hanratty nor his counsel disputes that EBCC contractually is entitled to receive the sale proceeds: Under the Credit Agreements, "all proceeds of any such sales are [required to be] deposited into the Lockbox Account." (Dkt. 6 § 8.5.) Moreover, under the Preliminary Injunction, Defendants were required to provide advance notice of the sale to EBCC and to escrow the proceeds. (Dkt. 47 at 8.) And, under the Contempt Order, those proceeds should have been used to pay the outstanding civil fine against Hanratty. (Dkt. 165 at 3.) Rather than

---

[2]    Two years' worth of bank statements is necessary to determine whether Hanratty has hidden away assets since he defaulted on the Credit Facilities.

comply with his obligations, Hanratty failed to provide any advance notice to EBCC about these sales or to deliver the proceeds to EBCC.

Hanratty claims that he cannot repay some of the sale proceeds to EBCC because he transferred $49,999 of the proceeds to his counsel. (*See* Dkt. 201 at 14.)  Defendants' counsel does not dispute that they either invoiced or accepted that amount. (*Compare* Dkt. 191 at 15, *with* Dkt. 201 at 15.)  Instead, they argue that the transfer—which obviously was designed to avoid the advance notice requirement under the Preliminary Injunction by $1—"does not violate the Preliminary Injunction at all." (Dkt. 201 at 15.)

To be clear, EBCC is not arguing that the $49,999 transfer itself was a violation of the Preliminary Injunction.  The primary violation of the Preliminary Injunction was Defendants' failure to provide advance notice of their heavily-discounted sales of EBCC's collateral on January 29 and January 31.  But Defendants' counsel undoubtedly assisted Hanratty in those violations because they enabled Hanratty to conceal those sales long enough for him to dissipate the proceeds.  If Hanratty had provided advance notice to EBCC of a $50,000 transfer to his counsel, EBCC would have inquired into the source of the funds; discovered that the funds were the proceeds of EBCC's collateral; and had an opportunity to go to Court and raise Hanratty's failure to provide advance notice of the January 29 and January 31 sales and argue that it is improper for Hanratty to liquidate EBCC's collateral and pay the proceeds to his counsel.  As the Court previously explained, "*that's why there was this notification requirement, so that if there are any contests, such as there is now, then you could have just come to the Court*." (Dkt. 207 at 14:19-21.)  By invoicing or accepting a $49,999 transfer, Defendants' counsel assisted Hanratty with covering up his violations of the Preliminary Injunction in connection with the January 29 and January 31 sales and frustrated EBCC's ability to recover those sales proceeds.

-7-

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 208          24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State          RECEIVED NYSCEF: 03/15/2024

Court Records          Pg 260 of 438

New York law is clear "that a party who assists another in a violation of [a] judicial mandate can be equally as guilty of contempt as the primary contemnor." _McCormick_ v. _Axelrod_, 59 N.Y.2d 574, 584 (1983). Defendants' counsel struggles mightily to distinguish the cases establishing that they may be held in contempt for aiding and abetting Hanratty's contemptuous conduct, but their attempts fall short. For instance, in _McCormick_, the primary contemnors were "nursing employees physically mov[ing] . . . residents," but the court went on to hold that others who "facilitated and participated in the patients' transfers" despite knowledge of the order, were liable for contempt. 59 N.Y.2d at 582. The same is true here. Defendants' counsel, by either soliciting or accepting a transfer designed to cover up Hanratty's contemptuous conduct, assisted Hanratty in covering up his contemptuous conduct.

Defendants' counsel also fails to distinguish _L & R Expl. Venture_ v. _Grynberg_, 31 Misc. 3d 1219(A) (Sup. Ct. N.Y. Cnty. 2011), _Vastwin Invs., Ltd._ v. _Aquarius Media Corp._, 295 A.D.2d 216 (1st Dep't 2002), and _N.Y.S. Lab. Rels. Bd._ v. _George B. Wheeler, Inc._, 177 Misc. 945 (Sup. Ct. Kings Cnty. 1941). (_See_ Dkt. 201 at 16-17.) They say that these cases are distinguishable because "the courts found that the alleged abettors were alter egos or corporate representatives of the contemnors." (Dkt. 201 at 16-17.) But aiding-and-abetting liability is not limited to "alter egos" and "corporate representatives"—it also extends to "agents." _See Grynberg_ 31 Misc. 3d 1219(A) at *6 ("Our courts also have upheld contempt orders in situations where the contemptor uses his 'alter ego' _or agent_ as his vehicle to evade the court's order." (emphasis added)). In _Grynberg_, the court found that the defendant's wife was in privity with him and aware of the court's order and therefore could be held in contempt. _See id_. at *6-7. In _Vastwin_, the court found a nonparty liable for contempt based on his "undisputed knowledge" of the court orders and "participation in assisting the corporate respondent in evading them," noting that it was "irrelevant

-8-

that the Special Referee [also] recommended holding [him] liable on an alter ego theory." 295 A.D.2d at 217. Finally, in *George B. Wheeler*, a corporate officer argued that he could not be adjudged guilty of contempt because he was not a named respondent who had been served with a copy of the court's order. *See* 177 Misc. at 951. The court held that "a person who is not a party to the proceeding may be punished if he acts in combination with the party and knowingly violates the court's mandate." *Id.*

Each case demonstrates that Defendants' counsel can be held in contempt because they: (i) are in privity with Hanratty and aware of this Court's orders, *see Grynberg*, 31 Misc. 3d 1219(A) at *6-7; (ii) assisted Hanratty in evading those orders, *see Vastwin*, 295 A.D.2d at 217; and (iii) may be treated as abettors even though they are not named defendants, *see George B. Wheeler*, 177 Misc. at 951.[3]

Counsel also failed to address *In re Wimbledon Fin. Master Fund, Ltd.* v. *Bergstein*, 173 A.D.3d 401, 401-02 (1st Dep't 2019). In that case, attorneys were held in contempt for negotiating a settlement with proceeds that were subject to a restraining notice, of which the attorneys were aware. *See id.* Much like here, the attorneys in *Wimbledon* bargained with money which they knew was subject to a court order.

What happened here is not a mystery. Defendants obtained cash by violating the Preliminary Injunction Order (by selling EBCC's collateral without notice) and they did not want EBCC to know about it until they could spend it all. Defendants' counsel participated in a transfer just under the reporting threshold so that EBCC would not receive any notice that Defendants had

---

[3]      Defendants are correct that *Kalish* v. *Lindsay*, 47 A.D.3d 889 (2d Dep't 2008), remanded the case to resolve "factual issues presented by plaintiff's contempt motion." But counsel here has not raised any factual disputes over whether they knowingly accepted proceeds from Hanratty's unauthorized sales of EBCC's collateral.

made significant, reportable sales, frustrating EBCC's ability to seek Court intervention until it was too late. Once EBCC became aware of the transaction, Defendants claimed insolvency and Defendants' counsel refused to return the proceeds of EBCC's collateral. If Defendants' counsel will not return the funds—which, again, are indisputably the proceeds of EBCC's collateral—they should be found liable for contempt and ordered to return the funds.

### D. The Court Should Modify The Preliminary Injunction To Protect EBCC.

Hanratty continues to liquidate EBCC's collateral at bargain bin prices in order to pay his personal expenses. Given that EBCC has established a likelihood of success on the merits of its breach of contract claims, that it faces irreparable harm from Hanratty's continued liquidation of its collateral, and that the balance of the equities is in its favor (*see* Dkt. 191 at 12-14), the Court should modify the Preliminary Injunction to prevent Defendants from any further transfers of EBCC's collateral without EBCC's consent.[4]

Defendants do not dispute that EBCC has satisfied the necessary elements to obtain a modification of the preliminary injunction. (*See* Dkt. 201 at 18-19.) Instead, they argue that the proposed modification "does not preserve the status quo; it completely destroys what little oxygen Defendants have left to conduct their business." (*Id.*) Defendants' desire for "oxygen" is not a reason to permit Defendants to continue liquidating EBCC's collateral to pay personal expenses, in violation of the Credit Agreements and the Preliminary Injunction. Moreover, Defendants' "business"—by their own admission—is insolvent and has been insolvent for more than two years. During the pendency of this action, Defendants' "business" has been to pay Hanratty and his counsel half a million dollars each, while escrowing a fraction of that for EBCC's benefit. If

---

[4]     It is in EBCC's interest to consent to transfers related to monetizing or preserving the value of its collateral.

-10-

Defendants truly are insolvent and cannot make EBCC whole for their violations of the Preliminary Injunction, the proper remedy is for the Court to modify the Preliminary Injunction to preclude Defendants from any further liquidation of EBCC's collateral.

### E.    EBCC Is The Victim Here, Not Hanratty.

Throughout Hanratty's opposition, he plays the victim.  According to Hanratty, EBCC is "pathetic," engaging in "impropriety," "attempting to draw blood from a stone," engaging in "personal attack[s]," " making "absurd demands" and "thinly-veiled attempts to bully an adversary lawyer," filing "frivolous" and "silly" papers, making "constant threats," and treating the Court as "nothing but its own personal revenge machine."  (Dkt. 201 at 14, 17-19.)  But that is not reality.

Hanratty fraudulently diverted tens of millions of dollars of advances from EBCC to pay distributions to his investors rather than purchase tax lien collateral, as he promised to do under the Credit Agreements.  He is liable to EBCC for over $25 million in damages.  He has been accused of fraud by his primary lender, his investors, his business and joint venture partners, his transaction counterparties, and the U.S. Department of Justice, which arrested him for bank and wire fraud in connection with his scheme to defraud EBCC.  (*See* Dkt. 121 at 18.)  He has repeatedly and willfully violated this Court's orders, including new violations mere days after being found in civil contempt.

EBCC will address these issues in more detail in its opposition to Defendants' cross-motion, but three points bear mentioning now:

*First*, Defendants repeatedly mislead the Court about the source of the $120,000 that they deposited into escrow on February 7.  Defendants have stated over and over again that these funds came from "amounts due to [Hanratty] from various third parties" (Dkt. 174; *see also* Dkt. 189 ¶¶ 6-7 ("I have attempted to collect various payments that are due to the Ebury Entities

-11-

and to me" and "[a]s a result of those efforts, I was able to recover $120,000 from a third party, which I paid into the Escrow Account on February 7, 2024.").) But Defendants' own financial reporting does not show any $120,000 "recovery" from a "third party." (*See* <u>Dkt. 193</u>.) Instead, it shows that Hanratty received a $109,777.50 wire on January 29 for selling $439,110.01 worth of EBCC's collateral at a 75% discount, without advance notice to EBCC. Defendants have refused to confirm the date of this bulk sale. (*See* <u>Dkt. 197</u> at 1.)

 *Second*, Defendants repeatedly have represented to this Court that "there was and continues to be genuine attempts at settlement." (<u>Dkt. 205</u> at 23:10-12; *see also* <u>Dkt. 201</u> at 5.) That also is not true. As EBCC explained at the February 8 hearing, Defendants have been submitting fraudulent documents to EBCC to create a fake narrative about settlement. (<u>Dkt. 205</u> at 24:20-27:20.) Even Defendants' counsel admitted at the hearing that the documents Defendants have submitted "frankly, look a little ridiculous" and are "getting to Nigerian prince e-mail territory." (<u>Dkt. 205</u> at 26:17-21.) Counsel tried to distance herself from those documents, stating: "Frankly, I've never made any representation about what these documents are." (*Id*.) Despite repeated warnings that attorneys have a duty not to permit their services to be used in furtherance of a fraud (*see* <u>Dkt. 204</u>; *see also* Ex. A to Willscher Reply Affirm. (describing several indicia of fraud in Defendants' submissions)), Defendants and their counsel continue to represent to the Court that these are legitimate settlement offers (*see*, *e.g.*, <u>Dkt. 201</u> at 5 (vouching for a fraudulent "attestation of funds")).

 *Third*, Defendants and their counsel represented to the Court that "Defendants voluntarily gave EBCC access to the Entities' Quickbooks accounts in January 2022 and have never terminated that access." (<u>Dkt. 201</u> at 6.) That representation is materially misleading. While Defendants have not "terminated" EBCC's QuickBooks access, they stopped reporting

<div align="center">-12-</div>

transactions to QuickBooks on January 10, 2024, apparently in retaliation for EBCC's first

contempt motion.  (*See* Dkt. 191 at 7.)  Defendants do not deny that they stopped reporting

transactions to QuickBooks and have not responded to EBCC's requests for clarification.  (*See*

Dkt. 197.)

## CONCLUSION

For the foregoing reasons, EBCC respectfully requests that the Court grant the

requested relief.


Dated:   March 15, 2024                    Respectfully submitted,
         New York, New York

                                           */s/ Alexander J. Willscher*

                                           Alexander J. Willscher
                                           Austin P. Mayron
                                           Erin L. Savoie
                                           SULLIVAN & CROMWELL LLP
                                           125 Broad Street
                                           New York, New York  10004
                                           Telephone: (212) 558-4000
                                           Fax: (212) 558-3588

                                           *Attorneys for Plaintiff Emigrant Business
                                           Credit Corporation*

-13-

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with the word-count limit of Commercial Division Rule 17, 22 NYCRR § 202.70(g), for documents prepared by use of a computer because it contains 4,030 words.

Dated:  March 15, 2024               */s/ Alexander J. Willscher*
       New York, New York          Alexander J. Willscher

24-04020-dsj     Doc 1-3     Filed 08/14/24     Entered 08/14/24 09:45:23     Doc #4 State
Court Records     Pg 267 of 438

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

|  |  |
|---|---|
| EMIGRANT BUSINESS CREDIT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> JOHN ARTHUR HANRATTY, EBURY STREET CAPITAL, LLC, EBURY FUND 1, LP, EBURY FUND 2, LP, EBURY 1EMI LLC, EBURY 2EMI LLC, EB 1EMIALA LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ, LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB 2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE 1EMI LLC, RE 2EMI LLC, EB 1EMIDC, LLC, ARQUE TAX RECEIVABLE FUND (MARYLAND), LLC, EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC, EBURY FUND 1NJ, LLC, EBURY FUND 2NJ, LLC, RED CLOVER 1, LLC, EBURY RE LLC, and XYZ CORPS. 1-10, <br><br> Defendants. | Index No. 158207/2022 <br><br> (Hon. Margaret Chan) <br><br> **MOTION SEQUENCE NO. 011** <br><br> **REPLY AFFIRMATION OF ALEXANDER J. WILLSCHER** |

---

**ALEXANDER J. WILLSCHER**, an attorney duly admitted to practice law in the Courts of the State of New York, affirms the truth of the following statements, under the penalties of perjury:

1.      I am a partner at the law firm of Sullivan & Cromwell LLP, counsel for Plaintiff Emigrant Business Credit Corporation ("**EBCC**") in the above-captioned matter.  I am familiar with the matters set forth below.

2.      I make this affirmation in support of EBCC's motion to modify the Preliminary Injunction Order and for civil contempt.

3.    Attached hereto as Exhibit A is a true and correct copy of a letter I sent to Defendants' counsel on January 16, 2024, identifying indicia of fraud EBCC discovered in the proof of funds documents that Defendants have submitted during settlement negotiations.

Dated:    March 15, 2024          */s/ Alexander J. Willscher*
       New York, New York          **ALEXANDER J. WILLSCHER**

-2-

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
INDEX NO. 158207/2022

NYSCEF DOC. NO. 209
RECEIVED NYSCEF: 03/15/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 269 of 438

## CERTIFICATE OF COMPLIANCE

I hereby certify that this affirmation complies with the word-count limit of Commercial

Division Rule 17, 22 NYCRR § 202.70(g), for documents prepared by use of a computer because

it contains 129 words.

Dated:    March 15, 2024                          _/s/ Alexander J. Willscher_
          New York, New York                      Alexander J. Willscher

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 210
RECEIVED NYSCEF: 03/15/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records    Pg 270 of 438

# EXHIBIT A

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

**COMMUNICATION SUBJECT TO CPLR 4547**

January 16, 2024

<u>Via E-mail</u>

R. Scott Williams, Esq.
   Rumberger, Kirk & Caldwell, P.A.
     2001 Park Place North,
      Suite 1300
       Birmingham, AL  35203.

        Re:   *Emigrant Business Credit Corp.* v. *John Hanratty, et al.*, Index
             No. 158207/2022, New York Supreme Court, New York County

Dear Mr. Williams:

       I write on behalf of Emigrant Business Credit Corporation ("EBCC") and
in response to your January 15 email.  As EBCC repeatedly has explained, any potential
settlement must be subject to satisfactory proof of funds, which you continually have failed
to provide.  On the contrary, you have repeatedly provided documents riddled with
inconsistencies and inaccuracies.

       *First*, on October 10, 2023, you provided a "SWIFT MT-199" message
from the Bank of Japan to Mashreqbank PSC for an entity called SJ Global Investments
LLC to purchase "any type of petroleum products from UPI Energy DMCC."  By its own
terms, the "SWIFT MT-199" message was not valid proof of funds because it was valid
only "for five days (5) international banking days" and had expired by the time you
provided it; and because it did not reference EBCC or anything related to Mr. Hanratty or
Ebury.

       As you undoubtedly are aware, SJ Global Investments has been adjudged
responsible for a multi-million-dollar fraud by the U.S. District Court for the Southern
District of New York.  *See* Default Judgment, *Fat Brands Inc.* v. *PPMT Capital Advisors,
Ltd.*, No. 1:19-cv-10497 (S.D.N.Y., filed Jan. 4, 2024), ECF No. 268.  And its principals
also have been accused of perpetrating a $50,000 charity scam.  *See* Tom Bristow, *Norwich
charity shuts down amid £50,000 scam allegation*, E. DAILY PRESS (Nov. 6, 2021), attached

as Exhibit A.  It thus is unsurprising that you abandoned any reliance on SJ Global Investments in your subsequent communications.

*Second*, on December 29, 2023, you provided a purported "Corporate Guarantee" from an entity called Annuit Coeptis Investments, LLC ("ACI") and a Letter of Attestation from an attorney, David J. Bartone, Esq., stating that the purpose of the guaranteed funds was "to establish and register a new company in Dubai, United Arab Emirates."  Again, these documents did not reference EBCC or anything related to Mr. Hanratty or Ebury.  Moreover, the documents were invalid on their own terms—the Corporate Guarantee was valid only for "10 (ten) days from the date of issuance."

You also provided two Bank Confirmation Letters ("BCLs") from an entity called JD Euroway Bancorp & Trust, signed by an individual called Fritz G. Zephir.  According to the JD Euroway website, its website and domains have been appropriated "by malicious individuals who may be attempting to scam you."  *See* January 16, 2024 Snapshot of http://jdeuroway.com, attached as Exhibit B.  In addition, the BCLs are inconsistent—each references a different account number.

According to public sources, Mr. Zephir—alternatively styled "IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba"—is the recipient of "The United States President Joseph R. Biden 2023 Lifetime Achievement Award."  *See* Arizonally, *The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia*, MEDIUM (June 9, 2023); *The United States Presidential 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia*, KING NEWSWIRE (June 8, 2023), attached as Exhibits C and D.  We could find no official record of Mr. Zephir receiving any award from President Biden.

It further appears that Mr. Zephir was terminated as "Crown Prime Minister" of the "Queendom of Sheba" on July 31, 2023 for "Breach of Trust, and a total loss of confidence in your performance, your word, ethics and moral compass."  *See JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)*, QUEENDOM OF SHEBA (Oct. 30, 2023), attached as Exhibit E.  Lastly, despite JD Euroway purporting to be a Canadian Bancorp and Trust, the Canadian Office of the Superintendent of Financial Institutions has no record of JD Euroway. *See Search Results*, OFFICE OF THE SUPERINTENDENT OF FINANCIAL INSTITUTIONS (generated Jan. 16, 2024), attached as Exhibit F.  Given the substantial irregularities we have discovered related to Mr. Zephir and JD Euroway, please explain your basis for submitting these BCLs to us and your basis for believing these documents to be genuine.

In addition, the documentation you submitted on December 29, 2023, conditioned any settlement on the resolution of Mr. Hanratty's criminal case "to the full

R. Scott Williams, Esq.                                                          -3-

and complete satisfaction of Tiger Financial." We called Mr. Bartone on January 2, 2024, to clarify what the condition meant, and also to ask why Mr. Tropp was not able to provide documentation that referenced EBCC or anything related to Mr. Hanratty or Ebury. We never heard back from Mr. Bartone.

*Third*, on Monday, you provided a new purported Corporate Guarantee from ACI, a new letter from Mr. Bartone, dated January 12; and a new BCL from JD Euroway, dated January 12, with an account statement dated January 13. This time, the documentation references EBCC and Mr. Hanratty; but we still have substantial concerns about the many inconsistencies and inaccuracies in the documents. Moreover, despite our concerns with Mr. Zephir and JD Euroway, we have made a verification request to JD Euroway as provided for by the BCL. According to the BCL, these requests take up to three business days; as such, we cannot agree to settlement terms with you by 5:00 pm on January 17, as you have demanded, because that is insufficient time to receive verification of the BCLs.

Further, the new documentation you provided on Monday is similarly conditioned "upon satisfaction of the terms and conditions required by ACI and Tiger Financial, in their sole discretion," without any explanation of what those terms and conditions entail. Neither you nor Mr. Bartone has explained those conditions, which we must discuss as part of our settlement negotiations.

EBCC remains willing to negotiate a settlement in good faith, but Mr. Hanratty must provide satisfactory proof of funds. Documents related to other companies and other transactions, with apparent inconsistencies and inaccuracies, are not enough. To the extent you still represent these documents to be genuine, we are open to scheduling time with you, Mr. Bartone, Mr. Tropp, Mr. Khan, and/or Mr. Zephir, to work through our issues with these documents.

Sincerely,

*/s/ Alexander J. Willscher*

Alexander J. Willscher

cc: Kari Parks, Esq.

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM    INDEX NO. 158207/2022
NYSCEF DOC. NO. 210    RECEIVED NYSCEF: 03/15/2024

Case 1:24-cv-04020-dsj    Doc 1-3    Norwich charity shuts down amid £50,000 scam allegation... Does 4 State
Court Records    Pg 275 of 438

Newsletters    Jobs    Homes    Motoring    Local Listings    Local Info    Book An

# Eastern Daily Press

Subscribe        Digital Edition        

News    Sport    Norwich City FC    Things to do    Lifestyle    Property    More    

News    Crime    Court    Business    Traffic & Travel    Politics    Weather    Health    Housing

# Norwich charity shuts down amid £50,000 scam allegation

6th November 2021

`NORWICH`





**The website of the Umbrella Foundation has now been taken down. The charity said it helped people in Uganda and beyond (Image: Umbrella Foundation)**

# Eastern Daily Press



 Investigations Editor

1/12/24, 7:31 PM    24-04020-dsj    Doc 1-3    Norwich charity shuts amid £50,000 scam allegation - Eastern Daily Press
Filed 08/14/24    Entered 08/14/24 09:45:33    Doc #4 State
Court Records    Pg 276 of 438

**A charity has been reported to authorities after a businessman alleged he lost £50,000 in a scam.**

The Charity Commission, which regulates the sector, confirmed it was looking into a complaint about the Umbrella Foundation, a charity which was registered at an office on Magdalen Street.

It was set up in 2019, but put into liquidation this summer after the man made an allegation that £50,000 of his money had been scammed through the charity's bank account.

However, the Umbrella Foundation claimed it received the £50,000 as a donation and spent it on marketing.



**Eastern Daily Press**



Forge of Empires | Sponsored

Case 1:24-cv-04020-dsj    Doc 1-3    Filed 05/14/24    Entered 08/14/24 09:45:33    Doc #4 State
Court Records    Pg 277 of 438

The man, from Glasgow, said he thought he was transferring £50,000 from his bank account to his online account where he traded currency with a company called Genesis 11.

In April he said he was asked by Genesis 11 to send the money through the Umbrella Foundation's bank account. He said it was then meant to be converted into an online currency and moved into his account, but it never was.

He said he thought the charity was acting as an intermediary to pass the money through and he had done this previously with other organisations when paying money into his Genesis 11 account without any problems.

"My wife was ill at the time and I had a lot on," he said. "I had paid money into my online investment account before through a third party and the first few times I did this it was fine.

"But this time it went to the Umbrella Foundation and then never appeared in my account."

The day after the money was paid to the Umbrella Foundation, the charity transferred £25,000 to a company in Hungary, according to an invoice seen by this newspaper. It states the money was for marketing services.

In response, the Umbrella Foundation directed us to a report by its liquidator Begbies Traynor, which said the man's money was used for marketing and volunteering costs. The report said the £50,000 was a donation from an online donor and the charity only found out later the funds had been sent "in error".

# Eastern Daily Press



1:24-cv-04020-dsj    Doc 1-3    Filed 05/14/24    Entered 05/14/24 09:45:33    Doc#4 State
Court Records    Pg 278 of 438



Sackville Place on Magdalen Street, Norwich, where the Umbrella Foundation was based. *(Image: Archant)*

The liquidator's report also said the charity received a £50,000 Government-backed "bounce back" loan which it said was also spent on further marketing and "external costs".

However, with the charity now in liquidation it has no assets to repay any of this money, the report showed.

The Umbrella Foundation was registered as a charity in March 2019. Its sole trustee when it closed was a woman called Kristina Fields.

Prior to that date, Ms Fields was a volunteer for the charity while its Trustees were Neil Walsh and Paul Van der Hulks, according to the liquidator's report.

All three trustees were directors of another company called SJ Global Investments Worldwide Ltd which was also put into liquidation in May this year.

# Eastern Daily Press



The S J Global Investments team is comprised of qualified, professional individuals who have extensive experience spanning across finance and professional services which compliments and adds value to the projects and initiatives we invest in.



**NEIL WALSH**
Group Managing Director



**KRISTINA FIELDS**
Chief Financial Officer

Neil Walsh and Kristina Fields were trustees of the Umbrella Foundation *(Image: SJ Global)*

The victim emailed the Umbrella Foundation in May to complain and received a reply from Ms Fields stating the £50,000 was given to the charity by someone in Dubai to fund their work and she had never heard of the investment platform Genesis 11.

She wrote: "We would never jeopardise our charity if we were made aware the funds come from participation in fraud, but clearly, we were not aware.

"We are happy to refund your money back to you as we don't want to have anything to do with fraudulently gained funds.

"Unfortunately our charity account is still blocked so we cannot refund from that."

However, despite repeated emails, the money has never been returned, the man said.

The liquidator's report said: "Disaster struck when Ms Fields, who at the time was only working

**Eastern Daily Press**



"These funds had already been utilised and the charity could not support to repay them.

Case 1:24-cv-04020-dsj   Doc 1-3   Filed 06/14/24   Entered 06/14/24 09:45:23   Does #4 State
Court Records   Pg 280 of 438

A Police Scotland spokesperson said: "We have received this report and our enquiries are ongoing."

A Charity Commission spokesman added: "We are aware of these concerns and are currently assessing them in line with our regulatory and risk framework to determine our next steps."

The Umbrella Foundation's website, which has been taken down, said it worked to help women in Uganda.

According to the Charity Commission website, it also works with BAME communities in London.

**-Sign up to our newsletter to get a weekly round-up of our investigations unit's work**

NORWICH

Share                    **No Comments**

## More Stories

**Forget The Blue Pill, Use This Household Food To Fight ED**

urologytip.pro | Sponsored

**Banned For 84 Years; Powerful Pain Reliever Finally Legal**

BioBlend | Sponsored

**Eastern Daily Press**          

**After 80 Years Ban, Finally Legal in New York**

BioBlend | Sponsored

**If You Need To Kill Time On Your Computer, This Vintage Game Is A Must-Have.**

Play the top-rated strategy game now. No install needed!

Forge of Empires | Sponsored

**Join today and get 7,777 FREE Gold Coins & 10 FREE Sweeps Coins when you sign up!**

Luckyland Slots | Sponsored

**Your Luck Starts Here** 

Join today and get 7,777 FREE Gold Coins & 10 FREE Sweeps Coins when you sign up!

Luckyland Slots | Sponsored

# Eastern Daily Press

### Mail Order Weed Is a Real Thing, and It's Amazing

HelloMood | Sponsored

### Diabetes Is Not From Sweets! Meet The Main Enemy Of Diabetes

Diabetes Can Disappear In A Few Days, Sugar Can Drop To 3.9

bloodysugar.online | Sponsored

### End of the line for model railways?

edp24.co.uk

### Man dies after medical emergency at Tesco store

edp24.co.uk

Get *involved*

with **the news**

**Eastern Daily Press**



## Most read    Commented

**1**  Light aircraft crash in north Norfolk leaves two people injured

**2**  New dental practice to open in Norfolk town this month and will offer NHS places

**3**  Plans lodged for new £84m Norfolk village bypass

**4**  Couple's new lease of life after shedding NINE stone

**Eastern Daily Press**



have her baby

1/16/24, 7:30 PM    Norwich charity shuts amid 50,000 scam allegation | Eastern Daily Press

**9**   Country pub slashes pint prices
        after announcing imminent closure

**10**  Man denies break-in at Norfolk
        business park

**Show more articles**

Contact us               Manage Consent             Announcements

Cookie Policy            Terms & Conditions         Contributor Terms

Newsquest printing       Advertise                  Newsletters

Reader Rewards           Site Map                   Exchange and Mart

Terms of Advertising     Privacy Policy             Diversity Statement

Photo Sales              Our Publications           Archive

Add Your Event For Free

**FOLLOW US**

Eastern Daily Press

Eastern Daily Press

Eastern Daily Press

This website and associated newspapers adhere to the Independent Press Standards Organisation's Editors'
Code of Practice. If you have a complaint about the editorial content which relates to inaccuracy or intrusion,
then please **contact the editor here**. If you are dissatisfied with the response provided you can **contact IPSO
here**

© **2001-2024**. This site is part of Newsquest's audited local newspaper network. A Gannett Company.
**Newsquest Media Group Ltd**, 1st Floor, Chartist Tower, Upper Dock Street, Newport, Wales, NP20 1DW
Registered in England & Wales | 01676637 |

# EXHIBIT B

RECEIVED

**WARNING**

*** YOU ARE ABOUT TO BE REDIRECTED TO OUR NEW SITE ***

*** **************************************************

Please be aware that there is a fraudulent website claiming to be part of our company called jd-euroway.com and a fraudulent email and domain at corporate@jdeuroway-bancorp-mea.com. This website and domains are not affiliated with our company and is operated by malicious individuals who may be attempting to scam you.

Please note the following:

- Our official websites are:
  - https://jdeuroway.com/
  - https://jdeuroway.com/
  - https://www.jdeuroway-bancorp.com/
  - https://www.landesfinance.com/
- Our official email is: corporate@jdeuroway-bancorp.com
- Our official telephone number is: 1-855-273-9896

Please do not provide any personal or financial information to this website or any associated parties. We cannot be held responsible for any damages that may result from interacting with this website. To ensure the safety and security of your personal information, please only use the official websites of our company jdeuroway.com, jdeuroway-bancorp.com and https://www.landesfinance.com also please be aware that the official number is 1-855-273-9896 and the official email is corporate@jdeuroway-bancorp.com. Thank you for your attention and stay safe online.

JD Euroway

**CORPORATE & TRADE FINANCE SERVICES**

The Capital you need to expand your ideas into more and bigger business

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 210
RECEIVED NYSCEF: 03/15/2024

Case 24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 287 of 438

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 210 RECEIVED NYSCEF: 03/15/2024

 




# The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia



Arizonally · Follow

4 min read · Jun 9, 2023

             

Atlanta / June 2023-(Business Wire) — The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia.



(Photo L to R) Dr. James Cooley, Dr. Morris Leonard, IVC CPM HRH Dr. Fritz G. Zephir,
Dr. Jacqueline Mohair, Ambassador Dr. Olivia Mirembe Musisi and Dr. Erick Hall Sr. PhD.

The African Linked Foundation and The James "JC Cooley Foundation in
conjunction with Trinity International University of Ambassadors presents
"Diplomatic of Excellence" at the Highest Level of Business. Individuals who
are dedicated to "Bringing The Brain Trust Back to Africa" continually
Changing Nations towards growth and sustainability, through its network of
International Value Relations, and Public Private Partnerships amongst
Heads of States of Many African Countries. These individuals have received
Honorary Doctorate Degrees, and President Biden's Lifetime Achievement
Awards from TIUA University of Ambassadors, Atlanta, GA.

President **Biden** 2023 Lifetime Achievement Award Presented to Dr. Erick Hall Sr PhD, Founder/CEO of African Linked Foundation and Appointed Diplomatic Special Envoy to His Royal Highness Crown Prime Minister, Dr. Clement E. Johnson Jr. PhD, Founder of ClemTECH, LLC and Chief Operating Officer of Aequor Biotech, and The Chairman Award was received by Dr. James Cooley MPA, CISSP, Ph.D., CISO, PMP Founder/CEO of The JC Cooley Foundation, It's Your Life Media Television Network and The State of Georgia Honorary Citizen Goodwill Ambassador was awarded to Dr. Olivia Mirembe Musisi PhD. Founder/CEO of JILL Development Consultancy and IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba.



African Linked co-founders: Dr. Charmaine Hall, Dr. Morris Leonard, Bishop Dr. Mike Kingsley, and Mr. Terrence Lee, would like to show their appreciation to its valued relations Associates; ICV CPM Prince Dr. Fritz G. Zephir PhD, Africa Ambassador at Large Dr. Olivia Mirembe Musisi PhD, Dr. Cesar Rodriguez, Dr. James Cooley, Dr. Clement Johnson, and Dr. Jacqueline Mohair, by proxy to consider them as Honorary Advisory Board Members. We believe that together we are set to change the narrative that surrounds the concept of global citizenship by connecting the best minds in science, technology, engineering, medicine, artificial intelligence throughout the global African Diaspora by creating one assembly through innovation and social engineering for the betterment for all of Humanity.



The individuals mentioned above are dedicated to making a positive global impact involved in various projects such as; Agriculture (Hydroponics Innovation), Cybersecurity Technology, State of the Art Smart Medical Cities, Solar Voltaic Technology, Smart Water Solutions, Crypto-Currency Mining Technology and On/Off Grid Alternative Energy Technology Solutions, fostering collaboration, and tackling challenges both in the United States and worldwide.



Through their exemplary leadership, they utilize their expertise, knowledge, experiences, and education to elevate and welcome others to do the same.

For media inquiries and further information, please contact:

It's Your Life Media Television Network:

Dr. James "JC" Cooley PhD.

Director of Media Relations

info@cooleyfoundation.org

www.cooleyfoundation.org

## About The African Linked Foundation (ALF)

The African Linked Foundation (ALF) is a humanitarian organization dedicated to establishing God's Kingdom in all nations through acts of love, compassion, and strategic partnerships. ALF works to change nations by advocating against oppression, racism, and exploitation while promoting economic development and resource sustainability in Africa. Visit www.Africanlinked.com for more information.

## About The JC Cooley Foundation

The JC Cooley Foundation aims to empower young adults by providing life skills and mentorship programs. They create a positive environment where youth can build relationships with professional mentors. The foundation seeks partnerships, sponsorships, fundraisers, donations, grants, and other means to secure the funds necessary to fulfill their mission. Their ultimate goal is to become a global organization that guides and inspires youth worldwide. For more information, visit www.cooleyfoundation.org

## About The Queendom of Sheba

The Queendom of Sheba is an autonomous zone in the Democratic Republic of Congo, established to preserve African heritage. Ruled by Empress Amelia Debrah Kasambu'Ra Shebah III, it aims to build the world's largest university and invest in Africa through Project 7 Phoenix. The Queendom operates with the Lu'Mira currency, backed by gold. Visit www.Queendom-of-sheba.com for more information.

## About TIUA School of Business

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 210
RECEIVED NYSCEF: 03/15/2024

TIUA School of Business is an affiliate of Trinity International University of Ambassadors, recognizing entrepreneurial leaders. They offer the Entrepreneur Honor's Program and focus on positive community impact through business and educational development. Visit https://trinitybusiness.org for more information.

## About JD Euroway

JD Euroway is a regulated financial group operating globally and offering services like wealth management, corporate finance, and trade finance. They focus on alternative investment strategies that have a positive social impact in sectors such as mining, agriculture, health, arts, disruptive technologies, and small businesses. For more information, visit www.jdeuroway.com



# Written by Arizonally

2 Followers



## More from Arizonally



 Arizonally

### Introducing Leaders Esteem Christian Bible University (LECBU...

The Woodlands, Texas — Leaders Esteem Christian Bible University (LECBU) is proud t...

2 min read · May 15, 2023

 



 Arizonally

### U.S. National Higher Education Day Recognizes Dr.

San Francisco — On June 6, the United States celebrated National Higher Education Day, a...

3 min read · Jun 17, 2023

 

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 210 RECEIVED NYSCEF: 03/15/2024




 Arizonally


 Arizonally

### Rapper SKG Shares Behind-the-Scenes Footage of Music Video...

In a thrilling glimpse into the world of music collaboration, rapper SKG (Helecia Choyce)...

2 min read  ·  Sep 28, 2023

### Press release about Patricia Akello

Patricia Akello, also known as Tricia Akello, is a professional model from Uganda presently...

3 min read  ·  Jul 11, 2022

      

See all from Arizonally

## Recommended from Medium




 Unbecoming

## 10 Seconds That Ended My 20 Year Marriage

It's August in Northern Virginia, hot and humid. I still haven't showered from my...

✦ · 4 min read · Feb 16, 2022

👏 73K    💬 1045    🔖⁺

 Scott Galloway ✔

## 2024 Predictions

Each year, we review/make predictions re the past/coming year. Most years, we hit more...

11 min read · Jan 5

👏 8.3K    💬 115    🔖⁺

### Lists

 **Staff Picks**
558 stories · 641 saves

 **Self-Improvement 101**
20 stories · 1215 saves

 **Stories to Help You Level-Up at Work**
19 stories · 419 saves

 **Productivity 101**
20 stories · 1111 saves



 Scott-Ryan Abt in Pitfall

## Bye Bye, Spotify

And see ya later, all you subscription services in my little empire

✦ · 4 min read · Aug 19, 2023



 James Presbitero Jr. in Practice in Public

## These Words Make it Obvious That Your Text is Written By AI

These 7 words are painfully obvious. They make me cringe. They will make your reader...

4 min read · Dec 31, 2023

Court Records     Pg 299 of 438

18.7K     437                    11.9K     357







AL Anany                Hissa Al Thani

### The ChatGPT Hype Is Over — Now Watch How Google Will Kill…

It never happens instantly. The business game is longer than you know.

### Why Does News Credibility Rely on Western Media Confirmation?

In the unrelenting pursuit of unmasking the truth, Palestinian journalists courageously la…

 · 6 min read · Sep 1, 2023          4 min read · Dec 25, 2023

20K     636                      598     10

See more recommendations

# EXHIBIT D



FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 210 RECEIVED NYSCEF: 03/15/2024

1/16/24, 7:31 PM The United States Presidential 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chatea…

Court Records — Pg 301 of 438




VNN NETWORK

# The United States Presidential 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia.

Posted by  Admin





**United States, 8th Jun 2023, King NewsWire –** The African Linked Foundation and The James "Jc Cooley Foundation in conjunction with Trinity International University of Ambassadors presents "Diplomatic of Excellence" at the Highest Level of Business. Individuals who are



King NewsWire

Private Partnerships amongst Heads of States of Many African Countries. These individuals have received Honorary Doctorate Degrees, and/or President Biden's Lifetime Achievement Awards from TIUA University of Ambassadors, Atlanta, GA.

Presidential 2023 Lifetime Achievement Award Presented to Dr Erick Hall Sr PhD, Founder/CEO of African Linked Foundation and Appointed Diplomatic Special Envoy to the His Royal Highness Crown Prime Minister, and Dr. Clement E. Johnson Jr. PhD, Founder of ClemTECH, LLC and Chief Operating Officer of Aequor Biotech, and The Chairman Award was received by Dr. James Cooley MPA, CISSP, Ph.D., CISO, PMP Founder/CEO of The JC Cooley Foundation, It's Your Life Media Television Network and The State of Georgia Honorary Citizen Goodwill Ambassador was awarded to Dr. Olivia Mirembe Musisi PhD. Founder/CEO of JILL Development Consultancy and IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba.

African Linked co-founders: Dr. Charmaine Hall, Dr. Morris Leonard, Bishop Dr. Mike Kingsley, and  Mr. Terrence Lee, would like to show their appreciation to its valued relations Associates; ICV CPM Prince Dr. Fritz G. Zephir PhD, Africa Ambassador at Large Dr. Olivia Mirembe Musisi PhD, Dr. Cesar Rodriguez, Dr. James Cooley, Dr. Clement Johnson, Dr, Michael Mantell, Dr. Angela Seay, and Dr. Jacqueline Mohair, by proxy to consider them as Honorary Advisory Board Members. We believe that together we are set to change the narrative that surrounds the concept of global citizenship by connecting the best minds in science, technology, engineering, medicine, artificial intelligence throughout the global African Diaspora by creating one assembly through innovation and social engineering for the betterment for all of Humanity.

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 210 RECEIVED NYSCEF: 03/15/2024





The individuals mentioned above are dedicated to making a positive global impact involved in various projects such as Agriculture (Hydroponics Innovation), Cybersecurity Technology, State of the Art Smart Medical Cities, Solar Voltaic Technology, Smart Water Solutions, Crypto-Currency Mining Technology and On/Off Grid Alternative Energy Technology Solutions, fostering collaboration, and tackling challenges both in the United States and worldwide. Through their exemplary leadership, they utilize their expertise, knowledge, experiences, and education to elevate and welcome others to do the same.

For media inquiries and further information, please contact It's Your Life Media Television Network:

Dr. James "JC" Cooley PhD.Director of Media Relations
info@cooleyfoundation.org www.cooleyfoundation.org

**ABOUT AFRICAN LINKED**

African Linked foundation (ALF) was conceived out of its Admiration, Appreciation, Love of Africa, and All African- Descendants.  After several missions of humanitarian efforts in South Africa, Malawi, and

Uganda and our continuous commitment to venture into other regions on the Continent, conceived what ALF life purpose is, to go to all the Nations, and establish Gods Kingdom. through Hope, Acts of Love, Compassion, and Humanitarian efforts. ALF mission is to Chan

King NewsWire

Infrastructure, Agriculture, Opportunity, Economic creation etc.  ALF is an advocate against Oppression, Neo-Colonialism, Imperialism, Genocide, Systemic Racism, Human Rights Abuses, Inequality, Pillaging, and Exploitation of the Continent resources, etc. www.Africanlinked.com

## ABOUT THE JC COOLEY FOUNDATION

The foundation exists to provide youth life skills and mentorship programs to all young adults in need. To accomplish this goal, the youth are placed in an environment designed to promote a positive relationship between the youth and professional mentor. To accomplish this goal, OOCP is pursuing partnerships, sponsorships, fundraisers, donations, grants, and other options to acquire the necessary funds to make OOCP a reality. The ultimate goal is to become a global force, expanding our vision and leadership by ensuring our organization is a guiding force for excellence as it relates to the world's youth.

## ABOUT QUEENDOM OF SHEBA

The Queendom of Sheba is a Special administrative and autonomous zone in the heart of the Democratic Republic of Congo.  It has been established in 2021 in Mai-Ndombe in order for African Kingdoms and tribe to be able to have a temporal location representative of the traditional heritage of Africa.  Ruled by Her Imperial Majesty Empress Amelia Debrah Kasambu'Ra Shebah III, Queen of Sheba and Queen of the South, Her Imperial Majesty, as UN CULPAC Peace Ambassador and African Union Peace Ambassador has set forth Project 7 Phoenix, which includes building the world's largest university and providing impact investment in key areas throughout Africa. The queendom operates on the Lu'Mira currency, a full reserve currency valued against gold.  www.Queendom-of-sheba.com

## ABOUT TIUA SCHOOL OF BUSINESS

Trinity International university of Ambassadors is located in Pensacola, Florida and

Trinity International chaplaincy institute is located in Atlanta . TIUA School of Business is an affiliate of Trinity International University of Ambassadors located in Pensacola, Florida and Atlanta, Georgia. TIUA School of Business through the affiliation of Trinity International University of Ambassadors recognize successful leaders in entrepreneurship. TIUA School of Business offers the Entrepreneur Honor's Program for entrepreneur's who have shown leadership and integrity in the world of business. TIUA School of Business is a member of the Association to Advance Collegiate Schools of Business. They are impact players who have

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 210 RECEIVED NYSCEF: 03/15/2024

Court Records    Pg 305 of 438





King NewsWire

For more information, visit https://trinitybusiness.org/

ABOUT JD EUROWAY

JD Euroway is a financial group regulated in several jurisdiction with a presence on 4 continents and providing financial services including wealth management, corporate finance, trade finance.  The group

targets alternative investment strategies with high impact on social development in key areas such as mining, agriculture, health, arts, disruptive technologies and small businesses

www.jdeuroway.com

For media inquiries and further information, please contact It's Your Life Media Television Network.

## Media Contact

**Organization**: African Linked Foundation and JC Cooley Foundation

**Contact Person**: Dr. James "JC" Cooley PhD.

**Website**: http://www.cooleyfoundation.org

**Email**: info@cooleyfoundation.org

**Country**: United States

**Release Id**: 0806234011

 Newer    Older 

## LEAVE A REPLY

Your email address will not be published. Required fields are marked *



Co_____ *



Name *

Email *

Website

☐ Save my name, email, and website in this browser for the next time I comment.

POST COMMENT

## Services

➤ Nft press release

➤ Blockchain press release

➤ Business expansion press release

➤ Partnership announcement press release

➤ Product launches press release

➤ New service launches press release

➤ Brand identity press release

➤ Events press release

➤ New executive leadership press release

# King NewsWire

- Marketing strategy
- Personal branding press release
- App launches press release

- New business press release
- Business press release for a new product
- Product update or enhancement press release
- New manufacturing facility press release
- Company anniversary press release
- New research & development initiatives press release

---

King newswire is here to get you High-Quality press release distr
brand by Immediate submission to Major News Sites.

## Useful links

- Home







King NewsWire

- Guidelines
- Privacy policy
- Contact us

## Contact Us

- +971 505385373
- support@kingnewswire.com
- Dubai - United Arab Emirates
- Weekdays: 09:00 AM - 7:00 PM

©2023 | King News Wire. All Rights Reser



FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 210
RECEIVED NYSCEF: 03/15/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 309 of 438

# EXHIBIT E

1/16/24, 7:35 PM 24-04020-dsj JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)
Doc 13 Filed 03/14/24 Entered 03/14/24 08:45:23 Main Document Pg 310 of 438 Court Records



The Crown Imperial Office-CIO e-Secretariat 👑    Aug 4, 2023    2 min read

# JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)

Updated: Oct 30, 2023

⭐⭐⭐⭐⭐   No ratings yet

## Press Statement From The Office Of The Queen Of Sheba

1/16/24, 7:35 PM 24-04020-dsj   JD-Euroway President Fritz Gerald Zephir Function Terminated as Queendom Crown Prime Minister- CPM
                                        Court Records    Pg 311 of 438



Her Imperial Majesty The Empress Shebah Kasambu'Ra - Queen Shebah 111 , The Queen of Sheba

1/16/24 7:35 PM 24-04020-dsj JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)
Court Records   Pg 312 of 438

### JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)

**Letter of TERMINATION of Office**

**To The Attention of Mr. Fritz Gerald Zephir**                                  Date 7/27/2023

I, Empress Shebah Debra Amelia Kasambu'Ra, hereby inform of the termination of your appointment as my Crown Prime Minister, and all post appointed related to that appointment. Which includes of QSIA and as Governor of Governors of CSCB, and of the CROWN QSL and QRC Currencies of the Queendom of Sheba.

Termination ground;

- Breach of Trust, and a total loss of confidence in your performance, your word, ethics and moral compass.

All matters further in relation to this termination shall be addressed by my legal representatives. *(The Queen Of Sheba Signed and Seal  Date 7/27/2023)*

---



**JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)**

**Press Statement From The Palace 7.31.2023**

Sir Fritz Gerald Zephir was formally appointed on 11/29/2021 as HIM Executive Crown Minister of FINANCE & TREASURY. On 02/02/2022 that post was extended with the portfolio of HIM Crown Prime Minister, with dual responsibilities as Governor of Governors of CSCB Central Bank of the Federation Queendom Crown Government.

With the statement we inform of the TERMINATION on 7/27/2023 by The Crown of  Mr: Fritz Gerald Zephir functions and representation in ALL capacities; all functions of representation or appointments of the Queendom; its concerns; the African Kingdoms Federation, and The Crown as Queendom Crown Prime Minister (CPM),

The CSCB, QSIA, QSL and QRC are of the Queen of Sheba and represented Queendom Crown Government. The Crown Government has taken effectively distance from JD Euroway Bancorp Trust and all of its entities, representation, partnerships and associations.  We do not own JD Euroway, we are not members of the JD Euroway Board; JD Euroway Trustees or Associates and are not its legal representatives or spokesperson.

Case 1:24-04020-dsj   Doc 23   Filed 08/24/24   Entered 08/24/24 08:45:23   Drone M State

Court Records    Pg 313 of 438

All matters in relation to the JD Euroway President Fritz Gerald Zephir Function TERMINATED as **Queendom Crown Prime Minister (CPM),** can be addressed to **info@queendom.africa** for the attention of The CPM of Administrations and Messr. Patrick Elongo Tambwe of Legal Affairs.

**(The Palace Secretariat)**

FILED: NEW YORK COUNTY CLERK 03/15/2024 08:39 PM
INDEX NO. 158207/2022

NYSCEF DOC. NO. 210

RECEIVED NYSCEF: 03/15/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records    Pg 314 of 438

# EXHIBIT F

1:07-cv-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 315 of 438





# Office of the Superintendent of Financial Institutions

Home > Search > Results

## Results

JD Euroway                                                    ▼    Search

Nothing here matches your search

Suggestions

- Make sure all words are spelled correctly
- Try different search terms
- Try more general search terms
- Try fewer search terms
- Try these tips for searching

Modified Date: 2019-12-15

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records    Pg 316 of 438

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

———————————————————— x

EMIGRANT BUSINESS CREDIT
CORPORATION,

                Plaintiff,

      v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND 1,
LP, EBURY FUND 2, LP, EBURY 1EMI
LLC, EBURY 2EMI LLC, EB 1EMIALA
LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC,
EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB
2EMIIN, LLC, EB 1EMIMD, LLC, EB
2EMIMD, LLC, EB 1EMINJ, LLC, EB
2EMINJ, LLC, EB 1EMINY, LLC, EB
2EMINY, LLC, EB 1EMISC, LLC, EB
2EMISC, LLC, RE 1EMI LLC, RE 2EMI
LLC, EB 1EMIDC, LLC, ARQUE TAX
RECEIVABLE FUND (MARYLAND), LLC,
EBURY FUND 1FL, LLC, EBURY FUND
2FL, LLC, EBURY FUND 1NJ, LLC,
EBURY FUND 2NJ, LLC, RED CLOVER 1,
LLC, EBURY RE LLC, and XYZ
CORPS. 1-10,

                Defendants.

———————————————————— x

Index No. 158207/2022

(Hon. Margaret Chan)

**MOTION SEQUENCE NO. __**

**MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS'
CROSS-MOTION TO MODIFY THE
PRELIMINARY INJUNCTION**

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 211
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 317 of 438

## TABLE OF CONTENTS

*Page*

**INTRODUCTION** ...................................................................................................... 1

**ARGUMENT** ............................................................................................................... 2

      A.    The Court Should Deny Defendants' Cross-Motion ................................. 2

            1.    EBCC's Filings Are A Direct Response To Defendants' Actions .............. 2

            2.    Defendants' Settlement Narrative Is Misleading ......................................... 5

            3.    There Is No Legal Basis To Grant Defendants' Requested Relief .............. 8

      B.    EBCC Has Been Restrained In Addressing Defendants' Actions ........................... 9

**CONCLUSION** ........................................................................................................ 10

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 211

INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 318 of 438

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**CASES**

*Access Capital, Inc.* v. *DeCicco,*
302 A.D.2d 48 (1st Dep't 2002) ................................................................. 3

*Costigan & Co., P.C.* v. *Costigan,*
304 A.D.2d 464 (1st Dep't 2003) ............................................................... 8

*Curtis & Associates, P.C.* v. *Callaghan,*
2012 WL 11851805 (Sup. Ct. West. Cnty. Aug. 1, 2012) ......................... 9

*Gottwald* v. *Sebert,*
40 N.Y.3d 240 (2023) (Rivera, J., dissenting in part) .............................. 8

*Hochberg* v. *Davis,*
171 A.D.2d 192 (1st Dep't 1991) ............................................................... 8

**STATUTES AND RULES**

Judiciary Law § 756 ....................................................................................... 8

22 NYCRR
100.3(a)(4) ................................................................................................... 8
202.8-d ......................................................................................................... 4

## INTRODUCTION

From the inception of this lawsuit, the objective of Plaintiff Emigrant Business Credit Corporation ("**EBCC**") has been to preserve, and ultimately to recover, the assets that Defendants fraudulently obtained from EBCC. To that end, EBCC has sought to prosecute this case leanly and expeditiously, and has opted not to move the Court for relief every time Defendants acted in a way that would merit doing so. EBCC did not rush to Court, for example, when Defendants committed an initial violation of the Preliminary Injunction Order in August 2023. (*See* Dkt. 208 at 2 n.1) Nor did EBCC seek relief when Defendants filed (and then re-filed) plainly meritless counterclaims based on an unsigned and expressly non-binding term sheet. (Dkt. 81 at 14-15.) EBCC's restraint in seeking judicial relief for those infractions does not—as Defendants now assert—constitute a wholesale waiver of EBCC's rights under either the Court's Preliminary Injunction Order or the Credit Agreements that underlie this lawsuit.

After Defendant John Arthur Hanratty ("**Hanratty**") was arrested and new facts came to light, EBCC was compelled to move the Court to take additional steps to preserve its collateral. Not doing so would have guaranteed that Hanratty would deplete all of EBCC's collateral before EBCC could obtain a judgment. Specifically, beginning in late 2023, Hanratty began committing larger and more frequent violations of the Preliminary Injunction Order, dissipating significantly greater amounts of EBCC's collateral. (*See* Dkt. 110 at 6-7.) Moreover, Hanratty confirmed—through his most recent filings—that he intends to continue liquidating EBCC's collateral to fund his comfortable personal lifestyle as well as his legal expenses in the ongoing criminal proceedings against him, in violation of the Credit Agreements. (*See* Dkt. 153 at 10-11.) In addition, since early January, Hanratty has stopped reporting transactions to QuickBooks, further diminishing EBCC's limited ability to monitor his custodianship of EBCC's collateral or to double-check his monthly financial reporting. (*See* Dkt. 208 at 12-13.) Finally,

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 211          24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State   RECEIVED NYSCEF: 03/20/2024
                             Court Records     Pg 320 of 438

Hanratty and his representatives, following his arrest, repeatedly submitted obviously fraudulent documents to EBCC (apparently to support the false narrative in their motion that EBCC unreasonably has refused to accept legitimate settlement offers). *See* Section A.2, *infra*.

The Court already has adjudged Defendants liable for civil contempt for their violations of the Preliminary Injunction Order. (Dkt. 165 at 3-4.) Moreover, Defendants do not dispute that they engaged in the same misconduct mere days later, which is the subject of EBCC's pending contempt motion. (Dkt. 208 at 2-3.) While Defendants seek in their present cross-motion "to prevent EBCC from filing further frivolous papers" (*id.* at 18), they do not actually dispute that Defendants have continued to violate the Court's Preliminary Injunction Order. EBCC's contempt motions are meritorious and the Court should deny Defendants' cross-motion.

## **ARGUMENT**

### **A.    The Court Should Deny Defendants' Cross-Motion.**

In recent months, Defendants have been called to account for multiple, serious violations of the Preliminary Injunction Order. (Dkt. 110; Dkt. 191.) Rather than accepting responsibility and complying with the Court's orders, Defendants now move the Court punish *EBCC* for its efforts to vindicate its rights under the Court's orders and the underlying contracts. (Dkt. 201 at 20.) Defendants characterize EBCC's contempt motions as "absurd," "ludicrous," and "frivolous" (*id.* at 7, 16, 18), even though Defendants have admitted to the repeated, willful violations of this Court's orders that form the basis of those motions (*see* Dkt. 153 at 12; Dkt. 201 at 13).

### 1.    EBCC's Filings Are A Direct Response To Defendants' Actions.

Defendants' cross-motion seeks "to prevent EBCC from filing further frivolous papers." (Dkt. 201 at 18.) EBCC's motions, however, have been entirely legitimate and necessary

-2-

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 211    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/20/2024

Court Records    Pg 321 of 438

to prevent Defendants from dissipating EBCC's collateral and to recover the proceeds from Defendants' unauthorized sales of EBCC's collateral:

    **January 4, 2024 Order to Show Cause (<u>Dkt. 97</u>):** EBCC discovered that Defendants had sold over $1.1 million worth of EBCC's collateral without providing advance notice or escrowing the proceeds, in violation of the Preliminary Injunction Order. (*See* <u>Dkt. 110</u> at 2.) EBCC moved for contempt. The Court agreed with EBCC, adjudged Defendants in civil contempt, and imposed upon them a $306,946.30 civil fine. (<u>Dkt. 165</u> at 3.)

    **January 23, 2024 Stay Opposition (<u>Dkt. 156</u>):** Defendants moved for a stay in light of the ongoing criminal proceedings against them. EBCC opposed Defendants' request primarily because "[d]uring the pendency of such a stay, [Defendants] could continue to dissipate assets." (*See* <u>Dkt. 207</u> at 26:19-21.) Those concerns proved to be well-founded, as Defendants have continued to dissipate EBCC's collateral, in violation of the Preliminary Injunction Order. (*See* <u>Dkt. 191</u> at 7.)

    Defendants now assert that EBCC's opposition was frivolous because "the Civil Case arises out of 'identical facts' as the Criminal Case." (<u>Dkt. 201</u> at 18.) But that does not make EBCC's opposition frivolous. The First Department has held that a court is under no obligation to stay a civil action "until a pending criminal prosecution has been terminated," *<u>Access Capital, Inc.</u> <u>v. DeCicco</u>*, 302 A.D.2d 48, 52 (1st Dep't 2002), and EBCC acted within its rights to oppose Defendants' stay request.

    **January 26, 2024 Renewal Motion (<u>Dkt. 169</u>):** EBCC sought reconsideration of the stay upon discovering an undisclosed $4.2 million judgment against Defendants, which contradicted Defendants' assertion that "it [was] not clear that a stay would truly prejudice EBCC." (*<u>Id</u>*. at 2.) Defendants call the motion "silly" (<u>Dkt. 201</u> at 18), but managed to defeat the motion

-3-

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 322 of 438

only because the Court found that Hanratty's history of "fraud and misrepresentation" undermined EBCC's reasonable justification for not discovering the judgment sooner. (Dkt. 207 at 34:17-19.)

**February 15, 2024 Motion to Enforce the Contempt Order (Dkt. 187) and February 29, 2024 Contempt Motion (Dkt. 191):** After Defendants undisputedly failed to purge their contempt, EBCC raised the issue with the Court, which invited EBCC to file a motion for contempt. (*See* Dkt. 205 at 35:3-10.) EBCC filed that motion on February 15. While that motion was pending, EBCC discovered that Defendants had violated the Preliminary Injunction Order yet again by selling almost $500,000 worth of EBCC's collateral without providing advance notice or escrowing the proceeds. (*Id.* at 7.) Defendants do not dispute these new violations of the Preliminary Injunction Order but seek to raise a financial hardship defense. That defense is meritless as Defendants failed to raise it in their opposition to EBCC's first contempt motion and have failed to substantiate the defense with evidentiary support, as required by New York law. (*See* Dkt. 208 at 5 (citing *El-Dehdan* v. *El-Dehdan*, 26 N.Y.3d 19, 35 (2015)).)

Each of EBCC's motions has raised compelling factual and legal arguments. EBCC's motions also have all been for a proper purpose—to prevent Defendants from continuing to dissipate EBCC's collateral and to recover the proceeds of Defendants' unauthorized sales of EBCC's collateral.[1] There is thus no basis to grant Defendants' requested relief.

---

[1] Defendants also suggest that EBCC violated 22 NYCRR 202.8-d by filing "two orders to show cause . . . in the five weeks since the Court issued the Stay" without establishing "genuine urgency." (Dkt. 201 at 19.) That is wrong for two reasons. *First*, EBCC has filed only one order to show cause—not two—since the Court issued the Stay. (Dkt. 168.) *Second*, EBCC established genuine urgency for that motion because there was "a real and imminent risk that enforcing a stay of this action will result in the further depletion of Defendants' assets which will cause EBCC immediate and irreparable harm and frustrate any recovery by EBCC in this action." (Dkt. 170 ¶ 7.) Defendants did not dispute the urgency of EBCC's motion in their opposition. (*See* Dkt. 176.)

-4-

2.    Defendants' Settlement Narrative Is Misleading.

Defendants further argue that EBCC's motions are frivolous because of "EBCC's years-long refusal to settle this Case—to take the money and run." (Dkt. 201 at 18.)  According to Defendants, they made a genuine offer to settle this case for $13.5 million and EBCC unreasonably has refused to "accept[] that offer" and persisted in asking bad-faith "questions about how the Take-Out Lender earned his cash." (*Id.* at 5-6.)  On February 8, 2024, Defendants' counsel represented in Court:  "On our side there was and continues to be *genuine attempts at settlement*, Your Honor." (Dkt. 205 at 23:10-1 (emphasis added).)  Defendants now argue that, by refusing to accept that offer, EBCC is taking action "primarily to delay or prolong the resolution of the litigation or to harass or maliciously injure another." (Dkt. 201 at 19 (quoting 22 NYCRR 130.1-1).)  But, as Defendants are well aware, there is no viable settlement offer for EBCC to accept.  On the contrary, Defendants' settlement documentation contains numerous, obvious, and compelling indicia of further attempts to defraud both EBCC and the Court.

As Defendants acknowledge, EBCC agreed to a settlement framework wherein Defendants were required to provide satisfactory "proof of funds" before negotiations could proceed any further. (*See* Dkt. 201 at 5.)  Defendants repeatedly have provided "proof of funds" documents riddled with inconsistencies, inaccuracies, and red flags:

**October 10, 2023 "Proof of Funds":**  Defendants' first attempt at establishing proof of funds was a purported "SWIFT MT-199" interbank message from the Bank of Japan to Mashreqbank PSC in Dubai for an entity called SJ Global Investments LLC to purchase "any type of petroleum products from UPI Energy DMCC." (*See* Ex. A to Willscher Affirm.)  The "SWIFT MT-199" message was invalid by its own terms and did not reference EBCC or anything related to Hanratty or Ebury.

-5-

The document also bears several indicia of fraud. The Bank of Japan is a central bank (like the U.S. Federal Reserve) that does not appear to offer corporate banking services. The Bank of Japan's street address is misspelled ("Chuo-ko" instead of "Chuo-ku"). There is a misprint on the second page ("Bank of Japan *Japan* Acknowledgement Receipt"). More importantly, the entity supposedly providing the funds—SJ Global Investments—has been adjudged responsible for a multi-million-dollar fraud by the U.S. District Court for the Southern District of New York. (*See* Ex. B to Willscher Affirm.) And SJ Global Investments' principals have been accused of perpetrating a £50,000 charity scam. (*See* Ex. C to Willscher Affirm.)

**December 9, 2023 "Proof of Funds":** Defendants' second attempt at providing proof of funds involved a purported "Corporate Guarantee" from an entity called Annuit Coeptis Investments, LLC ("ACI") and a Letter of Attestation from an attorney, David J. Bartone, Esq., stating that the purpose of the guaranteed funds was "to establish and register a new company in Dubai, United Arab Emirates." (*See* Ex. D to Willscher Affirm.) As with the first set of proof of funds documents, these documents were invalid by their own terms. Nor did they reference EBCC or anything related to Hanratty or Ebury.

Defendants also provided two Bank Confirmation Letters ("BCLs") from an entity called JD Euroway Bancorp & Trust, signed by an individual called Fritz G. Zephir. (*See* Ex. E to Willscher Affirm.) According to public sources, Mr. Zephir—alternatively styled "IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba"—is the recipient of "The United States President Joseph R. Biden 2023 Lifetime Achievement Award." (*See* Exs. F & G to Willscher Affirm.) It further appears that Mr. Zephir served as the "Crown Prime Minister" of the "Queendom of Sheba" until July 31, 2023, when he was terminated for "Breach of Trust, and a total loss of confidence in

-6-

your performance, your word, ethics and moral compass." (*See* Ex. H to Willscher Affirm.) Lastly, despite JD Euroway purporting to be a Canadian Bancorp and Trust, the Canadian Office of the Superintendent of Financial Institutions has no record of JD Euroway. (*See* Ex. I to Willscher Affirm.)

Defendants have had over two months to address EBCC's concerns but instead have offered no support for the authenticity of these documents. (*See* Ex. J to Willscher Affirm.) Counsel nevertheless has persisted in citing them to this Court as evidence of genuine settlement offers and that those offers are being ignored by EBCC for the purpose of exacting "revenge" on Defendants. (*See* Dkt. 204 at 2; Dkt. 201 at 19.) Indeed, at the February 8, 2024 hearing, Defendants' counsel represented that there "was and continues to be genuine attempts at settlement." (Dkt. 205 at 23:10-11.) It was only after being confronted with some of the above-described indicia of fraud that counsel disclaimed having "made any representation[s] about what these documents are," and admitted that the documents "frankly, look a little ridiculous." (*Id*. at 26:16-28:20.)

In their cross-motion, Defendants once again assert that there is a legitimate settlement offer on the table. Despite Defendants' counsel's prior attempts to disclaim making "any representation[s] about what these documents are" (*id*. at 26:16-20), that is precisely what they are doing now by asking the Court to impose sanctions against EBCC for its "refusal to settle this Case." (Dkt. 201 at 18.) EBCC's refusal to accept settlement offers—from Defendants that have engaged in a scheme to defraud it and based on obviously fraudulent documents that

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022

NYSCEF DOC. NO: 211    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/20/2024

Court Records    Pg 326 of 438

Defendants' counsel refuses to explain—does not make EBCC's contempt motions "frivolous" or justify granting Defendants' requested relief.[2]

### 3.    There Is No Legal Basis To Grant Defendants' Requested Relief.

Defendants also offer no legal support for their request that the Court "prohibit EBCC from filing further motions without Court approval."  (Dkt. 201 at 20.)  Defendants' only citation for that request is to a partial dissent in _Gottwald_ v. _Sebert_, 40 N.Y.3d 240, 261 (2023) (Rivera, J., dissenting in part).  That case, however, did not involve the court conditioning the making of motions on prior judicial approval and thus does not support their request.  On the contrary, the First Department has held that "conditioning the making of motions on prior judicial approval" risks "prevent[ing] a party from exercising the option to move for relief to which he or she may be entitled," _Hochberg_ v. _Davis_, 171 A.D.2d 192, 195 (1st Dep't 1991), may "violate[] a party's statutory right to make a motion," _Costigan & Co., P.C._ v. _Costigan_, 304 A.D.2d 464, 464 (1st Dep't 2003), and is in tension with 22 NYCRR 100.3(a)(4), which provides "to every person who is legally interested in a matter . . . [the] full right to be heard according to law," _Hochberg_, 171 A.D.2d at 195.  EBCC was statutorily authorized to make "[a]n application to punish for a contempt punishable civilly . . . by notice of motion."  Judiciary Law § 756.

The rare cases granting Defendants' requested relief have involved egregious facts, not present here, such as where "sanctions already were levied due to frivolous attorney conduct, frivolous and voluminous motions continued to proliferate, respondent continues resisting the discovery necessary for the case to proceed, and now fully 15 motions have stacked up prior to

---

[2]    Even if Defendants were correct, and they are not, that EBCC unreasonably has refused to settle this litigation, that would not justify granting the cross-motion.  Defendants do not cite any law establishing that a party engages in frivolous misconduct by choosing to litigate a case, rather than settle for less than half the value of its claim.

meaningful discovery." <u>Curtis & Associates, P.C.</u> v. <u>Callaghan</u>, 2012 WL 11851805, at *10 (Sup.

Ct. West. Cnty. Aug. 1, 2012). Here, by contrast, each of EBCC's contempt motions has been

meritorious and has resulted from Defendants' repeated, willful violations of this Court's orders.

Accordingly, the Court should deny the cross-motion.

## B.    EBCC Has Been Restrained In Addressing Defendants' Actions.

Although Defendants accuse EBCC of "overlitigat[ing]" this case and treating the

Court as "nothing but its own personal revenge machine" (<u>Dkt. 201</u> at 15, 19), the record actually

reveals the opposite. Despite Defendants' repeated misconduct, EBCC has sought to keep the case

moving along, rather than slowing things down by filing sanctions motions. As Defendants

acknowledge in their cross-motion, "the Parties had litigated this case so cooperatively that they

did not even raise a single discovery issue with the Court." (<u>Id</u>. at 19.)

For example, Defendants filed counterclaims against EBCC, asserting that a

non-binding preliminary term sheet—to which EBCC never agreed—was a binding contract that

EBCC breached by filing this action. Even after EBCC notified Defendants that the counterclaims

lacked a legal or factual basis, Defendants filed nearly identical amended counterclaims that failed

to cure any of the serious deficiencies EBCC had identified. (<u>Dkt. 81</u> at 14-15.) By filing the

original and amended counterclaims, Defendants delayed the filing of the note of issue, the

resolution of this case, and ultimate accountability for their actions, by several months.

Nevertheless, EBCC opted not to file a sanctions motions and instead proceeded to summary

judgment briefing.[3]

_____

[3]    When EBCC has exercised restraint and not sought Court intervention, Defendants have
seized on that restraint to argue waiver. (<u>Dkt. 201</u> at 15 ("EBCC never once complained about
Defendant's paying undersigned counsel's legal fees."); <u>id</u>. at 16 ("EBCC did not complain about
undersigned counsel's fees despite having full access to Defendants' Quickbooks."). But now that
EBCC has sought Court intervention to address Defendants' myriad violations of the Credit

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 211

INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 328 of 438

Nevertheless, Defendants' latest filings appear to be replete with mischaracterizations (if not outright misrepresentations). *First*, as discussed above, Defendants have falsely represented to the Court that they had made "genuine" attempts at settlement. *See* Section A.2, *supra*. *Second*, Defendants repeatedly have mischaracterized the source of the $120,000 that they deposited into escrow on February 7. In a sworn affidavit, Hanratty stated that he obtained this money by "collect[ing] various payments that are due to the Ebury Entities and to me." (Dkt. 189 ¶¶ 6-7; *see also* Dkt. 174; Dkt. 205 at 7:15-17 ("I think one thing to point out is that the order was directed to Mr. Hanratty personally, so he's attempting to find personal funds to pay.").) But Defendants' financial reporting shows that Hanratty received the funds by selling $439,110.01 worth of EBCC's collateral at a 75% discount, without advance notice to EBCC, in violation of the Preliminary Injunction Order. (*See* Dkt. 191 at 7.) *Third*, Defendants represented to the Court that "Defendants voluntarily gave EBCC access to the Entities' Quickbooks accounts in January 2022 and have never terminated that access." (Dkt. 201 at 6.) While Defendants have not "terminated" EBCC's QuickBooks access, Defendants failed to advise the Court that they stopped reporting transactions to QuickBooks on January 10, 2024, apparently in retaliation for EBCC's first contempt motion. (*See* Dkt. 191 at 7.) Defendants' unclean hands should preclude them from obtaining the relief requested in their cross-motion.

## <u>CONCLUSION</u>

For the foregoing reasons, EBCC respectfully requests that the Court deny Defendants' cross-motion to modify the preliminary injunction.

---

Agreements and this Court's orders, Defendants accuse EBCC of "overlitigat[ing]" the case and "wasting scarce judicial resources." (*Id*. at 15, 20.) Defendants cannot have it both ways.

Dated:    March 20, 2024
         New York, New York

Respectfully submitted,

*/s/ Alexander J. Willscher*

Alexander J. Willscher
Austin P. Mayron
Erin L. Savoie
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Plaintiff Emigrant Business
Credit Corporation*

-11-

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 330 of 438

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with the word-count limit of Commercial Division Rule 17, 22 NYCRR § 202.70(g), for documents prepared by use of a computer because it contains 3,119 words.

Dated:  March 20, 2024                    _/s/ Alexander J. Willscher_
        New York, New York               Alexander J. Willscher

-12-

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 212
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 331 of 438

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |  |
|---|---|---|
| EMIGRANT BUSINESS CREDIT CORPORATION, | : | Index No. 158207/2022 |
| Plaintiff, | : | (Hon. Margaret Chan) |
| v. | : | **MOTION SEQUENCE NO. ___** |
| JOHN ARTHUR HANRATTY, EBURY STREET CAPITAL, LLC, EBURY FUND 1, LP, EBURY FUND 2, LP, EBURY 1EMI LLC, EBURY 2EMI LLC, EB 1EMIALA LLC, EB 2EMIALA LLC, EB 1EMIFL, LLC, EB 2EMIFL, LLC, EB 1EMIIN, LLC, EB 2EMIIN, LLC, EB 1EMIMD, LLC, EB 2EMIMD, LLC, EB 1EMINJ, LLC, EB 2EMINJ, LLC, EB 1EMINY, LLC, EB 2EMINY, LLC, EB 1EMISC, LLC, EB 2EMISC, LLC, RE 1EMI LLC, RE 2EMI LLC, EB 1EMIDC, LLC, ARQUE TAX RECEIVABLE FUND (MARYLAND), LLC, EBURY FUND 1FL, LLC, EBURY FUND 2FL, LLC, EBURY FUND 1NJ, LLC, EBURY FUND 2NJ, LLC, RED CLOVER 1, LLC, EBURY RE LLC, and XYZ CORPS. 1-10, | : | **AFFIRMATION OF ALEXANDER J. WILLSCHER** |
| Defendants. | : |  |

**ALEXANDER J. WILLSCHER**, an attorney duly admitted to practice law in the Courts of the State of New York, affirms the truth of the following statements, under the penalties of perjury:

1.      I am a partner at the law firm of Sullivan & Cromwell LLP, counsel for Plaintiff Emigrant Business Credit Corporation ("**EBCC**") in the above-captioned matter.  I am familiar with the matters set forth below.

2.      I make this affirmation in support of EBCC's opposition to Defendants' cross-motion to modify the Preliminary Injunction Order.

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM     INDEX NO. 158207/2022

NYSCEF DOC. NO. 212     24-04020-dsj     Doc 1-3     Filed 08/14/24     Entered 08/14/24 09:45:23     Doc #4 State     RECEIVED NYSCEF: 03/20/2024

Court Records     Pg 332 of 438

3.      On October 10, 2023, Defendants' counsel sent EBCC a purported proof of funds document "from the Bank of Japan" to indicate that Defendants had access to "in excess of 200 million Euro in availability" through "SJ Global Investments LLC/Tiger Petro Limited." Attached hereto as Exhibit A is a true and correct copy of the purported "SWIFT MT-199" message that Defendants provided to EBCC.

4.      Attached hereto as Exhibit B is a true and correct copy of the Default Judgment against SJ Global Investments Ltd. in *Fat Brands Inc.* v. *PPMT Capital Advisors, Ltd.*, No. 1:19-cv-10497 (S.D.N.Y., filed Jan. 4, 2024), ECF No. 268.

5.      Attached hereto as Exhibit C is a true and correct copy of an article in the Eastern Daily Press describing involvement by the directors of SJ Global Investments Worldwide in a £50,000 charity scam.

6.      Attached hereto as Exhibit D is a true and correct copy of a "Letter of Attestation of Funds" that Defendants' counsel sent to EBCC on December 29, 2023, purportedly evidencing the proof of funds.

7.      Attached hereto as Exhibit E are true and correct copies of "Bank Confirmation Letters" from JD Euroway Bancorp & Trust that Defendants' counsel sent to EBCC on December 29, 2023, purportedly "evidencing the proof of funds."

8.      Attached hereto as Exhibit F is a true and correct copy of an article from Medium describing the receipt by Mr. Fritz Zephir—the President of JD Euroway Bancorp & Trust and the signatory of the "Bank Confirmation Letters"—of the "The United States President Joseph R. Biden 2023 Lifetime Achievement Award."

9.      Attached hereto as Exhibit G is a true and correct copy of an article from King NewsWire describing the receipt by Mr. Zephir of "The United States Presidential 2023 Lifetime

Achievement Award."

10.    Attached hereto as Exhibit H is a true and correct copy of a press release by "the Queen of Sheba" describing Mr. Zephir's termination as "Queendom Crown Prime Minister."

11.    Attached hereto as Exhibit I is a true and correct copy of the January 16, 2024 results for a search of "JD Euroway" on the website of the Canadian Office of the Superintendent of Financial Institutions.

12.    Attached hereto as Exhibit J is a true and correct copy of the letter EBCC's counsel sent to Defendants' counsel on January 16, 2024, describing the indicia of fraud in Defendants' purported proof of funds documents.

Dated:    March 20, 2024                    */s/ Alexander J. Willscher*
            New York, New York              **ALEXANDER J. WILLSCHER**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this affirmation complies with the word-count limit of Commercial

Division Rule 17, 22 NYCRR § 202.70(g), for documents prepared by use of a computer because

it contains 486 words.

Dated:   March 20, 2024                           */s/ Alexander J. Willscher*
         New York, New York                       Alexander J. Willscher

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022

NYSCEF 25/09/2023 09:40:11 (GMT+9)    22-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 336 of 438    INTERNATIONAL GATEWAY PKI-INT PCUSTOMER'S COPY    /20/2024

---------------------------------------------------INSTANCE TYPE AND TRANSMISSION-----------------------------------

MT-199 PRE ADVICE VIA BRUSSELS SWIFT SYSTEM

NOTIFICATION (TRANSMISSION) OF ORIGINAL SENT TO SWIFT (ACK)

NETWORK DELIVERY STATUS: NETWORK ACK

PRIORITY/DELIVERY     : URGENT

URGENT MESSAGE INPUT REFERENCE: 25 SEPTEMBER, 2023 BOJPJPJTXXXX1231999122A092/SWHQBEBBKXXX/BOMLAEADXXXXAE25033000001910009954428/1992190000002023

............................................................MESSAGE HEADER.................................................

SWIFT INPUT: MT-199 PRE ADVICE

SENDER

*** SWIFT CODE : BOJPJPJTXXX

*** BANK NAME   : BANK OF JAPAN

*** BANK ADDRESS: NIHONBASHI-HONGOKUCHO, 2-1-1 CHUO-KO TOKYO JAPAN

*** APPLICANT   : SJ GLOBAL INVESTMENTS LLC/TIGER PETRO LIMITED

*** ACCOUNT NUMBER: 1231-999122-A092



RECEIVER

*** SWIFT CODE : BOMLAEAD

*** BANK NAME   : MASHREQBANK PSC

*** BANK ADDRESS: UMNIYATI ST, AL ASAYEL STREET, 345 DUBAI UNITED ARAB EMIRATES

*** ACCOUNT NUMBER: AE25033000001910009954428

BENEFICIARY CUSTOMER NAME AND ADDRESS

*** ACCOUNT NAME: UPI ENERGY DMCC, UNIT NO 1502 DMCC BUSINESS CENTRE, LEVEL NO 1, /JEWELLERY AND GEMPLEX 3 DUBAI UAE

*** ACCOUNT NUMBER: AE25033000001910009954428

---------------------------------------------------MESSAGE TEXT-----------------------------------

*** F20 :SENDER'S REFERENCE : 8564789645124523

*** F79:NARRATIVE

..............................................................SWIFT MESSAGE.................................................

WE, BANK OF JAPAN WITH REGISTERED ADDRESS AT NIHONBASHI-HONGOKUCHO, 2-1-CHUO-KO TOKYO JAPAN, ON BEHALF OF OUR CLIENT, SJ GLOBAL INVESTMENTS LLC/TIGER PETRO LIMITED ADDRESS:

NO. 2007 LATIFA TOWERS, SHAIKH ZAYED ROAD DUBAI 50001 UAE WITH ACCOUNT NUMBER: 1231-999122-A092 HEREBY CONFIRM WITH FULL BANK RESPONSIBILITY THAT OUR CLIENT, SJ GLOBAL INVE

STMENTS LLC/TIGER PETRO LIMITED HAS AVAILABLE FUNDS IN ACCOUNT NUMBER  1231-999122-A092 THE SUM  OF TWO HUNDRED NINETEEN MILLION EUROS (€219.000.000,00) WHICH IS FREELY

TRANSFERABLE AND LEGALLY EARNED, GOOD, CLEAN AND CLEARED FUNDS. FREE OF ANY LIENS OR ENCUMBRANCES AND ARE READY, WILLING AND ABLE TO CONFIRM THIS MT199 ON BANK TO BANK BASIS.

THE PURPOSE OF THIS MT199 IS TO SHOW OUR CLIENT, FINANCIAL CAPABILITY, FOR PURCHASE ANY TYPE OF PETROLEUM PRODUCTS FROM UPI ENERGY DMCC.  ALL ISSUING BANK CHARGES ARE FOR THE

ACCOUNT OF THE APPLICANT.

THIS PRE-ADVICE MT199 IS VALID FOR FIVE DAYS(5) INTERNATIONAL BANKING DAYS. THIS SWIFT MESSAGE IS OUR VALID AND OPERATIVE INSTRUMENT. NO MAIL CONFIRMATION WILL FOLLOW. THIS

SWIFT CAN BE VERIFIED ON A BANK TO BANK BASIS.

RECORD INFORMATION SWIFT ORDER IS MAC:(PAC)PBG ENC)CHK (INT)PED)(MAC).

DATE RECORDED:25 SEPTEMBER, 2023

FOR AND ON BEHALF OF BANK OF JAPAN NIHONBASHI-HONGOKUCHO, 2-1-CHUO-KO TOKYO JAPAN

AUTHORIZED OFFICER 1 KAZUO UEDA PIN CODE KU58964CEO CEO

AUTHORIZED OFFICER 2 KOICHIRO KAMATA PIN CODE KK23658

---------------------------------------------------MESSAGE TRAILER-----------------------------------

{CHK:8569BOJUJ199180502023}

PKI SIGNATURE: MAC-EQUIVALENT

TRACKING CODE: 5493000SA3K24EQKA103

---------------------------------------------------INTERVENTION-----------------------------------

CATEGORY    : NETWORK REPORT

CREATION TIME: 25/09/2023-09:40:11(GMT+9)

APPLICATION : SWIFT INTERFACE

OPERATION   : SYSTEM

END TIME    : 10:30:20(GMT+9)

TEXT{F1:1001:BOJPJPJTXXXX1231999122A092/SWHQBEBBKXXX}{2}{BOMLAEADXXXXAE25033000001910009954428/1992190000002023}{555:80}{199}

.................................................................................................................................

CONF DATE:25/09/2023+++09:40:11(GMT+9)+++BANK OF JAPAN+++1231999122A092023

MSG NO :444+++TITLE+++MT-199 RWA+++LOGICAL ANSWER BACK                (Y)

VALUE DATE/END TIME +++25/09/2023+++ 10:30:20(GMT+9)+++MESSAGE HAS BEEN TRANSMITTED(02)

END OF MESSAGE

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 1-3
RECEIVED NYSCEF: 03/20/2024
24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 337 of 438

BANK OF JAPAN-JAPAN ACKNOWLEDGMENT RECEIPT

*********************************************************************************

CONFIRMED AND RECEIVED ANSWERBACK AND ACKNOWLEDGMENT MESSAGE FROM<<SWIFT BIC:SWHQBEEBXXX>>SOCIETY FOR WORLDWIDE INTERBANK FINANCIAL TELECOM HEADQUARTERS**AVENUE ADELE 1 B-1310 LA HUL PE BELGIUM***TEL:+3226553111 FAX:+3226553226.

(XTM DELIVERY REPORT) (AFT)AUTOMATED FILE TRANSFER(AFT)SWIFT CODE>>>BOMLAEADXXXX***WASHREQBANK PSC HEAD OFFICE***P.O.BOX 1250,DUBAI***NEAR AL GHURAIR CITY,DEIRA***PHONE+97144244444//+9714 3632323

=============================================================================

ANSWER BACK AND ACKNOWLEDGMENT MESSAGE AUTOMATED FILE TRANSFER

(AFT)GATEWAY RESPONSE VALIDATION SERVICE PROVIDER LOG/APPLICATION GENERATED REPORT

FTA/PTI CONFIRMATION STATEMENT PASS/FAIL STATEMENT STATUS

| | |
|---|---|
| 0050 CNT | VALID |
| 0060 -RFF-DTM | VALID |
| 0070- RFF | VALID |
| 0080- NAD- CTA-COM | VALID |
| 0100- NAD | VALID |
| 0110- CTA | VALID |
| 0120 -COM | VALID |
| 0130 ERC-FTX-564 | VALID |
| 0140-ERC | VALID |
| 0150--FTX | VALID |
| 0160 RFF-FTX | VALID |
| 0170 REF | VALID |
| 0180-FTX | VALID |
| 0190-UNT | VALID |

(XMT DELIVERY REPORT)

MESSAGE TYPE: MT-199 PRE-ADVICE

PRIORITY    : URGENT

RECEIVED    : BOMLAEADXXXX

INPUT OUTPUT ACK NAK DUP AUTH

TRN        : 8564799645124523

AMOUNT     : €219.000.000,00

DELIVERY DATE & TIME: 25/09/2023****14:41:10(GTS)

| TRACKING CODE | START TIME | END TIME | DATE | USAGE TIME | MODE | MESSAGE TYPE | PAGES | RESULT |
|---|---|---|---|---|---|---|---|---|
| 5493000SARK24RXWA103 | 09:40:11(GMT+9) | 10:30:20(GMT+9) | 25/09/2023 | 51MIN | SN | MT-199 | 02 | RECEIVED |

{CGN:8569B00JI99180502023}

PKI SIGNATURE: MAC-EQUIVALENT

TRACKING CODE: 5493000SARK24RXWA103

TEXT{F1:1001:BOJPJPJTXXXXI231999122A092/SWHQBEEBXXX}{2}{BOMLAEADXXXXAR25033000001910000954428/19921900000002023}{555:80}{199}

.........................................................................................

=============================================================================
=============================================================================
*********************************************************************************

*RECEIVED*

PRINTER QUEUE A : SN

BY:MT-199 PRE ADVICE

# EXHIBIT B

Court Records    Pg 339 of 438

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
FAT BRANDS INC.,

                  Plaintiff,

      -against-

PPMT CAPITAL ADVISORS, LTD., ROYAL
GULF CAPITAL CORPORATION, KARL
DOUGLAS, WESLEY RAMJEET, SJ GLOBAL
INVESTMENTS WORLDWIDE, LTD., SJ
GLOBAL INVESTMENTS LTD, PETER
SAMUEL, NEIL WALSH, KRISTINA FIELDS
AND MICKEY EDISON.
                  Defendants.
--------------------------------------------------------x

Case No.: 19-CV-10497-JMF

**DEFAULT JUDGMENT**

**JESSE M. FURMAN**, United States District Judge:

      **WHEREAS**, this action was commenced on November 13, 2019 with the filing of a summons and complaint (DE 17). On December 5, 2019, a copy of the summons and complaint was served on Defendant SJ Global Investments Ltd., and proof of service was therefore filed on December 5, 2019 (DE 33).  On January 15, 2020, a copy of the summons and complaint was served on Defendants SJ Global Investments Worldwide Ltd., Neil Walsh, and Kristina Fields and proof of service was therefore filed on January 15, 2020 (DE 63). On January 23, 2020, attorneys from the law firm Nelson Mullins Riley & Scarborough, LLP entered notices of appearance on behalf of Defendants SJ Global Investments Ltd, SJ Global Investments Worldwide Ltd., Neil Walsh, and Kristina Fields (DE 72-74).

      **WHEREAS**, on January 28, 2020, attorneys from the law firm Nelson Mullins Riley & Scarborough, LLP entered notices of appearance on behalf of Defendants Peter Samuel and Mickey Edison (DE 78-80).  On February 12, 2020, a copy of the summons and complaint was

served on Defendants Peter Samuel and Mickey Edison, pursuant to the Court's on February 12, 2020, and proof of service was filed on February 13, 2020 (DE 85, 90, 91).

 **WHEREAS**, on April 3, 2020, a copy of the Amended Complaint was filed and served on Defendants SJ Global Investments Ltd, SJ Global Investments Worldwide Ltd., Neil Walsh, Kristina Fields, Peter Samuel and Mickey Edison (collectively, the "SJ Global Defendants"), via their registered counsel (DE 97). On September 15, 2023, the Court granted Nelson Mullins Riley & Scarborough's motion to withdraw as counsel to the SJ Global Defendants (DE 233). On November 13, 2023, the Court ordered that the SJ Global Defendants appeared to be in default (DE 250).

 **WHEREAS**, on November 29, 2023, the Clerk of the Court of the United States District Court for the Southern District of New York entered a Certificate of Default against the SJ Global Defendants because the "docket entries indicate that the defendants have not filed an answer or otherwise moved with respect to the complaint herein" (DE 255).

 **WHEREAS,** on December 5, 2023, this Court Ordered that the SJ Global Defendants "shall file any opposition to the motion for default judgment by December 20, 2023" (DE 260), and no such opposition has been filed.

 **WHEREAS,** on January 4, 2024, this Court Ordered, Adjudged and Decreed that Plaintiff Fat Brands, Inc. shall have judgment against the SJ Global Defendants with respect to Plaintiff's Fourth Claim for Relief set forth in Plaintiff's Amended Complaint for Fraud and Conspiracy to Commit Fraud Against the SJ Global Defendants.

 **WHEREAS,** this Court directed Plaintiff to file a proposed judgment for the Fourth Claim for Relief against the SJ Global Defendants.

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM          INDEX NO. 158207/2022

NYSCEF DOC. NO. 214                                                        RECEIVED NYSCEF: 03/20/2024

Case 1:22-cv-01349-JPC Document 258 Filed 08/14/24 Page 3 of 4
24-040Patsj1.1Docv1134FiledatJunemexxedti0epth1/2/0924:23gecDouf #4 State
Court Records       Pg 341 of 438

IT IS ORDERED and ADJUDGED that:

1. The Clerk is to enter a FINAL JUDGMENT in this matter on Plaintiff's Fourth Claim For Relief against the SJ Global Defendants directing that Plaintiff Fat Brands, Inc. recover the amount of $4,387,384 in compensatory damages;

2. Plaintiff is entitled to recover prejudgment interest under CPLR 5001(b) at the rate of nine percent per annum, accruing as set forth in the Declaration submitted by Ron Roe, the Vice President of Finance for Plaintiff FAT Brands, Inc. (DE 257, p. 7) for a total amount of prejudgment interest of $1,814,657 as of December 20, 2023, with interest continuing to accrue at the rate of $1,082 per day thereafter over the next sixteen days until January 4, 2024, or for another $17,312;

3. Plaintiff is entitled to Final Judgment on its Fourth Claim For Relief against the SJ Global Defendants in the amount of $6,219,352, together with any post-judgment interest as permitted by law;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court shall retain jurisdiction of this matter for purposes of enforcing the terms of this Judgment.

There being no just reason for delay, pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure the Clerk is ordered to enter this Final Judgment on Plaintiffs' Fourth Claim for Relief Against the SJ Global Defendants forthwith and without further notice.

Dated: January 4, 2024
New York, New York

As this resolves all claims against all Defendants, the Clerk of Court is directed to close the case. All motions are moot; all conferences are cancelled. The Clerk of Court is directed to terminate ECF No. 256.

By: _____
Jesse M. Furman
United States District Judge

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 215
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 342 of 438

# EXHIBIT C



Newsletters Jobs Homes Motoring Local Listings Local Info Book An Ad

Eastern Daily Press Subscribe Digital Edition

News Sport Norwich City FC Things to do Lifestyle Property More

News Crime Court Business Traffic & Travel Politics Weather Health Housing

# Norwich charity shuts down amid £50,000 scam allegation

6th November 2021

NORWICH

By Tom Bristow
Investigations Editor

Share No Comments

Eastern Daily Press

Bridge near Wissington Sugar Beet Factory to close for works

Eastern Daily Press    

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 215    22-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 03/20/2024
Court Records    Pg 344 of 438

The Charity Commission, which regulates the sector, confirmed it was looking into a complaint about the Umbrella Foundation, a charity which was registered at an office on Magdalen Street.

It was set up in 2019, but put into liquidation this summer after the man made an allegation that £50,000 of his money had been scammed through the charity's bank account.

However, the Umbrella Foundation claimed it received the £50,000 as a donation and spent it on marketing.



**The economics of skiing in America**

The Economist | Sponsored

The man, from Glasgow, said he thought he was transferring £50,000 from his bank account to his online account where he traded currency with a company called Genesis 11.

**Eastern Daily Press**



FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 215
24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 345 of 438
RECEIVED NYSCEF: 03/20/2024

He said he thought the charity was acting as an intermediary to pass the money through and he had done this previously with other organisations when paying money into his Genesis 11 account without any problems.

"My wife was ill at the time and I had a lot on," he said. "I had paid money into my online investment account before through a third party and the first few times I did this it was fine.

"But this time it went to the Umbrella Foundation and then never appeared in my account."

The day after the money was paid to the Umbrella Foundation, the charity transferred £25,000 to a company in Hungary, according to an invoice seen by this newspaper. It states the money was for marketing services.

In response, the Umbrella Foundation directed us to a report by its liquidator Begbies Traynor, which said the man's money was used for marketing and volunteering costs. The report said the £50,000 was a donation from an online donor and the charity only found out later the funds had been sent "in error".



**Eastern Daily Press**



22-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 346 of 438

However, with the charity now in liquidation it has no assets to repay any of this money, the report showed.

The Umbrella Foundation was registered as a charity in March 2019. Its sole trustee when it closed was a woman called Kristina Fields.

Prior to that date, Ms Fields was a volunteer for the charity while its Trustees were Neil Walsh and Paul Van der Hulks, according to the liquidator's report.

All three trustees were directors of another company called SJ Global Investments Worldwide Ltd which was also put into liquidation in May this year.

MEET THE TEAM

The S J Global Investments team is comprised of qualified, professional individuals who have extensive experience spanning across finance and professional services which compliments and adds value to the projects and initiatives we invest in.



**NEIL WALSH**
Group Managing Director



**KRISTINA FIELDS**
Chief Financial Officer

Neil Walsh and Kristina Fields were trustees of the Umbrella Foundation *(Image: SJ Global)*

The victim emailed the Umbrella Foundation in May to complain and received a reply from Ms Fields stating the £50,000 was given to the charity by someone in Dubai to fund their work and she had never heard of the investment platform Genesis 11.

She wrote: "We would never jeopardise our charity if we were made aware the funds come from

**Eastern Daily Press**



FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 215

INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 347 of 438

However, despite repeated emails, the money has never been returned, the man said.

The liquidator's report said: "Disaster struck when Ms Fields, who at the time was only working at the charity as a volunteer, was contacted by the donor complaining that the funds were never intended as a donation and had in fact been misapplied.

"These funds had already been utilised and the charity could not support to repay them.

"Despite exhaustive attempts to come to a settlement with the donor and generate funds to return his monies these remain unpaid."

A Police Scotland spokesperson said: "We have received this report and our enquiries are ongoing."

A Charity Commission spokesman added: "We are aware of these concerns and are currently assessing them in line with our regulatory and risk framework to determine our next steps."

The Umbrella Foundation's website, which has been taken down, said it worked to help women in Uganda.

According to the Charity Commission website, it also works with BAME communities in London.

**-Sign up to our newsletter to get a weekly round-up of our investigations unit's work**

NORWICH

Share          **0 Comments**

## More Stories

     

# EXHIBIT D

LAW OFFICES

# DAVID J. BARTONE

1250 CONNECTICUT AVENUE, N.W.
SUITE 700
WASHINGTON, D.C. 20036

DAVID J. BARTONE
(Member DC Bar)

——

OF COUNSEL
BENJAMIN G. USHER
(Member DC, MD, FL Bars)

——

TELEPHONE: (202) 925-4900
FACSIMILE: (202) 318-8840
djbartone@bartonelawoffices.com

DIRECT: (310) 661-1981
FACSIMILE: (202) 318-8840
SKYPE: djbartone

December 11, 2023

## LETTER OF ATTESTATION OF FUNDS

To:    Meydan Free Zone
5842+632 Meydan Hotel
Nad Al Sheba - Nad Al Sheba 1
Dubai - United Arab Emirates

Re:    Mr. Arshad Khan, Chairman of Annuit Coeptis Investments, LLC
Dubai Company Registration

I represent Mr. Arshad Khan, Chairman of Annuit Coeptis Investments, LLC ("ACI") located at 712 Blue Ridge Drive, Streamwood, Illinois 60107, United States of America. Mr. Khan intends to establish and register a new company in Dubai, United Arab Emirates.

This letter is to attest to ACI's financial capability and provide a verification of the funds ACI has on deposit with JD Euroway Bancorp & Trust ("JD Euroway"). Attached hereto is ACI's current Account Statement with JD Euroway for the period commencing on January 1, 2023, through December 11, 2023. As you can see, the total amount ACI has on deposit is $218,500,000 USD (Two Hundred and Eighteen Million and Five Hundred Thousand U.S. Dollars).

Also attached is a Bank Confirmation Letter ("BCL") issued by JD Euroway for ACI. The BCL confirms the funds that are the subject of the aforesaid Account Statement. The BCL further confirms that the funds on deposit in the account bearing Account No. 9082975449 are good, clean, cleared, and of non-criminal origin. The funds are free of any liens or encumbrances, were legally earned, and are fully owned by ACI. Mr. Arshad Khan is the recorded signatory on the account and the ultimate beneficial owner of the funds. Mr. Khan holds the capacity to engage in commercial transactions with the funds.

I certify that I have gained admission to the bar in the United States in Washington, D.C. and my Bar No. is 411044.

If you have any questions, please feel free to contact me at +310-661-1981.

Sincerely yours,

David J. Bartone

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 216
24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 350 of 438
RECEIVED NYSCEF: 03/20/2024



**JD EUROWAY**
**BANCORP & TRUST**

www.jdeuroway-bancorp.com

**Customer Information:**

Annuit Coeptis Investments

712 Blue Ridge Drive
Streamwood
IL - United States
60107

**Specific Account Statement**

**Reporting Period:**

2023-01-01 - 2023-12-11

| Account Number | Account Type | Opening | Total Debits | Total Credits | Period Balance |
|---|---|---|---|---|---|
| 9082975449 | JD Euroway Wealth Management Account | 0.00 | 25,500,000.00 | 244,000,000.00 | 218,500,000.00 |

| Date | ID | Transaction Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 01/01/2023 | | Opening Balance | | | 0.00 |
| 03/04/2023 | 5619 | New Account | | 0.00 | 0.00 |
| 30/06/2023 | 5938 | Transfer from "5193743624"  - "Acquisition Investment Funds" | | 35,000,000.00 | 35,000,000.00 |
| 30/06/2023 | 5940 | Transfer from "5193743624"  - "Acquisition Investment Funds" | | 4,000,000.00 | 39,000,000.00 |
| 05/07/2023 | 5949 | Transfer from "5193743624"  - "ACI Investments" | | 180,000,000.00 | 219,000,000.00 |
| 05/07/2023 | 5951 | Transfer from "1354673762"  - "ACI Investments" | | 15,000,000.00 | 234,000,000.00 |
| 05/07/2023 | 5953 | Transfer from "1354673762"  - "ACI Investments" | | 10,000,000.00 | 244,000,000.00 |
| 24/07/2023 | 6141 | Transfer to "1354673762"  - "Reverse Loan Account Funding" | 25,000,000.00 | | 219,000,000.00 |
| 01/08/2023 | 6164 | Transfer to "6863034283"  - "Account Funding - ACI Holdings WM" | 500,000.00 | | 218,500,000.00 |
| 11/12/2023 | | Closing Balance | | | 218,500,000.00 |



**www.jdeuroway.com**

**JD EUROWAY**
**BANCORP & TRUST**

6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA

**ANNUIT COEPTIS INVESTMENTS LLC**
**712 BLUE RIDGE DR, STREAMWOOD, IL 60107,**
**USA c/o ARSHAD KHAN**
**ILLINOIS COMPANY REGISTRATION NUMBER: 0926730-1**

**December 11, 2023**

**REF: ACI-BCL-75449-1112**

### BANK CONFIRMATION LETTER

We, JD EUROWAY BANCORP & TRUST, located at 6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA hereby confirm with full banking responsibility and with full legal liability, that you have $218,500,000.00 USD (TWO HUNDRED AND EIGHTEEN MILLION AND FIVE HUNDRED THOUSAND UNITED STATES DOLLARS) in cash on deposit in the reference Private Banking Account No. 9082975449.

We confirm that these funds are good, clean, clear of noncriminal origin, free of any liens or encumbrances, was legally earned, and is fully owned by you. We further confirm that ANNUIT COEPTIS INVESTMENTS LLC is the real owner of the funds and that Mr. ARSHAD KHAN has been recorded as signatory / ultimate beneficial owner (UBO) on the account referenced above and holds the capacity to engage in commercial transactions.

This is a certified letter issued with an official banking bar code on our private banking client's request.

For any verifications, our compliance requires all third parties to use e-verification system exclusively for all fund confirmations to be verified through our official secured email envelope system. This system is designed to ensure that our client's information, investments and funds are secure and protected from fraudulent inquiries.

Our bankers do not provide any verifications. The e-verification policy is in place to protect both the bank and our customers. By providing verifications through our Unified Verification Platform, we ensure that UVP protects our customers' data, funds and investments from potential fraud inquiries and other illegal activities. To receive any fund confirmation and or verification, please send all your request to our verification department (UVP): e-verification@jdeurowaybancorp.com. Your funds confirmation will be processed within three business days. We report all illegal financial inquiries and activities to Federal Regulatory Authorities.

| | |
|---|---|
| **BANK NAME:** | **JD EUROWAY BANCORP & TRUST** |
| **BANK ADDRESS:** | **6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA** |
| **BANK CONTACT:** | **Dr. FRITZGERALD ZEPHIR / 1.855.273.9896** |
| **ACCOUNT NO:** | **9082975449** |
| **ACCOUNT NAME:** | **ANNUIT COEPTIS INVESTMENTS LLC** |
| **ACCOUNT SIGNATORY:** | **Mr. ARSHAD KHAN** |
| **BANK OFFICER:** | **Dr. FRITZGERALD ZEPHIR** |

For and on behalf of **JD EUROWAY BANCORP & TRUST:**





**Fritz G. ZEPHIR**
**President**
**19304**

**Serge OUE**
**Vice-President**
**19347**

Document Generated: 011/12/2023 Page 1/1 Account No. 9082975449 USD

# EXHIBIT E

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 217
INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 353 of 438

**JD EUROWAY**
**BANCORP & TRUST**

www.jdeuroway.com

**6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA**

**October 31, 2023**

**TO:**
**ANNUIT COEPTIS INVESTMENTS LLC**
**712 BLUE RIDGE DR, STREAMWOOD, IL 60107,**
**USA c/o ARSHAD KHAN**
**ILLINOIS COMPANY REGISTRATION NUMBER: 0926730-1**

<u>**BANK CONFIRMATION LETTER**</u>

**We, JD EUROWAY BANCORP & TRUST, located at 6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA hereby confirm with full banking responsibility and with full legal liability, that you have TWO HUNDRED AND EIGHTEEN MILLION AND FIVE HUNDRED THOUSAND UNITED STATES DOLLARS (US $218,500,000.00) in cash on deposit in the above referenced account.**

**We further confirm that these funds are good, clean, clear of noncriminal origin, free of any liens or encumbrances, was legally earned, and is fully owned by you.**

**We further confirm that ANNUIT COEPTIS INVESTMENTS LLC is the real owner of the funds and that Mr. ARSHAD KHAN has been recorded as signatory / ultimate beneficial owner (UBO) on the account referenced above and has the capacity to engage in commercial transactions. These funds and the confirmation may only be verified through official secured email with the following coordinates :**

| | |
|---|---|
| **BANK NAME:** | **JD EUROWAY BANCORP & TRUST** |
| **BANK ADDRESS:** | **6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA** |
| **BANK CONTACT / Email:** | **DR FRITZGERALD ZEPHIR / fritz@jdeuroway.com** |
| **BANK PHONE:** | **1.855.273.9896** |
| **ACCOUNT NO:** | **1299069054** |
| **ACCOUNT NAME:** | **ANNUIT COEPTIS INVESTMENTS LLC** |
| **ACCOUNT SIGNATORY:** | **ARSHAD KHAN** |
| **BANK OFFICER:** | **MR FRITZGERALD ZEPHIR** |

For and on behalf of JD EUROWAY BANCORP & TRUST:

**Fritz G. ZEPHIR**
**President**
**19304**

**Serge OUE**
**Vice-President**
**19347**

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 354 of 438



**JD EUROWAY**
**BANCORP & TRUST**

www.jdeuroway.com

**6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA**

**ANNUIT COEPTIS INVESTMENTS LLC**
**712 BLUE RIDGE DR, STREAMWOOD, IL 60107,**
**USA c/o ARSHAD KHAN**
**ILLINOIS COMPANY REGISTRATION NUMBER: 0926730-1**

**December 11, 2023**

**REF: ACI-BCL-75449-1112**

### BANK CONFIRMATION LETTER

We, **JD EUROWAY BANCORP & TRUST**, located at **6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA** hereby confirm with full banking responsibility and with full legal liability, that you have **$218,500,000.00 USD (TWO HUNDRED AND EIGHTEEN MILLION AND FIVE HUNDRED THOUSAND UNITED STATES DOLLARS)** in cash on deposit in the reference Private Banking Account No. 9082975449.

We confirm that these funds are good, clean, clear of noncriminal origin, free of any liens or encumbrances, was legally earned, and is fully owned by you. We further confirm that ANNUIT COEPTIS INVESTMENTS LLC is the real owner of the funds and that Mr. ARSHAD KHAN has been recorded as signatory / ultimate beneficial owner (UBO) on the account referenced above and holds the capacity to engage in commercial transactions.

This is a certified letter issued with an official banking bar code on our private banking client's request.

For any verifications, our compliance requires all third parties to use e-verification system exclusively for all fund confirmations to be verified through our official secured email envelope system. This system is designed to ensure that our client's information, investments and funds are secure and protected from fraudulent inquiries.

Our bankers do not provide any verifications. The e-verification policy is in place to protect both the bank and our customers. By providing verifications through our Unified Verification Platform, we ensure that UVP protects our customers' data, funds and investments from potential fraud inquiries and other illegal activities. To receive any fund confirmation and or verification, please send all your request to our verification department (UVP): e-verification@jdeurowaybancorp.com. Your funds confirmation will be processed within three business days. We report all illegal financial inquiries and activities to Federal Regulatory Authorities.

| | |
|---|---|
| **BANK NAME:** | **JD EUROWAY BANCORP & TRUST** |
| **BANK ADDRESS:** | **6455 Rue Jean-Talon Est #706, Montréal, QC, H1S 3E7, CANADA** |
| **BANK CONTACT:** | **Dr. FRITZGERALD ZEPHIR  / 1.855.273.9896** |
| **ACCOUNT NO:** | **9082975449** |
| **ACCOUNT NAME:** | **ANNUIT COEPTIS INVESTMENTS LLC** |
| **ACCOUNT SIGNATORY:** | **Mr. ARSHAD KHAN** |
| **BANK OFFICER:** | **Dr. FRITZGERALD ZEPHIR** |

For and on behalf of **JD EUROWAY BANCORP & TRUST:**





**Fritz G. ZEPHIR**
**President**
**19304**

**Serge OUE**
**Vice-President**
**19347**

# EXHIBIT F

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 356 of 438

Open in app ↗

 Sign up   Sign in

 Medium    Search     Write 

# The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia

 Arizonally · Follow
4 min read · Jun 9, 2023

                          

Atlanta / June 2023-(Business Wire) — The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia.



(Photo L to R) Dr. James Cooley, Dr. Morris Leonard, IVC CPM HRH Dr. Fritz G. Zephir, Dr. Jacqueline Mohair, Ambassador Dr. Olivia Mirembe Musisi and Dr. Erick Hall Sr. PhD.

The African Linked Foundation and The James "JC Cooley Foundation in conjunction with Trinity International University of Ambassadors presents "Diplomatic of Excellence" at the Highest Level of Business. Individuals who are dedicated to "Bringing The Brain Trust Back to Africa" continually Changing Nations towards growth and sustainability, through its network of International Value Relations, and Public Private Partnerships amongst Heads of States of Many African Countries. These individuals have received Honorary Doctorate Degrees, and President Biden's Lifetime Achievement Awards from TIUA University of Ambassadors, Atlanta, GA.



President Biden 2023 Lifetime Achievement Award Presented to Dr. Erick Hall Sr PhD, Founder/CEO of African Linked Foundation and Appointed Diplomatic Special Envoy to His Royal Highness Crown Prime Minister, Dr. Clement E. Johnson Jr. PhD, Founder of ClemTECH, LLC and Chief Operating Officer of Aequor Biotech, and The Chairman Award was received by Dr. James Cooley MPA, CISSP, Ph.D., CISO, PMP Founder/CEO of The JC Cooley Foundation, It's Your Life Media Television Network and The State of Georgia Honorary Citizen Goodwill Ambassador was awarded to Dr. Olivia Mirembe Musisi PhD. Founder/CEO of JILL Development Consultancy and IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba.



African Linked co-founders: Dr. Charmaine Hall, Dr. Morris Leonard, Bishop Dr. Mike Kingsley, and Mr. Terrence Lee, would like to show their appreciation to its valued relations Associates; ICV CPM Prince Dr. Fritz G. Zephir PhD, Africa Ambassador at Large Dr. Olivia Mirembe Musisi PhD, Dr. Cesar Rodriguez, Dr. James Cooley, Dr. Clement Johnson, and Dr. Jacqueline Mohair, by proxy to consider them as Honorary Advisory Board Members. We believe that together we are set to change the narrative that surrounds the concept of global citizenship by connecting the best minds in science, technology, engineering, medicine, artificial intelligence throughout the global African Diaspora by creating one assembly through innovation and social engineering for the betterment for all of Humanity.



The individuals mentioned above are dedicated to making a positive global impact involved in various projects such as; Agriculture (Hydroponics Innovation), Cybersecurity Technology, State of the Art Smart Medical Cities, Solar Voltaic Technology, Smart Water Solutions, Crypto-Currency Mining Technology and On/Off Grid Alternative Energy Technology Solutions, fostering collaboration, and tackling challenges both in the United States and worldwide.



Through their exemplary leadership, they utilize their expertise, knowledge, experiences, and education to elevate and welcome others to do the same.

For media inquiries and further information, please contact:

It's Your Life Media Television Network:

Dr. James "JC" Cooley PhD.

Director of Media Relations

info@cooleyfoundation.org

www.cooleyfoundation.org

## About The African Linked Foundation (ALF)

The African Linked Foundation (ALF) is a humanitarian organization dedicated to establishing God's Kingdom in all nations through acts of love, compassion, and strategic partnerships. ALF works to change nations by advocating against oppression, racism, and exploitation while promoting economic development and resource sustainability in Africa. Visit www.Africanlinked.com for more information.

## About The JC Cooley Foundation

The JC Cooley Foundation aims to empower young adults by providing life skills and mentorship programs. They create a positive environment where youth can build relationships with professional mentors. The foundation seeks partnerships, sponsorships, fundraisers, donations, grants, and other means to secure the funds necessary to fulfill their mission. Their ultimate goal is to become a global organization that guides and inspires youth worldwide. For more information, visit www.cooleyfoundation.org

## About The Queendom of Sheba

The Queendom of Sheba is an autonomous zone in the Democratic Republic of Congo, established to preserve African heritage. Ruled by Empress Amelia Debrah Kasambu'Ra Shebah III, it aims to build the world's largest university and invest in Africa through Project 7 Phoenix. The Queendom operates with the Lu'Mira currency, backed by gold. Visit www.Queendom-of-sheba.com for more information.

## About TIUA School of Business

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
. Court Records    Pg 363 of 438

TIUA School of Business is an affiliate of Trinity International University of Ambassadors, recognizing entrepreneurial leaders. They offer the Entrepreneur Honor's Program and focus on positive community impact through business and educational development. Visit https://trinitybusiness.org for more information.

## About JD Euroway

JD Euroway is a regulated financial group operating globally and offering services like wealth management, corporate finance, and trade finance. They focus on alternative investment strategies that have a positive social impact in sectors such as mining, agriculture, health, arts, disruptive technologies, and small businesses. For more information, visit www.jdeuroway.com



## Written by Arizonally

2 Followers



FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 219
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 364 of 438

# EXHIBIT G

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 219
INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024

VNN NETWORK

# The United States Presidential 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia.

Posted by  Admin









**United States, 8th Jun 2023, King NewsWire –** The African Linked Foundation and The James "JC Cooley Foundation in conjunction with Trinity International University of Ambassadors presents "Diplomatic of Excellence" at the Highest Level of Business. Individuals who are dedicated to "Bringing The Brain Trust Back to Africa" continually Changing Nations towards growth and sustainability, through its network of International Value Relations, and Public Private Partnerships amongst Heads of States of Many African Countries. These individuals have received Honorary Doctorate Degrees, and/or President Biden's Lifetime Achievement Awards from TIUA University of Ambassadors, Atlanta, GA.

Presidential 2023 Lifetime Achievement Award Presented to Dr Erick Hall Sr PhD,  Founder/CEO of African Linked Foundation and Appointed Diplomatic Special Envoy to the His Royal Highness Crown Prime Minister, and Dr. Clement E. Johnson Jr. PhD, Founder of ClemTECH, LLC and Chief Operating Officer of Aequor Biotech, and The Chairman Award was received by Dr. James Cooley MPA, CISSP, Ph.D., CISO, PMP Founder/CEO of The JC Cooley Foundation, It's Your Life Media Television Network and The State of Georgia Honorary Citizen Goodwill Ambassador was awarded to Dr. Olivia Mirembe Musisi PhD. Founder/CEO of JILL Development Consultancy and the PM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba.

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 219
RECEIVED NYSCEF: 03/20/2024

22-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 367 of 438



King NewsWire

ICV CPM Prince Dr. Fritz G. Zephir PhD, Africa Ambassador at Large Dr. Olivia Mirembe Musisi PhD, Dr. Cesar Rodriguez, Dr. James Cooley, Dr. Clement Johnson, Dr, Michael Mantell, Dr. Angela Seay, and Dr. Jacqueline Mohair, by proxy to consider them as Honorary Advisory Board Members. We believe that together we are set to change the narrative that surrounds the concept of global citizenship by connecting the best minds in science, technology, engineering, medicine, artificial intelligence throughout the global African Diaspora by creating one assembly through innovation and social engineering for the betterment for all of Humanity.



The individuals mentioned above are dedicated to making a positive global impact involved in various projects such as Agriculture (Hydroponics Innovation), Cybersecurity Technology, State of the Art Smart Medical Cities, Solar Voltaic Technology, Smart Water Solutions, Crypto-Currency Mining Technology and On/Off Grid Alternative Energy Technology Solutions, fostering collaboration, and tackling challenges both in the United States and worldwide. Through their exemplary leadership, they utilize their expertise, knowledge, experiences, and education to elevate and welcome others to do the same.

For media inquiries and further information, please contact It's Your Life Media Television Network:

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 368 of 438

| Recognition | > |
| Business Finance | > |
| Finance Management | > |
| Mba Finance | > |
| Business Management | > |

Dr. James "JC" Cooley PhD.Director of Media Relations

info@cooleyfoundation.org www.cooleyfoundation.org

**ABOUT AFRICAN LINKED**

African Linked foundation (ALF) was conceived out of its Admiration, Appreciation, Love of Africa, and All African- Descendants.  After several missions of humanitarian efforts in South Africa, Malawi, and

Uganda, and our continuous commitment to venture into other regions on the Continent, confirmed what ALF life purpose is, to go to all the Nations, and establish Gods Kingdom. through Hope, Acts of Love, Compassion, and Humanitarian efforts. ALF mission is to Change Nations and to be a conduit in many areas, through a coalition of local, State, and International governing bodies, Strategic Partnership, Trade Agreements, Import & Export, Development, Infrastructure, Agriculture, Opportunity, Economic creation etc.  ALF is an advocate against Oppression, Neo-Colonialism, Imperialism, Genocide, Systemic Racism, Human Rights Abuses, Inequality, Pillaging, and Exploitation of the Continent resources, etc. www.Africanlinked.com

**ABOUT THE JC COOLEY FOUNDATION**

The foundation exists to provide youth life skills and mentorship programs to all young adults in need. To accomplish this goal, the youth are placed in an environment designed to promote a positive relationship between the youth and professional mentor. To accomplish this goal, O    pursuing partnerships, sponsorships, fundraisers, donations, grants, and other options to acquire the necessary funds to make OOCP a reality. The ultimate goal is to beco

King NewsWire

## ABOUT QUEENDOM OF SHEBA

The Queendom of Sheba is a Special administrative and autonomous zone in the heart of the Democratic Republic of Congo.  It has been established in 2021 in Mai-Ndombe in order for African Kingdoms and tribe to be able to have a temporal location representative of the traditional heritage of Africa.  Ruled by Her Imperial Majesty Empress Amelia Debrah Kasambu'Ra Shebah III, Queen of Sheba and Queen of the South, Her Imperial Majesty, as UN CULPAC Peace Ambassador and African Union Peace Ambassador has set forth Project 7 Phoenix, which includes building the world's largest university and providing impact investment in key areas throughout Africa. The queendom operates on the Lu'Mira currency, a full reserve currency valued against gold.  www.Queendom-of-sheba.com

## ABOUT TIUA SCHOOL OF BUSINESS

Trinity International university of Ambassadors is located in Pensacola, Florida and

Trinity International chaplaincy institute is located in Atlanta . TIUA School of Business is an affiliate of Trinity International University of Ambassadors located in Pensacola, Florida and Atlanta, Georgia. TIUA School of Business through the affiliation of Trinity International University of Ambassadors recognize successful leaders in entrepreneurship. TIUA School of Business offers the Entrepreneur Honor's Program for entrepreneur's who have shown leadership and integrity in the world of business. TIUA School of Business is a member of the Association to Advance Collegiate Schools of Business. They are impact players who have brought about significant positive changes to their respective communities through business and educational development, human capital development, and relevant policy development. For more information, visit https://trinitybusiness.org/

## ABOUT JD EUROWAY

JD Euroway is a financial group regulated in several jurisdiction with a presence on 4 continents and providing financial services including wealth management, corporate finance, trade finance.  The group

targets alternative investment strategies with high impact on social development in key areas su... ...ining, agriculture, health, arts, disruptive technologies and small businesses

www.jdeuroway.com

# EXHIBIT H

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 220
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 371 of 438

All Posts        Queendom Palace News        Queendom Crown Government News        Queendom AKF News

 The Crown Imperial Office-CIO e-Secretariat 👑    Aug 4, 2023    2 min read

# JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)

Updated: Oct 30, 2023

 No ratings yet

## Press Statement From The Office Of The Queen Of Sheba

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 220

INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 372 of 438



Her Imperial Majesty The Empress Shebah Kasambu'Ra - Queen Shebah 111 , The Queen of Sheba

***JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)***

**Letter of TERMINATION of Office**
**To The Attention of Mr. Fritz Gerald Zephir**                    Date 7/27/2023

I, Empress Shebah Debra Amelia Kasambu'Ra, hereby inform of the termination of your appointment as my Crown Prime Minister, and all post appointed related to that appointment. Which includes of QSIA and as Governor of Governors of CSCB, and of the CROWN QSL and QRC Currencies of the Queendom of Sheba.

Termination ground;

- <u>Breach of Trust, and a total loss of confidence in your performance, your word, ethics and moral compass.</u>

22-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 373 of 438

All matters further in relation to this termination shall be addressed by my legal representatives. *(The Queen Of Sheba Signed and Seal  Date 7/27/2023)*



**JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)**

**Press Statement From The Palace** 7.31.2023

Sir Fritz Gerald Zephir was formally appointed on 11/29/2021 as HIM Executive Crown Minister OF FINANCE & TREASURY.   On 02/02/2022 that post was extended with the portfolio of HIM Crown Prime Minister, with dual responsibilities as Governor of Governors of CSCB Central Bank of the Federation Queendom Crown Government.

With the statement we inform of the TERMINATION on 7/27/2023 by The Crown of  Mr: Fritz Gerald Zephir functions and representation in ALL capacities; all functions of representation or appointments of the Queendom; its concerns; the African Kingdoms Federation, and The Crown as Queendom Crown Prime Minister (CPM),

The CSCB, QSIA, QSL and QRC are of the Queen of Sheba and represented Queendom Crown Government. The Crown Government has taken effectively distance from JD Euroway Bancorp Trust and all of its entities, representation, partnerships and associations.  We do not own JD Euroway, we are not members of the JD Euroway Board; JD Euroway Trustees or Associates and are not its legal representatives or spokesperson.

All matters in relation to the JD Euroway President Fritz Gerald Zephir Function TERMINATED as **Queendom Crown Prime Minister (CPM),** can be addressed to **info@queendom.africa** for the attention of The CPM of Administrations and Messr. Patrick Elongo Tambwe of Legal Affairs.

**(The Palace Secretariat)**

# EXHIBIT I

1:16-24-cv-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 375 of 438

 Government    Gouvernement
of Canada    du Canada



# Office of the Superintendent of Financial Institutions

**Home** > **Search** > Results

## Results

JD Euroway                                    ▼    Search

Nothing here matches your search

Suggestions

- Make sure all words are spelled correctly
- Try different search terms
- Try more general search terms
- Try fewer search terms
- Try these tips for searching

Modified Date: 2019-12-15

# EXHIBIT J

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

**COMMUNICATION SUBJECT TO CPLR 4547**

January 16, 2024

<u>Via E-mail</u>

R. Scott Williams, Esq.
  Rumberger, Kirk & Caldwell, P.A.
    2001 Park Place North,
      Suite 1300
        Birmingham, AL  35203.

Re: *Emigrant Business Credit Corp.* v. *John Hanratty, et al.*, Index
No. 158207/2022, New York Supreme Court, New York County

Dear Mr. Williams:

I write on behalf of Emigrant Business Credit Corporation ("EBCC") and in response to your January 15 email.  As EBCC repeatedly has explained, any potential settlement must be subject to satisfactory proof of funds, which you continually have failed to provide.  On the contrary, you have repeatedly provided documents riddled with inconsistencies and inaccuracies.

*First*, on October 10, 2023, you provided a "SWIFT MT-199" message from the Bank of Japan to Mashreqbank PSC for an entity called SJ Global Investments LLC to purchase "any type of petroleum products from UPI Energy DMCC."  By its own terms, the "SWIFT MT-199" message was not valid proof of funds because it was valid only "for five days (5) international banking days" and had expired by the time you provided it; and because it did not reference EBCC or anything related to Mr. Hanratty or Ebury.

As you undoubtedly are aware, SJ Global Investments has been adjudged responsible for a multi-million-dollar fraud by the U.S. District Court for the Southern District of New York.  *See* Default Judgment, *Fat Brands Inc.* v. *PPMT Capital Advisors, Ltd.*, No. 1:19-cv-10497 (S.D.N.Y., filed Jan. 4, 2024), ECF No. 268.  And its principals also have been accused of perpetrating a $50,000 charity scam.  *See* Tom Bristow, *Norwich charity shuts down amid £50,000 scam allegation*, E. DAILY PRESS (Nov. 6, 2021), attached

24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 378 of 438

R. Scott Williams, Esq.                                                              -2-

as Exhibit A.  It thus is unsurprising that you abandoned any reliance on SJ Global Investments in your subsequent communications.

*Second*, on December 29, 2023, you provided a purported "Corporate Guarantee" from an entity called Annuit Coeptis Investments, LLC ("ACI") and a Letter of Attestation from an attorney, David J. Bartone, Esq., stating that the purpose of the guaranteed funds was "to establish and register a new company in Dubai, United Arab Emirates."  Again, these documents did not reference EBCC or anything related to Mr. Hanratty or Ebury.  Moreover, the documents were invalid on their own terms—the Corporate Guarantee was valid only for "10 (ten) days from the date of issuance."

You also provided two Bank Confirmation Letters ("BCLs") from an entity called JD Euroway Bancorp & Trust, signed by an individual called Fritz G. Zephir.  According to the JD Euroway website, its website and domains have been appropriated "by malicious individuals who may be attempting to scam you."  *See* January 16, 2024 Snapshot of http://jdeuroway.com, attached as Exhibit B.  In addition, the BCLs are inconsistent—each references a different account number.

According to public sources, Mr. Zephir—alternatively styled "IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba"—is the recipient of "The United States President Joseph R. Biden 2023 Lifetime Achievement Award."  *See* Arizonally, *The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia*, Medium (June 9, 2023); *The United States Presidential 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia*, King NewsWire (June 8, 2023), attached as Exhibits C and D.  We could find no official record of Mr. Zephir receiving any award from President Biden.

It further appears that Mr. Zephir was terminated as "Crown Prime Minister" of the "Queendom of Sheba" on July 31, 2023 for "Breach of Trust, and a total loss of confidence in your performance, your word, ethics and moral compass."  *See JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)*, Queendom of Sheba (Oct. 30, 2023), attached as Exhibit E.  Lastly, despite JD Euroway purporting to be a Canadian Bancorp and Trust, the Canadian Office of the Superintendent of Financial Institutions has no record of JD Euroway. *See Search Results*, Office of the Superintendent of Financial Institutions (generated Jan. 16, 2024), attached as Exhibit F.  Given the substantial irregularities we have discovered related to Mr. Zephir and JD Euroway, please explain your basis for submitting these BCLs to us and your basis for believing these documents to be genuine.

In addition, the documentation you submitted on December 29, 2023, conditioned any settlement on the resolution of Mr. Hanratty's criminal case "to the full

R. Scott Williams, Esq.                                                          -3-

and complete satisfaction of Tiger Financial." We called Mr. Bartone on January 2, 2024, to clarify what the condition meant, and also to ask why Mr. Tropp was not able to provide documentation that referenced EBCC or anything related to Mr. Hanratty or Ebury. We never heard back from Mr. Bartone.

*Third*, on Monday, you provided a new purported Corporate Guarantee from ACI, a new letter from Mr. Bartone, dated January 12; and a new BCL from JD Euroway, dated January 12, with an account statement dated January 13. This time, the documentation references EBCC and Mr. Hanratty; but we still have substantial concerns about the many inconsistencies and inaccuracies in the documents. Moreover, despite our concerns with Mr. Zephir and JD Euroway, we have made a verification request to JD Euroway as provided for by the BCL. According to the BCL, these requests take up to three business days; as such, we cannot agree to settlement terms with you by 5:00 pm on January 17, as you have demanded, because that is insufficient time to receive verification of the BCLs.

Further, the new documentation you provided on Monday is similarly conditioned "upon satisfaction of the terms and conditions required by ACI and Tiger Financial, in their sole discretion," without any explanation of what those terms and conditions entail. Neither you nor Mr. Bartone has explained those conditions, which we must discuss as part of our settlement negotiations.

EBCC remains willing to negotiate a settlement in good faith, but Mr. Hanratty must provide satisfactory proof of funds. Documents related to other companies and other transactions, with apparent inconsistencies and inaccuracies, are not enough. To the extent you still represent these documents to be genuine, we are open to scheduling time with you, Mr. Bartone, Mr. Tropp, Mr. Khan, and/or Mr. Zephir, to work through our issues with these documents.

Sincerely,

*/s/ Alexander J. Willscher*

Alexander J. Willscher

cc: Kari Parks, Esq.

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 222

INDEX NO. 158207/2022

RECEIVED NYSCEF: 03/20/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records     Pg 380 of 438

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 222    RECEIVED NYSCEF: 03/20/2024

1/18/24, 7:30 PM    Case 1:24-cv-04020-dsj    Doc 1-3    Norwich charity shuts down amid £50,000 scam allegation | Eastern Daily Press    Filed: 04/09/2024    Pg 381 of 438    Document #4    State
Court Records.



Newsletters    Jobs    Homes    Motoring    Local Listings    Local Info    Book An

# Eastern Daily Press

Subscribe        Digital Edition        👤

**News**    **Sport**    **Norwich City FC**    **Things to do**    **Lifestyle**    **Property**    **More**    🔍

News    Crime    Court    Business    Traffic & Travel    Politics    Weather    Health    Housing

# Norwich charity shuts down amid £50,000 scam allegation

6th November 2021

`NORWICH`





**The website of the Umbrella Foundation has now been taken down. The charity said it helped people in**
**Uganda and had a charity offices***Uganda. Umbrella Foundation***

# Eastern Daily Press



    Investigations Editor

1/18/24, 7:30 PM    24-04020-dsj    Doc 1-3    Norwich charity shuts amid £50,000 scam allegation | Eastern Daily Press
Filed 08/14/24    Entered 08/14/24 09:45:33    Doc #4 State
Court Records    Pg 382 of 438

**A charity has been reported to authorities after a businessman alleged he lost £50,000 in a scam.**

The Charity Commission, which regulates the sector, confirmed it was looking into a complaint about the Umbrella Foundation, a charity which was registered at an office on Magdalen Street.

It was set up in 2019, but put into liquidation this summer after the man made an allegation that £50,000 of his money had been scammed through the charity's bank account.

However, the Umbrella Foundation claimed it received the £50,000 as a donation and spent it on marketing.



**Eastern Daily Press**



Forge of Empires | Sponsored

1/16/24, 7:30 PM  24-04020-dsj   Doc 1-3   Norwich charity shuts amid £50,000 scam allegation | Diss Mercury  Doc #4 State
Court Records   Pg 383 of 438

The man, from Glasgow, said he thought he was transferring £50,000 from his bank account to his online account where he traded currency with a company called Genesis 11.

In April he said he was asked by Genesis 11 to send the money through the Umbrella Foundation's bank account. He said it was then meant to be converted into an online currency and moved into his account, but it never was.

He said he thought the charity was acting as an intermediary to pass the money through and he had done this previously with other organisations when paying money into his Genesis 11 account without any problems.

"My wife was ill at the time and I had a lot on," he said. "I had paid money into my online investment account before through a third party and the first few times I did this it was fine.

"But this time it went to the Umbrella Foundation and then never appeared in my account."

The day after the money was paid to the Umbrella Foundation, the charity transferred £25,000 to a company in Hungary, according to an invoice seen by this newspaper. It states the money was for marketing services.

In response, the Umbrella Foundation directed us to a report by its liquidator Begbies Traynor, which said the man's money was used for marketing and volunteering costs. The report said the £50,000 was a donation from an online donor and the charity only found out later the funds had been sent "in error".

# Eastern Daily Press



1/24-7307-dsj    Doc 1-3    Filed 05/14/24    Entered 08/14/24 09:45:33    Doc #4 State
Court Records    Pg 384 of 438



Sackville Place on Magdalen Street, Norwich, where the Umbrella Foundation was based. *(Image: Archant)*

The liquidator's report also said the charity received a £50,000 Government-backed "bounce back" loan which it said was also spent on further marketing and "external costs".

However, with the charity now in liquidation it has no assets to repay any of this money, the report showed.

The Umbrella Foundation was registered as a charity in March 2019. Its sole trustee when it closed was a woman called Kristina Fields.

Prior to that date, Ms Fields was a volunteer for the charity while its Trustees were Neil Walsh and Paul Van der Hulks, according to the liquidator's report.

All three trustees were directors of another company called SJ Global Investments Worldwide Ltd which was also put into liquidation in May this year.

# Eastern Daily Press



The S J Global Investments team is comprised of qualified, professional individuals who have extensive experience spanning across finance and professional services which compliments and adds value to the projects and initiatives we invest in.



**NEIL WALSH**
Group Managing Director



**KRISTINA FIELDS**
Chief Financial Officer

Neil Walsh and Kristina Fields were trustees of the Umbrella Foundation *(Image: SJ Global)*

The victim emailed the Umbrella Foundation in May to complain and received a reply from Ms Fields stating the £50,000 was given to the charity by someone in Dubai to fund their work and she had never heard of the investment platform Genesis 11.

She wrote: "We would never jeopardise our charity if we were made aware the funds come from participation in fraud, but clearly, we were not aware.

"We are happy to refund your money back to you as we don't want to have anything to do with fraudulently gained funds.

"Unfortunately our charity account is still blocked so we cannot refund from that."

However, despite repeated emails, the money has never been returned, the man said.

The liquidator's report said: "Disaster struck when Ms Fields, who at the time was only working

# Eastern Daily Press



"These funds had already been utilised and the charity could not support to repay them.

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 222    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:33    Does #4 State
Court Records    Pg 386 of 438    RECEIVED NYSCEF: 03/20/2024

A Police Scotland spokesperson said: "We have received this report and our enquiries are ongoing."

A Charity Commission spokesman added: "We are aware of these concerns and are currently assessing them in line with our regulatory and risk framework to determine our next steps."

The Umbrella Foundation's website, which has been taken down, said it worked to help women in Uganda.

According to the Charity Commission website, it also works with BAME communities in London.

**-Sign up to our newsletter to get a weekly round-up of our investigations unit's work**

NORWICH

Share 

## No Comments

## More Stories

|

### Forget The Blue Pill, Use This Household Food To Fight ED

urologytip.pro | Sponsored

### Banned For 84 Years; Powerful Pain Reliever Finally Legal

BioBlend | Sponsored

**Eastern Daily Press** 

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 222

INDEX NO. 158207/2022

RECEIVED NYSCEF: 03/20/2024

1/16/24 7:30 PM 24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:33    Does #4 State
Court Records    Pg 387 of 438

### After 80 Years Ban, Finally Legal in New York

BioBlend | Sponsored

### If You Need To Kill Time On Your Computer, This Vintage Game Is A Must-Have.

Play the top-rated strategy game now. No install needed!

Forge of Empires | Sponsored

### Join today and get 7,777 FREE Gold Coins & 10 FREE Sweeps Coins when you sign up!

Luckyland Slots | Sponsored

### Your Luck Starts Here🎰

Join today and get 7,777 FREE Gold Coins & 10 FREE Sweeps Coins when you sign up!

Luckyland Slots | Sponsored

**Eastern Daily Press**



FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022

NYSCEF DOC. NO. 222
RECEIVED NYSCEF: 03/20/2024

1:16/24, 7:30 PM 24-04020-dsj    Doc 1-3  Norwich charity shuts amid £50,000 scam allegation | Eastern Daily Press
Court Records    Pg 388 of 438

## Mail Order Weed Is a Real Thing, and It's Amazing

HelloMood | Sponsored

## Diabetes Is Not From Sweets! Meet The Main Enemy Of Diabetes

Diabetes Can Disappear In A Few Days, Sugar Can Drop To 3.9

bloodysugar.online | Sponsored

## End of the line for model railways?

edp24.co.uk

## Man dies after medical emergency at Tesco store

edp24.co.uk

Get *involved*

with **the news**

**Eastern Daily Press**



**Most read**    Commented

**1**  Light aircraft crash in north Norfolk leaves two people injured

**2**  New dental practice to open in Norfolk town this month and will offer NHS places

**3**  Plans lodged for new £84m Norfolk village bypass

**4**  Couple's new lease of life after shedding NINE stone

**Eastern Daily Press**



have her baby

**9**  Country pub slashes pint prices after announcing imminent closure

**10**  Man denies break-in at Norfolk business park

**Show more articles**

| | | |
|---|---|---|
| Contact us | Manage Consent | Announcements |
| Cookie Policy | Terms & Conditions | Contributor Terms |
| Newsquest printing | Advertise | Newsletters |
| Reader Rewards | Site Map | Exchange and Mart |
| Terms of Advertising | Privacy Policy | Diversity Statement |
| Photo Sales | Our Publications | Archive |
| Add Your Event For Free | | |

**FOLLOW US**

Eastern Daily Press

Eastern Daily Press

Eastern Daily Press

This website and associated newspapers adhere to the Independent Press Standards Organisation's Editors' Code of Practice. If you have a complaint about the editorial content which relates to inaccuracy or intrusion, then please **contact the editor here**. If you are dissatisfied with the response provided you can **contact IPSO here**

© **2001-2024**. This site is part of Newsquest's audited local newspaper network. A Gannett Company. **Newsquest Media Group Ltd**, 1st Floor, Chartist Tower, Upper Dock Street, Newport, Wales, NP20 1DW Registered in England & Wales | 01676637 |

# EXHIBIT B

JD Euroway

**WARNING**

*** YOU ARE ABOUT TO BE REDIRECTED TO OUR NEW SITE ***

*** *************************************************************

Please be aware that there is a fraudulent website claiming to be part of our company called jd-euroway.com and a fraudulent email and domain at corporate@jdeuroway-bancorp-mea.com. This website and domains are not affiliated with our company and is operated by malicious individuals who may be attempting to scam you.

Please note the following:

- Our official websites are:
  - https://jdeuroway.com/
  - https://jdeuroway.com/
  - https://www.jdeuroway-bancorp.com/
  - https://www.landesfinance.com/
- Our official email is: corporate@jdeuroway-bancorp.com
- Our official telephone number is: 1-855-273-9896

Please do not provide any personal or financial information to this website or any associated parties. We cannot be held responsible for any damages that may result from interacting with this website. To ensure the safety and security of your personal information, please only use the official websites of our company jdeuroway.com, jdeuroway-bancorp.com and https://www.landesfinance.com also please be aware that the official number is 1-855-273-9896 and the official email is corporate@jdeuroway-bancorp.com. Thank you for your attention and stay safe online.

**CORPORATE & TRADE FINANCE SERVICES**

The Capital you need to expand your ideas into more and bigger business

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 222
INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024

Open in app ↗

Sign up    Sign in

 Medium      Search      ✎ Write

# The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia

 Arizonally · Follow

4 min read · Jun 9, 2023

Atlanta / June 2023-(Business Wire) — The United States President Joseph R. Biden 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia.



(Photo L to R) Dr. James Cooley, Dr. Morris Leonard, IVC CPM HRH Dr. Fritz G. Zephir, Dr. Jacqueline Mohair, Ambassador Dr. Olivia Mirembe Musisi and Dr. Erick Hall Sr. PhD.

The African Linked Foundation and The James "JC Cooley Foundation in conjunction with Trinity International University of Ambassadors presents "Diplomatic of Excellence" at the Highest Level of Business. Individuals who are dedicated to "Bringing The Brain Trust Back to Africa" continually Changing Nations towards growth and sustainability, through its network of International Value Relations, and Public Private Partnerships amongst Heads of States of Many African Countries. These individuals have received Honorary Doctorate Degrees, and President Biden's Lifetime Achievement Awards from TIUA University of Ambassadors, Atlanta, GA.

President **Biden** 2023 Lifetime Achievement Award Presented to Dr. Erick Hall Sr PhD, Founder/CEO of African Linked Foundation and Appointed Diplomatic Special Envoy to His Royal Highness Crown Prime Minister, Dr. Clement E. Johnson Jr. PhD, Founder of ClemTECH, LLC and Chief Operating Officer of Aequor Biotech, and The Chairman Award was received by Dr. James Cooley MPA, CISSP, Ph.D., CISO, PMP Founder/CEO of The JC Cooley Foundation, It's Your Life Media Television Network and The State of Georgia Honorary Citizen Goodwill Ambassador was awarded to Dr. Olivia Mirembe Musisi PhD. Founder/CEO of JILL Development Consultancy and IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba.



African Linked co-founders: Dr. Charmaine Hall, Dr. Morris Leonard, Bishop Dr. Mike Kingsley, and Mr. Terrence Lee, would like to show their appreciation to its valued relations Associates; ICV CPM Prince Dr. Fritz G. Zephir PhD, Africa Ambassador at Large Dr. Olivia Mirembe Musisi PhD, Dr. Cesar Rodriguez, Dr. James Cooley, Dr. Clement Johnson, and Dr. Jacqueline Mohair, by proxy to consider them as Honorary Advisory Board Members. We believe that together we are set to change the narrative that surrounds the concept of global citizenship by connecting the best minds in science, technology, engineering, medicine, artificial intelligence throughout the global African Diaspora by creating one assembly through innovation and social engineering for the betterment for all of Humanity.



The individuals mentioned above are dedicated to making a positive global impact involved in various projects such as; Agriculture (Hydroponics Innovation), Cybersecurity Technology, State of the Art Smart Medical Cities, Solar Voltaic Technology, Smart Water Solutions, Crypto-Currency Mining Technology and On/Off Grid Alternative Energy Technology Solutions, fostering collaboration, and tackling challenges both in the United States and worldwide.

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022
NYSCEF DOC. NO. 222 RECEIVED NYSCEF: 03/20/2024



Through their exemplary leadership, they utilize their expertise, knowledge, experiences, and education to elevate and welcome others to do the same.

For media inquiries and further information, please contact:

It's Your Life Media Television Network:

Dr. James "JC" Cooley PhD.

Director of Media Relations

info@cooleyfoundation.org

www.cooleyfoundation.org

Court Records   Pg 400 of 438

## About The African Linked Foundation (ALF)

The African Linked Foundation (ALF) is a humanitarian organization dedicated to establishing God's Kingdom in all nations through acts of love, compassion, and strategic partnerships. ALF works to change nations by advocating against oppression, racism, and exploitation while promoting economic development and resource sustainability in Africa. Visit www.Africanlinked.com for more information.

## About The JC Cooley Foundation

The JC Cooley Foundation aims to empower young adults by providing life skills and mentorship programs. They create a positive environment where youth can build relationships with professional mentors. The foundation seeks partnerships, sponsorships, fundraisers, donations, grants, and other means to secure the funds necessary to fulfill their mission. Their ultimate goal is to become a global organization that guides and inspires youth worldwide. For more information, visit www.cooleyfoundation.org

## About The Queendom of Sheba

The Queendom of Sheba is an autonomous zone in the Democratic Republic of Congo, established to preserve African heritage. Ruled by Empress Amelia Debrah Kasambu'Ra Shebah III, it aims to build the world's largest university and invest in Africa through Project 7 Phoenix. The Queendom operates with the Lu'Mira currency, backed by gold. Visit www.Queendom-of-sheba.com for more information.

## About TIUA School of Business

Court Records    Pg 401 of 438

TIUA School of Business is an affiliate of Trinity International University of Ambassadors, recognizing entrepreneurial leaders. They offer the Entrepreneur Honor's Program and focus on positive community impact through business and educational development. Visit https://trinitybusiness.org for more information.

## About JD Euroway

JD Euroway is a regulated financial group operating globally and offering services like wealth management, corporate finance, and trade finance. They focus on alternative investment strategies that have a positive social impact in sectors such as mining, agriculture, health, arts, disruptive technologies, and small businesses. For more information, visit www.jdeuroway.com



# Written by Arizonally

2 Followers



Court Records        Pg 402 of 438

## More from Arizonally



 Arizonally

### Introducing Leaders Esteem Christian Bible University (LECBU...

The Woodlands, Texas — Leaders Esteem Christian Bible University (LECBU) is proud t...

2 min read  ·  May 15, 2023

 



 Arizonally

### U.S. National Higher Education Day Recognizes Dr.

San Francisco — On June 6, the United States celebrated National Higher Education Day, a...

3 min read  ·  Jun 17, 2023

 




 Arizonally

 Arizonally

## Rapper SKG Shares Behind-the-Scenes Footage of Music Video...

In a thrilling glimpse into the world of music collaboration, rapper SKG (Helecia Choyce)...

2 min read · Sep 28, 2023

## Press release about Patricia Akello

Patricia Akello, also known as Tricia Akello, is a professional model from Uganda presently...

3 min read · Jul 11, 2022

                          

See all from Arizonally

# Recommended from Medium




1/18/24, 2:31 PM    4-04016 - United States President Joseph R... Filed 03/14/24 - 45:23 Scott Galloway - many was
Court Records        Pg 404 of 438


Unbecoming

**10 Seconds That Ended My 20 Year Marriage**

It's August in Northern Virginia, hot and humid. I still haven't showered from my…

✦ · 4 min read · Feb 16, 2022

👏 73K          💬 1045                        🔖+

Scott Galloway ✦

**2024 Predictions**

Each year, we review/make predictions re the past/coming year. Most years, we hit more…

11 min read · Jan 5

👏 8.3K          💬 115                        🔖+

---

## Lists


**Staff Picks**
558 stories · 641 saves


**Stories to Help You Level-Up at Work**
19 stories · 419 saves


**Self-Improvement 101**
20 stories · 1215 saves


**Productivity 101**
20 stories · 1111 saves

---



Scott-Ryan Abt in Pitfall

**Bye Bye, Spotify**

And see ya later, all you subscription services in my little empire

✦ · 4 min read · Aug 19, 2023

James Presbitero Jr. in Practice in Public

**These Words Make it Obvious That Your Text is Written By AI**

These 7 words are painfully obvious. They make me cringe. They will make your reader…

4 min read · Dec 31, 2023

18.7K   437                                    11.9K   357



 AL Anany                           Hissa Al Thani

## The ChatGPT Hype Is Over — Now Watch How Google Will Kill...

It never happens instantly. The business game is longer than you know.

 · 6 min read · Sep 1, 2023

## Why Does News Credibility Rely on Western Media Confirmation?

In the unrelenting pursuit of unmasking the truth, Palestinian journalists courageously la...

4 min read · Dec 25, 2023

20K   636                                       598   10

See more recommendations

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 222
RECEIVED NYSCEF: 03/20/2024

24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 406 of 438

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 222
RECEIVED NYSCEF: 03/20/2024



King NewsWire

VNN NETWORK

# The United States Presidential 2023 Lifetime Achievement Award, from T.I.U.A School of Business Ceremony was held at Chateau Elan in Braselton, Georgia.

Posted by  Admin





**United States, 8th Jun 2023, King NewsWire –** The African Linked Foundation and The James "Jo___y" Foundation in conjunction with Trinity International University of Ambassadors presents "Diplomatic of Excellence" at the Highest Level of Business. Individuals who are

King NewsWire

Private Partnerships amongst Heads of States of Many African Countries. These individuals have received Honorary Doctorate Degrees, and/or President Biden's Lifetime Achievement Awards from TIUA University of Ambassadors, Atlanta, GA.

Presidential 2023 Lifetime Achievement Award Presented to Dr Erick Hall Sr PhD, Founder/CEO of African Linked Foundation and Appointed Diplomatic Special Envoy to the His Royal Highness Crown Prime Minister, and Dr. Clement E. Johnson Jr. PhD, Founder of ClemTECH, LLC and Chief Operating Officer of Aequor Biotech, and The Chairman Award was received by Dr. James Cooley MPA, CISSP, Ph.D., CISO, PMP Founder/CEO of The JC Cooley Foundation, It's Your Life Media Television Network and The State of Georgia Honorary Citizen Goodwill Ambassador was awarded to Dr. Olivia Mirembe Musisi PhD. Founder/CEO of JILL Development Consultancy and IVC CPM HRH Prince Dr. Fritzgerald Zephir PhD, President of financial group JD Euroway and Crown Prime Minister of the Queendom of Sheba.

African Linked co-founders: Dr. Charmaine Hall, Dr. Morris Leonard, Bishop Dr. Mike Kingsley, and Mr. Terrence Lee, would like to show their appreciation to its valued relations Associates; ICV CPM Prince Dr. Fritz G. Zephir PhD, Africa Ambassador at Large Dr. Olivia Mirembe Musisi PhD, Dr. Cesar Rodriguez, Dr. James Cooley, Dr. Clement Johnson, Dr, Michael Mantell, Dr. Angela Seay, and Dr. Jacqueline Mohair, by proxy to consider them as Honorary Advisory Board Members. We believe that together we are set to change the narrative that surrounds the concept of global citizenship by connecting the best minds in science, technology, engineering, medicine, artificial intelligence throughout the global African Diaspora by creating one assembly through innovation and social engineering for the betterment for all of Humanity.



FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
NYSCEF DOC. NO. 222
INDEX NO. 158207/2022
RECEIVED NYSCEF: 03/20/2024







The individuals mentioned above are dedicated to making a positive global impact involved in various projects such as Agriculture (Hydroponics Innovation), Cybersecurity Technology, State of the Art Smart Medical Cities, Solar Voltaic Technology, Smart Water Solutions, Crypto-Currency Mining Technology and On/Off Grid Alternative Energy Technology Solutions, fostering collaboration, and tackling challenges both in the United States and worldwide. Through their exemplary leadership, they utilize their expertise, knowledge, experiences, and education to elevate and welcome others to do the same.

For media inquiries and further information, please contact It's Your Life Media Television Network:

Dr. James "JC" Cooley PhD.Director of Media Relations
info@cooleyfoundation.org www.cooleyfoundation.org

**ABOUT AFRICAN LINKED**

African Linked foundation (ALF) was conceived out of its Admiration, Appreciation, Love of Africa, and All African- Descendants.  After several missions of humanitarian efforts in South Africa, Malawi, and

Uganda, and our continuous commitment to venture into other regions on the Continent, continued what ALF life purpose is, to go to all the Nations, and establish Gods Kingdom. through, Hope, Acts of Love, Compassion, and Humanitarian efforts. ALF mission is to Chan

King NewsWire

Infrastructure, Agriculture, Opportunity, Economic creation etc.  ALF is an advocate against Oppression, Neo-Colonialism, Imperialism, Genocide, Systemic Racism, Human Rights Abuses, Inequality, Pillaging, and Exploitation of the Continent resources, etc. www.Africanlinked.com

## ABOUT THE JC COOLEY FOUNDATION

The foundation exists to provide youth life skills and mentorship programs to all young adults in need. To accomplish this goal, the youth are placed in an environment designed to promote a positive relationship between the youth and professional mentor. To accomplish this goal, OOCP is pursuing partnerships, sponsorships, fundraisers, donations, grants, and other options to acquire the necessary funds to make OOCP a reality. The ultimate goal is to become a global force, expanding our vision and leadership by ensuring our organization is a guiding force for excellence as it relates to the world's youth.

## ABOUT QUEENDOM OF SHEBA

The Queendom of Sheba is a Special administrative and autonomous zone in the heart of the Democratic Republic of Congo.  It has been established in 2021 in Mai-Ndombe in order for African Kingdoms and tribe to be able to have a temporal location representative of the traditional heritage of Africa.  Ruled by Her Imperial Majesty Empress Amelia Debrah Kasambu'Ra Shebah III, Queen of Sheba and Queen of the South, Her Imperial Majesty, as UN CULPAC Peace Ambassador and African Union Peace Ambassador has set forth Project 7 Phoenix, which includes building the world's largest university and providing impact investment in key areas throughout Africa. The queendom operates on the Lu'Mira currency, a full reserve currency valued against gold.  www.Queendom-of-sheba.com

## ABOUT TIUA SCHOOL OF BUSINESS

Trinity International university of Ambassadors is located in Pensacola, Florida and

Trinity International chaplaincy institute is located in Atlanta . TIUA School of Business is an affiliate of Trinity International University of Ambassadors located in Pensacola, Florida and Atlanta, Georgia. TIUA School of Business through the affiliation of Trinity International University of Ambassadors recognize successful leaders in entrepreneurship. TIUA School of Business offers the Entrepreneur Honor's Program for entrepreneur's who have shown leadership and integrity in the world of business. TIUA School of Business is a member of the Association to Advance Collegiate Schools of Business. They are impact players who have

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM INDEX NO. 158207/2022
NYSCEF DOC. NO. 222 RECEIVED NYSCEF: 03/20/2024



**King NewsWire**

For more information, visit https://trinitybusiness.org/

**ABOUT JD EUROWAY**

JD Euroway is a financial group regulated in several jurisdiction with a presence on 4 continents and providing financial services including wealth management, corporate finance, trade finance.  The group

targets alternative investment strategies with high impact on social development in key areas such as mining, agriculture, health, arts, disruptive technologies and small businesses

www.jdeuroway.com

For media inquiries and further information, please contact It's Your Life Media Television Network.

## Media Contact

**Organization**: African Linked Foundation and JC Cooley Foundation

**Contact Person**: Dr. James "JC" Cooley PhD.

**Website**: http://www.cooleyfoundation.org

**Email**: info@cooleyfoundation.org

**Country**: United States

**Release Id**: 0806234011

 Newer  Older 

## LEAVE A REPLY

Your email address will not be published. Required fields are marked *

 Co... *



Name *

Email *

Website

☐ Save my name, email, and website in this browser for the next time I comment.

POST COMMENT

## Services

- ❯ Nft press release
- ❯ Blockchain press release
- ❯ Business expansion press release
- ❯ Partnership announcement press release
- ❯ Product launches press release
- ❯ New service launches press release
- ❯ Brand identity press release

- ❯ Events press release
- ❯ New executive leadership press release

- Marketing strategy
- Personal branding press release
- App launches press release

- New business press release
- Business press release for a new product
- Product update or enhancement press release
- New manufacturing facility press release
- Company anniversary press release
- New research & development initiatives press release

King newswire is here to get you High-Quality press release distr
brand by Immediate submission to Major News Sites.

## Useful links

- Home





## King NewsWire

- Guidelines
- Privacy policy
- Contact us

## Contact Us

- +971 505385373
- support@kingnewswire.com
- Dubai - United Arab Emirates
- Weekdays: 09:00 AM - 7:00 PM

©2023 | King News Wire. All Rights Reserved





# EXHIBIT E

1/16/24, 7:35 PM 24-04020-dsj JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)
Doc 143 Filed 03/24/24 Entered 03/14/24 08:45:23 Drone 4 State
Court Records    Pg 416 of 438

The Crown Imperial Office-CIO e-Secretariat     Aug 4, 2023    2 min read

# JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)

Updated: Oct 30, 2023

★ ★ ★ ★ ★    No ratings yet

## Press Statement From The Office Of The Queen Of Sheba



Her Imperial Majesty The Empress Shebah Kasambu'Ra - Queen Shebah 111 , The Queen of Sheba

1/16/24 7:35 PM 24-04020-dsj JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)
Court Records    Pg 418 of 438
Filed 03/24/24 Entered 03/24/24 08:45:23 Doc 4 State

### JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)

**Letter of TERMINATION of Office**

**To The Attention of Mr. Fritz Gerald Zephir**                          Date 7/27/2023

I, Empress Shebah Debra Amelia Kasambu'Ra, hereby inform of the termination of your appointment as my Crown Prime Minister, and all post appointed related to that appointment. Which includes of QSIA and as Governor of Governors of CSCB, and of the CROWN QSL and QRC Currencies of the Queendom of Sheba.

Termination ground;

- Breach of Trust, and a total loss of confidence in your performance, your word, ethics and moral compass.

All matters further in relation to this termination shall be addressed by my legal representatives. *(The Queen Of Sheba Signed and Seal  Date 7/27/2023)*

---



**JD Euroway President Fritz Gerald Zephir Function TERMINATED as Queendom Crown Prime Minister (CPM)**

**Press Statement From The Palace 7.31.2023**

Sir Fritz Gerald Zephir was formally appointed on 11/29/2021 as HIM Executive Crown Minister of FINANCE & TREASURY. On 02/02/2022 that post was extended with the portfolio of HIM Crown Prime Minister, with dual responsibilities as Governor of Governors of CSCB Central Bank of the Federation Queendom Crown Government.

With the statement we inform of the TERMINATION on 7/27/2023 by The Crown of  Mr: Fritz Gerald Zephir functions and representation in ALL capacities; all functions of representation or appointments of the Queendom; its concerns; the African Kingdoms Federation, and The Crown as Queendom Crown Prime Minister (CPM),

The CSCB, QSIA, QSL and QRC are of the Queen of Sheba and represented Queendom Crown Government. The Crown Government has taken effectively distance from JD Euroway Bancorp Trust and all of its entities, representation, partnerships and associations.  We do not own JD Euroway, we are not members of the JD Euroway Board; JD Euroway Trustees or Associates and are not its legal representatives or spokesperson.

1/16/24 7:35 PM 24-04020-dsj Doc 13 Filed 03/14/24 Entered 03/14/24 08:45:23 Drone (4 State
Court Records   Pg 419 of 438

All matters in relation to the JD Euroway President Fritz Gerald Zephir Function TERMINATED as **Queendom Crown Prime Minister (CPM),** can be addressed to **info@queendom.africa** for the attention of The CPM of Administrations and Messr. Patrick Elongo Tambwe of Legal Affairs.

**(The Palace Secretariat)**

FILED: NEW YORK COUNTY CLERK 03/20/2024 06:45 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 222
RECEIVED NYSCEF: 03/20/2024

22-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 420 of 438

# EXHIBIT F

1/16/24, 7:35 PM    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State
Court Records    Pg 421 of 438

 Government
of Canada    Gouvernement
du Canada



# Office of the Superintendent of Financial Institutions

**Home** > **Search** > Results

## Results

JD Euroway                                    ▼    Search

Nothing here matches your search

Suggestions

- Make sure all words are spelled correctly
- Try different search terms
- Try more general search terms
- Try fewer search terms
- Try these [tips for searching](#)

Modified Date: 2019-12-15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

---

EMIGRANT BUSINESS CREDIT
CORPORATION,

      Plaintiff,

        v.

JOHN ARTHUR HANRATTY, EBURY
STREET CAPITAL, LLC, EBURY FUND
1, LP, EBURY FUND 2, LP, EBURY
1EMI LLC, EBURY 2EMI LLC, EB
1EMIALA LLC, EB 2EMIALA LLC, EB
1EMIFL, LLC, EB 2EMIFL, LLC, EB
1EMIIN, LLC, EB 2EMIIN, LLC, EB
1EMIMD, LLC, EB 2EMIMD, LLC, EB
1EMINJ, LLC, EB 2EMINJ, LLC, EB
1EMINY, LLC, EB 2EMINY, LLC, EB
1EMISC, LLC, EB 2EMISC, LLC, RE
1EMI LLC,
RE 2EMI LLC, EB 1EMIDC, LLC,
ARQUE TAX RECEIVABLE FUND
(MARYLAND), LLC, EBURY FUND 1FL,
LLC, EBURY FUND 2FL, LLC, EBURY
FUND 1NJ, LLC, EBURY FUND 2NJ,
LLC, RED CLOVER 1, LLC, EBURY RE
LLC, and XYZ CORPS. 1–10,

      Defendants.

---

Index No. 158207/2022

The Honorable Margaret A. Chan

Mot. Seq. No. 12

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF CROSS-MOTION TO MODIFY <u>PRELIMINARY INJUNCTION</u>**

Kari Parks
Victor Wang
GUSRAE KAPLAN NUSBAUM PLLC
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
kparks@gusraekaplan.com
vwang@gusraekaplan.com

*Counsel for Defendants*

FILED: NEW YORK COUNTY CLERK 03/26/2024 09:07 PM
INDEX NO. 158207/2022
NYSCEF DOC. NO. 223
RECEIVED NYSCEF: 03/26/2024
24-04020-dsj   Doc 1-3   Filed 08/14/24   Entered 08/14/24 09:45:23   Doc #4 State
Court Records   Pg 423 of 438

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... i

I.   18 Months In, It has Become Undeniable that EBCC has Abused Public
Resources to Pursue Vengeance—Not Justice ................................................... 1

   A.   Weeks Before EBCC Filed this Action, EBCC Already had Extracted
Defendants' Agreement to  Pay $18.2 Million to Satisfy the $15 Million Loan .... 1

   B.   EBCC's Decision to File Three Largely-Baseless Post-Stay Motions Proves
that EBCC is Exploiting Public Resources for Its Own Private Vengeance ......... 5

II.   Requiring EBCC to Seek Pre-Motion Permission Is a Narrow, Low-
Maintenance Way to Prevent EBCC From Further Wasting this Court's Scarce
Public Resources and "Diminish[ing] Its Own Collateral" ............................... 7

CONCLUSION ....................................................................................................... 9

CERTIFICATE OF COMPLIANCE ..................................................................... 11

Defendants[1] respectfully submit this reply brief in further support of their

"**Cross-Motion**" to modify the preliminary injunction. See generally Dkt. 201,

Memorandum in Opposition to Motion to Modify Preliminary Injunction and for

Contempt and in Support of Cross-Motion to Modify Preliminary Injunction (Mar. 11,

2024) ("**Mot.**").

## I.    18 Months In, It has Become Undeniable that EBCC has Abused Public Resources to Pursue Vengeance—Not Justice

### A. Weeks Before EBCC Filed this Action, EBCC Already had Extracted Defendants' Agreement to  Pay $18.2 Million to Satisfy the $15 Million Loan

When the "**Loan**" at issue in this matured in November 2021, Defendants

immediately confessed their contractual liability. See generally Mot. at 1–2 (citing

Dkt. 1, Complaint ¶ 36 (Sep. 25, 2022) ("**Compl.**"); Dkt. 79, Amended Counterclaim

¶¶ 38–48, 50, 55–64 (Aug. 25, 2023) ("**Am. Countercl.**"); Dkt. 24, John Hanratty

Affidavit in Opposition to Motion for Preliminary Injunction ¶¶ 46–56, 65, 68 (Oct.

26, 2022) ("**Hanratty Aff.**")).

After nearly ten months of negotiations and cooperation—including wide-open

access to Defendants' accounting and other financial systems—Emigrant Business

Credit Corporation ("**EBCC**" and with Defendants, the "**Parties**") demanded that

Defendants execute the "**Settlement Term Sheet**" "by the end of business today" so

that the Parties could finally close the settlement of Defendants' Loan liability by

Friday, September 23, 2022. Id. at 3 (citing Hanratty Aff. ¶¶ 70–74).

---

[1] The "**Defendants**" are all named defendants who have appeared in this action.

Again freely admitting liability and voluntarily cooperating with EBCC's demands, Defendants executed that Settlement Term Sheet. Mot. at 3–4 (citing Dkt. 74 at 2–3 (Aug. 9, 2023)). In doing so, Defendants agreed, that they had defaulted on the Loan; as of August 9, 2022, they owed $21,525,251.71, and that amount would increase by $6,398.35 each day; the Loan liability was "not subject to any credit, offset, defense, cause of action, setoff, counterclaim, or adjustment of any kind;" and the Loan was secured by "legal, valid, binding, and enforceable security interests" that were "fully perfected and prior and superior in right to any other person." Id. Defendants also agreed to pay EBCC over $18.2 million to settle that uncontested Loan debt. Id.

But just ten days later—without warning or notice to Defendants—EBCC, alleging breach-of-contract, fraudulent inducement, and fraudulent transfer. See generally Compl. EBCC's 31-page Complaint does not once mention that Defendants already had conceded breach-of-contract liability—let alone that, despite its fraudulent transfer claim, EBCC had had full insight into Defendants' historical and ongoing financials, including Quickbooks, for nearly nine months. See generally id. There appear to be only two differences between (a) the relief to which EBCC already was entitled under the Settlement Term Sheet and (b) the Complaint's breach-of-contract claim: EBCC's alter ego argument that asks this Court to hold Mr. Hanratty personally liable for the Entity Defendants' Loan obligations, and EBCC's about-face refusal to accept over $18.2 million in full satisfaction of the Loan, whose principal

was $15 million. <u>Compare generally</u> Settlement Term Sheet <u>and, e.g.</u>, Compl. ¶¶ 18, 33.

Notwithstanding its open access to Defendants' financials—which continues to this day—EBCC's fraudulent transfer claims, entirely premised "[o]n information and belief," did not identify any specific Collateral that Defendants allegedly had transferred fraudulently. <u>See generally</u> Compl; <u>see also</u> Compl. ¶¶ 117–24. Despite having free access to Defendants' financials—which showed Defendants continued to hold millions of dollars of assets and were bringing cash in the door in the usual course of business—EBCC claimed, again "[o]n information and belief," that "Defendants were insolvent or were rendered insolvent by the transfers" and, yet again "[o]n information and belief," that "Defendants were left with unreasonably small capital after the transfers." <u>Id.</u> ¶ 121.

For the first 15 months of this Action, the Parties litigated cooperatively, if expensively: by adding fraud claims to the uncontested contractual liability, EBCC vastly expanded the scope of discovery and dispositive motion practice. <u>See generally</u> Dkt. In doing so, EBCC forced Defendants to spend over $500,000—half a million dollars of what EBCC has claimed is its own Collateral—in connection with this Civil Case, alone. <u>Dkt. 202</u>, Declaration of Kari Parks ¶ 3–4 (Mar. 11, 2024) ("**Parks Decl. I**")

But on December 18, 2023, federal authorities unsealed their Criminal Complaint against Mr. Hanratty and arrested him at home in Puerto Rico. <u>Dkt. 151</u> ¶¶ 6–7 (Jan. 19, 2024). The United States Attorney's Office for the Southern District

<div align="center">3</div>

of New York decision to charge by complaint instead of indictment suggested some

sort of emergency—an emergency belied by Defendants' full participation in this case

and Mr. Hanratty's lowest level of pretrial supervision. Accord 18 U.S.C. § 3161.

EBCC's summary judgment papers had been due on December 22. Dkt. 158 (Jan. 23,

2024).

Just two days after Mr. Hanratty's arrest and two days before EBCC's

deadline, EBCC asked Defendants to postpone all summary judgment deadlines by

approximately three weeks. Id. Despite initially arguing that its fraud claims were so

strong that they warranted preliminary injunctive relief—relief that this Court

granted, and which Defendants seek to modify via this motion—EBCC now argued

that it lacked sufficient evidence to prove fraud at summary judgment and focused

its papers entirely on the contractual liability that Defendants had never disputed.

Compare Dkt. 4 (Oct. 17, 2022) with Dkt. 121 (Jan. 12, 2024); Dkt. 207, Jan. 24, 2024

Hearing Transcript at 23:2–7 (Mar. 11, 2024). Over EBCC's opposition, this Court

found that the federal "**Criminal Case**" arises out of "identical facts" and granted

Defendants' motion to stay this "**Civil Case**." Dkt. 167 (Jan. 26, 2024) (the "**Stay**").

4

### B. EBCC's Decision to File Three Largely-Baseless Post-Stay Motions Proves that EBCC is Exploiting Public Resources for Its Own Private Vengeance

In burdening the public and Defendants with increasingly-illegitimate arguments after the Court issued the Stay, EBCC revealed its desperation to hoard public resources in service of its own private vengeance against Mr. Hanratty.

Hours after the Court issued the Stay, opposing counsel emailed vague threats to undersigned counsel's integrity and law license. Dkt. 204, Jan. 25–26, 2024 Emails (Mar. 11, 2024). Instead of responding to undersigned counsel's caution that counsel should litigate in good faith and avoid personal attacks, EBCC filed, via an emergency order to show cause, a motion for renewal premised on public information that unidentified "others" of EBCC's seemingly-endless army of counsel had mustered up the very same day that the Court issued the Stay. See generally Dkt. 169, EBCC Memorandum of Law in Support of Renewal Motion (Jan. 26, 2024).

At emergency oral argument that EBCC had demanded on its own supposed renewal motion, EBCC tacitly conceded that its renewal argument was meritless: instead, EBCC spent the bulk of its time harping on Defendants' (again uncontested) violations of the Preliminary Injunction's notice provisions. See generally Dkt. 205, Feb. 8, 2024 Hearing Transcript (Mar. 11, 2024); see also id. at 9:6 ("THE COURT:[] Mr. Mayron, why are you bringing this up now?"). The Court roundly rejected EBCC's renewal motion:

> You've brought a lot here on a simple motion to renew and basically your motion to renew is based on your recent discovery after my order was issued on the Texas matter, and the Texas matter is public record. [ . . . ] You're telling me your justification was that you didn't have the

5

obligation to check those, rather, the obligation falls on Mr. Hanratty to provide you with information that affects the case. And considering your charges against Mr. Hanratty is one of fraud and misrepresentation [ . . . ] I do not find that as reasonable justification for you not to have discovered this.

Id. 33:24– 34:23.

EBCC filed another motion, now asking the Court to fine Mr. Hanratty $50,000 per day and throw Mr. Hanratty in prison unless he paid the remainder of the Court's original contempt order within three days. Dkt. 187 at 5 (Feb. 15, 2024). Instead of focusing on relevant facts and law, EBCC again cluttered the record and wasted the Court's and Defendants' time on baseless and irrelevant arguments, including (a) failing to cite a single case in which a New York court incarcerated a civil contempt respondent, let alone for failing to pay a six-figure fine on weeks' notice; (b) claiming that Mr. Hanratty was just like a contemnor who claimed to be worth $17 billion and was facing contempt for failing to move his $27 million yacht into American waters; and (c) demanding discovery into Mr. Hanratty's financial history even though the law is clear that only current financial status is relevant to a contempt motion. See Dkt. 188 at 19–22 (Feb. 22, 2024) (citations omitted).

Most recently, EBCC moved this Court to modify the Preliminary Injunction, hold Mr. Hanratty in contempt yet again—despite Mr. Hanratty's documented inability to pay, which, as previously dismissed, is a complete defense to contempt for failure to pay a fine—and, perhaps craziest of all, hold undersigned counsel in contempt—despite not even identifying a single court order that undersigned counsel has violated, let alone a single case in which any court anywhere in the world allowed

an adversary to force opposing counsel to forfeit earned legal fees. See generally Dkt. 201 (Mar. 11, 2024).

Particularly in light of EBCC's previous back-handed threats against opposing counsel and insults to her integrity, EBCC's newest crazy demand, coupled with (or, more accurately, uncoupled from) any supporting or even analogous law, compels the conclusion that EBCC is lashing out against the Stay, repeatedly filing silly and abusive arguments in bad faith, all inside the Trojan Horse of minimal, if uncontested, violations of the Preliminary Injunction's notice provision.

## II. Requiring EBCC to Seek Pre-Motion Permission Is a Narrow, Low-Maintenance Way to Prevent EBCC From Further Wasting this Court's Scarce Public Resources and "Diminish[ing] Its Own Collateral"

By repeatedly abusing its filing privileges, EBCC has forced Defendants to ask this Court for a narrowly-tailored Preliminary Injunction modification, which would "enjoin and restrain [EBCC] from filing further motions without Court approval, which it may obtain by submitting two-page-maximum letters stating (a) EBCC's requested relief and (b) the law and facts justifying its desired motion." Dkt. 200 (Mar. 11, 2024).

"[I]t is ancient and undisputed law that courts have an inherent power over the control of their calendars, and the disposition of business before them, including the order in which disposition will be made of that business." Public Adm'r v. Cohen, 221 A.D. 297, 299 (1st Dep't 1995) (quoting Plachte v. Bancroft Inc., 3 A.D.2d 437, 439 (1st Dep't 1957)) (unanimously denying petition where petitioner, inter alia, made "wholly unwarranted" "personal attack on respondent's ability to try this case"

and had initiated four proceedings against respondent "over a period of barely more than five weeks," causing First Department to "surmise that counsel [ . . . ] is resorting to frivolous tactics in an effort to discredit the present justice and drive him from the case.").

Accordingly, it is no surprise that this Court has the inherent authority to issue "'injunctive relief designed to forestall further vexatious litigation' . . . or 'to prevent use of the judicial system as a vehicle for harassment, ill will and spite.'" Miller v. Lanzisera, 273 A.D.2d 866, 868, 709 N.Y.S. 2d 286 (4th Dep't. 2000) (quoting Harbas v. Gilmore, 244 A.D. 2d 218, 219, 664 N.Y.S. 2d 921 (1st Dep't. 1997) and Sud v. Sud, 227 A.D. 2d 319, 319, 642 N.Y.S. 2d 893 (1st Dep't 1996)).

Defendants' proposed injunction modification is an appropriate, narrow way to prevent EBCC from clogging the docket with frivolous motions, baseless arguments, and irrelevant papers. Accord Sassower v. Comm'n on Jud. Conduct of State, 289 A.D.2d 119, 119, 734 N.Y.S.2d 68 (1st Dep't. 2001) ("The imposition of a filing injunction against [ . . . ] petitioner was justified given petitioner's [] voluminous correspondence, motion papers and recusal motions in this litigation and her frivolous requests for criminal sanctions.").

Despite EBCC's claim to the contrary, Hochberg v. Davis does not bar this narrowly-tailored injunction modification: there, the problem was that the trial part's rule prevented would-be movants from making any written motion or record at all, "thereby foreclosing the opportunity for appellate review." 171 A.D.2d at 194 (citation omitted).

But under Defendants' proposal, EBCC could still make a record of all desired motions and could enjoy the benefit of full briefing on any arguments that actually merited the word count. <u>Accord</u> <u>Curtis & Associates, P.C. v. Callaghan</u>, No. 11831/10, 2012 WL 11851805, at *10 (N.Y. Sup. Ct. Aug. 1, 2012) (citing <u>Hochberg</u>, 171 A.D.2d at 192 (denying motion to vacate court order that prohibited parties from making further motions without advance judicial consent; "compliance with this Court's restriction on additional motions would not have 'prevent[ed] a party from exercising the option to move for relief to which he or she may be entitled" and "could have sought this Court's consent at the time [to pursue motion practice].").

## CONCLUSION

Defendants are not asking the Court to prohibit EBCC from even attempting to file meritorious papers. Instead, Defendants simply ask that this Court impose a pre-motion rule consistent with <u>Hochberg</u>, common with federal judges in the Southern and Eastern Districts of New York, and therefore routinely observed by EBCC's counsel, Sullivan & Cromwell: succinctly stating the legal and factual basis of anticipated motions before forcing the parties and the Court to wade through dozens of pages of irrelevant arguments and misapplied law.

Defendants respectfully request that the Court grant this Cross-Motion.

Dated: March 26, 2024
New York, New York

Respectfully submitted,

**GUSRAE KAPLAN NUSBAUM PLLC**

/s/ Kari Parks
Kari Parks
Victor Wang
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
kparks@gusraekaplan.com
vwang@gusraekaplan.com

*Counsel for Defendants*

24-04020-dsj Doc 1-3 Filed 08/14/24 Entered 08/14/24 09:45:23 Doc #4 State
Court Records Pg 434 of 438

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with Commercial

Division Rule 17, 22 N.Y.C.R.R. § 202.70 (g), because it contains 2,253 words, as

calculated by Microsoft Word's Word Count function.


Dated: March 26, 2024
        New York, New York


                                    /s/ Kari Parks
                                    Kari Parks

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

July 22, 2024

Via NYSCEF and E-Mail

The Honorable Margaret Chan,
    Supreme Court, New York County,
        Commercial Division,
            60 Centre Street, Room 659,
                New York, New York  10007.

Re:    Emigrant Business Credit Corporation v. John Arthur Hanratty, et al., No. 158207/2022

Dear Justice Chan:

I represent Plaintiff Emigrant Business Credit Corporation ("EBCC") in connection with the above-captioned action.  I write to respectfully request that the Court adjourn until October 2, 2024, the hearing on Motion Sequence Nos. 10-12 that is presently scheduled for July 30, 2024 at 10:30 am.  Defendants do not object to this request.

On May 13, 2024, the corporate Ebury defendants[1]—but not Mr. Hanratty in his individual capacity—filed for bankruptcy protection in the U.S. Bankruptcy Court for the Middle District of Alabama.  *See, e.g.*, Voluntary Petition, *In re: Ebury Street Capital, LLC*, No. 24-10499 (Bankr. M.D. Ala., filed May 13, 2024), ECF No. 1.  As a result, the federal "automatic stay" temporarily bars entry of the requested relief against the corporate defendants.  *See* 11 U.S.C. § 362.

EBCC believes that the Court still may hold Mr. Hanratty—who has not himself filed for bankruptcy—*personally* in contempt for his repeated violations of the Preliminary Injunction Order.  (*See* Dkt. 191 at 7-8.)  Defendants, however, have not provided their position as to whether such a contempt finding against Mr. Hanratty would implicate the bankruptcy automatic stay.  As a result, EBCC respectfully requests a

---

[1]    The following corporate defendants have filed for bankruptcy:  Ebury Street Capital, LLC; Ebury Fund 1, LP; Ebury Fund 2, LP; Ebury 1EMI LLC; Ebury 2EMI LLC; EB 1EMIALA LLC; EB 2EMIALA LLC; EB 2EMIMD, LLC; EB 1EMINJ, LLC; EB 1EMINY, LLC; EB 2EMINY, LLC; RE 1EMI LLC; RE 2EMI LLC; Ebury Fund 1NJ, LLC; Red Clover 1, LLC; and Ebury RE LLC.

The Honorable Margaret Chan                                                                  -2-

temporary adjournment of the hearing until such time as there is clarity regarding the scope and application of the bankruptcy automatic stay.

There is reason to believe that such an adjournment of the contempt proceedings would not need to be a long one. To date in the bankruptcy proceedings, the Ebury entities have totally failed to satisfy the basic requirement that they file statements of financial affairs and schedules of their assets and liabilities. *See* Fed. R. Bankr. P. 1007(b). On July 9, 2024, Chief U.S. Bankruptcy Judge Bess Parrish Creswell provided the Ebury entities with a third and final extension of the deadline to file their schedules. Judge Parrish Creswell indicated that if Ebury does not file those schedules by August 2, 2024, she will dismiss the bankruptcy case in its entirety.

Thank you for your attention to this matter.

Sincerely,

*/s/ Alexander J. Willscher*

Alexander J. Willscher

cc:      *All Counsel of Record* (via NYSCEF)

FILED: NEW YORK COUNTY CLERK 07/22/2024 04:58 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 225    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 07/22/2024

Court Records    Pg 437 of 438

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*

*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

Application granted. Hearing re: MS010-12 currently scheduled for July 30, 2024, is adjourned until October 17, 2024 at 10:30 AM in Courtroom 252.

SO ORDERED.

Hon. Margaret A. Chan
Dated: July 22, 2024

July 22, 2024

Via NYSCEF and E-Mail

The Honorable Margaret Chan,
  Supreme Court, New York County,
    Commercial Division,
      60 Centre Street, Room 659,
        New York, New York 10007.

Re:    Emigrant Business Credit Corporation v. John Arthur Hanratty, et
       al., No. 158207/2022

Dear Justice Chan:

I represent Plaintiff Emigrant Business Credit Corporation ("EBCC") in connection with the above-captioned action. I write to respectfully request that the Court adjourn until October 2, 2024, the hearing on Motion Sequence Nos. 10-12 that is presently scheduled for July 30, 2024 at 10:30 am. Defendants do not object to this request.

On May 13, 2024, the corporate Ebury defendants[1]—but not Mr. Hanratty in his individual capacity—filed for bankruptcy protection in the U.S. Bankruptcy Court for the Middle District of Alabama. *See, e.g.*, Voluntary Petition, *In re: Ebury Street Capital, LLC*, No. 24-10499 (Bankr. M.D. Ala., filed May 13, 2024), ECF No. 1. As a result, the federal "automatic stay" temporarily bars entry of the requested relief against the corporate defendants. *See* 11 U.S.C. § 362.

EBCC believes that the Court still may hold Mr. Hanratty—who has not himself filed for bankruptcy—*personally* in contempt for his repeated violations of the Preliminary Injunction Order. (*See* Dkt. 191 at 7-8.) Defendants, however, have not provided their position as to whether such a contempt finding against Mr. Hanratty would implicate the bankruptcy automatic stay. As a result, EBCC respectfully requests a

---

[1]    The following corporate defendants have filed for bankruptcy: Ebury Street Capital, LLC; Ebury Fund 1, LP; Ebury Fund 2, LP; Ebury 1EMI LLC; Ebury 2EMI LLC; EB 1EMIALA LLC; EB 2EMIALA LLC; EB 2EMIMD, LLC; EB 1EMINJ, LLC; EB 1EMINY, LLC; EB 2EMINY, LLC; RE 1EMI LLC; RE 2EMI LLC; Ebury Fund 1NJ, LLC; Red Clover 1, LLC; and Ebury RE LLC.

FILED: NEW YORK COUNTY CLERK 07/22/2024 04:58 PM INDEX NO. 158207/2022

NYSCEF DOC. NO. 225    24-04020-dsj    Doc 1-3    Filed 08/14/24    Entered 08/14/24 09:45:23    Doc #4 State    RECEIVED NYSCEF: 07/22/2024

Court Records    Pg 438 of 438

The Honorable Margaret Chan                                              -2-

temporary adjournment of the hearing until such time as there is clarity regarding the scope and application of the bankruptcy automatic stay.

There is reason to believe that such an adjournment of the contempt proceedings would not need to be a long one. To date in the bankruptcy proceedings, the Ebury entities have totally failed to satisfy the basic requirement that they file statements of financial affairs and schedules of their assets and liabilities. *See* Fed. R. Bankr. P. 1007(b). On July 9, 2024, Chief U.S. Bankruptcy Judge Bess Parrish Creswell provided the Ebury entities with a third and final extension of the deadline to file their schedules. Judge Parrish Creswell indicated that if Ebury does not file those schedules by August 2, 2024, she will dismiss the bankruptcy case in its entirety.

Thank you for your attention to this matter.

Sincerely,

*/s/ Alexander J. Willscher*

Alexander J. Willscher

cc:    *All Counsel of Record* (via NYSCEF)